1   MATTHEW D. MURPHEY (SBN 194111)
    TROUTMAN SANDERS LLP
2   11682 El Camino Real, Suite 400
    San Diego, CA  92130
3   Telephone:  (858) 509-6000

4   BRADFORD PAUL SCHMIDT (SBN 174440)
    LIFE TECHNOLOGIES CORPORATION
5   5791 Van Allen Way
    Carlsbad, CA 92008
6   Telephone:  (760) 603-7200

7   NICHOLAS GROOMBRIDGE (*pro hac vice*)
    CATHERINE NYARADY (*pro hac vice*)
8   PETER SANDEL (*pro hac vice*)
    JENNY C. WU (*pro hac vice*)
9   REBECCA FETT (*pro hac vice*)
    ROBERT LIN (*pro hac vice*)
10  PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
11  1285 Avenue of Americas
    New York, NY 10019
12  Telephone: (212) 373-3000

13  *Attorneys for Plaintiffs*
    LIFE TECHNOLOGIES CORPORATION,
14  APPLIED BIOSYSTEMS, LLC, INSTITUTE
    FOR PROTEIN RESEARCH, ALEXANDER
15  CHETVERIN, HELENA CHETVERINA, and
    WILLIAM HONE

16

                 **UNITED STATES DISTRICT COURT**
17               **SOUTHERN DISTRICT OF CALIFORNIA**

18  LIFE TECHNOLOGIES CORPORATION,          Case No. 3:11-cv-00703-CAB (DHB)
    APPLIED BIOSYSTEMS, LLC, INSTITUTE
19  FOR PROTEIN RESEARCH, ALEXANDER         **[REDACTED] MEMORANDUM OF**
    CHETVERIN, HELENA CHETVERINA, and       **POINTS AND AUTHORITIES IN**
20  WILLIAM HONE,                           **SUPPORT OF PLAINTIFFS' MOTION**
                                            **FOR SUMMARY JUDGMENT OF NON-**
21          Plaintiffs/Counterclaim Defendants,   **INFRINGEMENT OF THE '656 PATENT**

22  v.                                      **[FILED UNDER SEAL]**

23  ILLUMINA, INC. and SOLEXA, INC.,
                                            Date:        January 17, 2013
24          Defendants/Counterclaim Plaintiffs.   Time:        2:30 p.m.
                                            Courtroom:   2
25                                          Judge:       Hon. Cathy Ann Bencivengo

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.     PRELIMINARY STATEMENT ............................................................................. 1

II.    UNDISPUTED MATERIAL FACTS ..................................................................... 2

III.   ARGUMENT ......................................................................................................... 10

     A.     Legal Framework ....................................................................................... 10

          1.     Summary Judgment Standard ......................................................... 10

          2.     Infringement Standard .................................................................... 11

          3.     Indirect Infringement ..................................................................... 12

     B.     Summary Judgment is Appropriate Because Illumina Cannot Meet its Burden As to "All Fragments." ................................................................... 13

     C.     Illumina Has None Of The Evidence Required For Indirect Infringement ........... 15

     D.     Illumina's New Claim Interpretation Does Not Cure Its Failure of Proof ............ 17

IV.    CONCLUSION ..................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
  No. 2009-1372, 2012 WL 3764695 (Fed. Cir. Aug. 31, 2012) ......................... 11, 14

5

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...................................................................................... 10

6

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  377 U.S. 476 (1964) .............................................................. 12, 14, 15, 18

7

8

*BMC Res., Inc. v. Paymentech, L.P.,*
  498 F.3d 1373 (Fed. Cir. 2007) .................................................................... 11

9

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...................................................................................... 10

10

11

*DSU Med. Corp. v. JMS Co.,*
  471 F.3d 1293, 1306 (Fed.Cir.2006) ............................................................ 12

12

13

*Gentry Gallery, Inc. v. Berkline Corp.,*
  134 F.3d 1473 (Fed. Cir. 1998) .................................................................... 10

14

*Global-Tech Appliances, Inc. v. SEB S.A.,*
  131 S.Ct. 2060 (2011) ...................................................................... 11, 15, 18

15

16

*JSR Corp. v. Tokyo Ohka Kogyo Co., Ltd.,*
  No. C 99-20156, 2001 WL 1812378 (N.D. Cal. 2001) .................................. 16

17

*Karsten Mfg. Corp. v. Cleveland Golf Co.,*
  242 F.3d 1376 (Fed. Cir. 2001) .................................................................... 11

18

19

*LG Electronics, Inc. v. Q-Lity Computer, Inc.,*
  211 F.R.D. 360 (N.D. Cal. 2002) .................................................................. 16

20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ...................................................................................... 10

21

*Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.,,.,*
  No. 07-C-0391, 2011 WL 6122377  (E.D. Wis. 2011) ............................. 16, 21

22

23

*MShift, Inc. v. Digital Insight Corp.,*
  747 F.Supp.2d 1147 (S.D. Cal. 2011) ........................................................... 10

24

*Symbol Techs., Inc. v. Opticon, Inc.,*
  935 F.2d 1569 (Fed. Cir. 1991) .................................................................... 11

25

26

*Wahpeton Canvas Co. v. Frontier, Inc.,*
  870 F.2d 1546 (Fed. Cir. 1989) .................................................................... 11

27

28

**STATUTES**

35 U.S.C. § 271(b) .................................................................................................. 11

35 U.S.C. § 271(c) .................................................................................................. 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ............................................................................................... 10

Patent L.R. 4.1- 4.3 ................................................................................................ 16

## I.      PRELIMINARY STATEMENT

Life Technologies Corp. and Applied Biosystems LLC (collectively, "Life") bring this motion for summary judgment of non-infringement of all asserted claims of U.S. Patent No. 7,232,656 ("the '656 Patent") based on Illumina's failure to adduce any evidence of infringement regarding the "all fragments" limitation of each asserted claim. Life also brings this motion for summary judgment of no induced or contributory infringement based on Illumina's failure to adduce evidence of the required mental state for secondary infringement.

