1    MATTHEW D. MURPHEY (SBN 194111)
     TROUTMAN SANDERS LLP
2    11682 El Camino Real, Suite 400
     San Diego, CA  92130
3    Telephone: (858) 509-6000

4    BRADFORD PAUL SCHMIDT (SBN 174440)
     LIFE TECHNOLOGIES CORPORATION
5    5791 Van Allen Way
     Carlsbad, CA 92008
6    Telephone:  (760) 603-7200

7    NICHOLAS GROOMBRIDGE (*pro hac vice*)
     CATHERINE NYARADY (*pro hac vice*)
8    PETER SANDEL (*pro hac vice*)
     JENNY C. WU (*pro hac vice*)
9    REBECCA FETT (*pro hac vice*)
     ROBERT LIN (*pro hac vice*)
10   PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP
11   1285 Avenue of Americas
     New York, NY 10019
12   Telephone: (212) 373-3000

13   *Attorneys for Plaintiffs*
     LIFE TECHNOLOGIES CORPORATION,
14   APPLIED BIOSYSTEMS, LLC, INSTITUTE
     FOR PROTEIN RESEARCH, ALEXANDER
15   CHETVERIN, HELENA CHETVERINA, and
     WILLIAM HONE
16

17              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**

18   LIFE TECHNOLOGIES CORPORATION,        Case No.  3:11-cv-00703-CAB (DHB)
     APPLIED BIOSYSTEMS, LLC, INSTITUTE
19   FOR PROTEIN RESEARCH, ALEXANDER       **[REDACTED] MEMORANDUM OF**
     CHETVERIN, HELENA CHETVERINA, and     **POINTS AND AUTHORITIES IN**
20   WILLIAM HONE,                         **SUPPORT OF LIFE'S MOTION FOR**
                                           **SUMMARY JUDGMENT OF NON-**
21              Plaintiffs/Counterclaim Defendants,  **INFRINGEMENT OF U.S. PATENTS NO.**
                                           **6,654,505 AND 6,831,994 AND PARTIAL**
22                                         **SUMMARY JUDGMENT OF NO**
     v.                                    **EARLIER PRIORITY DATE FOR U.S.**
23                                         **PATENT NO. 6,654,505**
     ILLUMINA, INC. and SOLEXA, INC.,
24                                         **[FILED UNDER SEAL]**
                Defendants/Counterclaim Plaintiffs.
25                                         Date:        January 17, 2013
                                           Time:        2:30 p.m.
26                                         Courtroom:   2
                                           Judge:       Hon. Cathy Ann Bencivengo
27

28

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   UNDISPUTED MATERIAL FACTS ..................................................................... 2

      A.    The Patents At Issue:  The Bridgham Patents ............................................... 2

      B.    The Accused Products:  The SOLiD System ................................................ 5

      C.    Priority Date Of The '505 Patent .................................................................. 8

III.  ARGUMENT ......................................................................................................... 9

      A.    Life Does Not Infringe The Claims Of The '505 Patent Or The '994 Patent .............. 10

      B.    The '505 Patent Is Not Entitled To An Earlier Priority Date ....................... 18

IV.   CONCLUSION .................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
   692 F. 3d 1301 (Fed. Cir. 2012)....................................................................... 14, 15

*Amhil Enters. Ltd. v. Wawa, Inc.,*
   81 F.3d 1554 (Fed. Cir. 1996)........................................................................... 10

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................................................... 9

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,*
   731 F.2d 831 (Fed. Cir. 1984)........................................................................... 9

*BMC Res., Inc. v. Paymentech., L.P.,*
   498 F.3d at 1373 (Fed. Cir. 2012)................................................................ 15, 17

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)........................................................................................... 9

*Chiron Corp. v. Genentech, Inc.,*
   363 F.3d 1247 (Fed. Cir. 2004)......................................................................... 19

*Cybor Corp. v. FAS Techs., Inc.,*
   138 F.3d 1448 (Fed. Cir. 1998)......................................................................... 10

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293, 1306 (Fed. Cir. 2006)............................................................. 15

*Global-Tech Appliances, Inc. v. SEB S.A.,*
   131 S.Ct. 2060 (2011)................................................................................... 15, 16

*Invitrogen Corp. v. Clontech Labs., Inc.*
   429 F.3d 1052 (Fed. Cir. 2005)......................................................................... 19

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
   430 F.3d 1377 (Fed. Cir. 2005)......................................................................... 9

*Karsten Mfg. Corp. v. Cleveland Golf Co.,*
   242 F.3d 1376 (Fed. Cir. 2001)......................................................................... 9

*Lockwood v. Am. Airlines, Inc.,*
   107 F.3d 1565 (Fed. Cir. 1997)..................................................................... 18, 20

*Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*
   2011 WL 6122377 (E.D. Wisc. Dec. 8, 2011).................................................. 16

Doc#: US1:8216044v5

*nCube Corp. v. Seachange Int'l, Inc.*,
   436 F.3d 1317 (Fed. Cir. 2006)........................................................................ 10, 11, 14

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
   363 F.3d 1306 (Fed. Cir. 2004).................................................................................... 10

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008)............................................................................... 18, 19

*Tecsec, Inc. v. IBM,*
   769 F.Supp. 2d 997 (E.D.Va. 2011)......................................................................... 15, 16

*Texas Instruments, Inc.v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996)................................................................................. 10, 14

