1   E. JOSEPH CONNAUGHTON (SBN 166765)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
2   101 West Broadway, Ninth Floor
    San Diego, CA 92101-8285
3   Telephone: 619-237-5200
    Facsimile: 619-615-0700
4   jconnaughton@paulplevin.com

5   Kevin M. Flowers (pro hac vice)
    Matthew C. Nielsen (pro hac vice)
6   Mark H. Izraelewicz (pro hac vice)
    Cullen N. Pendleton (pro hac vice)
7   MARSHALL, GERSTEIN & BORUN LLP
    233 South Wacker Drive
8   6300 Willis Tower
    Chicago, Illinois 60606-6357
9   (312) 474-6300

10  Ronald M. Wawrzyn (pro hac vice)
    Matthew M. Wawrzyn (pro hac vice)
11  WAWRZYN LLC
    233 South Wacker Drive
12  84th Floor, Willis Tower
    Chicago, IL 60606
13  (312) 283-8330

14  Attorneys for Defendants
    ILLUMINA, INC. and SOLEXA, INC.
15  *Attorneys for Defendants/Counterclaim Plaintiffs Illumina, Inc. and Solexa, Inc.*

16              **UNITED STATES DISTRICT COURT**

17            **SOUTHERN DISTRICT OF CALIFORNIA**

18  LIFE TECHNOLOGIES CORPORATION;        )
    APPLIED BIOSYSTEMS, LLC; INSTITUTE     )   Case No. 3:11-cv-00703-CAB (DHB)
19  FOR PROTEIN RESEARCH; ALEXANDER        )
    CHETVERIN; HELENA CHETVERINA and       )   ILLUMINA'S MEMORANDUM OF
20  WILLIAM HONE,                          )   POINTS AND AUTHORITIES IN
                                           )   OPPOSITION TO PLAINTIFFS' MOTION
21              Plaintiffs,                )   FOR SUMMARY JUDGMENT OF NON-
                                           )   INFRINGEMENT OF THE '656 PATENT
22          v.                             )
                                           )   Date: January 17, 2013
23  ILLUMINA, INC. and SOLEXA, INC.,       )   Time: 2:30 p.m.
                                           )   Ctrm: Courtroom 2
24              Defendants.                )   Judge: Hon. Cathy Ann Bencivengo

25

26

27

28
    ILLUMINA'S MEMO OF POINTS AND                      Case No. 3:11-cv-00703-CAB (DHB)
    AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
    MSJ RE: '656 PATENT

1

# TABLE OF CONTENTS

2

Page

3  TABLE OF AUTHORITIES ..................................................................................ii

4

5  TABLE OF EXHIBITS ........................................................................................iv

6  I.    INTRODUCTION ......................................................................................1

7

8  II.   ILLUMINA'S REBUTTAL TO LIFE TECH'S "STATEMENT OF FACTS" .................5

9  III.  LEGAL STANDARDS ..............................................................................10

10

11  IV.  ARGUMENT..............................................................................................12

12        A.    Life Tech Cannot Construe the "all fragments" Limitation Contrary to Its

13              Plain-and-Ordinary Meaning ...............................................................12

14        B.    Life Tech Bears the Blame for Its Failure to Seek a Claim Construction of the

15              "all fragments" Limitation ..................................................................16

16

17        C.    Under the Proper Claim Construction, the Evidence of Infringement of the "all

18              fragments of a genome of said individual" Limitation Precludes Summary

19              Judgment ..........................................................................................18

20        D.    Dr. Kolodner Should Not Be Barred From Testifying ...........................21

21

22        E.    The Evidence Showing Life Tech's Knowledge of Infringement Precludes

23              Summary Judgment on Induced and Contributory Infringement ...........22

24  V.    CONCLUSION ..........................................................................................25

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ...............................................................................................11

*Amgen v. Hoechst Marion Roussel,*
314 F.3d 1313 (Fed. Cir. 2003)............................................................................12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .........................................................................................11, 12

*Boston Sci. Corp. v. Johnson & Johnson,*
534 F. Supp. 2d 1062 (N.D. Cal. 2007)................................................................16

*DSU Med. Corp. v. JMS Co.,*
471 F.3d 1293 (Fed. Cir. 2006) .......................................................................12, 23

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,*
394 F.3d 1368 (Fed. Cir. 2005)...............................................................................23

*Gemtron Corp. v. Saint-Gobain Corp.,*
572 F.3d 1371 (Fed. Cir. 2009) ..............................................................................14

*i4i Ltd. P'ship v. Microsoft Corp.,*
598 F.3d 831 (Fed. Cir. 2010) ..........................................................................12, 22

*Insituform Technologies, Inc. v. Cat Contracting, Inc.,*
99 F.3d 1098 (Fed. Cir. 1996) ................................................................................14

*Laryngeal Mask Co. Ltd. v. Ambu A/S,*
618 F.3d 1367 (Fed. Cir. 2010) ..............................................................................11

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
420 F.3d 1369 (Fed. Cir. 2005) ...................................................................12, 23, 24

*MicroStrategy Inc. v. Business Objects,*
429 F.3d 1344 (Fed. Cir. 2005) ..............................................................................11

*Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.,*
No. 07-C-391, 2011 WL 6122377 (E.D. Wis. 2011) .............................................22

*PC Connector Solutions LLC v. SmartDisk Corp.,*
406 F.3d 1359, 1364 (Fed. Cir.2005) .....................................................................11

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) .......................................................................11, 15

*Rexnord Corp. v. Laitram Corp.,*
274 F.3d 1336 (Fed. Cir. 2001) ..............................................................................14

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008) ................................................................................12, 23, 24, 25

*SanDisk Corp. v. Memorex Products, Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005) ...........................................................................................11

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) ...................................................................................12, 24

*Vitronics v. Conceptronics*,
  90 F.3d 1576 (Fed. Cir. 1996) .......................................................................................11, 12, 15

*Water Technologies Corp. v. Calco, Ltd.*,
  850 F.2d 660 (Fed. Cir. 1988) ....................................................................................12, 23, 24

**Statutes**

35 U.S.C. § 271 ........................................................................................................12, 24, 25

**Rules**

Fed. R. Civ. P. 56............................................................................................................11

1

## **TABLE OF EXHIBITS**

2

3  Exh. 1 (January 11, 2010 Notice of Defendants' Proposed Claim Terms for Construction)

4  Exh. 2 (January 11, 2010 Sandel Ltr.)

5  Exh. 3 (January 22, 2010 Maness Ltr.)

6  Exh. 4 (January 25, 2010 Pendleton e-mail)

7  Exh. 5 (Jan. 28, 2010 Pendleton Ltr.)

8  Exh. 6 (Jan. 28, 2010 Sandel Ltr.)

9  Exh.7 (Feb. 2, 2010 Life Tech's First Supplemental Response to Interrogatory Number 1)

10  Exh. 8 (April 12, 2010 Flowers Ltr.)

11  Exh. 9 (April 12, 2010 Sandel Ltr.)

12  Exh. 10 (May 5, 2012 Izraelewicz Ltr)

13  Exh. 11 (May 5, 2012 Maness Ltr.)

14  Exh. 12 (U.S. Patent No. 7,232,656)

15  Exh. 13 (Opening Expert Statement of Richard D. Kolodner, Ph.D.)

16  Exh. 14 (Life Tech's First Supplemental Responses and Objections to Illumina and Solexa's Interrogatory Numbers 2, 3, 8 and 10)

17

18  Exh. 15 (Expert Report of Michael Metzker)

Exh. 16 (Request for Inter Partes Reexamination of U.S. Patent No. 7,232,656)

19

20  Exh. 17 (Illumina and Solexa's Objections and Responses to Plaintiffs' First Set of Interrogatories)

21  Exh. 18 ('656 Reexamination, Action Closing Prosecution (Dec. 14. 2010))

22

23

24

25

26

27

28

## I.     INTRODUCTION

Illumina, Inc. and Solexa, Inc. ("Illumina") own U.S. Patent No. 7,232,656 ("the '656 Patent"),[1] which describes and claims a pioneering method of finding variations between, for example, a person's DNA sequence and the Human Genome "reference" sequence. Detecting such variations allows physicians to practice "personalized" medicine – tailoring treatments and therapies to a person's (or an animal's) unique genetic makeup.

