1    MATTHEW D. MURPHEY (SBN 194111)
     TROUTMAN SANDERS LLP
2    11682 El Camino Real, Suite 400
     San Diego, CA  92130
3    Telephone: (858) 509-6000

4    BRADFORD PAUL SCHMIDT (SBN 174440)
     LIFE TECHNOLOGIES CORPORATION
5    5791 Van Allen Way
     Carlsbad, CA 92008
6    Telephone:  (760) 603-7200

7    NICHOLAS GROOMBRIDGE (*pro hac vice*)
     CATHERINE NYARADY (*pro hac vice*)
     PETER SANDEL (*pro hac vice*)
8    JENNY C. WU (*pro hac vice*)
     REBECCA FETT (*pro hac vice*)
9    ROBERT LIN (*pro hac vice*)
     PAUL, WEISS, RIFKIND, WHARTON &
10   GARRISON LLP
     1285 Avenue of Americas
11   New York, NY 10019
     Telephone: (212) 373-3000

12   Attorneys for Plaintiffs/Counterclaim Defendants
     LIFE TECHNOLOGIES CORPORATION,
13   APPLIED BIOSYSTEMS, LLC, INSTITUTE
     FOR PROTEIN RESEARCH, ALEXANDER
14   CHETVERIN, HELENA CHETVERINA, and
     WILLIAM HONE
15

16                  **UNITED STATES DISTRICT COURT**

17                  **SOUTHERN DISTRICT OF CALIFORNIA**

18   LIFE TECHNOLOGIES CORPORATION,          Case No. 3:11-cv-00703-CAB (DHB)
     APPLIED BIOSYSTEMS, LLC, INSTITUTE
19   FOR PROTEIN RESEARCH, ALEXANDER         **[REDACTED] MEMORANDUM OF**
     CHETVERIN, HELENA CHETVERINA, and       **POINTS AND AUTHORITIES IN**
20   WILLIAM HONE,                           **OPPOSITION TO  ILLUMINA AND**
                                             **SOLEXA'S MOTION TO EXCLUDE**
21            Plaintiffs/Counterclaim Defendants,   **THE TESTIMONY OF ANNELISE E.**
                                             **BARRON, PH.D. REGARDING**
22   v.                                      **"THICKNESS" LIMITATIONS**

23   ILLUMINA, INC. and SOLEXA, INC.,        **[FILED UNDER SEAL]**

24            Defendants/Counterclaim Plaintiffs.

25                                           Date:        January 17, 2012
                                             Time:        2:30 p.m.
26                                           Courtroom:   2
                                             Judge:       Hon. Cathy Ann Bencivengo

27

28

1
## TABLE OF CONTENTS

2
**Page(s)**

3 TABLE OF AUTHORITIES ................................................................................................. ii

4 I. PRELIMINARY STATEMENT ................................................................................ 1

5 II. LEGAL STANDARD .............................................................................................. 2

6 III. FACTUAL BACKGROUND .................................................................................. 2

7     A. Dr. Barron's Qualifications ............................................................................ 2

8     B. Thickness of the Polyacrylamide Layer ....................................................... 3

9 IV. ARGUMENT ........................................................................................................... 4

10     A. Dr. Barron's Opinion Regarding the Thickness of the Polyacrylamide
Layer is Well Supported and Based on Acceptable Methodology .......................... 4

11

12         1. Use of TEM to Measure Thickness ............................................. 5

13         2. "Distortion" Due to Sample Preparation ..................................... 7

14         3. Use of Anti-DNA Immunostaining ........................................... 10

15 V. CONCLUSION ...................................................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **Table of Authorities**

3

**Page(s)**

4

CASES

5

*350 W.A. LLC v. Chubb Group of Ins.*,
No. 05CV75 WQH (CAB), 2007 WL 4365502 (S.D. Cal. Dec. 5, 2007) ............................... 2

6

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
222 F. Supp. 2d 423 (S.D.N.Y. 2002) .................................................................................... 11