The '656 patent relates to a method for analyzing genome-wide variation in which DNA of an individual's genome is physically cut or otherwise divided up into a large number of short DNA molecules. Each of those DNA molecules, called a "fragment," is then subjected to a sequencing process to determine the sequence of bases (also called "nucleotides") in the fragment. The sequence reads of the fragments are then aligned with a reference genome sequence and variations between the reference genome and the fragments are analyzed. All asserted claims of the '656 Patent require "randomly fragmenting a genome" of an individual and then "generating sequence reads of multiple bases on *all fragments* of said genome." (emphasis added).

There is no factual dispute between the parties that the accused systems—SOLiD and Ion Torrent—generate sequence reads on only *a subset of the fragments* of a genome resulting from the fragmentation step—*i.e.*, sequence reads are not generated for every fragment. The vast majority of fragments generated during the fragmenting step are lost before sequence reads are generated. For example, the SOLiD and Ion Torrent User Guides clearly instruct users to select a subset of fragments corresponding to a certain size before proceeding to sequencing. Fragments are also lost at various other places in the pre-sequencing process and by the time sequencing occurs in SOLiD or Ion Torrent, less than 1% of the original fragments are present.

Illumina does not dispute these facts. In fact, Illumina's proposed expert, Dr. Kolodner, did not address the size selection step and the loss of fragments in his expert

report, despite having reviewed Life's non-infringement contentions that distinguish SOLiD and Ion Torrent from the asserted claims on the basis of the "all fragments" claim limitation.

Despite the lack of any dispute on the facts, Illumina now argues (for the first time in its rebuttal expert reports) that the term "all fragments" does not mean what it says, but rather that "all fragments" refers only to fragments "covering the entire genome." Illumina never raised this proposed interpretation during the claim construction proceedings in 2010, and only belatedly proposes it now, after it has realized that none of the accused systems satisfy the express requirement of the '656 patent that all fragments be sequenced. Even under this new and untimely claim interpretation, however, Illumina has not provided any evidence showing that Life's systems sequence fragments "covering the entire genome." This issue is free of factual disputes and ripe for summary judgment. Given Illumina's failure to come forward with any evidence that either of the SOLiD or Ion Torrent systems generate sequence reads on "all fragments," the Court should grant summary judgment of non-infringement of the '656 Patent. Further, Illumina has also failed to adduce any evidence of the mental state required for inducement or contributory infringement. Illumina simply cannot meet its burden of proving that life acted with knowledge that use of SOLiD or Ion Torrent infringe the '656 Patent and the Court should grant summary judgment of non-infringement of the '656 Patent on this ground as well.

## II.   UNDISPUTED MATERIAL FACTS

The '656 Patent

1.     Illumina has asserted the '656 Patent against two of Life's next-generation sequencing systems, SOLiD and Ion Torrent.

2.     Illumina has asserted claims 1, 2, 4, and 7 against SOLiD, and claims 1, 2, and 7 against Ion Torrent. [Wu Decl. Exh. 20 (Kolodner Opening Report) at ¶19.]

3.     Illumina's '656 Patent, titled "Arrayed Biomolecules and Their Use in Sequencing," is directed to a method for analyzing genome wide variation in an individual. [*See* Wu Decl. Exh. 7 ('656 Patent).] The specification states that

1
2
3
4
5

> "[r]ecently, the Human Genome Project determined the entire sequence of the human genome – all 3 x 10 9 bases. The sequencing information represents that of an average human.   However there is still considerable interest in identifying differences in the genetic sequence between different individuals.   The most common form of genetic variation is single nucleotide polymorphisms (SNPs).   On average, one base in 1000 is a SNP …"

6   [Wu Decl. Exh. 7 at 1:55-62.]   The specification later provides that "[i]n one embodiment

7   of the invention, a method for determining a single nucleotide polymorphism (SNP)

8   present in a genome comprises immobilising fragments of the genome onto the surface of

9   a solid support to form an [array] as defined above, identifying nucleotides at selected

10   positions in the genome, and comparing the results with a known consensus sequence to

11   identify any differences between the consensus sequence and the genome."   [Wu Decl.

12   Exh. 7 at  11:49-56.]

13        4.      A "fragment" of genomic DNA is a physical polynucleotide molecule

14   obtained by breaking DNA of a whole genome into smaller pieces.   The specification

15   states that "The genomic DNA may be PCR-amplified or used directly to generate

16   fragments of DNA using either restriction endonucleases, other suitable enzymes, a

17   mechanical form of fragmentation or a non-enzymatic chemical fragmentation method."

18   [Wu Decl. Exh. 7 at  7: 42-45.]

19        5.      The abstract for the '656 Patent states that "[t]he method comprises

20   randomly fragmenting the individual's genome and generating sequence reads of multiple

21   bases on all fragments of  the individual's genome …"   [Wu Decl. Exh. 7 at Abstract.]

22        6.      The specification of the '656 Patent describes attaching fragments of

23   genomic DNA to a surface to form an array and performing sequencing reactions on the

24   fragments.

25        7.      All asserted claims of the '656 Patent require the steps of "randomly

26   fragmenting the genome of an individual" and then "generating sequence reads of

27   multiple bases on all fragments of said genome."   [*See* Wu Decl. Exh. 7 at  claims 1, 2, 4,

28   and 7.]