*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989)...................................................................................... 11

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997).......................................................................................................... 10

*Wordtech Sys. v. Integrated Network Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)............................................................................... 16, 17

*Zamora Radio, LLC v. Last.FM, Ltd. et al.*,
   785 F. Supp. 2d 1242 (S.D. Fla. 2010) ................................................................... 15, 16

**STATUTES**

35 U.S.C. § 112............................................................................................................... 18, 19

35 U.S.C. § 271(c) ........................................................................................................... 16, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c)............................................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Doc#: US1:8216044v5

11-cv-00703-CAB (DHB)

1    I.       **PRELIMINARY STATEMENT**

2            Plaintiffs and counterclaim-defendants Life Technologies Corporation and Applied

3    Biosystems, LLC (collectively, "Life") respectfully request that the Court grant summary

4    judgment of noninfringement of U.S. Patent Nos. 6,654,505 (the "'505 patent") and 6,831,994

5    (the "'994 patent") (collectively, the "Bridgham patents") and partial summary judgment that the

6    '505 patent is not entitled to a priority date of December 19, 1994.  As discussed below, there is

7    no genuine dispute that a "key" claim limitation—"tracking positions of the microparticles"— is

8    both missing from the accused products and missing from at least one patent application in the

9    alleged priority chain for the '505 patent.

10                                          * * *

11          Defendants and counterclaim-plaintiffs Illumina, Inc. and Solexa, Inc. (collectively,

12   "Illumina") assert that Life's SOLiD sequencing system ("SOLiD") infringes the '505 patent and

13   the '994 patent.  SOLiD is a so-called "next-generation" sequencing system that is capable of

14   sequencing entire genomes, including human genomes, at a tiny fraction of the cost and time that

15   was required to sequence genomes in the past.  As an example, in 2003, the Human Genome

16   Project completed the sequence of a human genome after 13 years at a cost of approximately

17   $300 million; today, SOLiD is able to sequence an entire human genome in just a few days at a

18   cost of approximately $10,000.

19          As described in the specifications of the patents at issue, a known and common way to

20   sequence DNA at a low cost in a short amount of time is through simultaneously analyzing

21   multiple copies of DNA fragments attached to a solid surface, such as the surface of a

22   microparticle like a microscopic bead.  [Wu Decl. Exh. 4 at 1:18-36.][1]  When multiple

23   microparticles are used, one challenge presented by this technique is to keep track of each of the

24   microparticles through successive processing steps.  [Wu Decl. Exh. 4 at 1:40-46, 57-63.]  The

25   '505 and '994 patents are directed to overcoming this challenge.

26   

---

27   [1] For the sake of simplicity, because both the '505 patent and the '994 patent share the same
     specification, cites to the specifications for both patents will be based on the specification of the
28   '505 patent.

No reasonable jury could find that Life infringes the asserted claims of the '505 patent at least because SOLiD does not, as the patent claims require, "track[] positions of the microparticles." The Court has construed this claim element as "following the movement of microparticles during a sequence of processing steps." ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

To the extent that Illumina contends that Life's products meet the "signal tracking means" limitation of the '994 patent claims in the same way that Illumina alleges that they meet the "tracking" limitation of the '505 patent claims, there is no genuine dispute that Life also does not infringe the '994 patent claims for at least the same reasons that it does not infringe the '505 patent claims.

Finally, because the "tracking" limitation of the '505 patent claims is also not disclosed in at least one of the patent applications in Illumina's asserted priority chain, the '505 patent cannot be entitled to a priority date of December 19, 1994 as a matter of law. Illumina has provided no evidence to the contrary. Illumina's expert agrees that the priority document in question does not mention the word "tracking" or even discuss the movement of microparticles. Notably, Illumina also attempted to backdate the '505 patent claims to 1994 during reexamination. The Patent Office rejected Illumina's position out of hand. This Court should do the same here.

## II.    UNDISPUTED MATERIAL FACTS

### A.    The Patents At Issue:  The Bridgham Patents

1.    On October 13, 2009, in response to the action brought by Life and co-plaintiffs Institute for Protein Research, Alexander Chetverin, Helena Chetverina, and William Hone against Illumina for infringement of the Chetverin Patents, Illumina counterclaimed against Life.  In relevant part, Illumina alleges that Life's next-generation sequencing system, SOLiD, infringes the '505 patent and the '994 patent.  [Doc. No. 7 at 11.]

2.    Specifically, Illumina asserts against Life independent claim 1 and its dependent claims 2, 3, 5, and 6 of the '505 patent and independent claim 1 and all its dependent claims of the '994 patent.  [*See* Wu Decl. Exh. 13 (Shendure Opening Report) at ¶¶ 31-32.]

3.      In its most recent discovery responses, Illumina contends that Life infringes the asserted Bridgham patent claims literally and under the doctrine of equivalents, both directly and indirectly.  Regarding indirect infringement, Illumina contends that Life infringes by both inducing infringement and contributing to the infringement by others. [Wu Decl. Exh. 19 (Illumina and Solexa's Supplemental Objections and Responses to Plaintiffs' Interrogatory Nos. 1 and 2) at 5, 8].