Life Tech's SOLiD and Ion Torrent sequencing instruments infringe claims 1, 2, 4, and 7 of the '656 patent. As discussed below, the fully developed record shows that both Life Tech and its customers have infringed and continue to infringe the '656 claims by using the SOLiD and Ion Torrent systems to sequence genomes of both humans and animals and comparing those sequences to "reference" sequences to find variations between them. Life Tech disputes this evidence, but of course it is up to the jury to resolve that dispute.

Rather than disputing the evidence that it infringes the asserted claims, Life Tech has now manufactured a claim-construction issue for the Court, contending (for the first time since this case started years ago) that the claim limitation "all fragments of said genome" means that sequence information must be obtained from every *physical* fragment of DNA created during the fragmenting step, rather than from fragments which together encompass the complete genetic information (that is, the "genome") of an individual. To support its new theory, Life Tech misrepresents disputed and/or irrelevant facts as "undisputed," even though Life Tech first relied on those facts in an expert report to which Illumina's experts did not get to respond.

Life Tech's arguments should be rejected, and its motion for summary judgment of non-infringement denied, for at least the following reasons:

**First**, Life Tech's claim-construction position is unsupported. The disputed claim limitation is "all fragments of said genome," which appears in step (ii) of claim 1 and step (iii) of claim 7 of the '656 patent. Because the antecedent basis for "said genome" is "a genome of said

---

[1] Antons Decl., Exh. 12 (U.S. Patent No. 7,232,656).

1 | individual,"[2] the disputed limitation is actually "all fragments of a genome of said individual."

2 | Thus, the key issue is what one of ordinary skill in the art would have understood "a genome of

3 | an individual" to mean.

4 |     Life Tech contends that the term "genome" refers to a physical set of chromosomes, so that

5 | the "all fragments of a genome of an individual" limitation refers to the physical pieces of DNA

6 | made during the fragmenting step in the claims. Although Life Tech's motion depends entirely

7 | on this construction, however, it has not provided the Court with any basis to accept that as the

8 | "plain and ordinary meaning" of the claim term read in light of the specification. Instead, Life

9 | Tech relies solely on attorney argument, entirely unsupported by any analysis of the intrinsic

10 | record -- the claim language, the specification, or the prosecution history of the '656 patent -- or

11 | by any expert testimony.

12 |     Illumina's position is that one of ordinary skill in the art would have understood "the genome

13 | of an individual" to refer to all the genetic information of an individual—not merely a physical

14 | set of chromosomes. Consequently, one of ordinary skill in the art would have understood "all

15 | fragments of a genome of an individual" to mean a set of genomic DNA fragments that together

16 | contain all of the genetic information of an individual – that individual's "genome." Illumina's

17 | position is supported by intrinsic evidence. For example, the '656 patent teaches that "fragments

18 | of the genome may be unamplified DNA obtained from several cells from an individual, which is

19 | treated with a restriction enzyme"[3]—in other words, fragments from multiple sets of

20 | chromosomes from "several cells" still represent a single genome of an individual.[4]

21 |     **Second**, the Court should reject Life Tech's proposed construction because, contrary to well-

22 | established law, it seeks to construe the "all fragments" limitation one way for non-infringement,

23 |

24 | _____

25 | [2] This limitation is in step (i) of claims 1 and 7.

    [3] Antons Decl., Exh. 12, 11:62-64.

26 | [4] *See also id.* at 1:65-67 (describing the Human Genome Project as determining the sequence of

27 | the "human genome," in the singular, even though it was determined using multiple copies of the
genome); 11:20-23 and 12:50-53 (discussing a "genome" and treating it as informational content

28 | rather than a physical thing).

1   and another, diametrically opposed, way for invalidity. The contrast between Life Tech's dueling

2   construction positions is unmistakable. For non-infringement, Life Tech seeks a narrow

3   construction, arguing that the "all fragments" limitation is not met if even one of the physical

4   DNA fragments generated during the fragmenting step is lost. In contrast, for invalidity, Life

5   Tech seeks a broad construction, arguing to this Court (and to the Patent Office in the

6   reexamination proceedings) that Illumina's claims are anticipated by various prior-art references

7   that involved sequencing an incomplete set of physical DNA fragments from an individual (*i.e.*,

8   where some of the largest and smallest physical fragments were discarded before sequencing),

9   not *every* physical DNA fragment. Thus, Life Tech's contention that "[t]here is no evidence that

10  Life believed the asserted claims cover sequencing less than 'all fragments'" ('656 Motion at 16)

11  is false, since it continues to argue for this very position in service of its invalidity arguments

12  before this Court and the Patent Office. The Court should reject Life Tech's improper attempt to

13  have it both ways.

14      **Third**, Life Tech, apparently fearful that the Court might resent having to engage in claim

15  construction at this point, attempts to blame Illumina, complaining that *Illumina* has taken a

16  "shifting sands" approach to claim construction. Life Tech's complaint is disingenuous at best.

17  What Life Tech fails to tell the Court is that *Life Tech* originally proposed that Judge Kelly

18  should construe the "all fragments of said genome" limitation during the *Markman* phase of this

19  case, but then *withdrew* its proposal after it filed a motion with the Court (subsequently granted)

20  for more time to exchange proposed terms with Illumina to "avoid having the Court engage in

21  claim construction for terms that might be of no consequence." Consequently, *Life Tech* is

22  responsible for *its* failure to seek a construction of, or a stipulation regarding, the "all fragments

23  of said genome" limitation in Illumina's '656 patent, and it—not Illumina—should bear any

24  consequences for failing to raise this issue during the *Markman* phase.

25      **Fourth**, Life Tech's fall-back position—that its threadbare non-infringement contentions

26  somehow shifted the burden to Illumina to seek a construction of "all fragments of said genome,"

27  notwithstanding Life Tech's failure to do so—is likewise disingenuous. Life Tech's February 2,

28  2010 contention—that "the claim limitation 'generating sequence reads of multiple bases on all

1  fragments of said genome,' is not met"—was not only entirely conclusory, it did not even focus

2  on the "all fragments of said genome" limitation. Instead, it focused on the "generating sequence

3  reads" limitation for which Life Tech actually obtained a construction from Judge Kelly.

4       In other words, as far as Illumina knew, Life Tech's non-infringement contention was that its

5  accused systems did not satisfy the "generating sequence reads" limitation, not the "all fragments

6  of said genome" limitation, as Life Tech now argues. Rather than provide fulsome disclosure of

7  its true non-infringement position, however, Life Tech concealed it for almost two years, and

8  revealed it only in Dr. Metzker's rebuttal non-infringement report. Now, Life Tech moves for

9  summary judgment on a term for which it sought no construction, while abandoning the term for

10  which it did seek construction? The Court should not reward Life Tech's ambush tactics.

11       **Fifth,** Life Tech's assertion that it first learned of Illumina's proposed construction of the "all

12  fragments" limitation in Dr. Kolodner's August 30, 2012 rebuttal report is demonstrably false.

13  Life Tech's expert, Dr. Metzker, revealed in his August 1, 2012 opening report that he (and thus

14  Life Tech) was aware of Illumina's construction of this limitation. Nor could he contend

15  otherwise: Illumina's December 2010 infringement contentions explained that the accused

16  systems meet the disputed limitation because the accused systems perform whole-genome

17  resequencing, and thus necessarily obtain sequence reads from all fragments of the genome.