7

*Bergen v. F/V St. Patrick*,
816 F.3d 1345 (9th Cir. 1987) .................................................................................................. 2

8

9

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................................................................................................................. 2

10

*Lucent Techs., Inc. v. Microsoft Corp.*,
837 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................................................... 2

11

12

OTHER AUTHORITIES

13

Fed. R. Evid. 702 ........................................................................................................................... 2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Doc#: US1:8302313v1

11-cv-00703-CAB (DHB)

1    **I.      PRELIMINARY STATEMENT**

2          Illumina's motion is based on a fundamental misperception of the proper role of *Daubert*.

3    As is apparent from Illumina's brief, and will be apparent from this brief, the dispute between the

4    parties is one of scientific fact:   what is the thickness of a layer of polyacrylamide gel in the

5    Illumina accused products?   Illumina's motion seeks to prevent Plaintiffs' expert, Dr. Annelise

6    Barron, from testifying on this subject because Illumina believes that her opinion is wrong.   The

7    purpose of *Daubert* however is not to exclude evidence with which a party disagrees; it is to

8    prevent pseudo-experts from advancing theories that have no reliable scientific basis.   Here, there

9    is no conceivable argument that Dr. Barron falls in that latter category.   She is a Professor at

10   Stanford University and a leading scientist in the exact area of science at issue here.   Moreover,

11   the experimental techniques on which she relies—for example, transmission electron microscopy

12   ("TEM")—are well-known and accepted methods for determining thickness of substances such as

13   polyacrylamide.   Indeed, Illumina tacitly concedes this with respect to the TEM technique, stating

14   for example "the issue here is not whether TEM *in general* is a scientifically tested and accepted

15   methodology."   [Opening Br. (Doc. No. 328-1) at 7 (emphasis in original).]

16         Instead, Illumina's motion is based on a series of accusations that Dr. Barron failed to

17   carry out her techniques in an appropriate way.   Naturally, Plaintiffs disagree with this assertion:

18   Dr. Barron's results show the thickness of the polyacrylamide layer to be essentially identical to

19   that reported in Illumina's contemporaneous business records (which Illumina also now tries to

20   disown), while the tests performed by Illumina's expert purport to show that the layer is one

21   hundred times thinner and thus, according to Illumina, outside the scope of the asserted claims.

22         Stepping back and viewing the situation objectively, it is the opinion of Illumina's

23   expert—not the opinion of Dr. Barron—that appears inconsistent with the real-world facts.

24   Nonetheless, Plaintiffs have not moved to exclude the opinion of Illumina's expert on the

25   thickness of the polyacrylamide gel because such is not the purpose of *Daubert*.   Here we have

26   two experts who have each applied experimental techniques to measure a key parameter and have

27   come up with significantly different results.   This is exactly the situation in which the dispute

28   should be submitted to the finder of fact for resolution.   Illumina's motion boils down to nothing

1

1   more than an attempt to exclude relevant evidence simply because Illumina disagrees with it.

2   That is not the purpose of *Daubert* and the motion should be denied.

3   **II.      LEGAL STANDARD**

4          Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence if "(a) the

5   expert's scientific, technical, or other specialized knowledge will help the trier of fact to

6   understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

7   facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

8   expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702;

9   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The requirement of Rule 702

10  "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the

11  court believes one version of the facts and not the other." *Lucent Techs., Inc. v. Microsoft Corp.*,

12  837 F. Supp. 2d 1107, 1123 (S.D. Cal. 2011).  The law is clear that "the weakness [or strength] in

13  the underpinnings of expert opinions may be developed upon cross-examination, as such

14  weakness [or strength] goes to the weight and credibility of the testimony as opposed to its

15  admissibility." *350 W.A. LLC v. Chubb Group of Ins.*, No. 05CV75 WQH (CAB), 2007 WL

16  4365502, at *21 (S.D. Cal. Dec. 5, 2007) (citing *Bergen v. F/V St. Patrick*, 816 F.3d 1345, 1352

17  n.5 (9th Cir. 1987)) (internal quotes omitted).  As the Supreme Court noted, "vigorous cross-

18  examination, presentation of contrary evidence, and careful instruction on the burden of proof"

19  are the "traditional and appropriate means" of challenging evidence that a party considers

20  inaccurate. *Daubert*, 509 U.S. at 596.