8.    For example, claim 1, on which claims 2 and 4 depend,  reads as follows:

A  method  for  analysing  genome  wide  variation  in  an
individual comprising:
i.)    randomly fragmenting a genome of said individual;
ii.)    generating  sequence  reads  of  multiple  bases  on  all
fragments of said genome;
iii.)    aligning  the  sequence  reads  with  a  known  genomic
reference sequence; and
iv.)    analysing  variations  between  the  sequence  reads
derived  from  the  genome  of  the  individual  and  the
known genomic reference sequence.

9.    Claim 7 contains nearly identical language, including expressly requiring "randomly fragmenting a genome of said individual" and "generating sequence reads of multiple bases on all fragments of said genome."

10.    The  specification  does  not  expressly  define  the  terms  "randomly fragmenting," or "all fragments."

11.    Neither party requested that the term "all fragments" be construed.  [*See* Wu Decl. Exh. 23 (Joint Claim Construction Chart and Statement).]   Accordingly, the Court did not construe this term in its *Markman* order.  [*See* Wu Decl. Exh. 9 (Claim Construction Order).]

The Accused Devices

12.    Neither SOLiD nor Ion Torrent generate sequence reads on "all fragments" of genomic DNA generated in a "randomly fragmenting" step.

13.    In relevant part, SOLiD and Ion Torrent work as described below and in Dr. Metzker's responsive expert report.  None of this description is disputed by Illumina or its expert, Dr. Kolodner.

14.    SOLiD and Ion Torrent are designed for use in a variety of research applications, including sequencing small targeted regions of a genome, analyzing expression of genes, and whole genome resequencing.  [Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶¶ 102-103, 149.]   Illumina's infringement allegation is based on the use of SOLiD and Ion Torrent for whole genome resequencing.

15.     Using SOLiD for genome sequencing involves first extracting DNA and randomly breaking it into fragments.  This fragmenting step is done using physical shearing to break the DNA into short pieces.  A subset of these DNA fragments go through a series of steps that ultimately yield small beads each having thousands of copies of one of the fragments attached to it.  Those small beads are called "templated" beads and are placed on a slide that is then placed on the SOLiD instrument.  SOLiD then generates sequence information using fluorescently-labeled short DNA probes that stick to the fragments on the bead.  The vast majority of the originally-produced DNA fragments are lost during the process of preparing the templated beads, and only a small subset of the original set of fragments is ultimately placed into the SOLiD instrument.  [Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶ 45.]

16.     SOLiD does not generate sequence reads on all fragments generated during the fragmenting step.  [Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶ 24;  Table 1.]

17.     In its interrogatory response of February 2010, Life identified the "all fragments" limitation as a basis for non-infringement of all asserted claims of the 656 Patent.  Specifically, Life's interrogatory response stated:

> "the SOLiD system does not infringe the asserted claims of the '656 Patent (claims 1, 2, 3, 4 and 7) for at least the reason that the claim limitation requiring "generating sequence reads of multiple bases on all fragments of said genome" is not met.

[Wu Decl. Exh. 24 (Plaintiffs' First Supp. Response and Objections to Illumina's and Solexa's Interrog. No. 1) at Pg. 4.]

19.     Users are instructed to select only fragments of a certain size for sequencing, and the vast majority of these fragments are then lost during subsequent processing steps.  This was summarized by Dr. Metzker as follows:

> The preparation of the fragment library is described as a series of steps called the "Library Workflow," which is part

of the SOLiD User Guide.   At Production number CHET02000645.  There are a number of steps in the Library Workflow entitled "Shear DNA," "End Repair," "Ligate Adaptors," "Size-Selection by Gel Electrophoresis," "Nick Translation and PCR," "2nd Size-Selection by Gel Electrophoresis," and "Analysis."  Every step in the Library Workflow uses a variety of molecular biology steps to modify the fragmented DNA, to purify the modified DNA fragments, and/or to select for a certain size range of the fragmented DNA.  ***In most steps, only a subset of the population of DNA fragments will be retained during that Library Workflow processing step due to inefficiencies of the molecular biology steps, recovery losses during the purification steps, or the exclusion of DNA fragment during the size selection steps.  The overall result for users of the SOLiD system is that only a very small fraction of DNA fragments obtained from the genome from an individual will available to generate sequence reads of multiple bases.***

[Wu Decl. Exh. 22 at ¶ 22 (emphasis added).]

20. 

21.     As a result,

11-cv-00703-CAB (DHB)



22.

23.

24.    As Dr. Metzker then summarized,

Doc#: US1:8218278v6

11-cv-00703-CAB (DHB)

█████████████████████████████████████

██████

25.     It is further undisputed that SOLiD does not generate sequence reads from every bead.  As Dr. Metzker stated:

> SOLiD does not actually generate sequence reads from every bead.  The User Guide specifically instructs users to perform bead enrichment to isolate those beads for which the DNA fragment was successfully amplified to form a cluster, and remove the rest of the beads.  As the SOLiD 4 Templated Bead Preparation Guide states, "[e]nrichment is required to isolate template beads from non-amplifying or poorly amplifying beads."  At Production number CHET02063521.  Even after this enrichment step, not all beads generate usable sequence reads and reads from some beads are excluded by filtering software: "[p]rior to secondary analysis, results are filtered by removing all tags with missing data.  Filtering removes all incomplete beads and reads with missing calls."  Applied Biosystems SOLiD Analysis Tools (SAT) v 3.5, Reference Guide, Production number CHET02001096.

[Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶ 115.]