4.      Illumina's expert, Dr. Jay Shendure, has only opined that  SOLiD meets the limitations of the independent claims of the '505 patent and '994 patent by literal and direct infringement.  [*See* Wu Decl. Exh. 13 (Shendure Opening Report) at ¶¶ 67-71, 114.]  He has not offered any opinions, facts, or other evidence or argument that Life infringes those claims under the doctrine of equivalents.  Nor has Dr. Shendure offered any opinions, facts, or other evidence or argument that Life induces infringement or contributes to infringement by others.

5.      The '505 and '994 patents, which belong to the same patent family and share identical specifications, describe a system for imaging microparticles (*e.g.*, microscopic beads) to which analytes (e.g., DNA or RNA fragments for analysis) are anchored.  [Wu Decl. Exh. 4 at 1:66-2:57.]

6.      Claim 1 of the '505 patent is reproduced below, with language of particular relevance to this motion highlighted:

> 1.      A device-readable medium embodying a program of instructions for execution by said device to perform a method of generating images of a planar array of microparticles and ***tracking positions of the microparticles*** during a sequence of processing steps, said program of instructions comprising instructions for:
> Rendering a plurality of digital images of the planar array of the microparticles during the sequence of processing steps based on optical signals generated at the microparticles; and
> Processing the plurality of digital images, wherein said processing includes correlating the optical signals generated at each microparticle with its corresponding image in each of the plurality of digital images.

7.      Claim 1 of the '994 patent is reproduced below, with language of particular relevance to this motion highlighted:

1.      A system for detecting a sequence of optical signals from each of a plurality of microparticles during a sequence of processing steps, the system comprising:

A planar array of uniformly sized spherical microparticles, wherein the coefficient of variation of the diameters of said microparticles is less than five percent;

An optical train effective to collect and focus the sequence of optical signals from the microparticles, and to record at least one optical characteristic of each microparticle which can be used to determine the approximate center of said microparticle;

An imaging device on to which said signals are focused, effective to generate and record a sequence of digital images of the microparticles, with sufficient resolution for individual microparticles to be distinguished; and

***Signal tracking means effective to correlate the optical signals from each of the microparticles in each of the sequence of digital images with said center of said microparticle.***

8.      In its December 15, 2010 Claim Construction Order, the Court construed the term "tracking positions of the microparticles" from claim 1 of the '505 patent to mean "following the movement of microparticles during a sequence of processing steps."  [Wu Decl. Exh. 9 at 32.]

9.      Although Illumina argued that this "tracking" term is not a substantive limitation and therefore did not need construction, the Court correctly recognized in its Order that the specification emphasizes this "key aspect of the claimed invention" and, specifically, the ability to "track individual microparticles through multiple steps of a process."  [Wu Decl. Exh. 9 at 33 (quoting '505 patent at 1:40-64).]

10.     For example, the Court noted in its Order that the specification explains that "handling and manipulating large numbers of microparticles . . . gives rise to many difficulties, including whether sufficient signal is generated on individual microparticles for detection, ***how to track individual microparticles through multiple steps of a process***, . . . and the like." [Wu Decl. Exh. 9 at 33 (quoting '505 patent at 1:40-64) (emphasis in Order).]

11.     The Court also noted that "the Summary of the Invention recites 'Accordingly, objects of our invention include, but are not limited to . . . providing an apparatus for simultaneously tracking the positions of individual microparticles in a population of microparticles disposed in a

1   flow chamber as a closely packed planar array . . . .” [Wu Decl. Exh. 9 at 33-34 (quoting '505

2   patent at 1:66-2:19).]

3   12.      The Court further noted that "[t]he specification further explains: 'an important feature of

4   detection means (114) of the invention is the ability to keep track of individual microparticles

5   through multiple process steps and/or cycles." [Wu Decl. Exh. 9 at 34 (quoting '505 patent at

6   8:48-50).]

7   13.      The "tracking" feature is critical because the patents are directed to solving problems in

8   the prior art relating to the movement of microparticles during processing.  [Wu Decl. Exh. 4 at

9   1:40-45.]  The patents solve these problems with a system that "simultaneously track[s] the

10  positions of individual microparticles in a population of microparticles disposed in a flow

11  chamber as a closely packed planar array . . . . " [*See* Wu Decl. Exh. 4 at 1:66-2:19; Wu Decl.

12  Exh. 13 (Shendure Opening Report) at ¶ 35 (noting the same).]  The Court's claim construction

13  order embodies that concept by focusing clearly on tracking the movement of microparticles:

14  "following the movement of microparticles during a sequence of processing steps."

15          **B.      The Accused Products:  The SOLiD System**

16  14.      Life's SOLiD is a next-generation sequencing product, capable of producing a significant

17  amount of DNA sequencing data in a short amount of time.  [*See* Wu Decl. Exh. 13 (Shendure

18  Opening Report) at ¶ 123.]

19  15.      ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  16.      ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28

Doc#: US1:8216044v5

11-cv-00703-CAB (DHB)



17.

18.

19.

20.

21.

          i)       **SOLiD's Image Alignment Process**

22.



23.

24.

25.

26.

ii)    **SOLiD's Use Of Subpixel Resolution**

27.