18  Thus, Dr. Kolodner's reports on both infringement and validity of the '656 claims merely

19  confirmed what Life Tech already knew. Nor can Life Tech credibly claim to have been

20  surprised by the very claim construction position that it advanced before this Court and at the

21  Patent Office. Life Tech could have and should have sought a construction long ago for the term

22  it now reveals to be the lynchpin of its non-infringement argument, and its attempt to shift

23  responsibility to Illumina should be rejected by this Court.

24       Finally, like its claim construction arguments, Life Tech's arguments regarding indirect

25  infringement should also be rejected; they are contrary to established law and rely on disputed

26  facts. Under controlling legal precedent, there is ample circumstantial evidence to support the

27  conclusion that Life Tech had the required knowledge of the patent and mental state for both

28  inducement and contributory infringement. Life Tech argues that its accused systems have

1  "substantial non-infringing uses" that preclude a finding of contributory infringement, but its

2  argument is based on functions performed by distinct software systems, contrary to controlling

3  law.

4      Under Illumina's construction of the "all fragments" limitation (and the construction Life

5  Tech argued for before the Patent Office), Illumina provided substantial evidence that the SOLiD

6  and Ion Torrent systems infringe the asserted claims of the '656 patent. For at least these reasons,

7  this Court should deny Life Tech's motion for summary judgment.

8  **II.    ILLUMINA'S REBUTTAL TO LIFE TECH'S "STATEMENT OF FACTS"**

9      Life Tech's motion confuses the factual issues by misrepresenting disputed facts as

10  "undisputed," and by leaving out relevant facts that render this case unsuitable for summary

11  judgment on Life Tech's theories. The facts in this case are clarified below.

12      1. Life Tech's contention that "[n]either party requested that the term 'all fragments' be

13  construed" ['656 motion, ¶ 11], while technically correct, is misleading because Life Tech, not

14  Illumina, identified the terms for construction from Illumina's patents.

15      2. Judge Kelly's scheduling orders provided deadlines for the parties to advise each other of

16  the asserted claims of the patents-in-suit, "exchange proposed claim terms in need of

17  construction," and "meet and confer regarding narrowing and reducing the number of claim

18  construction issues." [Dkt. Nos. 16 & 41.] Judge Kelly did not order Illumina or Life Tech to

19  identify claim terms to be construed in their own patents.

20      3. The parties exchanged lists of proposed terms for construction on January 11, 2010.

21  Illumina only proposed terms for construction from Life Tech's patents. [Antons Dec. Exh. 1

22  (January 11, 2010 Notice of Defendants' Proposed Claim Terms for Construction).] Life Tech

23  did not request that Illumina propose terms from Illumina's own patents. Life Tech proposed two

24  terms from the Chetverin patents and twenty-five terms from Illumina's patents, which included

25  the "all fragments of said genome" limitation. [Antons Decl., Exh. 2 (January 11, 2010 Sandel

26  Ltr.).] The parties subsequently proposed additional terms for construction, again from the

27  opposing parties' patents. [Antons Decl., Exh. 3 (January 22, 2010 Maness Ltr.) and Exh. 4

28

1  (January 25, 2010 Pendleton e-mail).] In total, Life Tech originally proposed twenty-three terms

2  for construction in Illumina's patents, including seven from the '656 patent.

3      4.  On January 22, 2010, Life Tech moved to revise the *Markman* and scheduling orders,

4  including changes to the dates for exchange of proposed terms for construction. [Dkt. No. 36.]

5      5.  On January 28, 2010, while the motion to revise the schedule was pending, Illumina and

6  Life Tech exchanged revised lists of terms and draft constructions for the terms they had

7  proposed. [Antons Decl., Exh. 5 (Jan. 28, 2010 Pendleton Ltr.) and Exh. 6 (Jan. 28, 2010 Sandel

8  Ltr.) respectively.] Again, Life Tech did not request that Illumina propose terms for construction

9  in Illumina's own patents. The parties met-and-conferred by phone about the proposed

10  constructions, the "all fragments" limitation was discussed, and Illumina informed Life Tech that

11  it disagreed with Life Tech's proposed construction.

12     6.  On February 2, 2010, Judge Kelly granted Life Tech's motion to revise the *Markman* and

13  scheduling orders. [Dkt. No. 41.] The amended schedule provided, *inter alia*, for the parties to

14  exchange proposed terms for construction on April 12, 2010, and to meet-and-confer to narrow

15  and reduce the number of claim-construction issues by April 27, 2010. [*Id.* at 2.]

16     7.  Also on February 2, 2010, Life Tech served its First Supplemental Response to

17  Illumina's Interrogatory Number 1, which sought Life Tech's non-infringement contentions

18  against, *inter alia*, '656 patent claims 1 and 7. [Antons Decl,. Exh. 7 (Feb. 2, 2010 Life Tech's

19  First Supplemental Response to Interrogatory Number 1).] Life Tech's response was that

20  Illumina's infringement contentions did not establish that each limitation of the asserted claims

21  of the '656 patent was met by the SOLiD system and that "the claim limitation requiring

22  'generating sequence reads of multiple bases on all fragments of said genome' is not met." [*Id.* at

23  4.] Life Tech did not provide any non-infringement contention regarding the '656 patent directed

24  to the Ion Torrent product.

25     8.  After Life Tech refused to provide discovery regarding the Ion Torrent system, Illumina

26  was forced to file a motion to compel, which was granted. [Dkt. Nos. 257 & 262.] Nevertheless,

27  Life Tech still never provided supplemental non-infringement contentions regarding the '656

28  patent directed to the Ion Torrent product.

1    9.  On April 12, 2010, the parties again exchanged proposed lists of terms for construction;

2    once again, Illumina only proposed terms for construction from Life Tech's patents. [Antons

3    Decl., Exh. 8 (April 12, 2010 Flowers Ltr.).] Again, Life Tech did not request that Illumina

4    propose terms from Illumina's own patents.

5    10. Unlike its January 11 list, Life Tech's April 12 list did *not* include the term "generating

6    sequence reads of multiple bases on all fragments of said genome" or any term containing the

7    "all fragments" phrase. [Antons Decl., Exh. 9 (April 12, 2010 Sandel Ltr.).] In total, Life Tech

8    proposed twenty-two terms for construction across all of Illumina's patents, including six from

9    the '656 patent, and two terms from the Chetverin patents.

10    11. On May 5, 2010, following additional negotiations to reduce the number of terms in

11    dispute and reach stipulations as to constructions, the parties exchanged lists of twelve terms for

12    which they would seek claim construction, along with their proposed constructions. Each side

13    only proposed terms from the other side's patents for construction by the Court. [Antons Decl.,

14    Exh. 10 (May 5, 2012 Izraelewicz Ltr) and Exh. 11 (May 5, 2012 Maness Ltr.).] Life Tech

15    proposed four terms for construction; none contained the "all fragments" phrase.

16    12. Life Tech never sought a stipulation from Illumina as to the construction of the

17    "generating sequence reads of multiple bases on all fragments of said genome" term or any term

18    containing the "all fragments" phrase.

19    13. On May 7, 2010, the parties filed a Joint Claim Construction Chart. [Dkt. No. 57.] Life

20    Tech only proposed terms for construction from Illumina's patents, and vice-versa. Life Tech did

21    not propose construing "generating sequence reads of multiple bases on all fragments of said

22    genome" or any term containing the "all fragments" phrase, and the Court did not construe any

23    term containing the "all fragments" phrase in the *Markman* Order.

24    14. Life Tech's repeated assertions that various factual contentions regarding ▮▮▮▮▮▮▮

25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are

26    not "disputed" by Illumina or Dr. Kolodner ['656 Motion at, *e.g.*, 4, ¶ 13; 8, ¶ 27; 9, ¶ 29; 10, ¶

27    30] are at best misleading, because Life Tech did not disclose this non-infringement argument

28

1  until *after* Dr. Kolodner submitted his infringement report, as evidenced by the following
2  indisputable facts:

3      a. Life Tech's February 2, 2010 non-infringement contention regarding the '656 patent
4      was a conclusory assertion that a claim limitation was "not met." [Antons Decl., Exh. 7 at
5      4.] Life Tech's non-infringement contention did not state that "fragment loss" or "bead
6      loss" in the SOLiD system was Life Tech's basis for non-infringement. *Id.*

7      b. Life Tech never supplemented its non-infringement contentions to disclose its
8      "fragment loss" or "bead loss" contentions.