21  **III.     FACTUAL BACKGROUND**

22          **A.      Dr. Barron's Qualifications**

23          Dr. Barron has been a professor for over 15 years.  She is currently the W.M. Keck

24  Associate Professor of Bioengineering at Stanford University.  Prior to her current position, Dr.

25  Barron was a professor of chemical and biological engineering at Northwestern University.  Her

26  research and expertise have focused on four particular areas: (1) polymer, co-polymer, and

27  hydrogel physics and chemistry, (2) the biophysics of DNA molecules in aqueous salt solutions;

28  (3) molecular biologic manipulations of DNA by methods such as PCR; and, (4) the behavior of

1   DNA molecules within polyacrylamide solutions and hydrogels.  [Declaration of Robert Lin in

2   support of Memorandum of Points and Authorities in Opposition to Illumina and Solexa's Motion

3   to Exclude Testimony of Annelise E. Barron, Ph.D. regarding "Thickness" Limitation (hereinafter

4   "Lin Decl.") Exh. 1 (8/3/2012 Barron Report) at ¶ 4; *see also id.* at ¶¶ 4-13 (providing further

5   details of Dr. Barron's qualifications).]   Her laboratory specializes in the design, chemical

6   synthesis, rigorous purification, and detailed physical characterization of acrylamide-based,

7   water-soluble polymers, with the goal of developing enhanced DNA sequencing technologies.  *Id.*

8   at 7.  Also, Dr. Barron has extensive training in mathematics, physics, chemistry (synthetic and

9   biochemistry), biophysics, and biology (molecular and cell).  *Id.* at ¶ 8.  She has broad and deep

10   knowledge of the scientific understanding of DNA sequencing, and the "technical aspects of the

11   cutting-edge instruments" involved in DNA sequencing, which include the "DNA sequencing

12   instruments manufactured and sold by Illumina."  *Id.* at ¶ 10.  Dr. Barron has won numerous

13   honors and awards in this field.  *Id.* at ¶ 11.  Furthermore, she has co-authored more than "128

14   peer-reviewed original research articles, critical review of the scientific literature, and book

15   chapters on technical subjects."  *Id.* at ¶ 13.  Illumina does not dispute that Dr. Barron meets her

16   own and Illumina's requirements for one of ordinary skill in the relevant art.

17       **B.       Thickness of the Polyacrylamide Layer**

18       In Dr. Barron's Opening Expert Report dated August 3, 2012, ████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████████████████████████████████████████

28   ████████████████████████████████████████████

3

1

2

3

4

5

6

7

8

9

10

11

12

13

## IV.   ARGUMENT

### A.   Dr. Barron's Opinion Regarding the Thickness of the Polyacrylamide Layer is Well Supported and Based on Acceptable Methodology

Three of the asserted claims include limitations that the solid matrix——

——be at least 1 micron thick.  [*See* Lin Decl. Exh. 5 ('568 patent) at claims 1 and 2; *see also* Lin Decl. Exh. 6 ('698 patent) at claim 6.]

Both parties have conducted experiments and submitted expert reports regarding the

As noted above, Illumina's attack on Dr. Barron is entirely premised on the assertion that the tests on which she relied were performed wrongly.  This is an inherently factual issue, and in the sections that follow, Plaintiffs respond to each of Illumina's criticisms and show why those criticisms are wrong.  The mere fact of having to engage in this exercise, however, shows why this is not a *Daubert* issue.  For example, a detailed review of whether the use of a particular

solvent was appropriate, or whether the contents of a device were disrupted when it was opened, are not reasons to exclude evidence; rather, they are matters to be explored during cross examination at trial.