26.     Illumina's expert, Dr. Kolodner, cited to these very same user guides and other documents that instruct users to perform a size selection step to select only a subset of fragments for sequencing.  [*See, e.g.* Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at ¶ 65, relying on Wu Decl. Exh. 27 (SOLiD 4 System Library Preparation Guide).],

27.     Ion Torrent is based on an analogous process and it is undisputed that all of the above analysis applies equally to Ion Torrent, with some variation in the precise percentage loss of fragments, as described in detail in Dr. Metzker's report.  [Wu Decl. Exh. 22  at ¶¶ 68-93.]   One notable difference, however, is that Ion Torrent generates sequence information by detecting pH changes, rather than detecting fluorescent signals.  [*See* Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶ 68.]

28.     Ion Torrent does not generate sequence reads on all fragments generated during the fragmenting step.  [Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶¶ 68-93.]

Evidence Provided By Illumina

29.     Neither Illumina, nor its expert, Dr. Kolodner, dispute any of the analysis performed by Dr. Metzker as to the percentage of fragments that are sequenced by SOLiD and Ion Torrent.  The portion of Dr. Kolodner's report describing how SOLiD and Ion Torrent perform the steps in which Dr. Metzker showed there was significant loss of fragments states that:

> After the DNA has been broken up into small pieces, Life Tech instructs its customers to array the fragments of DNA on to small beads (Dynal beads that are 1 μm in size) so that each bead contains one copy of DNA in what Life Tech refers to as "micro-reactors" … .

[Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at ¶ 66.]

> After the beads are prepared, Life Tech teaches its customers to conduct the sequencing run (after depositing the beads on a slide, and covalently attaching the beads to the surface of a slide.)

[*Id.* at ¶ 68.]

30.     Dr. Kolodner adopted a similar approach in describing Ion Torrent.  [*Id.* at ¶¶ 73-75.]

31.     The section of Dr. Kolodner's report addressing infringement of each limitation does not address the issue of fragment loss.  Under the heading "Infringement analysis - SOLID System", Dr. Kolodner presents the entirety of his analysis of this claim limitation:

> Second, step ii, "generating sequence reads of multiple bases on all fragments of said genome," is met when primary analysis is completed, and the SOLiD System generates a file that contains the sequence data for each bead (in the form of color calls with the last base of the primer inserted as the first base in the sequence).

[Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at ¶ 79.]

32.     And similarly for Ion Torrent:

> Second, step ii, "generating sequence reads of multiple bases on all fragments of said genome," is met when the Ion Torrent system's generates a file that contains the sequence data for each bead.

[Id. at ¶ 85.]

33.     Furthermore, although Dr. Kolodner focused on the generation of sequence reads from each bead (as opposed to from each of the originally-produced fragment), Dr. Kolodner did not present any basis to infer that SOLiD and Ion Torrent actually generate sequence data from each bead.   As shown above (*supra* ¶ 25), neither system does actually generate sequence data from each bead.

34.     Illumina's infringement contentions also do not provide any evidence that SOLiD or Ion Torrent generate sequence reads on all fragments.  Illumina's infringement contentions for this limitation state only that:

> All versions of the SOLiD™ and Ion Torrent Systems can be and have been used to generate sequence reads of two or more bases on all fragments of a genome. For example, all versions of the SOLiD™ System use a ligation-based sequencing method to read a sequence of two or more bases on each fragment.  For example, all versions of the Ion Torrent System use a pH-based chemistry system for generating sequence reads on all fragments of the genome.

[Wu Decl. Exh. 19 (Illumina's Supplemental Resp. to Interrog. No. 2, served Aug. 24, 2011.]

## III.    ARGUMENT

### A.    Legal Framework

#### 1.    Summary Judgment Standard

Summary judgment "is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); Fed. R. Civ. P. 56(c). As the moving party, Life bears the burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A dispute regarding a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Life may meet its burden on summary judgment by showing that there is an absence of admissible evidence to support Illumina's case and insufficient to meet Illumina's burden of proof at trial. *Celotex*, 477 U.S. at 3225 ("the burden on the moving party may be discharged by "showing" - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."). Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

To defeat summary judgment against it, Illumina "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324 (Plaintiff must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."). "Unsupported conjecture or conclusory statements are insufficient to defeat summary judgment." *MShift, Inc. v. Digital Insight Corp.*, 747 F.Supp.2d 1147, 1165 (N.D. Cal. 2010) (citing *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "When no reasonable jury could find for the non-movant, the movant is entitled to judgment as a matter of law." *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1379 (Fed. Cir. 2001).

### 2.    Infringement Standard

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007).  As the party asserting infringement, it is Illumina's burden to prove all aspects of infringement by a preponderance of the evidence. *See Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1574 (Fed. Cir. 1991).  Although Illumina's Interrogatory Response asserts both literal infringement and infringement under the Doctrine of Equivalents, Illumina has apparently abandoned the latter theory because

1    Dr. Kolodner did not present any evidence of infringement under the Doctrine of

2    Equivalents.

3          Asserted claims 1 and 7 are independent claims, and asserted claims 2-4 depend

4    from claim 1.  Thus if Life's accused devices do not meet every limitation of claim 1, as a

5    matter of law those devices do not meet every limitation of claims 2-4.  *See Wahpeton*

6    *Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989) ("One who does

7    not infringe an independent claim cannot infringe a claim dependent on (and thus

8    containing all the limitations of) that claim.").