Doc#: US1:8216044v5

11-cv-00703-CAB (DHB)

1 ████████████████████████████████████████████████████

2 ████████████████████████████

3 28.   ███████████████████████████████████████████████

4 █████████████████████████████████

### C.   Priority Date Of The '505 Patent

29.   After the Patent Office granted Life's request for *inter partes* reexamination of the '505 patent (along with the '994 patent), Illumina argued to the Patent Office that the patent claims should be entitled to an earlier priority date based on a "corrected" priority chain, in an effort to exclude certain prior art asserted against the '505 patent.  [Wu Decl. Exh. 36 (Patent Owner's May 21, 2010 Amendment and Response to Office Action in *Inter Partes* Reexamination) at 13.]

30.   The Patent Office rejected that argument and determined that the proper priority date was the date originally asserted by Illumina—May 22, 1998. [Wu Decl. Exh. 46 ('505 Patent Reexamination Right of Appeal Notice) at 3-4.]

31.   All of the asserted claims of the '505 patent (and '994 patent) currently stand rejected as invalid in a final office action from the Patent Office.  [Wu Decl. Exh. 46 ('505 Patent Reexamination Right of Appeal Notice) at 1; Wu Decl. Exh. 47 ('994 Patent Reexamination Right of Appeal Notice) at 1.]

32.   Those rejections are currently on appeal before the Patent Trial and Appeal Board.

33.   Illumina's expert, Dr. Shendure, opined that claims 1 and 2 of the '505 patent should be entitled to a December 19, 1994 priority date based on a "corrected" priority chain.  [ Wu Decl. Exh. 14 (Shendure Rebuttal Report) at ¶¶ 9-12.]

34.   According to Dr. Shendure, the priority chain for claims 1 and 2 of the '505 patent begins with U.S. Patent No. 5,604,097, which has an effective filing date of December 19, 1994, followed by continuation-in-part U.S. Patent No. 5,846,719, followed by continuation-in-part U.S. Patent No. 6,013,445 (the "'445 patent"), followed by continuation-in-part U.S. Patent No. 6,406,848, which culminated in and shares the same specification as the divisional '505 patent. [Wu Decl. Exh. 14 (Shendure Rebuttal Report) at ¶¶ 9-12.]

35.     Of particular relevance, the '445 patent is directed to, among others, an improved method for base-by-base sequencing, addressing problems such as "inefficient [sequencing] chemistries." [*See, e.g.*, Wu Decl. Exh. 6 ('445 patent) at 1:57-2:13.]  The word "tracking" is not used in the specification of the '445 patent.  [Wu Decl. Exh. 15 at (Shendure Dep.) at 233:5-10.]  There is no disclosure of the need to follow microparticles or that microparticles even move in the '445 patent.  [Wu Decl. Exh. 15 at (Shendure Dep.) at 235:11-23.]

**III.     ARGUMENT**

The Federal Circuit has acknowledged the efficiency of summary judgment in patent cases to "avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources."  *See, e.g.*, *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56(c)).   "When no reasonable jury could find for the non-movant, the movant is entitled to judgment as a matter of law."  *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1379 (Fed. Cir. 2001).

As the moving party, Life bears the burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A dispute regarding a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Life may meet its burden on summary judgment by showing that there is an absence of admissible evidence to support Illumina's case and meet Illumina's burden of proof at trial. *Celotex*, 477 U.S. at 324-25 ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial" and "need only point to an absence of proof on plaintiff's part").  Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

**A.     Life Does Not Infringe The Claims Of The '505 Patent Or The '994 Patent**

Infringement requires proof that a defendant has practiced each and every element of the claimed invention, either literally or under the doctrine of equivalents.  *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  Literal infringement of a claim exists when every limitation of a properly construed claim "reads on the accused device exactly." *See Amhil Enters. Ltd. v. Wawa, Inc*., 81 F.3d 1554, 1562 (Fed. Cir. 1996) (citation omitted).

The literal infringement inquiry is a two-step process: "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*).  Here, the first step is complete, as the Court construed the claims as part of a lengthy and detailed claim construction process in 2010.  In light of the Claim Construction Order construing "tracking positions of the microparticles" as "following the movement of microparticles during a sequence of processing steps," the literal infringement inquiry regarding the '505 and '994 patents distills to the questions of whether the SOLiD system follows the movement of beads during the series of sequencing reaction steps.

Under certain limited circumstances, when a claim does not read on an accused device exactly, a patentee may prove infringement under the "doctrine of equivalents" by showing there is "equivalence" between claimed elements and elements of the accused device.  *Warner-Jenkinson*, 520 U.S. at 21.  "Infringement under the doctrine of equivalents requires that any differences between the claim elements at issue and the corresponding elements of the accused product be insubstantial." *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.,* 363 F.3d 1306, 1312 (Fed. Cir. 2004) (citing *Warner-Jenkinson.,* 520 U.S. at 39-40).  Further, a patentee must "provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the 'function, way, result' test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1567 (Fed. Cir. 1996).  In all cases, however, the evidence and argument on the doctrine of equivalents "cannot merely be subsumed in plaintiff's case of

1   literal infringement." *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir.

2   2006).

3        Both the '505 and '994 patents contain a single independent claim—*i.e.*, claim 1 in each

4   patent.  The remaining asserted claims are all dependent claims.  Accordingly, if there is even a

5   single limitation of the independent claims that is not met by SOLiD, SOLiD cannot, as a matter

6   of law, meet every limitation of the remaining asserted dependent claims.  *See Wahpeton Canvas*

7   *Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989) ("One who does not infringe an

8   independent claim cannot infringe a claim dependent on (and thus containing all the limitations

9   of) that claim.").