9      c. Life Tech's February 2, 2010 non-infringement contentions did not mention the Ion
10     Torrent system at all, *id.*, and Life Tech never supplemented its non-infringement
11     contentions to include this accused system, even after Illumina sought and obtained a
12     motion to compel discovery regarding this system.

13     d. Dr. Kolodner's opening expert report on infringement was served on August 3, 2012,
14     *almost a month before* Life Tech first disclosed its "fragment loss" and "bead loss" non-
15     infringement arguments regarding the SOLiD and Ion Torrent systems in Dr. Metzker's
16     August 31, 2012 rebuttal report.

17     15. Contrary to Life Tech's assertions ['656 Motion at 9-10, ¶¶ 31-32], paragraphs 79 and 85
18  of Dr. Kolodner's opening report on infringement do not provide the "entirety" of his analysis
19  regarding infringement of the "all fragments" limitation by the SOLiD and Ion Torrent systems.
20  Dr. Kolodner's report presents his claim-construction analysis, which concludes that the '656
21  patent covers "whole genome resequencing," and many pages of analysis of the evidence
22  demonstrating that the '656 claims are infringed under that construction:

23     a. Dr. Kolodner discusses the limitations of claim 1 of the '656 patent and explains why
24     they cover "whole genome resequencing" performed by sequencing fragments of many
25     copies of a genome, which is "all of the genetic information for the individual." [*See*
26     Antons Decl., Exh. 13 (Kolodner Opening Report) at 6-8, ¶¶ 22-23; at 10-11, ¶¶ 27-28.]

27     b. Dr. Kolodner explains the proper construction of claims 2, 4, and 7 of the '656 patent.
28     [*See id.* at 8- 10, ¶¶ 24-26.]

1    c. Dr. Kolodner explains that Life Tech and its customers directly infringe the asserted

2    claims of the '656 patent by conducting whole genome resequencing, and that Life Tech

3    indirectly infringes by actively inducing and by contributing to its customers' direct

4    infringement of the asserted claims by sales of systems that practice the infringing

5    method. [*See id.* at, *e.g.*, 11-12, ¶¶ 29-32.]

6    d. With regard to the knowledge requirement for indirect infringement, Dr. Kolodner

7    points out that it is satisfied by Life Tech's admitted knowledge of the '656 patent soon

8    after it issued in 2007. [*See id.* at 12, ¶ 31; Antons Decl., Exh. 14 (Life Tech's First

9    Supplemental Responses and Objections to Illumina and Solexa's Interrogatory Numbers

10   2, 3, 8 and 10) at 9.] Dr. Kolodner also explains

11

12   [*See* Antons Decl.,

13   Exh. 13 at 26-27, ¶¶ 39-41.]

14   e. Dr. Kolodner relies on Life Tech's own documents and the deposition testimony of

15   Life Tech's witnesses, including Dr. Gina Costa, Kevin McKernan, and Dr. Andrew

16   Felton. [*See id.* at 13-26 , ¶¶ 34-38 & 29-32, ¶ 45; 28-29 , ¶¶ 43-44; and 33-44 , ¶¶ 47-64;

17   53-61, ¶¶ 72-78, respectively.] Together, this undisputed evidence establishes that Life

18   Tech directly infringed the asserted claims by performing whole-genome resequencing

19   using the accused SOLiD and Ion Torrent systems, both independently and in

20   collaboration with its customers, and that Life Tech indirectly infringed by entering into

21   agreements with and providing instruments, reagents, support and other inducement to

22   customers[5] to perform whole-genome resequencing of yeast, bacteria, plants, and humans

23   on the SOLiD and Ion Torrent products.

24

25

26   [5] *Id.* (Stanford University, the Joint Genome Institute, the Craig Venter Institute, the National
27   Institutes of Health Intramural Sequencing Centers, Baylor College of Medicine, Johns Hopkins
     University, Broad Institute, Penn State University, SAIC-Frederick Institute, Medical College of
28   Wisconsin, and the University of Houston).

1    f. More specifically, Life Tech's witnesses provided testimony regarding the "depth of

2    coverage" of various whole genome resequencing projects performed by Life Tech and

3    its customers, which is relevant to the infringement of the "all fragments" limitation. For

4    example, Dr. Costa testified that the SOLiD system was used by the Venter Institute "for

5    sequencing a human genome with 12 times coverage," and that "12X coverage means 12

6    times the human genome." [*Id.* at 21.] Dr. Costa also testified that the SOLiD system was

7    used by Life Tech to sequence a human genome for Johns Hopkins at "18 times the

8    physical coverage of the human genome." [*Id.* at 29-32, ¶ 45.] Dr. Felton testified that the

9    Ion Torrent system was used to sequence a microbial genome to two times and four times

10   coverage. [*Id.* at 40, ¶ 57 and 44, ¶ 63, respectively.]

11   16. Life Tech's SOLiD and Ion Torrent devices are designed and used to perform *whole-*

12   *genome resequencing* on random fragments of an individual's genome by both Life Tech and its

13   customers. Whole-genome resequencing, by definition, requires sequencing the whole *genome*,

14   which is all the genetic *information* of an individual. Thus, regardless of how many physical

15   fragments of the individual's chromosomes or beads are "lost" during Life Tech's sample

16   preparation, it is undisputed, based on the factual record discussed above, that the remaining

17   fragments still constitute multiple, complete copies of a genome of an individual, and that the

18   SOLiD and Ion Torrent devices produce so much sequence information that they sequence the

19   whole genome of an individual many times over in a single run.

20   17. Life Tech's argument that "Neither SOLiD nor Ion Torrent generate sequence reads on

21   'all fragments' of genomic DNA generated in a 'randomly fragmenting' step" ['656 Motion at 4,

22   ¶ 12] is irrelevant to infringement under Illumina's claim construction position.

23   **III.   LEGAL STANDARDS**

24   As the moving party, Life Tech has the initial burden of demonstrating that are no genuine

25   issues as to any material fact such that summary judgment of noninfringement is proper. *Adickes*

26   *v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); Fed. R. Civ. P. 56(c). Summary judgment

27   regarding direct infringement is only proper "when no reasonable jury could find that every

28   limitation recited in a properly construed claim either is or is not found in the accused device

1   either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk*

2   *Corp.*, 406 F.3d 1359, 1364 (Fed. Cir.2005). In considering the motion, "[t]he evidence of the

3   non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

4   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

5       "A literal patent infringement analysis involves two steps: the proper construction of the

6   asserted claim and a determination as to whether the accused method or product infringes the

7   asserted claim as properly construed." *Vitronics v. Conceptronics*, 90 F.3d 1576, 1581-82 (Fed.

8   Cir. 1996). The first step of the analysis, claim construction, is a matter of law for the Court. The

9   Court has wide latitude in how and when it conducts claim construction and may split claim

10  construction between a *Markman* hearing and a decision on summary-judgment. *MicroStrategy*

11  *Inc. v. Business Objects*, 429 F.3d 1344, 1350 (Fed. Cir. 2005). However, the Court may refuse

12  to allow a party to advance a proposed construction if it has unreasonably delayed seeking it.

13  *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (upholding

14  district court's refusal to hear claim-construction arguments made after deadlines imposed by

15  local patent rules and the scheduling order).

16      When construing a claim limitation, "the words of a claim are generally given their ordinary

17  and customary meaning as understood by a person of ordinary skill in the art in question at the

18  time of the invention when read in the context of the specification and prosecution history."