In paragraphs 91-99 of her expert report, Dr. Barron reviews three studies conducted to measure the thickness of the polyacrylamide layer in Illumina's flow cells and concludes that ███
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ Although Illumina levels a number of criticisms against the TEM experiments contained in Appendix G (the CSIF Report), none warrant excluding the evidence or testimony.

### 1.    Use of TEM to Measure Thickness

Illumina claims that ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████

Illumina provides no citation or support for these statements and appears to have a fundamental misunderstanding of TEM and microscopy in general. As the text and figures of the CSIF Report make abundantly clear, ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

Doc#: US1:8302313v1

11-cv-00703-CAB (DHB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Doc#: US1:8302313v1

11-cv-00703-CAB (DHB)



**2.    "Distortion" Due to Sample Preparation**

Next, Illumina suggests that distortions and disruptions in the polyacrylamide layer render the TEM imaging unreliable.  [*See* Opening Br. (Doc. No. 328-1) at 4.] █████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████ Submitted herewith is a declaration by Jonathan Mulholland, who is the Director of the CSIF and who performed the

1   TEM experiments, █████████████████████████████████████████

2   ██████████████████████████████████

3       Illumina suggests that alternative sample preparation methodology should have been used

4   but again fails to acknowledge that █████████████████████████████

5   ████████████████████████████████████████  █████████████████

6   ██████████████   ███████████████████████████████████

7   █████████████████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████████████

11  ██████████████████████████████

12      █████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████

14  ████  But Illumina's argument is flawed.  On the one hand, the methodology utilized by the CSIF

15  to prepare the samples is one commonly used by those of skill in the art and has been described in

16  the scientific literature.  *See e.g.*, P. Taupin, *Processing scarce biologic samples for light and*

17  *transmission electron microscopy*, 52(2) European J. of Histochemistry 135 (2008)  [Lin Decl.

18  Exh. 8]; S.M. DePorter, I. Lui, and B.R. McNaughton, *Programmed cell adhesion and growth on*

19  *cell-imprinted polyacrylamide hydrogels*, 8 Soft Matter 10403 and S1 (2012) [Lin Decl. Exh. 9.]

20  On the other hand, Illumina's purported experiments fail to accurately follow the conditions and

21  protocols utilized by the CSIF, as discussed immediately below.

22      Illumina relies on the declaration of Mr. Scott Jacobs, a technician at the BioImaging

23  Center of the Delaware Biotechnology Institute. ███████████████████████

24  █████████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████

26  █████████████████████████████████████████████████████████████

27  █████████████████████████████████████████████████████████████

28  █████████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████████

4 ████████████████████████████████

5     How exactly Illumina believes that Mr. Jacobs' experiments reflect on those conducted by

6 the CSIF is unclear, as none of the conditions used accurately represent those used by the CSIF in

7 its sample processing.  For example, Illumina did not provide Mr. Jacobs with Illumina flow cells

8 to conduct his experiments, despite that the CSIF studies were conducted using commercially-

9 available Illumina flow cells. ████████████████████████████████

10 ██████████████████████████████████████████████████████████████

11 ███   ███████████████████████████████████████████████████████

12 ██████████████████████████████████████████     ██████████████

13 ████████████████████

14     In fact, Mr. Jacobs' experiments appear to have been designed in a manner to exaggerate

15 the sought-after "distortion."  For example, contrary to the methodology used by the CSIF for LR

16 White embedding, ████████████████████████████████████████

17 ██████████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████

22     Illumina's final criticism regarding the CSIF sample preparation procedure is that

23 ██████████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████████

25 ████████████████████████████████████████ Illumina's criticism

26 is ironic in that its own expert, Dr. Czymmek, ██████████████████████

27 ██████████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████████

5 ████████████████████████████████████

6    Finally, Illumina undermines its own motion by acknowledging that its arguments are

7 purely speculative and do not necessarily apply to the experiments in Dr. Barron's report.  For

8 example, Illumina asserts that ███████████████████████████████████████

9 ██████████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████   In sum, Illumina argues that Dr.