9                        **3.      Indirect Infringement**

10         Illumina has also alleged induced and contributory infringement of the'656 Patent.

11   Illumina's Supplementary. Resp. to Interrog. Nos. 1 and 2.  As the Federal Circuit

12   recently reiterated, a finding of induced infringement requires as a predicate that there has

13   been direct infringement.  *See Akamai Techs., Inc. v. Limelight Networks, Inc., No.* 2009-

14   1372, 2012 WL 3764695, *4 (Fed. Cir. Aug. 31, 2012) (principle that "there can be no

15   indirect infringement without direct infringement is well settled").  Additionally,  induced

16   infringement under § 271(b) requires evidence that the accused infringer has "knowledge

17   that the induced acts constitute patent infringement."   *Global-Tech Appliances, Inc. v.*

18   *SEB S.A.*, 131 S.Ct. 2060, 2068 (2011); see also *Akamai*, 2012 WL 3764695, at *3

19   (induced infringement "requires that the accused inducer act with knowledge that the

20   induced acts constitute patent infringement").   Prior to the Supreme Court's recent

21   decision in *Global-Tech*, the Federal Circuit had held that "[t]he plaintiff has the burden of

22   showing that the alleged infringer's actions induced infringing acts and that he knew or

23   should have known his actions would induce actual infringements*." DSU Med. Corp. v.*

24   *JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir.2006) (en banc).  Under the standard set forth in

25   *Global-Tech* the knowledge requirement may be met by a showing of willful blindness,

26   but "deliberate indifference" to a known risk that the acts may constitute patent

27   infringement is not sufficient; nor are recklessness or negligence.  *See Global Tech,* 131

28   S.Ct. at 2068 - 2072.  Accordingly, in order for Illumina to prevail on its theory of

1  induced infringement of the '656 Patent, it must show by a preponderance of the evidence

2  that use of the accused products meets each and every limitation of the asserted claims and

3  that Life acted with knowledge that such use constituted infringement of the '656 Patent.

4      To prevail under a theory of contributory infringement, Illumina must prove that

5  the use of Life's systems infringes the '656 Patent.  *See Aro Mfg. Co. v. Convertible Top*

6  *Replacement Co.*, 377 U.S. 476, 483 (1964) ("if there is no direct infringement of a patent

7  there can be no contributory infringement").   In addition, Illumina must prove by a

8  preponderance of the evidence that Life is selling or offering to sell a material part of the

9  patented invention, knowing it to be especially made for infringing use and not suitable

10  for substantial non-infringing use.  35 U.S.C. § 271(c).  This requires Illumina to prove

11  that Life knew that the combination of components was both patented and infringing.

12  *Aro*, 365 U.S. at 488 ("271(c) does require a showing that the alleged contributory

13  infringer knew that the combination for which his component was especially designed was

14  both patented and infringing").

15
       **B.     Summary Judgment is Appropriate Because Illumina Cannot Meet its**
16         **Burden As to "All Fragments."**

17      All asserted claims of the '656 Patent require first "randomly fragmenting the

18  genome of an individual" and then "generating sequence reads on ***all fragments*** of said

19  genome."  (emphasis added).  Life has presented extensive evidence, in the form of an

20  expert report, user guides, and other documents, showing that SOLiD and Ion Torrent

21  generate sequence reads on ███████████████████████.  [*See, e.g.*, Wu Decl.

22  Exh. 22 (Metzker Res. Rpt.) at ¶¶ 41-61.]  ███████████████████████████

23  ████████████████████████████████████████████████████████████

24  ███████████████████████████████, is undisputed.

25      Dr. Kolodner's conclusory statement that SOLiD and Ion Torrent generate "a file

26  that contains the sequence data for each bead" [Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at

27  ¶ 68.] is without any factual support, and does not address the key issue – whether SOLID

28  and Ion Torrent generate sequence reads on all fragments.  The only other statements

made by Dr. Kolodner regarding the "all fragments' limitation are vague and conclusory assertions like "[a]fter the DNA has been broken up into small pieces, Life Tech instructs its customers to array the fragments of DNA on to small beads."  At no time does Dr. Kolodner ever dispute, squarely or otherwise, the *facts* regarding ███████████ ████████████████████████████████████████.  Illumina's infringement contentions are similarly conclusory and unhelpful:  "All versions of the SOLiD™ and Ion Torrent Systems can be and have been used to generate sequence reads of two or more bases on all fragments of a genome."  [Wu Decl. Exh. 19 (Illumina's Supplemental Resp. to Interrog. No. 2, Aug. 24, 2011) at Pg. 11.].  In short, Illumina has not, and cannot, dispute the evidence of ███████████████████ in the accused systems. Accordingly, there is (and can be) no genuine factual dispute that the accused systems do not sequence all of the fragments generated during the fragmenting step.  Moreover, Illumina has been on notice for several years that the "generating sequence reads on all fragments" limitation is a primary basis for Life's non-infringement contentions.  [Wu Decl. Exh. 24 (Plaintiff's First Supplementary Objection and Resp. to Interrog. No. 1, February 2010) at Pg. 4.]  Yet Illumina's infringement contentions and expert report on infringement fail to address how the accused products meet the "all fragments" limitation.

Without evidence that the accused SOLID and Ion Torrent systems perform functions that literally infringe any of the asserted claims of the '656 patent, summary judgment of no literal infringement of the '656 Patent by the SOLiD and Ion Torrent systems is warranted.

In addition, Illumina has presented no evidence that Life's systems perform a step equivalent to the "all fragments" step and has accordingly apparently abandoned any allegation of infringement under doctrine of equivalents All that Dr. Kolodner has done is make the conclusory statement that SOLiD and Ion Torrent generate "a file that contains the sequence data for each bead" [Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at ¶ 68.]  That says nothing about whether *all* fragments are represented on the beads or even whether sequence information is generated for each of the subset of fragments that are on the

beads.  Dr. Kolodner might be equating generating sequence data from "each bead" with generating sequence data from "each fragment,"  but the two are entirely different concepts because ███████████████████████████████████████████

███████    [*See, e.g.*,  Wu Decl. Exh. 22 (Metzker Resp. Rpt.) at ¶ 44.] ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████    ).  Furthermore, SOLiD and Ion Torrent do not even generate sequence reads for all beads, as explained above.  Without evidence that the accused SOLID and Ion Torrent systems perform functions that infringe any of the asserted claims of the '656 patent by equivalents, summary judgment of no infringement under the doctrine of equivalents of the '656 patent by the SOLiD and Ion Torrent systems is warranted.