10       i)    **There Is No Genuine Dispute That SOLiD Does Not Meet The**

11                 **"Tracking Positions Of The Microparticles" Limitation ('505 Patent,**

12                 **All Asserted Claims)**

13        Claim 1 of the '505 patent requires "tracking positions of the microparticles" or, as the

14   Court defined that term, "following the movement of microparticles during a sequence of

15   processing steps."  This is consistent with the specification that describes the importance of

16   tracking the movement of "individual microparticles in a population of microparticles" from one

17   processing step to the next.  [*See* Wu Decl. Exh. 4 at 1:66-2:19; *see also id.* at 1:40-64, 8:48-50.]

18   Having lost its claim construction argument—namely, that the "tracking" element need not be

19   construed—Illumina now simply ignores the Court's construction.  But there is no relevant

20   factual dispute concerning how SOLiD works or that it does not follow the movement of

21   individual microparticles.  Summary judgment of no infringement—direct, indirect, literal, or

22   under the doctrine of equivalents—is therefore appropriate.

23       a)    **SOLiD Does Not Literally Infringe**

24        Dr. Shendure opines that SOLiD meets the "tracking" element in two ways.  [*See* Wu

25   Decl. Exh. 13 (Shendure Opening Report) at ¶ 68.]  Neither way follows the movement of

26   individual microparticles.

27   ████████████████████████████████████

28   ████████████████████████████████████



This argument fails for at least two reasons.

Two, Dr. Shendure's argument is meritless because it ignores the fact that the '505 patent draws a material difference between tracking microparticles (*i.e.*, beads) and tracking analytes (*i.e.*, attachments). Indeed, this distinction was a significant focus during the claim construction process. But as the Court recognized in its Claim Construction Order and its claim constructions, the '505 patent distinguishes between microparticles and analytes. [*See* Wu Decl. Exh. 9 at 27 (construing "optical characteristic of said microparticle" to mean "an optical quality of the ***microparticle itself, not the attached analyte***" because the specification "***highlights the difference*** between characteristics of signals generated by ***analytes*** at the microparticles and optical characteristics of the ***microparticles themselves***.") (emphasis added).]

Doc#: US1:8216044v5

11-cv-00703-CAB (DHB)



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    In sum, Illumina has no credible evidence to suggest that the accused SOLiD system

18    tracks or follows the movement of microparticles during a sequence of processing steps.

19

20    And Illumina's theory regarding newer versions of the SOLiD system does not

21    withstand even the slightest scrutiny. Because Illumina bears the burden of proof on this issue and

22    2

23

24

25    [*See* Wu Decl. Exh. 13 (Shendure Opening Report) at ¶ 53; Wu Decl. Exh. 44 (Russ Rebuttal

26    Report) at ¶ 63.]

27

28

1   has adduced no evidence to support its position, summary judgment of no direct, literal

2   infringement of the '505 patent is warranted.

3            **b)      SOLiD Does Not Infringe Under The Doctrine Of Equivalents**

4            Illumina has not offered any evidence, opinions, testimony, or argument regarding its

5   contention that SOLiD meets the "tracking" element of the '505 patent claims under the doctrine

6   of equivalents.  Illumina's contentions rest only on a general statement in its August 24, 2011

7   discovery response that Life infringes the asserted claims under the doctrine of equivalents.  [Wu

8   Decl. Exh. 19 at 5, 8.]  This statement alone is insufficient at this stage of the case to support a

9   judgment of infringement by equivalents or to further sustain the contention that there might be

10   infringement under the doctrine of equivalents.

11            By this point in the case, Ilumina needs to have "provide[d] particularized testimony and

12   linking argument as to the 'insubstantiality of the differences' between the claimed invention and

13   the accused device or process, or with respect to the 'function, way, result' test when such

14   evidence is presented to support a finding of infringement under the doctrine of equivalents."  *See*

15   *Texas Instruments*, 90 F.3d at 1567.  This it has not done.  Further, Illumina cannot rely on

16   infringement under the doctrine of equivalents where it has offered no argument separate and

17   distinct from its literal infringement arguments.  *nCube Corp*., 436 F.3d at 1325 (upholding

18   district court's reversal of jury verdict of infringement under doctrine of equivalents where

19   patentee "did not raise separate and distinct arguments for infringement under the doctrine of

20   equivalents, and elicited no expert testimony on this subject"); *Texas Instruments*, 90 F.3d at

21   1566-68.  Because Illumina bears the burden of proof on this issue and has adduced no evidence

22   to support its position, summary judgment of no direct infringement of the '505 patent under the

23   doctrine of equivalents is warranted.

24            **c)      SOLiD Does Not Indirectly Infringe**

25            Because Illumina cannot show that the SOLiD system meets the "tracking" element of the

26   '505 patent, there can be no finding of direct infringement.  Without any evidence of direct

27   infringement, there can be no evidence of indirect infringement.  *See Akamai Techs., Inc. v.*

28   *Limelight Networks, Inc.*, No. 2009-1372, 2012 WL 3764695, *4 (Fed. Cir. Aug. 31, 2012)

1   ("There is no such thing as attempted patent infringement, so if there is no infringement, there can

2   be no indirect liability for infringement.").