19  *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1370 (Fed. Cir. 2010) (*citing Phillips v.*

20  *AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). Claims are construed by

21  determining the plain and ordinary meaning to one of ordinary skill in the art at the time of the

22  invention. The most significant source of the meaning of claim language is the intrinsic

23  evidence: the claims, the specification, and, if in evidence, the prosecution history. *Vitronics*, 90

24  F.3d at 1582. "It is axiomatic that claims are construed the same way for both invalidity and

25  infringement." *Amgen v. Hoechst Marion Roussel*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).

26      In the second step of the analysis, Life Tech bears the burden of showing that there is no

27  genuine issue of material fact regarding direct or indirect infringement under the proper claim

28  construction. Facts are "material" only if they "might affect the outcome of the suit under the

1  governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."

2  *Anderson*, 477 U.S. at 248. Thus, facts are not "material" unless they relate to the infringement

3  of the properly construed claim. In addition, a dispute is "genuine" only "if the evidence is such

4  that a reasonable jury could return a verdict for the nonmoving party." *Id.*

5      Indirect infringement, both inducement and contributory, requires a showing of direct

6  infringement. In addition, to prove induced infringement, the patentee must show "that the

7  alleged infringer 'knowingly induced infringement and possessed specific intent to encourage

8  another's infringement.'" *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)

9  (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378

10  (Fed. Cir. 2005)). "Direct evidence of specific intent is not required; rather circumstantial

11  evidence may suffice." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en

12  banc for this holding) (quoting *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.

13  Cir. 1988).

14      "The patent laws provide that whoever sells an apparatus for use in practicing a patented

15  method, knowing it to be 'especially made or especially adapted for use in an infringement of

16  such patent, and not a staple article or commodity of commerce suitable for substantial non-

17  infringing use, shall be liable as a contributory infringer.'" *Vita-Mix Corp. v. Basic Holding, Inc.*,

18  581 F.3d 1317, 1327 (Fed. Cir. 2009) (quoting 35 U.S.C. § 271(c)). Contributory infringement,

19  unlike induced infringement, does not require proof of an intent to cause direct infringement.

20  *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1340 (Fed. Cir. 2008).

21  **IV.   ARGUMENT**

22      **A.    Life Tech Cannot Construe the "all fragments" Limitation Contrary to Its**
               **Plain-and-Ordinary Meaning**

23

24      One of ordinary skill in the art would have understood "all fragments of a genome of an

25  individual" to mean "fragments containing all of the genetic information of an individual." This

26  position is supported by the intrinsic evidence. The '656 patent specification teaches that

27  "fragments of *the genome* may be unamplified DNA obtained from *several cells* from an

28  individual, which is treated with a restriction enzyme." Exh. 12, 11:62-64 (emphasis added). If

1   chromosomes from "several cells" are referred to as a "the genome" (singular), then the plain

2   and ordinary meaning of "genome" is necessarily broader than a single, physical set of

3   chromosomes. Multiple sets of chromosomes are still "a genome" because the additional sets add

4   no additional genetic information.

5       The specification contains several similar references that reinforce this understanding of the

6   "genome" as genetic informational content. For example, the specification describes how the

7   Human Genome Project determined the sequence of "the human genome"—singular—even

8   though it was determined in many different labs by assembling together multiple different partial

9   copies of that genome. *Id.* at 1:65-67; *see also* 11:20-23 and 12:50-53 (discussing a "genome"

10  and treating it as informational content rather than a physical object).

11      Moreover, a preferred embodiment of the '656 patent uses the very same procedure—size

12  selection—that Life Tech asserts is not covered by the claims under its interpretation. The

13  specification describes using nucleotide fragments in an array with $10^7$ restriction fragments per

14  cm$^2$. In a preferred embodiment the array uses size-selected fragments of 1000 nucleotides. The

15  specification continues "it is possible to have $10^{10}$ nucleotides per cm$^2$, or three copies of the

16  human genome," thus permitting "large sequence or SNP analysis." *Id.* at 12:25-32. Thus, a

17  preferred embodiment requires *size-selected* fragments from multiple physical chromosomes.

18      In light of this intrinsic evidence, the "genome of said individual" would have been

19  understood to mean the complete genetic information of an individual, not merely a single,

20  physical set of chromosomes. Consequently, "all fragments of a genome of said individual"

21  means "fragments containing all of the genetic information of an individual."

22      In contrast, Life Tech cites no intrinsic evidence to support its noninfringement claim-

23  construction position. The parties are required to "provide the district court with all relevant

24  arguments and point out with specificity the relevant statements in the specification and

25  prosecution history in support of their arguments." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d

26  1336, 1343 (Fed. Cir. 2001). Attorney argument, unsupported by intrinsic evidence, is not

27  enough. *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1106 (Fed. Cir.

28

1  1996) ("[A]ttorney argument cannot control in light of the language of the claim."); *Gemtron*

2  *Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (same).

3      The totality of Life Tech's argument is the following: "the plain and ordinary meaning of 'all

4  fragments' is readily apparent—the claims clearly refer to each of the physical fragments of

5  DNA generated in the preceding 'fragmenting' step." This naked assertion, unsupported by any

6  reference to the intrinsic record, or even to any extrinsic evidence, must fail. Life Tech does not

7  address the various uses of "genome" discussed above that contradict its proposed construction.

8  Thus, Life Tech not only abandoned the "all fragments" limitation during the *Markman* phase, it

9  has now failed to provide an adequate claim-construction analysis in its present motion.

10     Moreover, Life Tech's argument fails because it misquotes the claim language. The claim

11  language does not refer to "physical fragments of DNA," but rather to "all fragments of a

12  genome of said individual."[6] Life Tech's argument assumes that "a genome of said individual"

13  refers to "each of the physical fragments" of a "genome of said individual," despite the fact that

14  "a genome" is used in a contrary way in the patent.

15     Indeed, Life Tech's claim-construction argument would read out any practical application of

16  the patented technology, including all (or nearly all) of the embodiments of the invention

17  disclosed in the '656 patent. A claim construction that excludes a preferred embodiment is

18  "rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics*, 90

19  F.3d at 1583. As discussed above, most embodiments of the '656 patent use the very same

20  procedures—size selection (Exh. 12, 12:25-32), randomly shearing (*id.* at 8:7), and purification

21  protocols (*id.* at 7:41-51)—that Life Tech asserts take the SOLiD system outside the claims of

22  the '656 patent under its interpretation of "all fragments." Yet Life Tech offers no support (let

23  alone "highly persuasive evidentiary support") other than its own attorney argument for

24  excluding these embodiments. Life Tech's proposed claim construction, which would exclude

25  not just preferred, but any practical, applications of the patented technology, should be rejected.

26

27  _____

[6] Both claim 1 and 7 of the '656 refer to "all fragments of said genome," and the antecedent basis

28  for "said genome" is "a genome of said individual" in step (i) of each claim.

1    Life Tech likewise tacitly recognized that Illumina's construction is both reasonable and

2  consistent with the specification. Life Tech argued that prior art references that used randomly

3  sheared, size-selected, and cloned genomic DNA (which Life Tech claims result in loss of

4  physical fragments in the accused systems) still met the "all fragments" limitation because they

5  nevertheless retained fragments that covered the entire genome.[7]

6    In other words, Life Tech interpreted the "all fragments" limitation at the Patent Office in the

7  same way Illumina does in this case. The Patent Office accepted Life Tech's interpretation.[8]

8  Given that the Patent Office is required to only apply claim constructions that are "reasonable"

9  and "consistent with the specification,"[9] Life Tech's application of Illumina's construction at the

10  Patent Office,[10] and the Patent Office's acceptance of that interpretation, is further evidence that

11  Illumina's construction is both reasonable in light of the plain language of the claims, and is

12  consistent with the specification.

13    In light of the foregoing, the Court should construe "all fragments of a genome of an

14  individual" to mean fragments that together contain all of an individual's genetic information,

15  not each and every physical piece of DNA in which any of that information may be found.