14 Barron's testimony regarding the TEM experiments should be excluded based on speculation that

15 there might have been flaws in the methodology.  That is not, and cannot be, the standard under

16 *Daubert*.  *See Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 494 (S.D.N.Y. 2002)

17 ("Each of these [Daubert] objections to Dr. Davies' testing fails for the same reason—every

18 single one represents conjecture based upon theoretically possible sources of error, fails to

19 account for the totality of Dr. Davies' testing, and is divorced from the facts of this case.").

20        **3.    Use of Anti-DNA Immunostaining**

21    Last, Illumina suggests that the TEM studies should be excluded due to a lack of

22 necessary controls.  Illumina repeats its erroneous premise ████████████████

23 ██████████████████████████████████████████████████████████████

24 ██   As discussed above, Illumina's argument in this regard elicits a fundamental

25 misunderstanding of TEM and microscopy in general. ████████████████████████

26 ██████████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████████████

28 ██████████████   ██████████████████████████████████████████████



Putting aside Illumina's erroneous assumption about measuring thickness via TEM, Illumina's other principal argument is that

1    In what can only be described as an exercise in selective interpretation, Illumina then

2    suggests that the CSIF TEM images demonstrate ███████████████████████████████

3    ███████████████████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████ Even a cursory review of the CSIF

6    Report demonstrates Illumina's claim to be spurious.  For example, Illumina states that Figure 20

7    shows ██████████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████████████████████

11   ██████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████████

23   The specificity of the antibody/gold labeling would appear to be well within the bounds of

24   those accepted by the scientific community based on the very references relied upon by Illumina.

25   Figure 2 of the Sarraf article, for example, shows tissue that has been labeled with gold

26   complexed to an antibody.  Just as in the CSIF Report, the vast majority of the gold is localized to

27   discrete regions (called "granules" and designated by triangles in Figure 2) but isolated gold

28   particles can be seen in other areas such as the upper left and lower right quadrants of the figure.

1   [Lin Decl. Exh. 12 (C. Sarraf, 40 Methods in Molecular Medicine 439, Pendleton Decl. Exh. 10)

2   443 (showing small number of gold particles located in the upper left and lower right quadrants).]

3   Illumina's motion appears to demand a level of precision that is inconsistent with the very

4   references it relies on in support of its own argument.

5          In a final attempt to exclude Dr. Barron's opinion, ████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████   Notably, however, Illumina neglects to mention

9   that the ab27156 antibody is commercially marketed as an anti-double stranded antibody and the

10  published literature consistently uses ab27156 to detect double stranded DNA.  *See e.g.*, Boris

11  Fichtman et al., *Inner/Outer Nuclear Membrane Fusion in Nuclear Pore Assembly*, 21 Molecular

12  Biology of the Cell 4197 (2010) [Lin Decl. Exh. 13.]  The manufacturer's technical data sheet

13  does acknowledge that it *can* bind single stranded DNA, but only at an 8-fold lower affinity than

14  double stranded DNA.  [Lin Decl. Exh. 14 (Manufacturer's Specification sheet for Ab27156,

15  Pendleton Decl. Exh. 17) (noting the specific binding affinity for ssDNA is 0.71µM and dsDNA

16  is 0.09µM.).]  Moreover, the data presented does not support such a theory.  ████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████

22  **V.   CONCLUSION**

23         Each party has submitted expert reports regarding the measurement of the thickness of the

24  polyacrylamide layer coating the interior of the accused Illumina flow cells.  The experts disagree

25  as to the thickness of the gel layer.  Dr. Barron has opined that ████████████████

26  ████████████ whereas Dr. Czymmek claims ████████████████████████  At

27  trial the jury should be permitted to hear from the experts and evaluate the evidence presented.