***

Fact and expert discovery are now closed.  And the time has passed for Illumina to attempt to cure any deficiencies in its affirmative case with new evidence or expert testimony.  Because Illumina has failed to present any evidence that SOLiD or Ion Torrent generate sequence reads on all fragments or that either system is equivalent to a system which generates sequence reads on all fragments, Illumina cannot meet its burden of proof on infringement, and summary judgment is warranted that Life does not infringe any of the asserted claims of the '656 either literally or under the Doctrine of Equivalents.

**C.   Illumina Has None Of The Evidence Required For Indirect Infringement**

As discussed above, it is well-settled law that in order for there to be indirect infringement (inducement or contributory infringement), there must first be direct infringement.  *See Akamai*, 2012 WL 3764695, at \*4; *Aro*, 365 U.S. at 483.  As discussed above, Illumina has not provided any evidence that use of Life's systems infringes the '656 Patent.  Therefore, there is no evidence that any of Life's customers or any user of the SOLiD or Ion Torrent systems directly infringes the '656 patent.  Without evidence of direct infringement, Illumina's assertions of inducement and contributory infringement

1    must fail, and summary judgment of no inducement and no contributory infringement of

2    the '656 patent is warranted.

3         In addition to Illumina's inability to establish direct infringement, Illumina cannot

4    meet its burden of proving induced infringement or contributory infringement, because it

5    cannot prove that Life had the requisite knowledge and specific intent.  For induced

6    infringement, it is Illumina's burden to establish not just that Life induced others to

7    perform infringing acts, but that Life had "knowledge that the induced acts constitute

8    patent infringement." *Global-Tech*, 131 S.Ct. at 2068.  This may be met by a showing of

9    willful blindness, but recklessness, deliberate indifference, or negligence are not

10   sufficient. *Id.*  For contributory infringement, it is Illumina's burden to establish that Life

11   is selling "an apparatus for use in practicing a patented process, constituting a material

12   part of the invention, knowing the same to be especially made or especially adapted for

13   use in an infringement of such patent, and not a staple article or commodity of commerce

14   suitable for substantial noninfringing use.  35 U.S.C. § 271 (c).  This requires Illumina to

15   prove that Life knew that customers' use of the accused systems was both patented and

16   ***infringing***. *Aro*, 365 U.S. at 488.

17        Illumina has presented no evidence whatsoever that Life believed its customers

18   were infringing the '656 Patent or knew that the SOLiD or Ion Torrent systems were

19   patented and infringing.  The undisputed facts show that Life instructed its customers to

20   perform methods that generate sequence reads from only a small percentage of fragments.

21   There is no evidence that Life believed the asserted claims cover sequencing less than "all

22   fragments," as the claim language plainly requires.   Under such circumstances, no

23   reasonable jury could find that life intended customers to infringe the '656 Patent.  See

24   e.g. *Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*, No. 07-C-0391, 2011 WL 6122377

25   (E.D. Wis. 2011) (Denying motion for reconsideration of a previous order granting SJ of

26   no induced infringement and holding that under *Global-Tech* and *DSU*,  "Knowledge of a

27   *risk* that the acts might constitute infringement is not enough; the inducer must *know* that

28   the acts constitute infringement." At *7 (emphasis in original)).  Aside from initial

16

conclusory allegations in its infringement contentions, Illumina has not even attempted to argue that Life had the mental state required for inducement or contributory infringement.

Illumina has also failed to come forward with any evidence suggesting that SOLiD and Ion Torrent are without substantial non-infringing use.  To the contrary, Illumina's expert presented the opinion that only some of Life customers use the accused systems to perform an infringing method, stating that ███████████████████████████████ ████████████████████████████████████████████████ [Wu Decl. Exh. 20 (Kolodner Opening Report) at ¶ 40.]  Dr. Kolodner thus acknowledges that more than a quarter of customers use SOLiD for only non-infringing uses.  Dr. Metzker's report, citing Life's marketing documents, also specifically identified a variety of common non-infringing uses of SOLiD and Ion Torrent.  [Wu Decl. Exh. 22 (Metzker Res. Rpt.) at ¶¶ 102-103, 149.]  It is therefore undisputed that SOLiD and Ion Torrent have substantial non-infringing uses and Illumina cannot establish contributory infringement for this reason alone.

Without evidence of direct infringement or evidence that Life possessed the required knowledge and intent, Illumina cannot prevail on its theories of indirect infringement and summary judgment of no indirect infringement is appropriate.

### D.    Illumina's New Claim Interpretation Does Not Cure Its Failure of Proof

Faced with clear evidence that the accused products do not perform sequence reads on "all fragments" and the absence of any expert opinion or other evidence with which to dispute that clear showing, Illumina now proposes a new claim interpretation to avoid a finding of non-infringement.  Specifically, Illumina argued for the first time, via its expert's rebuttal report on the validity of the '656 Patent, that "all fragments" should be construed to mean "fragments covering the entire genome."  Dr. Kolodner wrote:

> [Life's expert] is straining the meaning of "all fragments of said genome" to mean that if one fragment is lost, this limitation is not met. (Metzker Report at 97). As set forth in my opening statement on infringement, the limitations "randomly fragmenting a genome of said individual" and "generating sequence reads of multiple bases on all

1
2
3

> fragments of said genome" mean fragmenting many copies of the genome and sequence fragments covering the entire genome.  Dr. Metzker's reading of claims 1 and 7 is nonsensical."