3        But even if the Court were to find that there is a genuine dispute as to direct infringement

4   (which there is not), there is no genuine dispute as to whether the other requisite elements of

5   indirect infringement are satisfied as to the '505 patent claims.  Illumina has done nothing more

6   than present a conclusory statement in its discovery response that Life induces and contributes to

7   the infringement of others.  [Wu Decl. Exh. 19 (Illumina and Solexa's Supplemental Objections

8   and Responses to Plaintiffs' Interrogatory Nos. 1 and 2) at 5, 8.]  This is insufficient to meet even

9   threshold requirements for proving inducement of infringement and contributory infringement.

10       To establish inducement of infringement, Illumina must show that Life had "knowledge

11  that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*,

12  131 S.Ct. 2060, 2068 (2011).  Such knowledge can be established through a showing of "willful

13  blindness," but not through mere "known risk" or "deliberate indifference" to that risk.  *Id.* at

14  2069, 2071.  Moreover, "inducement requires that the alleged infringer knowingly induced

15  infringement and possessed specific intent to encourage another's infringement." *Akamai Techs.,*

16  *Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (*en banc*) (citing *DSU*

17  *Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*).  Here, Illumina has

18  presented no such evidence, or even argument, regarding Life's knowledge or specific intent.  *See*

19  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d at 1373, 1381 (Fed. Cir. 2007) ("[I]ndirect liability

20  requires evidence of 'specific intent' to induce infringement.").

21       In *Zamora Radio, LLC v. Last.FM, Ltd. et al.*, the district court granted summary

22  judgment of no induced infringement under similar circumstances. 785 F. Supp. 2d 1242, 1256-

23  57 (S.D. Fla. 2010). In particular, the court based its decision on the fact that the plaintiff had

24  proffered no evidence that the defendants "intended to encourage infringement by [the

25  defendants]' customers or anyone else." *Id.* at 1257.

26       Similarly, in *Tecsec, Inc. v. IBM*, the district court granted summary judgment of no

27  induced infringement because the plaintiff failed to present evidence that the defendant had the

28  required intent to actively induce or cause infringement. 769 F. Supp. 2d 997, 1014-15 (E.D. Va.

*11-cv-00703-CAB (DHB)*

2011). The court in *Tecsec* wrote: "On this record, there is no evidence that [the defendant] had the required intent to actively induce or cause infringement, and as a matter of law, summary judgement [sic] of no induced infringement is appropriate." *See id.*

Also, in *Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc*., the district court upheld summary judgment of no induced infringement because the record was devoid of any evidence that the defendant had the requisite knowledge.  No. 07-C-0391, 2011 WL 6122377, at *7 (E.D. Wisc. Dec. 8, 2011).  Under the standard articulated in *Global-Tech* and *DSU*, the court explained that "[k]nowledge of a *risk* that the acts might constitute infringement is not enough; the inducer must *know* that the acts constitute infringement." (emphasis in original)).  As a practical matter, such knowledge "cannot exist when the inducer has a reasonable belief that the claims will be construed in a way that renders the acts induced non-infringing."  *Id.* at *8.

Like the plaintiffs in *Zamora Radio*, *Tecsec*, and *Mikkelsen*, Illumina has no evidence that Life had knowledge of infringement or intended to encourage infringement of the '505 patent. Therefore, no genuine issue of material fact exists with respect to the lack of indirect infringement by Life under 35 U.S.C. § 271(b).

Similarly, Illumina's claim of contributory infringement under 35 U.S.C. § 271(c) also fails as a matter of law. Section 271(c) reads:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, ***knowing the same to be especially made or especially adapted for use in an infringement of such patent***, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added).

To support a claim for contributory infringement under Section 271(c), the patent holder must demonstrate knowledge by the alleged infringer that a component was especially designed for use in a patented invention.  *See Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010) ("Under 35 U.S.C. § 271(c), a party who sells a component ***with***

1    ***knowledge that the component is especially designed for use in a patented invention***, and is not

2    a staple article of commerce suitable for substantial noninfringing use, is liable as a contributory

3    infringer.") (emphasis added); *BMC Res.*, 498 F.3d at 1381 ("Another form of indirect

4    infringement, contributory infringement under § 271(c), also requires a mens rea (knowledge) . .

5    .").

6         Here again, Illumina has presented no such evidence, or even argument, to support a claim

7    that Life acted with the requisite knowledge.  Because Illumina bears the burden of proof on this

8    issue and has adduced no evidence to support its position, summary judgment of no indirect

9    infringement of the '505 patent claims is warranted.

10        ii)      **There Is No Genuine Dispute That SOLiD Does Not Meet The**

11                 **Limitation of "Signal Tracking Means" ('994 Patent, All Asserted**

12                 **Claims)**

13        The claimed system of the '994 patent requires "signal tracking means," which the Court

14   has construed as a "data processor that runs software that assigns pixels of the fluorescent images

15   of the microparticles to the microparticle centers" for the function of "correlating the optical

16   signals from microparticles in a sequence of digital images with the centers of those

17   microparticles."  [Wu Decl. Exh. 9 (Claim Construction Order) at 32.]  Illumina's expert, Dr.

18   Shendure, asserts that SOLiD meets the "signal tracking means" limitation for the same reasons

19   that the "tracking" limitation of the '505 patent is met.  [Wu Decl. Exh. 15 (Shendure Dep.) at

20   190:5-17, 199:16-201:17 ("Q.  Would this same understanding of tracking also apply to the

21   tracking limitation that you said is required in the '994 claims.  A.  I still have to review that.