16

17

---

18  [7] Antons Decl., Exh. 16 (Request for Inter Partes Reexamination of U.S. Patent No. 7,232,656
    (Dec. 30, 2009)) at, *e.g.*, 25 (stating the Weber reference anticipates, even though it discloses the
19  use of "genomic DNA that is 'sheared, size-selected, and cloned" DNA fragments, not all
    fragments), 32 (stating the Stemple reference discloses that samples are "preferably sheared (or
20  cut) to a certain size"), 33 (stating Stemple's disclosure of obtaining sequence covering "an
    entire genome" from "thousands and possibly millions of separate templates" is a disclosure of
21  obtaining sequence reads on "all fragments of an individual genome.").

22  [8] Antons Decl., Exh. 18 (Action Closing Prosecution (Dec. 14. 2010)) at 15 (stating Weber
23  anticipates, despite its disclosure of "randomly shearing [and] cloning large fragments" of the
    sample genomes) and 17 (stating Stemple discloses sequencing "all fragments of the individual
24  genome," despite teaching the "sample nucleic acid to be sequenced is preferably sheared (or
    cut) to a certain size").

25  [9] *See* Manual of Patent Examining Procedure § 2111 (citing *Phillips*, 415 F.3d at 1316-17 (en
26  banc)) (available online at http://www.uspto.gov/web/offices/pac/mpep/s2111.html).

27  [10] Notably, Life Tech applied Illumina's proposed construction at the Patent Office in 2010,
    years before they claim (in their motion) to have received Illumina's proposed construction in
28  this case.

**B.     Life Tech Bears the Blame for Its Failure to Seek a Claim Construction of the "all fragments" Limitation**

Life Tech would have the Court believe that Illumina is to blame and should be punished for not earlier seeking a construction for the "all fragments" limitation. The facts prove otherwise. After twice raising and then abandoning the "all fragments" term during the parties' pre-*Markman* negotiations,[11] it is *Life Tech* that now seeks, over two-and-a-half years later, to resurrect this long-abandoned term, and to blame Illumina for the delay. But Life Tech alone is responsible for its failure to seek a construction to support its belatedly revealed and sole non-infringement position for the '656 patent.

A court can refuse to construe a claim as requested by an accused infringer if the request is not timely made. *Boston Sci. Corp. v. Johnson & Johnson*, 534 F. Supp. 2d 1062, 1070 (N.D. Cal. 2007) (declining to construe claim where accused infringer sought it after unreasonable delay). Judge Kelly's scheduling order did not require either party to propose terms for construction from its own patents,[12] and each party essentially only proposed terms from the others' patents.[13] Life Tech originally proposed seeking a construction for "all fragments of said genome" in a January 11, 2010 letter,[14] and "generating sequence reads of multiple bases on all fragments of said genome" in a January 28, 2010 letter.[15] When the parties met-and-conferred on January 28, 2010, Illumina placed Life Tech on notice that it disagreed with Life Tech's proposed constructions.[16]

In the meantime, Life Tech assured Judge Kelly that "*the Plaintiffs wish to avoid having the Court engage in claim construction for terms that might be of no consequence . . . .*" Dkt. No. 36 at 3 (Plaintiffs' Motion to Revise *Markman* Claim Construction Schedule and Scheduling

---

[11] *See supra*, Section II, paragraphs 3-13.

[12] *Id.*, paragraph 2.

[13] *Id.*, paragraphs 3-12.

[14] *Id.*, paragraph 3.

[15] *Id.*, paragraph 5.

[16] *Id.*

1    Orders) (emphasis added). On April 12, 2012, after the Court granted Life Tech's motion, Life

2    Tech provided Illumina with an edited list of proposed terms for construction that made *no*

3    *mention* of any term including the "all fragments" phrase.[17] Moreover, Life Tech never sought a

4    stipulation from Illumina as to this term's meaning, despite its assertion now that the "plain and

5    ordinary meaning of 'all fragments' is readily apparent."[18]

6         Likewise, Life Tech's February 2, 2010 interrogatory response regarding its noninfringement

7    position did not shift the burden to Illumina to seek a construction of "all fragments of said

8    genome" when Life Tech failed to do so. Life Tech's response was entirely conclusory, stating

9    only that "the claim limitation 'generating sequence reads of multiple bases on all fragments of

10   said genome,' is not met."[19] Life Tech made no mention of the "lost fragments" and "lost beads"

11   arguments on which its summary judgment motion now hinges. In addition, Life Tech "hid the

12   ball," since it focused on the "generating sequence reads" limitation for which Life Tech actually

13   sought a construction (but, notably, does not mention in its motion for summary judgment).

14        Thus, the undisputed facts prove Life Tech *twice* proposed construing terms containing the

15   "all fragments" phrase, and knew Illumina did not agree with its proposed construction, but then

16   unilaterally and voluntarily withdrew both terms from consideration after assuring the Court it

17   wished to avoid claim construction for "terms that might be of no consequence." Life Tech

18   further obscured its position with a vague, conclusory, and never-amended interrogatory

19   response, and then, over two-and-a-half years later, finally disclosed its real position in Dr.

20   Metzker's responsive non-infringement report. Life Tech's failure to seek a construction cannot

21   be blamed on Illumina.

22        Also, Life Tech's argument that Illumina disclosed its claim-construction position on the "all

23   fragments" limitation "for the first time in its rebuttal expert reports" is demonstrably not true. In

24   his August 1, 2012 opening report on invalidity, Life Tech's expert, Dr. Metzker, stated his

25

26   [17] *Id.*, paragraphs 9-10.

27   [18] '656 Motion at 18.

28   [19] *See supra*, Section II, paragraph 14.

1    understanding that Illumina's position was that the "all fragments" limitation was met by Life

2    Tech's SOLiD product by its use of size-selected DNA fragments covering a genome.[20] Thus, at

3    least a month before Dr. Kolodner served his August 30, 2012, rebuttal report, Dr. Metzker (and

4    Life Tech) knew that Illumina contended that the accused whole-genome-resequencing systems

5    satisfied the "all fragments" limitation and why.[21] Indeed, Life Tech has known for three years

6    that Illumina's position is that the "all fragments" limitation is necessarily satisfied when the

7    accused products are used for whole-genome resequencing.[22] Life Tech has also known that

8    Illumina disagreed with its claim construction of the "all fragments" limitation since the parties

9    met-and-conferred on January 28, 2010.

10       Life Tech deliberately chose not to seek a construction or stipulation for the "all fragments"

11   term, and its attempt to saddle Illumina with the consequences should be rejected by this Court.

12       **C.    Under the Proper Claim Construction, the Evidence of Infringement of the**
         **"all fragments of a genome of said individual" Limitation Precludes**
13       **Summary Judgment**

14       The Court should deny summary judgment because Life Tech's "undisputed" facts

15   concerning "fragment loss" and "bead loss" are irrelevant under the correct construction.

16   Moreover, under the proper construction, genuine issues of disputed material fact preclude

17   summary judgment of no literal infringement, both direct and indirect.

18       As discussed above, in his expert report, Dr. Kolodner relies on Life Tech's own documents

19   and the deposition testimony of Life Tech's witnesses to show that the so-called "loss" of DNA

20   fragments does not mean any "fragments of the *genome*" are "missing" in the Life Tech systems,

21   because the remaining fragments represent the "genome," that is, together they contain all of the

22

23   _____

     [20] Antons Decl., Exh. 15 at 48, ¶ 97; 55, ¶ 111.

24   [21] Illumina has also not violated this District's Patent Local Rules. Illumina cannot have violated
     those rules by failing to seek a construction for a term Life Tech itself dropped. Moreover, the
25   Patent Local Rules do not apply here. Patent L.R. 1.2 provides: "These Patent Local Rules take
     effect on December 1, 2009, and will apply to any case filed thereafter." This case was filed on
26   September 21, 2009.