28  Illumina's criticisms amount to nothing more than attorney argument about alternate

Doc#: US1:8302313v1                                    11-cv-00703-CAB (DHB)

1    interpretations of the data presented.  Illumina may dispute the interpretation of the experimental

2    data, but this is a subject for cross-examination—not a basis for exclusion.

3    Dated: December 21, 2012                 Respectfully Submitted,

4

5

                                             By:   /s/ Jenny C. Wu
6                                            Jenny C. Wu

7                                            Bradford Paul Schmidt
8                                            LIFE TECHNOLOGIES CORPORATION
                                             5791 Van Allen Way
9                                            Carlsbad, CA 92008
                                             Telephone:  (760) 603-7200
10

11                                           Nicholas Groombridge (*pro hac vice*)
                                             Catherine Nyarady (*pro hac vice*)
12                                           Peter Sandel (*pro hac vice*)
                                             Jenny C. Wu (*pro hac vice*)
13                                           Rebecca Fett (*pro hac vice*)
                                             Robert Lin (*pro hac vice*)
14                                           PAUL, WEISS, RIFKIND, WHARTON &
                                             GARRISON LLP
15                                           1285 Avenue of Americas
16                                           New York, NY 10019
                                             Telephone: (212) 373-3000
17

18                                           Matthew D. Murphey
                                             TROUTMAN SANDERS LLP
19                                           11682 El Camino Real, Suite 400
                                             San Diego, CA  92130
20                                           Telephone:    (858) 509-6000

21                                           *Attorneys for Plaintiffs*
                                             LIFE TECHNOLOGIES CORPORATION,
22                                           APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
                                             PROTEIN RESEARCH, ALEXANDER
23                                           CHETVERIN, HELENA CHETVERINA, and
24                                           WILLIAM HONE

25

26

27

28

Doc#: US1:8302313v1                                                    11-cv-00703-CAB (DHB)

## CERTIFICATE OF SERVICE

I hereby certify that, on December 21, 2012, a true and correct copy of the document

entitled:

**[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO  ILLUMINA'S MOTION TO EXCLUDE TESTIMONY OF ANNELISE E. BARRON, PH.D. REGARDING "THICKNESS" LIMITATIONS**

was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system

as a result of the electronic filing of these documents.

I also certify that true and correct copies of the following sealed lodged proposed

documents entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA'S MOTION TO EXCLUDE TESTIMONY OF ANNELISE E. BARRON, PH.D. REGARDING "THICKNESS" LIMITATIONS [FILED UNDER SEAL]**

| | |
|---|---|
| Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>5791 Van Allen Way<br>Carlsbad, CA 92008<br>Telephone:  (760) 603-7200<br>Email:<br>bradford.schmidt@lifetech.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |
| Nicholas Groombridge  (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>Peter Sandel (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>Jenny C. Wu  (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue Of Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Email:<br>ngroombridge@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |

Doc#: US1:8302313v1

| | |
|---|---|
| Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone:  (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN & CONNAUGHTON<br>LLP<br>101 Broadway, Ninth Floor<br>San Diego, CA 94304<br>Telephone:  (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for<br>Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com | *Attorneys for<br>Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com | *Attorneys for<br>Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | *Attorneys for<br>Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |

Doc#: US1:8302313v1                                                            11-cv-00703-CAB (DHB)

| | |
|---|---|
| Steven J. Balick<br>Andrew Dieter Cordo<br>Lauren E. Maguire<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>PO Box 1150<br>Wilmington, DE  19899<br>Telephone:  (302) 654-1888<br>Email:<br>sbalick@ashby-geddes.com<br>acordo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>tlydon@ashby-geddes.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the above is true and correct, and that I executed this Certificate of Service on December 21, 2012 at New York, New York.

*s/ Jenny C. Wu*
Jenny C. Wu
E-mail:  JCWu@paulweiss.com