4   [Wu Decl. Exh. 21 (Kolodner Res. Rpt.) at ¶ 73.][1]

5     Neither party asked the Court to construe the term "all fragments" during the claim

6   construction phase of this case.  Indeed, the plain and ordinary meaning of "all fragments"

7   is readily apparent—the claims clearly refer to each of the physical fragments of DNA

8   generated in the preceding "fragmenting" step.  Had Illumina intended to depart from this

9   plain and ordinary meaning, the time to do so would have been during the claim

10  construction phase, not the end of expert discovery.  It is wholly inappropriate for

11  Illumina to attempt to expand the scope of the claims beyond their plain and ordinary

12  meaning at this late stage of the case, now several years after the *Markman* hearing and

13  shortly before trial.  To do so would subvert the purpose of the patent local rules, the

14  *Markman* process, and the scheduling orders in this case.

15    The Patent Local Rules for the Southern District California set forth specific

16  timelines for exchanging proposed claim constructions and supporting evidence for each

17  disputed claim term.  Patent L.R. 4.1- 4.3.  As explained in the context of the similar

18  patent local rules in the Northern District of California, "The rules are designed to require

19  parties to crystallize their theories of the case early in the litigation and to adhere to those

20  theories once they have been disclosed."  *LG Electronics, Inc. v. Q-Lity Computer, Inc.,*

21  211 F.R.D. 360, 367 (N.D. Cal 2002), citing *Atmel Corp. v. Information Storage Devices,*

22  *Inc.*, No. C 95-1987, 1998 WL 775115 at *2 (N.D. Cal. 1998).  "The rules are intended to

23  prevent the "shifting sands" approach to claim construction" *Id*.  See also *JSR Corp. v.*

24  *Tokyo Ohka Kogyo Co., Ltd.*, No. C 99-20156, 2001 WL 1812378 at *5 (N.D. Cal. 2001)

25
26
27
28

[1] Dr. Kolodner's claim that he addressed the meaning of "all fragments" in his opening expert report on infringement is simply untrue.  In fact, Dr. Kolodner's interpretation of "all fragments" is not discussed anywhere in his infringement report. [*See generally* Wu Decl. Exh. 20 (Kolodner Op. Rpt.) at ¶¶ 79-89 (containing Dr. Kolodner's "infringement analysis").]  Because this new claim interpretation argument was not raised in Illumina's expert report on infringement, Illumina should be precluded from presenting expert testimony at trial regarding infringement by the accused SOLiD and Ion Torrent systems under the new claim interpretation.

1   (citing *Atmel* and refusing to allow a party to propose a new claim construction at the

2   summary judgment stage, and rescind its prior stipulated claim construction, because it

3   "would encourage the 'vexatious shuffling of positions' that the patent local rules were

4   designed to avoid.").  Although this case was transferred to this court from the District of

5   Delaware, the Patent Local Rules for the Southern District of California expressly apply to

6   all patent infringement actions filed in or transferred to this court.  Patent L.R. 1.3.  The

7   court should therefore give effect to the policy underlying the Patent Local Rules

8   requiring the parties to crystallize their theories of the case early in the litigation and to

9   adhere to those theories.  Allowing Illumina to introduce a novel claim construction at this

10  late stage would directly contradict the purpose of the Patent Local Rules.

11          Illumina's eleventh-hour attempt to create a new claim construction issue also

12  violates the scheduling orders in this case.  Before this action was transferred to this Court

13  from the District of Delaware, the parties were ordered to exchange proposed terms in

14  need of construction 105 days before the *Markman* hearing date.  [Wu Decl. Exh. 25

15  (Joint Scheduling Order); Wu Decl. Exh. 26 (Order Revising *Markman* Claim

16  Construction Schedule).]  The parties did so in May 2010, the *Markman* hearing was held

17  on July 26, 2010, and the Claim Construction Order was issued on December 15, 2010.

18  [Wu Decl. Exh. 9].  Yet Illumina now seeks to propose a wholly new construction for a

19  claim term, two years later, in a belated attempt to cure a major deficiency in its

20  infringement case.  This is exactly the "shifting sands" approach to claim construction that

21  the local patent rules and the scheduling orders, are designed to prevent and should not be

22  permitted.

23          In any event, the Court need not revisit issues of claim construction in the context

24  of this summary judgment motion because Illumina cannot demonstrate direct or indirect

25  infringement even under its new claim interpretation.  Illumina's new interpretation is

26  apparently that "all fragments" concerns fragments "covering the entire genome," but

27  Illumina has not presented any evidence showing that SOLiD and Ion Torrent generate

28  sequence reads on fragments "covering the entire genome."  Illumina's infringement

1    contentions are silent on this issue.  [*See* Wu Decl. Exh. 19.] And Dr. Kolodner's expert

2    report is similarly silent on how Life's systems meet this brand-new interpretation.  The

3    only use of the term "covering" or "coverage" of a genome in Dr. Kolodner's opening

4    report relates to specific experiments done by several research institutes.  In the first

5    instance, Dr. Kolodner referred to a loan of a SOLiD System to the Craig Venter Institute

6    to perform sequencing at 12 X coverage of the human reference genome."  [Wu Decl.