22   (Witness peruses document) Yes.").]  Based on Dr. Shendure's position, for the same reasons

23   discussed above for the noninfringement of the '505 patent claims, there can also be no

24   infringement of the '994 patent claims. *See supra* at Section III.A.i.  Because Illumina bears the

25   burden of proof on this issue and has adduced no evidence to support its position, summary

26   judgment of no infringement of the '994 patent—direct, indirect, literal, or under the doctrine of

27   equivalents—is warranted.

28

17

## B.     The '505 Patent Is Not Entitled To An Earlier Priority Date

During reexamination of the '505 patent, in an effort to avoid certain prior art, Illumina created a proposed "revised" priority chain for the '505 patent to argue for an earlier priority date. [Wu Decl. Exh. 36 (Patent Owner's May 21, 2010 Amendment and Response to Office Action in *Inter Partes* Reexamination) at 13.]  This was flatly rejected by the Patent Office.  [Wu Decl. Exh. 36 ('505 Patent Reexamination Right of Appeal Notice) at 3-4.]  The Patent Office has instead determined that the correct priority date for the '505 patent claims is May 22, 1998 under the original priority chain listed on the face of the patent.  [*See* Attachment A (illustrating the priority chain as originally claimed); Wu Decl. Exh. 46 ('505 Patent Reexamination Right of Appeal Notice) at 3-4.]  Despite this rejection, Illumina and its proposed expert still contend in this litigation that claims 1 and 2 of the '505 patent are entitled to an earlier priority date of December 19, 1994 under its "revised" priority chain.  [*See* Attachment B (illustrating the "revised" priority chain that Illumina now attempts to assert).]  Illumina's argument remains meritless because there is a fatal gap in continuity of disclosure in the priority chain asserted by Illumina.  At least the '445 patent application in the priority chain fails to disclose a key limitation of the '505 patent claims—"tracking positions of the microparticles."  Illumina therefore cannot obtain an earlier priority date.

"It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by [the written description requirement of] 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (internal citations omitted).  Each application in the chain leading back to the earlier application must disclose the invention claimed in the later filed application sufficient to satisfy the written description requirement.  *See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997).   One cannot obtain priority to an earlier patent application unless there is continuity of disclosure of the relevant subject matter through each and every application in the chain of continuing applications.  *See id*.  Any gap whatsoever in continuity is fatal to a priority claim. *See id.*

1    The adequacy of the disclosure in each application in the asserted priority chain, and the

2    identification of "gaps" in continuity of disclosure, is determined under 35 U.S.C. § 112.

3    *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247, 1253 (Fed. Cir. 2004) ("[P]atent may only claim

4    priority to an earlier application if the earlier application fulfills the requirements of § 112, first

5    paragraph. In turn, that paragraph requires, in part, that the application 'shall contain a written

6    description of the invention, and of the manner and process of making and using it, in such full,

7    clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or

8    with which it is most nearly connected, to make and use the same.'"). "To satisfy the written

9    description requirement the disclosure of the prior application must 'convey with reasonable

10   clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession

11   **of the invention**.'" *PowerOasis*, 522 F.3d at 1306 (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d

12   555, 1563-64 (Fed. Cir. 1991) (emphasis in original)).  Compliance with the written description

13   requirement for a priority analysis is amenable to summary judgment in cases where no

14   reasonable fact finder could return a verdict for the non-moving party.  *Id.* at 1307 (citing

15   *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1072-73 (Fed. Cir. 2005)).

16   As discussed above, the '505 patent claims require "following the movement of

17   microparticles during a sequence of processing steps."  At least one of the applications in

18   Illumna's proposed chain of priority, the application that issued as the '445 patent, omits

19   disclosure of "tracking" or "following" the movement of microparticles.  Nowhere does the '445

20   patent specification describe the object of the invention as tracking individual microparticles.

21   Instead, the '445 patent is directed to an improved method for base-by-base sequencing,

22   addressing problems such as "inefficient [sequencing] chemistries."  [*See, e.g.*, Wu Decl. Exh. 6

23   ('445 patent) at 1:57-2:13.]

24   Not surprisingly, Illumina has not offered any evidence showing how the '445 patent

25   discloses the "tracking" element.  There is no discussion relating to "tracking" microparticles in

26   either Illumina's discovery responses or in Dr. Shendure's expert report.  Indeed, at deposition,

27   Dr. Shendure, acknowledged: "I don't see anything specifically referring to tracking, use the

28   word 'tracking' [in the '445 patent]."  [*See* Wu Decl. Exh. 15 (Shendure Dep.) at 233:5-10.]  Dr.

19

11-cv-00703-CAB (DHB)

Shendure further conceded that there is nothing in the '445 patent that discloses the movement of microparticles:

> Q. Does the '445 patent disclose the movement of microparticles?
> . . .
> The Witness:  So I can't find the specific reference to movement.

[*See* Wu Decl. Exh. 15 (Shendure Dep.) at 235:11-23.]