27   [22] Antons Decl., Exh. 17 (Illumina and Solexa's Objections and Responses to Plaintiffs' First Set
     of Interrogatories) at, *e.g.*, 12-13.
28

1     genetic information of an individual (*i.e.*, a genome of an individual). Numerous Life Tech

2     witnesses testified that the accused SOLiD and Ion Torrent systems are used for "whole-

3     genome" resequencing, both by Life Tech and its customers, and that 12- and even 18-fold

4     coverage of a human genome has been achieved.[23] Thus, despite the so-called "loss" of

5     fragments and beads, the accused products are unquestionably designed, marketed, and

6     extensively used for "whole-genome" resequencing, which would be impossible if "loss" meant

7     fragments of the genome were "missing." Dr. Kolodner described the operation of the accused

8     systems, and concluded that they satisfy the "all fragments" limitation at the end of the "primary

9     analysis" phase, when they generate a computer file containing the sequence data, as described

10    by Life Tech's own documents and witnesses.[24]

11       In response to the evidence showing infringement under Illumina's claim construction, Life

12    Tech offers a "straw man" argument that, at best, only establishes that there is a disputed issue of

13    material fact precluding summary judgment. Life Tech argues there are only two "instances" of

14    the terms "covering" or "coverage" of a genome in Dr. Kolodner's report (one referring to

15    sequencing a human genome to "12X coverage" and the other to "two-fold" coverage), cites a

16    definition of "coverage" from the glossary of a 2001 publication, interprets it, and then asserts

17    that "Dr. Kolodner's reference to obtaining *two-fold* coverage" does not prove the accused

18    products "generate sequence reads on a set of fragments covering the entire genome."[25]

19       There are many flaws in Life Tech's arguments. First, Life Tech offers no analysis why the

20    Court should believe that Dr. Kolodner's arguments would necessarily only appear next to the

21    words "coverage" or "covering." This is a "straw man" concocted from attorney argument.

22

23    [23] Antons Decl., Exh. 13 at 21 (12-fold) and 32 (18-fold) (quoting Costa Dep. Tr.).

24    [24] *Id.* at 47 (page from SOLiD User Manual showing primary analysis in SOLiD System
25    produces a file that contains the sequence for each bead); 49 (testimony from Mr. Lee Jones, Life
Tech software engineer, who stated the SOLiD's Sun SPOT "read builder goes in for every
26    bead" and generates a file that has a sequence of color calls, corresponding to sequence
information); 55-56 (testimony from Dr. Felton that Ion Torrent records a pH change "from the
27    incorporation of a new base" and converts it into a base sequence).

28    [25] '656 Motion at 20.

1    Second, its premise is false: there are not two instances of these terms, but seven for "coverage"

2    and one for "covering," and the "coverage" includes not just 12X the human genome, but up to

3    18X the human genome.[26] Third, Life Tech ignores Dr. Kolodner's statement that "claim 1

4    *covers* what is known as whole genome resequencing,'" which speaks directly to claim

5    construction, and it also ignore terms that relate to "whole-genome resequencing," such as

6    "whole genome," which appears *ninety* times, and "entire genome" and "complete genome,"

7    which each appear twice. Fourth, Life Tech offers only attorney argument regarding its

8    interpretation of the glossary definition of "coverage," according to which "two-fold coverage"

9    means that some nucleotides will not be sequenced.[27] Such non-expert, conclusory argument

10   cannot establish a lack of dispute as to material facts, particularly since both Dr. Kolodner and

11   Life Tech's witness, Dr. Costa, understand "coverage" to mean that the entire genome is

12   covered.[28] Moreover, Life Tech ignores other, more relevant definitions from the very

13   publication it cites, including "full shotgun coverage," which was defined as the "*coverage* in

14   random raw sequence needed from a large-insert clone to ensure that it is reading for finishing;

15   this varies among centres [sic] but is typically *8-10 fold*," and "finished sequence," which was

16   defined as "Complete sequence of a clone or genome, with an accuracy of at least 99.99% and *no*

17   *gaps*."[29] Taken together, these definitions suggest that evidence of coverage of 12-18 fold—far

18   more than the 8-10 fold specified in the "full shotgun coverage" definition—amounts to

19   coverage of the entire human genome, and thus evidence of infringement under Illumina's

20   proposed construction that precludes summary judgment. Fifth, Life Tech's contention that Dr.

21   Kolodner does not mention "coverage" using the Ion Torrent system is another "straw man": Dr.

22

23

---

24   [26] Antons Decl., Exh. 13 at 32 (discussing experiments that produced "18 times the physical
     *coverage* of the human genome") (emphasis added).

25   [27] '656 Motion at 20.

26   [28] Antons Decl., Exh. 13 at 21 ("12X coverage means 12 times the human genome.") and 32 ("Q:
     So that actually sequencing results indicated – actually that 18 times the human genome
27   coverage, right? A: Yes.") (quoting Costa Dep. Tr.).

28   [29] Dkt. No. 342-28 at 3 (emphasis added).

1    Kolodner discusses Dr. Felton's testimony regarding "whole genome-resequencing" using Ion

2    Torrent in detail, with specific mention of different coverage levels.[30]

3              **D.    Dr. Kolodner Should Not Be Barred From Testifying**

4         Life Tech's request that the Court bar Dr. Kolodner from testifying regarding infringement at

5    trial, relegated to a footnote in its motion,[31] should be rejected for several reasons. First,

6    undeveloped arguments in footnotes need not be considered by this Court; if Life Tech wanted to

7    block Dr. Kolodner's testimony, it should have filed a *Daubert* motion. Second, as noted above,

8    Life Tech twice proposed seeking a construction of this limitation, but ultimately declined to

9    seek either a construction or a stipulation. Thus, Life Tech cannot blame Dr. Kolodner for failing

10   to appreciate that this limitation was the crux of the parties' dispute, or because the level of detail

11   in his report did not meet Life Tech's arbitrary standard. Third, Dr. Kolodner's expert report

12   adequately discloses his construction of the "all fragments" limitation. For some unstated reason,

13   Life Tech claims that Dr. Kolodner's infringement analysis is limited to paragraphs 79-89 of his

14   report (corresponding to pages 61-66 of his 66-page report). In fact, Dr. Kolodner's claim-

15   construction analysis begins at page 5 of his report, and his infringement analysis runs from

16   pages 11-66; the pages Life Tech refers to constitute merely the summary of his analysis. Dr.

17   Kolodner's report adequately explains his understanding of the claim limitation, both explicitly

18   and implicitly, at numerous points,[32] and the Court should not bar his testimony.

19   / / /

20   / / /

21

22   [30] Antons Decl., Exh. 13 at 33-44, including at, e.g., 33 (stating that whole-genome resequencing
     by Life Tech and its customers infringes the '656 patent); 35 (Dr. Felton's testimony regarding
23   early access customers resequencing "a series of whole genomes"); 36 (Dr. Felton's testimony
     regarding sequencing the E. coli genome); 39-40 (Dr. Felton's testimony regarding sequencing
24   E. coli to "two times the genome"); 44 (Dr. Felton's testimony regarding sequencing E. coli four
     times).
25

26   [31] '656 Motion at 18 n.1.

27   [32] Antons Decl., Exh. 13 at, *e.g.*, 7 (defining "genome" as "all of the genetic information for the
     individual"); 8 (explaining why claim 1 "covers what is known as 'whole genome
28   resequencing'"); 10-11 (explaining "whole genome resequencing").

1

**E.    The Evidence Showing Life Tech's Knowledge of Infringement Precludes
Summary Judgment on Induced and Contributory Infringement**

2

3       Life Tech's arguments for summary judgment of no indirect infringement are contrary to

4   established law, and rely on disputed facts. Proof of induced infringement requires showing

5   direct infringement, and that the alleged infringer 'knowingly induced infringement and

6   possessed specific intent to encourage another's infringement.'" *i4i Ltd. P'ship*, 598 F.3d at 851.