7    Exh. 20 (Kolodner Op. Rpt.) at ¶ 36.]  In the second instance, Dr. Kolodner referred to the

8    results of work at the Medical College of Wisconsin and the University of Houston

9    obtaining two-fold coverage.  [Wu Decl. Exh. 20 at ¶ 57.]  As an initial matter,  the

10    concept of sequencing "coverage" referred to in these examples is distinct from the

11    concept of a subset of fragments "covering the entire genome."  As defined in the glossary

12    of the landmark publication announcing the draft of the human genome sequence,

13    "coverage" means "the average number of times a nucleotide is represented by a high-

14    quality base in a collection of random raw sequence."   [Wu Decl. Exh. 28 ("Initial

15    Sequence and Analysis of the Human Genome," International Human Genome

16    Sequencing Consortium, *Nature*, Vol. 409, 2001) at Pg. 6.]  Obtaining two-fold coverage

17    means that on average each nucleotide base will be represented two times in a set of

18    sequence reads.   This means that some nucleotides will be sequenced many times, and

19    some will be missed.  Therefore, Dr. Kolodner's reference to obtaining two-fold coverage

20    is in no way proof that SOLiD and Ion Torrent generate sequence reads on a set of

21    fragments covering the entire genome.  In addition, Dr. Kolodner makes no mention of the

22    "coverage" of the fragments used by the Ion Torrent system.

23         Put simply, even under Dr. Kolodner's new and untimely interpretation of "all

24    fragments," Illumina has failed to come forward with any evidence of infringement of this

25    limitation.  Additionally, neither Illumina nor Dr. Kolodner has provided any evidence of

26    how Life's systems are equivalent to this new interpretation for purposes of a Doctrine of

27    Equivalents argument.  Without any evidence of infringement, either literal or under the

28

1  Doctrine of Equivalents, summary judgment of non-infringement is appropriate even
2  under Illumina's new construction.

3      Furthermore, even under Illumina's new proposed construction, there is no
4  evidence whatsoever that Life had the knowledge required to establish indirect
5  infringement.  As explained above, to establish liability for inducement, Illumina must
6  prove direct infringement and that Life had "***knowledge that the induced acts constitute***
7  ***patent infringement.***"  *Global-Tech*, 131 S.Ct. at 2068.  As a practical matter, such
8  knowledge "cannot exist when the inducer has a reasonable belief that the claims will be
9  construed in a way that renders the acts induced non-infringing." *Mikkelsen*, 2011 WL
10  6122377 at *8.  For contributory infringement, it is Illumina's burden to establish that Life
11  knew the combination of components used to make Life's systems was both patented and
12  ***infringing***.  *Aro*, 365 U.S. at 488.  Illumina has not come forward with any evidence of
13  this required knowledge, and thus cannot prove indirect infringement even under its novel
14  claim construction.

15  **IV.   CONCLUSION**

16      Illumina has failed to present any evidence that use of Life's systems meets the
17  "all fragments" limitation, either literally or under the Doctrine of Equivalents.  Life is
18  therefore entitled to summary judgment of non-infringement of the '656 Patent.   In
19  addition, because Illumina has failed to prove that Life had the knowledge required for a
20  finding of indirect infringement, Life is entitled to summary judgment of no induced and
21  no contributory infringement.

22
23
24
25
26
27
28

Dated:  November 2, 2012          Respectfully Submitted,


By:   /s/ Jenny C. Wu
Jenny C. Wu

Bradford Paul Schmidt
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA 92008
Telephone:  (760) 603-7200

Nicholas Groombridge (*pro hac vice*)
Catherine Nyarady (*pro hac vice*)
Peter Sandel (*pro hac vice*)
Jenny C. Wu (*pro hac vice*)
Rebecca Fett (*pro hac vice*)
Robert Lin (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of Americas
New York, NY 10019
Telephone: (212) 373-3000

Matthew D. Murphey
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA  92130
Telephone:     (858) 509-6000

*Attorneys for Plaintiffs*
LIFE TECHNOLOGIES CORPORATION,
APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
PROTEIN RESEARCH, ALEXANDER
CHETVERIN, HELENA CHETVERINA, and
WILLIAM HONE

## CERTIFICATE OF SERVICE

I hereby certify that, on November 2, 2012, a true and correct copy of the document entitled:

**[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '656 PATENT**

was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system as a result of the electronic filing of these documents.

I also certify that true and correct copies of the following sealed lodged proposed documents entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '656 PATENT [FILED UNDER SEAL]**

| | |
|---|---|
| Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>5791 Van Allen Way<br>Carlsbad, CA 92008<br>Telephone:  (760) 603-7200<br>Email:<br>bradford.schmidt@lifetech.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |
| Nicholas Groombridge  (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>Peter Sandel (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>Jenny C. Wu  (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue Of Americas<br>New York, NY 10019<br>Telephone:  (212) 373-3000<br>Email:<br>ngroombridge@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |

| | |
|---|---|
| Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone:  (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN & CONNAUGHTON<br>LLP<br>101 Broadway, Ninth Floor<br>San Diego, CA 94304<br>Telephone:  (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |

Doc#: US1:8218278v6

| | |
|---|---|
| 1 | Steven J. Balick |
| 2 | Andrew Dieter Cordo |
| | Lauren E. Maguire |
| 3 | Tiffany Geyer Lydon |
| | ASHBY & GEDDES |
| 4 | 500 Delaware Avenue, 8th Floor |
| | PO Box 1150 |
| 5 | Wilmington, DE 19899 |
| | Telephone: (302) 654-1888 |
| 6 | Email: |
| | sbalick@ashby-geddes.com |
| 7 | acordo@ashby-geddes.com |
| | lmaguire@ashby-geddes.com |
| 8 | tlydon@ashby-geddes.com |

*Attorneys for*
*Defendants/Counterclaimants*
ILLUMINA, INC. and SOLEXA, INC.

I declare under penalty of perjury under the laws of the State of California and the United

States of America, that the above is true and correct, and that I executed this Certificate of Service

on November 2, 2012 at San Diego, California.

*s/ Jenny C. Wu*
Jenny C. Wu
E-mail: JCWu@paulweiss.com

3

Doc#: US1:8218278v6

11-cv-00703-CAB (DHB)