In sum, Illumina has provided no evidence from the specification of the '445 patent that the inventors of the '445 patent were "in possession" of a key aspect of the '505 claimed system—namely, a method for following the movement of individual microparticles in a population of microparticles through a sequence of processing steps.  The '445 patent does not recognize or contemplate that microparticles are moving.  In turn, the '445 patent does not disclose a need or even desire to follow the movement of microparticles.  Because of the absence of disclosure in the '445 specification, a fatal gap exists in the continuity of disclosure.  Consequently, the '505 patent is not, and cannot be, entitled to priority to or through the '445 patent to any of the earlier applications in the proposed revised priority chain.  *See Lockwood*, 107 F.3d at 1572 ("[A] prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.").  Accordingly, Life respectfully requests that this Court enter partial summary judgment that the '505 patent is not entitled to a priority date of December 19, 1994.

## IV.   CONCLUSION

For the foregoing reasons, Life respectfully requests that this Court grant summary judgment of noninfringement as to all asserted claims of the Bridgham patents.  Further, Life respectfully requests that this Court grant partial summary judgment that the '505 patent is not entitled to a December 19, 1994 priority date.

1

2    Dated: November 2, 2012                    Respectfully Submitted,

3

4                                               By:   /s/ Jenny C. Wu
                                                Jenny C. Wu

5
                                                Bradford Paul Schmidt
6                                               LIFE TECHNOLOGIES CORPORATION
                                                5791 Van Allen Way
7                                               Carlsbad, CA 92008
                                                Telephone:  (760) 603-7200

8                                               Nicholas Groombridge (*pro hac vice*)
                                                Peter Sandel (*pro hac vice*)
9                                               Jenny C. Wu (*pro hac vice*)
                                                Rebecca Fett (*pro hac vice*)
10                                              Robert Lin (*pro hac vice*)
                                                PAUL, WEISS, RIFKIND, WHARTON &
11                                              GARRISON LLP
                                                1285 Avenue of Americas
12                                              New York, NY 10019
                                                Telephone: (212) 373-3000

13
                                                Matthew D. Murphey
14                                              TROUTMAN SANDERS LLP
                                                11682 El Camino Real, Suite 400
15                                              San Diego, CA  92130
                                                Telephone:  (858) 509-6000

16
                                                *Attorneys for Plaintiffs*
17                                              LIFE TECHNOLOGIES CORPORATION,
                                                APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
18                                              PROTEIN RESEARCH, ALEXANDER
                                                CHETVERIN, HELENA CHETVERINA, and
19                                              WILLIAM HONE

20

21

22

23

24

25

26

27

28

1
2

### CERTIFICATE OF SERVICE

3        I hereby certify that, on November 2, 2012, a true and correct copy of the document
entitled:
4

5    **[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     LIFE'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S.
     PATENTS NO. 6,654,505 AND 6,831,994 AND PARTIAL SUMMARY JUDGMENT OF
6    NO EARLIER PRIORITY DATE FOR U.S. PATENT NO. 6,654,505**

7    was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system

8    as a result of the electronic filing of these documents.
9

10       I also certify that true and correct copies of the following sealed lodged proposed

11   documents entitled:

12

13   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIFE'S
     MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S.
14   PATENTS NO. 6,654,505 AND 6,831,994 AND PARTIAL SUMMARY JUDGMENT OF
     NO EARLIER PRIORITY DATE FOR U.S. PATENT NO. 6,654,505 [FILED UNDER
15   SEAL]**

16

| | |
|---|---|
| 17  Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>18  5791 Van Allen Way<br>Carlsbad, CA 92008<br>19  Telephone:  (760) 603-7200<br>Email:<br>20  bradford.schmidt@lifetech.com<br>21 | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| 22  Nicholas Groombridge  (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>23  Peter Sandel  (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>24  Jenny C. Wu  (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>25  PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>26  1285 Avenue Of Americas<br>27  New York, NY 10019<br>Telephone:  (212) 373-3000<br>28 | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |

Doc#: US1:8216044v5                                                              11-cv-00703-CAB (DHB)

| | |
|---|---|
| Email:<br>ngroombridge@paulweiss.com<br>cnyarady@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | |
| Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone:  (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN & CONNAUGHTON<br>LLP<br>101 West Broadway, Ninth Floor<br>San Diego, CA 92010<br>Telephone:  (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>Amanda Antons *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com<br>aantons@marshallip.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606 | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

2

| | |
|---|---|
| Telephone:  (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com<br>ron@wawrzynlaw.com | |
| Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |
| Steven J. Balick<br>Andrew Dieter Cordo<br>Lauren E. Maguire<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>PO Box 1150<br>Wilmington, DE  19899<br>Telephone:  (302) 654-1888<br>Email:<br>sbalick@ashby-geddes.com<br>acordo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>tlydon@ashby-geddes.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the above is true and correct, and that I executed this Certificate of Service on November 2, 2012, at San Diego, California.

*s/ Jenny C. Wu*
Jenny C. Wu
E-mail: JCWu@paulweiss.com

3

## **<u>Table of Contents</u>**

Attachment A:  Original Priority Chain of the '505 Patent                              A2
Attachment B:  Proposed "Revised" Priority Chain of the '505 Patent          A4

# Attachment A

## Original Priority Chain of the '505 Patent



Shaded boxes represent patent applications with disclosures supporting a priority date of May 22, 1998 for the '505 patent as listed on the face of the patent and determined by the Patent Office.

# Attachment B

## Proposed "Revised" Priority Chain of the '505 Patent



Shaded boxes represent patent applications that Illumina relies on to support its currently asserted earlier priority date of December 19, 1994. There is no genuine dispute that there is a gap in continuity of disclosure in the '445 patent.