7   As established above, under the proper construction, Illumina has presented ample evidence to

8   establish direct infringement when Life Tech's customers use the accused SOLiD and Ion

9   Torrent systems to perform whole-genome resequencing, and that Life Tech knowingly provided

10  instruments, reagents, support, and other inducements to induce its customers to perform whole-

11  genome resequencing.

12      With regard to induced infringement, then, the only issue for the Court is whether Illumina

13  can carry its burden of proof at trial as to specific intent, since Life Tech has not contended that

14  its actions with respect to its customers do not rise to the level of inducement. As to the specific

15  intent element, Life Tech cites non-controlling legal authority for the proposition that intent

16  cannot be shown where the "inducer has a reasonable belief that the claims will be construed in a

17  way that renders the acts induced non-infringing," *Mikkelsen Graphic Eng'g Inc. v. Zund Am.,*

18  *Inc.*, No. 07-C-391, 2011 WL 6122377 (E.D. Wis. 2011), but even if that were the standard, Life

19  Tech's motion and pleadings lack any evidence it had such a belief when it first became aware of

20  the patent or first induced its customers to infringe the '656 claims. And Life Tech's basis for

21  arguing it lacked specific intent—that it did not believe Illumina's construction was proper—is

22  belied by the fact that it told the Patent Office that this construction was proper.

23      Illumina can easily carry its burden to show inducement of infringement, and summary

24  judgment should be denied. The law does not require Illumina to produce a "smoking gun" of

25  direct evidence of specific intent; circumstantial evidence of specific intent is acceptable. *DSU*,

26  471 F.3d at 1306 (en banc for this holding); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394

27  F.3d 1368 (Fed. Cir. 2005). Moreover, "specific intent may be inferred from circumstantial

28  evidence where a defendant has both knowledge of the patent and specific intent to cause the acts

1    constituting infringement." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir.

2    2008); *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369,

3    1378 n. 4 (Fed. Cir. 2005) (where defendant knew of the patent, if the patentee shows the

4    defendant "had intent to induce the specific acts constituting infringement, intent additionally to

5    cause infringement can be presumed").

6         For example, in *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir.

7    1988), a co-defendant appealed from a judgment of inducement, arguing he was unaware of

8    Calco's infringing sales, and that he had a "subjective belief" that the product was noninfringing

9    which negated specific intent, as evidenced, *inter alia*, by a contemporaneous letter to that effect.

10   The Federal Circuit rejected his arguments, affirming the trial court's finding that the defendant

11   knew of the patent and induced Calco to infringe by giving formulas, helping it make product,

12   writing consumer use instructions, and exerting contractual control over its manufacturing. The

13   Federal Circuit also affirmed that the defendant's subjective belief, unsupported by opinion of

14   counsel, was "not such clear evidence of lack of intent that the district court could not make a

15   contrary finding on the basis of other circumstantial evidence." *Id.* at 668-69.

16        Likewise, in *MEMC Electronic Materials*, 420 F.3d at 1379, the Federal Circuit reversed the

17   district court's grant of summary judgment of noninfringement based on inducement and

18   remanded. The Federal Circuit found that the accused inducer's knowledge of the patent and of

19   the potentially infringing activities, "substantial technical support" by e-mail, "on-site visits . . .

20   during which technical presentations on the [accused products] were made," and technical

21   service agreements precluded summary judgment. *Id.* The Federal Circuit also found that the

22   technical support emails were sufficient circumstantial evidence to show intent to the accused

23   infringer "intended to encourage those activities." *Id.* at 1380.

24        Here, Illumina has provided more than sufficient circumstantial evidence of specific intent to

25   avoid summary judgment. Specifically, Life Tech admits that it has been aware of the '656

26   patent since around the time it issued in mid-2007 (Antons Decl., Exh. 14 at 9), and it is

27   undisputed that Life Tech has collaborated with and provided its customers with instruments,

28   reagents, support, and other inducements, while exercising control over their use of the SOLiD

1    and Ion Torrent systems to perform whole genome resequencing, as discussed above. Under the

2    controlling law as articulated in *Ricoh*, *Water Technologies*, and *MEMC Electronic Materials*, no

3    more is required.

4          Likewise, Illumina has provided sufficient evidence to avoid summary judgment on

5    contributory infringement."The patent laws provide that whoever sells an apparatus for use in

6    practicing a patented method, knowing it to be 'especially made or especially adapted for use in

7    an infringement of such patent, and not a staple article or commodity of commerce suitable for

8    substantial non-infringing use, shall be liable as a contributory infringer.'" *Vita-Mix Corp.*, 581

9    F.3d at 1327 (quoting 35 U.S.C. § 271(c)). There is no dispute as to Life Tech's knowledge of

10   the '656 patent, and, although contributory infringement, unlike induced infringement, does not

11   require proof of an specific intent to cause direct infringement, *Ricoh*, 550 F.3d at 1340, the

12   circumstantial evidence of specific intent discussed above, *a fortiori*, could support a finding

13   under the less stringent standard.

14         Finally, Life Tech's argument that contributory infringement cannot be found because the

15   accused systems are "suitable for substantial non-infringing use" is legally incorrect. Life Tech

16   contends that the accused systems can be used for purposes other than whole-genome

17   resequencing, though it concedes that is by far the most common use, and argues that such non-

18   infringing uses alone immunize an accused product from contributory infringement.

19         That is not the law. In *Ricoh*, 550 F.3d at 1336, for example, the district court entered

20   summary judgment of no contributory infringement, because Quanta's accused drives could be

21   "used to read discs in a noninfringing manner," and so were capable of "substantial

22   noninfringing use" under 35 U.S.C. § 271(c). The Federal Circuit reversed because the drives

23   had "separate hardware and embedded software modules to perform the patented processes" that

24   lacked a non-infringing use, and a substantial noninfringing use cannot be established by adding

25   features to an otherwise infringing product; otherwise a competitor could avoid "contributory

26   infringement by selling a device that simply embedded the hardware for practicing the patented

27   process within other hardware that also performs another process . . . ." *Id.* at 1337-38.

28

1    Here, just as with the accused drives in *Ricoh*, the accused SOLiD and Ion Torrent systems

2    use "embedded software modules" that are "especially made or especially adapted for use in" the

3    infringing whole-genome resequencing method, including comparison of resequenced genomes

4    to a reference genome. Antons Decl., Exh. 13 at 46-52, 61-64; 55-61, 64-66 (discussing SOLiD

5    System and Ion Torrent software modules for primary analysis, aligning sequences to reference

6    genomes, consensus calling, tertiary analysis, and "SNP" detection). These modules have no

7    noninfringing function, and Life Tech has not contended otherwise.

8    **V.    CONCLUSION**

9    For at least these reasons, this Court should deny Life Tech's motion for summary judgment.

10

11

12   Dated: December 21, 2012                        Respectfully submitted,

13
                                                      By: /s/ E. Joseph Connaughton
14                                                        101 West Broadway, Ninth Floor
                                                         San Diego, CA 92101
15                                                       (619) 744-3645

16                                                       Kevin M. Flowers
                                                         Matthew C. Nielsen
17                                                       Mark H. Izraelewicz
                                                         Cullen N. Pendleton
18                                                       Amanda K. Antons
                                                         Marshall, Gerstein & Borun LLP
19                                                       233 South Wacker Drive
                                                         6300 Willis Tower
20                                                       Chicago, IL 60606
                                                         (312) 474-6300
21
                                                         Ronald M. Wawrzyn
22                                                       Matthew M. Wawrzyn
                                                         Wawrzyn LLC
23                                                       233 South Wacker Drive
                                                         84th Floor, Willis Tower
24                                                       Chicago, IL 60606
                                                         (312) 283-8330
25
                                                         *Attorneys for Defendants*
26                                                       *Illumina, Inc. and Solexa, Inc.*

27

28