MATTHEW D. MURPHEY (SBN 194111)
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA  92130
Telephone:  (858) 509-6000

BRADFORD PAUL SCHMIDT (SBN 174440)
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA 92008
Telephone: (760) 603-7200

NICHOLAS GROOMBRIDGE (*pro hac vice*)
CATHERINE NYARADY (*pro hac vice*)
PETER SANDEL (*pro hac vice*)
JENNY C. WU (*pro hac vice*)
REBECCA FETT (*pro hac vice*)
ROBERT LIN (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of Americas
New York, NY 10019
Telephone:  (212) 373-3000

*Attorneys for Plaintiffs*
LIFE TECHNOLOGIES CORPORATION,
APPLIED BIOSYSTEMS, LLC, INSTITUTE
FOR PROTEIN RESEARCH, ALEXANDER
CHETVERIN, HELENA CHETVERINA, and
WILLIAM HONE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ILLUMINA, INC. and SOLEXA, INC.,<br><br>Defendants/Counterclaim Plaintiffs. | Case No.  3:11-cv-00703-CAB (DHB)<br><br>**[REDACTED] PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA AND SOLEXA'S RENEWED MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>**[FILED UNDER SEAL]**<br><br>Date:  Jan. 17, 2013<br>Time:  2:30 p.m.<br>Courtroom:  2<br>Judge:  Hon. Cathy Ann Bencivengo |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND ......................................................................3

III.    DISPUTED MATERIAL FACTS ..............................................................4

IV.     STATEMENT OF APPLICABLE LAW ....................................................6

    A.      Anticipation.....................................................................................6

    B.      Obviousness ....................................................................................7

V.      ARGUMENT .............................................................................................8

    A.      Anticipation.....................................................................................8

        1.      Illumina's Motion Failed to Address Several Disputed
              Claim Limitations ................................................................9

             i.      Entrapping.................................................................9

             ii.     Separate, detectable colonies .................................10

             iii.    Cell-free amplification system ...............................11

        3.      Genuine Factual Disputes Exist Regarding the Disclosure
              of Other Key Limitations in the Stapleton References .............12

             i.      Average pore size:...................................................12

             ii.     Heat stable matrix ..................................................15

             iii.    Distributing nucleic acid templates........................16

    B.      Obviousness ..................................................................................20

        1.      More Than Two Limitations Are Missing From the
              Stapleton References...........................................................21

        2.      There Are Disputed Issues of Material Fact Regarding
              Alleged Obviousness Over the Stapleton References..............21

        3.      There Are Disputed Issues of Material Fact Regarding
              Alleged Obviousness Over Spirin.......................................22

        4.      Secondary Considerations Preclude Summary Judgment of
              Obviousness ........................................................................24

VI.     CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atofina v. Great Lakes Chemical Corp.,*
   441 F.3d 991 (Fed. Cir. 2006)............................................................13

*Atlas Powder Co. v. Ireco, Inc.,*
   190 F.3d 1342 (Fed. Cir. 1999)..........................................................13

*Commonwealth Scientific and Indus. Research Organisation v. Buffalo Tech. (USA),*
   542 F.3d 1363 (Fed. Cir. 2008)......................................................8, 22

*Continental Can Co. USA, Inc. v. Monsanto Co.,*
   948 F.2d 1264 (Fed. Cir. 1991).......................................................7, 13

*In re Cruciferous Sprout Litigation,*
   301 F.3d 1343 (Fed. Cir. 2002)..........................................................13

*Elan Pharms., Inc. v. Mayo Found.,*
   346 F.3d 1051 (Fed. Cir. 2003)............................................................7

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.,*
   471 F.3d 1369 (Fed. Cir. 2006)............................................................7

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
   149 F.3d 1309 (Fed. Cir. 1998)............................................................6

*Finisar Corp. v. DirecTV Group, Inc.,*
   523 F.3d 1323 (Fed. Cir. 2008).......................................................7, 8

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
   110 F.3d 1573 (Fed. Cir. 1997)..........................................................21

*Graham v. John Deere Co.,*
   383 U.S. 1 (1966)........................................................................8, 20

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,*
   21 F.3d 1068 (Fed. Cir. 1994).......................................................7, 20

*Int'l Gamco, Inc. v. Multimedia Games Inc.,*
   732 F. Supp. 2d 1082 (S.D.Cal. 2010).............................................8, 24

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,*
   688 F.3d 1342 (Fed. Cir. 2012)..........................................................25

*In re Oelrich,*
   666 F.2d 578 (Fed. Cir. 1981).............................................................7

*Osram Sylvania v. Am. Induction Techs., Inc.,*
   --- F.3d ----, 2012 WL 6200181 (Fed. Cir. 2012).............................21, 24

*Sandt Tech., Inc. v. Resco Metal and Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001)...........................................................................24

*Sanofi-Synthelabo v. Apotex, Inc.*,
   550 F.3d 1075 (Fed. Cir. 2008)..............................................................................6

*Schumer v. Lab. Computer Sys.*,
   308 F.3d 1304 (Fed. Cir. 2002)..............................................................................6

*Single Chip Sys. v. Intermec IP Corp.*,
   Case No. 04-cv-1517, 2006 WL 4660129 (S.D. Cal. Nov. 6, 2006)....................6, 7

*Transclean Corp. v. Bridgewood Services, Inc.*,
   290 F.3d 1364 (Fed. Cir. 2002).........................................................................7, 13

*Trimed, Inc. v. Stryker Corp.*,
   608 F.3d 1333 (Fed. Cir. 2010).......................................................................6, 8, 24

*Trintec Indus., Inc. v. Top-USA Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002).......................................................................14, 15

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988)................................................................................7

*William Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
   683 F.3d 1356 (Fed. Cir. 2012)............................................................................24

*Xerox Corp. v. 3Com Corp.*,
   458 F.3d 1310 (Fed. Cir. 2006)..............................................................................6

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
   522 F.3d 1348 (Fed. Cir. 2008)..............................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ................................................................................................6

iii

Life Technologies Corporation, Applied Biosystems, LLC, William Hone, Helena Chetverina, and Alexander Chetverin (collectively, "Plaintiffs") respectfully submit this memorandum of points and authorities in opposition to the motion of Illumina, Inc. and Solexa, Inc. (collectively, "Illumina") for summary judgment of invalidity of U.S. Patent Nos. 5,646,478, 5,958,698, and 6,001,568 (collectively, the "Chetverin Patents").

## I.    INTRODUCTION

Illumina moves for summary judgment that the Chetverin Patents are anticipated by two patent documents from its paid fact witness, Dr. Marilyn Stapleton.[1]  Illumina previously filed a nearly identical motion, arguing that the Chetverin Patents were anticipated by these same two references.  It took the Court only three short paragraphs to address Illumina's motion the first time, recognizing that the issue is a straight-forward factual dispute.  [*See, e.g.,* Doc. No. 279 at 4 ("Anticipation is a question of fact and the disputes between the parties as to what the Stapleton 1991 Application discloses are material.").]

Nothing has changed since the first time the Court denied this motion except that the parties have further locked horns on these disputes.  Illumina filed three expert reports addressing invalidity.  Plaintiffs' expert Dr. Jeremy Edwards filed a 78-page report rebutting Illumina's arguments, expressly stating that the Stapleton References do not disclose certain elements of the Chetverin Patent claims.  And all of this is in addition to the evidence already submitted by Plaintiffs which the Court found sufficient to show there were genuine disputes of material fact.  This "battle of the experts" is the epitome of a situation in which disputed questions of fact preclude summary judgment.  It is abundantly clear, as the Court recognized, that the parties have a series of genuine and material disputes on the factual issue of anticipation.

There could not be clearer examples of the factual disagreements between the parties than Illumina's repeated statements in its motion that Plaintiffs' positions are "false."  [*See* Doc. No. 323-1 at 1:16 ("This assertion is false."); 1:22 ("This is also false."); 7:22 ("This position is

---

[1] The two patent documents are (1) WO 91/07486 (the "Stapleton PCT") and (2) U.S. Patent No. 5,451,500 (the "'500 Patent") (Stapleton PCT and '500 Patent collectively, the "Stapleton References").

1

untenable…").]   Illumina's disagreement with the positions taken by Plaintiffs is the very definition of a factual dispute.  Illumina's current motion employs the exact same tactic as its predecessor—Illumina disagrees with Plaintiffs' experts and disregards their opinions in order to argue there is no dispute.  While Illumina may disagree with Plaintiffs' positions, it cannot simply characterize its own version of the facts as "undisputed."

Illumina also moves for summary judgment that the Chetverin Patents are obvious over the Stapleton References, either alone or in combination with a publication by Spirin et al. entitled "Protein Biosynthesis and the Prospects of Cell-Free Technology," *Priroda*, 1991, No. 5, pp. 10-19 (the "Spirin Reference").  Illumina's inclusion of obviousness does not help its cause. While the ultimate conclusion of obviousness is an issue of law, obviousness is based on factual underpinnings, some of which are similar to those of anticipation and others are very different (like secondary considerations).  Regardless of the similarities and differences compared to anticipation, the factual underpinnings for obviousness are in dispute, at least because of the shortcomings of the Stapleton Reference, as Dr. Edwards reported and testified.

The proposed application of the Spirin Reference against the Chetverin Patent claims similarly presents clear questions of fact.  The Spirin Reference was part of Illumina's prior motion.  At that point, Illumina alleged that the Spirin Reference anticipated the asserted claims. But the Court found that there were genuine disputes of fact as to what the Spirin Reference disclosed and denied Illumina's motion.  Recasting the motion as one of obviousness, Illumina merely acknowledges that Spirin does not anticipate the Chetverin Patents.  All the same facts regarding the Spirin Reference that were in dispute before remain in dispute today, and additional factual disputes (*e.g.*, the existence of secondary considerations) are now material too.

Ultimately, Illumina now asks the Court to expend unnecessary resources and revisit an issue that has already been decided.  As Plaintiffs will demonstrate, substantial evidence has been presented showing that the Chetverin Patents are not anticipated by the Stapleton References and are not obvious in view of the Stapleton and Spirin References.  In addition to the evidence presented during the first round of briefing last year, which the Court found to create a genuine dispute, Plaintiffs have presented still further evidence that shows the issue of

2

1  invalidity is disputed.  For these reasons, Plaintiffs respectfully request that the Court deny

2  Illumina's motion for summary judgment of invalidity.

3  **II.    FACTUAL BACKGROUND**

4         A background description on nucleic acid amplification and the Chetverin Patents was

5  provided in Plaintiffs' original opposition to this motion.  [Doc. No. 207 at 2-4.]  To avoid

6  duplication, Plaintiffs fully incorporate this background description herein and will only briefly

7  address background.

8         Nucleic acids, such as deoxyribonucleic acid (DNA) and ribonucleic acid (RNA) are

9  chemicals that carry the genetic information necessary for life.  Because different nucleic acids

10 encode for different proteins, some beneficial, some harmful, scientists have long sought

11 methods of assaying or characterizing the different nucleic acids present in a given cell or

12 organism.  However, because it is difficult to detect single copies of a nucleic acid molecule,

13 methods have been developed whereby many identical copies of a nucleic acid can be made—

14 this is often referred to as "amplifying" the nucleic acid.  In the late 1980's a number of different

15 methods for replicating DNA were known, such as polymerase chain reaction (PCR), RNA

16 replication using viral RNA-directed RNA polymerases (VRP) and isothermal multienzyme

17 amplification (3SR).  [*See* Declaration of Robert Lin in support of Plaintiffs' Memorandum of

18 Points and Authorities in Opposition to Illumina and Solexa's Renewed Motion for Summary

19 Judgment of Invalidity (hereinafter "Lin Decl.") Exh. 1 ('478 Patent) at 1:16-3:67.]  Each of

20 these methods was performed in solution such that the nucleic acids to be amplified (also called

21 the templates) and the resulting amplified nucleic acid products were free to migrate throughout

22 the solution.  *Id*.  The problem that arose – a problem solved by the Chetverins' invention was

23 that amplification of such mixed samples (containing many different non-identical nucleic acids)

24 would result in complex mixtures of amplification products.  The Chetverins conceived of a

25 method and means by which to sequester individual templates and their associated amplification

26 copies in separate zones and to constrain them from migrating—thus forming separate colonies

27 consisting of multiple copies of each template.  *Id*. at Fig. 2a.  The ability to form such clonal

28

3

1  populations of identical molecules allowed for the analysis of individual nucleic acids originally

2  present in the sample, separate from the other nucleic acids in the sample.

3  The Stapleton References are directed to an entirely different problem than that which the

4  Chetverin Patents solved.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 54.]  The Stapleton

5  References are clear that they do not address how to amplify individual molecules to create

6  isolated clonal populations of identical molecules.  For example, the Stapleton PCT, at 39:10-14,

7  states "It is obvious that the object of the invention is not to retain amplification targets at their

8  site of synthesis, but to make the matrix a scaffold so that amplified molecules spread enough

9  from their templates for further amplification."  *Id*.

10  ## III.    DISPUTED MATERIAL FACTS

11  Illumina chose to not provide the Court with a statement of undisputed facts.  However,

12  even a cursory review of the expert reports submitted in this case, combined with the extensive

13  document and deposition evidence and the parties' original briefing on the issue, reveals

14  extensive disputed issues of material fact related to the Stapleton References.  These disputes are

15  addressed in more detail below, but the fundamental points of disagreement are as follows.

16  1.    Plaintiffs dispute that the Stapleton References disclose a matrix that entraps the

17  amplification system or products.  [*See, e.g.*, Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶

18  30-33; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 23; Lin Decl. Exh. 2 (8/31/2012

19  Edwards Report) at ¶¶ 68-71; Lin Decl. Exh. 3 (8/31/2012 Barron Report) at ¶¶ 33-38; Lin Decl.

20  Exh. 4 (Stapleton PCT) at 39:10-14.]

21  2.    Plaintiffs dispute that the Stapleton References disclose "separate, detectable

22  colonies" as required by the asserted claims.  [*See, e.g.*, Doc. No. 207-24 (4/27/2011 Chetverin

23  Decl.) at ¶¶ 26-27; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 19; Lin Decl. Exh. 2

24  (8/31/2012 Edwards Report) at ¶¶ 66, 72-73.]

25  3.    Plaintiffs dispute that the Stapleton References disclose a cell-free amplification

26  system.  [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 74; Lin Decl. Exh. 5

27  (9/27/2012 Edwards Deposition Tr.) at 130:9-132:6, 135:13-136:17, 145:8-15, 149:13-150:12.]

28

4

4.      Plaintiffs dispute that the Stapleton References disclose matrices having the average pore size required by the asserted claims.   [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 54-57, 68-71; Lin Decl. Ex. 4 (Stapleton PCT) at 19:15-33, 25:1-15; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶¶ 22-24; Lin Decl. Exh. 6 (ILMN_015100) at ILMN_0015103; Lin Decl. Exh. 7 (9/21/2012 Backman Deposition Tr.) at 58:3-11.]

5.      Plaintiffs dispute that the Stapleton References disclose a heat-stable matrix as required by the asserted claims.   [*See, e.g.*, Lin Decl. Exh.  4 (Stapleton PCT) at 25:13-15, 45:18-22, 46:5-12; Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 68-70; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 30-33; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 23; Lin Decl. Exh. 3 (8/31/2012 Barron Report) at ¶¶ 39-40; 12/21/2012 Edwards Decl. at ¶ 36.]

6.      Plaintiffs dispute that the Stapleton References disclose distributing nucleic acid templates as required by the asserted claims.   [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 58-67; Lin Decl. Exh. 5 (9/27/2012 Edwards Deposition Tr.) at 134:8-17, 144:6-18, 208:6-15; Lin Exh. 4 (Stapleton PCT) at 39:21-34; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 25-29; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 13; Lin Decl. Exh. 8 (10/8/2010 Stapleton Deposition Tr.) at 155:19-21.]

7.      Plaintiffs dispute the scope and content of the Stapleton References (including as set forth in points 1-6 above) and the Spirin Reference.   [See, e.g., Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 151-160; Lin Decl. Exh. 9 (4/1/2011 Spirin Deposition Tr.) at 46:3-49:4, 55:13-56:16; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 11-13, 16, 20-24.]

8.      Plaintiffs dispute that there was any reason or motivation to modify the disclosure of the Stapleton References, or to combine the Stapleton References and Spirin Reference, so as to arrive at the subject matter of the asserted claims.   [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 191; Lin Decl. Exh. 5 (9/27/2012 Edwards Deposition Tr.) at 130:9-132:6, 135:13-136:17, 145:8-15, 149:13-150:12.]

9.      Plaintiffs dispute Illumina's arguments regarding secondary considerations of non-obviousness, including whether the success of Illumina's commercial products is attributable to the invention of the asserted claims or other factors.   [*See, e.g.*, Lin Decl. Exh. 2

5

1   (8/31/2012 Edwards Report) at ¶¶ 192-196; Lin Decl. Exh. 10 (8/3/2012 Edwards Decl. ISO

2   Davis Report) at ¶¶ Section II 5-11.]

3   **IV.    STATEMENT OF APPLICABLE LAW**

4           Summary judgment is only proper if there are no genuine issues as to any material fact.

5   *See* Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of material fact, the

6   Federal Circuit has made clear that "the evidence [must be viewed] in a light most favorable to

7   the party opposing the motion with doubts resolved in favor of the opponent."  *Ethicon Endo-*

8   *Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998); *see also Schumer v.*

9   *Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("On summary judgment, all

10  justifiable inferences are made in favor of the nonmovant.").  "Because patents are presumed

11  valid, 'a moving party seeking to invalidate a patent at summary judgment must submit such

12  clear and convincing evidence of facts underlying invalidity that no reasonable jury could find

13  otherwise.'"  *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340 (Fed. Cir. 2010) (quoting *SRAM*

14  *Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006)).

15          **A.    Anticipation**

16          As this Court recognized when denying Illumina's first attempt at this motion,

17  anticipation is a question of fact and a motion for summary judgment must be denied where there

18  is a factual dispute as to whether the asserted prior art in fact discloses each of the elements in

19  the claim.  Doc. No. 279 at 4 (order denying summary judgment of invalidity based in part on the

20  Stapleton References and the Spirin Reference); *see also Xerox Corp. v. 3Com Corp.*, 458 F.3d

21  1310 (Fed. Cir. 2006).

22          "An anticipation analysis is a two-step inquiry:  1) construction of the claim language as

23  a matter of law; and 2) comparing the construed claims and the prior art by a finder of fact."

24  *Single Chip Sys. v. Intermec IP Corp.*, Case No. 04-cv-1517, 2006 WL 4660129, at *4 (S.D. Cal.

25  Nov. 6, 2006) (citing *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998)).

26  Invalidation of a patent on grounds of anticipation "requires that every element and limitation of

27  the claim was previously described in a single prior art reference, either expressly or inherently,

28  so as to place a person of ordinary skill in possession of the invention."  *Sanofi-Synthelabo v.*

6

*Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008); *see also Single Chip*, 2006 WL 4660129, at *4.  Mere disclosure of each element is, however, in and of itself insufficient—"anticipation requires the presence in a single prior art disclosure of all elements of the claimed invention arranged as in the claim." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).

Whether a claim element is inherent in the prior art is a question of fact.  *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006).  "Inherency … may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Oelrich*, 666 F.2d 578, 581 (Fed. Cir. 1981).  Thus, "anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation." *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis original); *see also Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991) (it must be "clear that the missing descriptive matter is necessarily present in the thing described in the reference").

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate." *Elan Pharms., Inc. v. Mayo Found.*, 346 F.3d 1051, 1054 (Fed. Cir. 2003).  In order to be enabling, "the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation." *Id*. (*quoting Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)).  The factors relevant to whether experimentation is undue include:  the quantity of experimentation that was actually needed, the amount of guidance provided by the reference, the presence or absence of actual examples of the experimental procedure, the state of knowledge already available concerning the subject matter at issue, and the predictability or unpredictability in the specific area of science or technology. *See, e.g., In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

### B.    Obviousness

"Obviousness is a question of law based upon underlying factual determinations." *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994).  Among the underlying facts that must be analyzed are:  1) the scope and

7

content of the prior art; 2) the differences between the prior art devices and the claimed invention; 3) the level of ordinary skill in the art; and 4) objective considerations, such as commercial success, long felt need, failure of others, and copying. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). "[S]econdary considerations, when present, must be considered in determining obviousness." *TriMed, Inc.*, 608 F.3d at 1342. "Such evidence of these secondary considerations may give rise to genuine issues of material fact and preclude summary judgment of obviousness." *Int'l Gamco, Inc. v. Multimedia Games Inc.*, 732 F. Supp. 2d 1082, 1106 (S.D.Cal. 2010) (finding "a genuine issue of material fact as to the relevant commercial success as an indication of non-obviousness sufficient to defeat summary judgment"). Additionally, whether there is a motivation to combine prior art references is an issue of fact. *See Commonwealth Scientific and Indus. Research Organisation v. Buffalo Tech. (USA)*, 542 F.3d 1363, 1376 (Fed. Cir. 2008) (vacating district court grant of summary judgment of obviousness based on "factual issue as to the motivation to combine prior art references").

## V.   ARGUMENT

### A.   Anticipation

In order to show that a prior art reference anticipates a challenged claim, the challenger must prove, by clear and convincing evidence, that each and every element of the challenged claims is disclosed by a single prior art reference with all elements of the claimed invention arranged as in the claim. *See Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) ("Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference."); *Finisar*, 523 F.3d at 1334. For this Court to grant summary judgment of anticipation, Illumina must prove that, drawing all reasonable inferences in favor of Plaintiffs, there is no genuine issue of material fact with respect to whether the Stapleton References: (i) properly qualify as prior art against the Chetverin Patents;[2] and (ii) disclose each and every limitation of the Chetverin Patents arranged as in the

---

[2] For purposes of this motion, Plaintiffs address both the Stapleton PCT and the '500 Patent as the "Stapleton References" because their disclosures are virtually identical. However, as the Court recognized in the previous order denying Illumina's motion for summary judgment of invalidity, the parties dispute whether the '500 Patent qualifies as prior art to the Chetverin Patents. D.I. 279 at 4. Plaintiffs continue to assert that the '500 Patent should not be considered for purposes

1   claims.  Illumina's arguments fall far short of meeting this burden.  Plaintiffs and their experts

2   hotly dispute the presence of numerous claim limitations in the Stapleton References.  Indeed,

3   Plaintiffs assert that there is a genuine issue of material fact as to each and every one of the

4   below limitations (among others), although a genuine issue of material fact about any one of

5   these limitations is sufficient for this Court to deny summary judgment of invalidity.

6          1.      Illumina's Motion Failed to Address Several Disputed Claim Limitations

7          Plaintiffs' expert, Dr. Edwards, provided substantial support for his opinion that the

8   Stapleton References do not disclose the following claim elements of the Chetverin Patents: (1)

9   "entrapping," (2) "separate, detectable colonies," and (3) "cell-free amplification system."  [Lin

10  Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 71-74.]  Yet, Illumina fails to even mention these

11  disputed elements in its motion on anticipation.  Illumina's motion thus fails as a matter of law

12  because it does not address "each and every element of the challenged claims."  Moreover, by

13  completely ignoring three of the disputed claim elements, Illumina has fallen well short of its

14  burden of proving, by clear and convincing evidence, that these elements are disclosed in the

15  Stapleton References.  At minimum, however, Plaintiffs' unchallenged evidence creates genuine

16  factual disputes that require the denial of Illumina's motion.

17                  i.      Entrapping:

18         Illumina's motion never addresses the limitations of the Chetverin Patents regarding the

19  amplification system being "entrapped," or "completely entrapped," in the solid matrix, which

20  the Court construed as "keeping within limited zones."  [Doc. No. 132 (Claim Construction

21  Order) at 4.]  Illumina's omission is telling, because in addition to all the other limitations that

22  are not disclosed (or, at least, as to which there is a genuine dispute) the Stapleton References do

23  not disclose entrapping or completely entrapping and accordingly cannot anticipate even if

24  everything in Illumina's motion were treated, for argument's sake, as being correct.  As this

25  Court recognized during Illumina's first attempt at this motion, "there needs to be some evidence

26  that it was understood by people in the art that [the Stapleton References] would achieve

27

28  of this motion because it is not prior art.  To avoid duplication, Plaintiffs incorporate the
    arguments made in D.I. 207 at pp. 14-15.

9

[entrapment]." [Lin Decl. Exh. 11 (4/9/12 Summary Judgment Tr.) at 19:2-8.] To the contrary, as Plaintiffs have already demonstrated, one of skill in the art would not recognize the Stapleton References as disclosing the entrapping limitation. [*See, e.g.*, Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 30-33; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 23; Lin Decl. Exh. 2 (8/31/02102 Edwards Report) at ¶¶ 68-71; Lin Decl. Exh. 3 (8/31/2012 Barron Report) at ¶¶ 33-38 ("impossible for [Dr. Stapleton] to entrap DNA molecules of any size in her gels").] The Stapleton PCT itself demonstrates that it does not meet the "entrapping" limitation:

> It is obvious that the ***object of the invention is not to retain amplification targets at their site of synthesis***, but to make the matrix a scaffold so that amplified molecules spread enough from their templates for further amplification.

[Lin Decl. Exh. 4 (Stapleton PCT) at 39:10-14 (emphasis added).] Here, the Stapleton PCT is clear that the amplification targets are allowed to spread and are not kept within "limited zones." As Plaintiffs discussed at the first argument on this issue, the fact that the matrix of the Stapleton References melts is absolutely antithetical to what the Chetverin Patents aim to accomplish because this melting means that the amplification system cannot be entrapped or completely entrapped. [Lin Decl. Exh. 11 (4/9/12 Summary Judgment Tr.) at 40:12-41:12.]

Thus, there is a clear dispute between the parties as to whether the Stapleton References disclose "distributing" templates and a dispute between the parties as to whether the Stapleton References disclose the "entrapping" limitation. Accordingly, summary judgment is not appropriate.

ii.     Separate, detectable colonies:

Illumina also did not address the "separate, detectable colonies" limitation from the Chetverin Patents. Plaintiffs provided extensive evidence that the Stapleton References do not disclose the formation of separate, detectable colonies. For example, Drs. Edwards and Chetverin submitted declarations during the first round of briefing on this issue that one of ordinary skill in the art would understand the Stapleton References to be disclosing growing colonies of bacteria, not colonies of separate nucleic acids. [Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 26-27; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 19. As Dr. Edwards explained in his expert report, "[w]ithout a proper teaching of how to distribute

10

templates such that they occupy separate zones for amplification, there can be no generation of pure clonal populations of a single nucleic acid template." [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 72-73.] Because the matrix of the Stapleton References melts during amplification, it is thus absolutely antithetical to the formation of separate, detectable colonies. As Dr. Edwards explained, Dr. Stapleton was not concerned with producing separate colonies but instead was focused on amplifying the complete contents of a specimen *in situ*. *Id.* at ¶ 66. Therefore, it is not surprising that the Stapleton References do not disclose distributing templates so as to create "separate, detectable colonies." At minimum, there is a clear dispute between the parties as to whether the Stapleton References disclose distributing templates (*see infra* Section V.A.iv) and consequently a dispute between the parties as to whether the "separate, detectable colonies" limitation is disclosed. Accordingly, summary judgment is inappropriate.

iii.     Cell-free amplification system:

Plaintiffs dispute that the "cell-free amplification system" limitation is disclosed in the Stapleton References. At the very least, this is yet another factual dispute between the parties that precludes summary judgment.

As Dr. Edwards clearly explained, "one of skill in the art would understand the [Stapleton References] to teach away from the use of 'free' DNA" and "[t]he passage on page 39 [of the Stapleton PCT] clearly suggests that the way to avoid diffusion of amplified product is to perform the amplification in situ, inside cells." [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 74.] Dr. Edwards further opined that the "Summary of the Invention [from Dr. Stapleton's PCT application], for example, refers to '*in situ*' detection, which a person of skill in the art would understand to refer to the detection of nucleic acids in the place they are found (i.e., in cells or tissue)." *Id.* at ¶ 65. And contrary to Illumina's statements, Dr. Edwards repeatedly testified at his deposition that the Stapleton References, when read in context, are entirely directed to amplification inside a cell. [*See, e.g.*, Lin Decl. Exh. 5 (9/27/2012 Edwards Deposition Tr.) at 130:9-132:6; 135:13-136:17; 145:8-15; 149:13-150:12.]

3.   Genuine Factual Disputes Exist Regarding the Disclosure of Other Key
Limitations in the Stapleton References

i.   Average pore size:

Illumina's motion does address pore size, and argues that the average pore size claimed in the Chetverin Patents was both expressly and inherently disclosed in Stapleton References. But Illumina conceded the first time it filed this motion that the Stapleton References do not expressly disclose the average pore size limitation:

> Court:  So I want to see where it teaches in this patent application that this 1 percent agarose material has the appropriate pore size.  But it's your position that the person who is skilled in the art would know that because of what it is?
>
> Mr. Ronald Wawrzyn:  I think that's fairly well stated.  I would state it just a little differently.  I would say, first of all, ***pore size is not discussed in the application***.

[Lin Decl. Exh. 11 (4/9/12 Summary Judgment Tr.) at 18:10-18 (emphasis added).]   Mr. Wawrzyn went on to reiterate that pore size "is not found in the application." *Id*. at 18:25-19:1. Although Illumina now disavows its earlier statements to the Court, it still does not, and indeed cannot, point to any language in the Stapleton References that discloses an average pore size for the matrix.

It is clear from the Stapleton References that Dr. Stapleton was focused on providing an all-in-one system for the amplification of a biologic specimen, using agarose gels, in order to run diagnostic testing.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 54-57.]  The PCT states that agarose is preferably used for the amplification matrix and that diagnostic testing—not amplification—could be done by electrophoresis using acrylamide.  [Lin Decl. Exh. 4 (Stapleton PCT) at 19:15-33; 25:1-15.]  In this work, Dr. Stapleton had no need for keeping the molecules in one spot and therefore had no need for a specific pore size.  [*See* Lin Decl. Exh. 4 (Stapleton PCT) at 39:10-14 ("It is obvious that the object of the invention is not to retain amplification targets at their site of synthesis, but to make the matrix a scaffold so that amplified molecules spread enough from their templates for further amplification.").]  Thus, it is unsurprising that no such pore size is disclosed in the Stapleton References.   Illumina's reliance on the Sealy reference (and the argument that it is incorporated by reference) is similarly unavailing. Nowhere in the citations provided by Illumina does Sealy describe an average pore size.  Instead,

12

1   Sealy only discloses DNA fragment size for use in electrophoresis—a concept distinct from the

2   pore size necessary for entrapping nucleic acid templates in the Chetverins' invention.  That

3   Illumina's own experts cannot find any discussion of pore size in Sealy is telling.

4       Although Illumina repeatedly argues that pore size is expressly disclosed, (*id.* at 3-5),

5   nowhere in its entire brief does it point to any reference to pore size in Sealy.  This is because

6   there is none.  In fact, Illumina's entire argument boils down to the assertion that Sealy allegedly

7   discloses the pore size limitation ***inherently*** rather than expressly.  But Illumina's reliance on the

8   doctrine of inherency is misplaced.  The law is clear that for a reference to inherently disclose a

9   limitation, the limitation must be a necessary feature of the reference.  *Transclean*, 290 F.3d at

10  1373; *Continental Can*, 948 F.2d at 1268.  For example, in *Atofina v. Great Lakes Chemical*

11  *Corp.*, the patent claims at issue required a gas phase mixture in contact with a catalyst for "a

12  time between 0.01 and 10 seconds."  The Federal Circuit overturned a district court's findings

13  that a prior art reference inherently disclosed those contact times because the reference did not

14  "necessarily include the unstated [contact times]."  441 F.3d 991, 1000 (Fed. Cir. 2006).  Rather,

15  "[t]he calculations [the defendant] points to as inherently disclosing the contact times are based

16  on the first and second examples in [the prior art reference], which state the diameters and

17  lengths of the reaction tubes and the flow rates, but do not say anything about any contact times."

18  *Id*.  In *In re Cruciferous Sprout Litigation*, the patent claimed broccoli sprouts "rich in

19  glucosinolates" and with "high Phase 2 enzyme-inducing potential."  301 F.3d 1343, 1349 (Fed.

20  Cir. 2002).  The Federal Circuit recognized that "the glucosinolate content and Phase 2 enzyme-

21  inducing potential of sprouts necessarily have existed as long as sprouts themselves," and that

22  the patentee had "done nothing more than recognize properties inherent in certain prior art

23  sprouts."  *Id*. at 1350.  The same argument does not apply to the pore size limitation for the

24  reasons set forth below.

25      First and foremost, there is a dispute between the parties' experts as to what Illumina

26  asserts are the relevant facts.  As the Federal Circuit has recognized, whether a reference

27  inherently discloses a limitation is a factual inquiry.  *See Atlas Powder Co. v. Ireco, Inc*., 190

28  F.3d 1342, 1346 (Fed. Cir. 1999).  Illumina cites to their expert reports, which assert that the

1  Stapleton References entrap nucleic acids, and therefore the Stapleton References therefore must

2  inherently satisfy the claimed pore size range.[3]  But Plaintiffs' expert, Dr. Edwards, disputed this

3  notion, stating that one of ordinary skill would ***not*** understand the Stapleton References to teach

4  entrapping nucleic acids and thus a specific pore size would not be necessary.  [*See, e.g.*, Doc.

5  No. 207-25 (4/27/2011 Edwards Decl.) at ¶¶ 22-24; Lin Decl. Exh. 2 (8/31/2012 Edwards

6  Report) at ¶¶ 68-71.]   Again, Illumina is entitled to dispute Plaintiffs' experts, but it is not

7  entitled to unilaterally declare that there is no dispute.

8         Second, the average pore size claimed in the Chetverin Patents is not a ***necessary*** feature

9  of the Stapleton References.  Despite acknowledging the law on inherency, Illumina's motion

10 never once argues that the claimed pore sizes are a necessary feature of the matrices disclosed in

11 the Stapleton References.  [*See* Doc. No. 323-3 at 3-4.]  This is because, unlike the inherent

12 properties of broccoli sprouts, the claimed pore size is not a necessary feature of the matrices

13 used in the Stapleton References.  If Plaintiffs can show that there is even one example of a gel

14 matrix with pores outside the claimed range then the claimed pore size is, at best, a probability in

15 the Stapleton matrices and Illumina's inherency argument fails.  *Trintec Indus., Inc. v. Top-USA*

16 *Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing

17 descriptive materials is 'necessarily present,' not merely probably or possibly present, in the

18 prior art.").   And Plaintiffs have done exactly that.   Illumina produced a paper entitled

19 "Polyacrylamide Gel Electrophoresis" by A. Chrambach and D. Rodbard, which shows at Figure

20 3 that a certain percentage of gels have pore sizes outside of the range claimed in the Chetverin

21 Patents.  [Lin Decl. Exh. 6 (ILMN_015100) at ILMN_0015103.]  When Illumina's expert was

22 questioned about this article at his deposition, he admitted that it was inconsistent with his

23 arguments on inherency:

> Q.  And it shows quite a number of data points that are below a median radius of
> 2.5 nanometers; correct?

---

[3] In fact, although Illumina must argue that the Stapleton References disclose "entrapping" for
there to even be an inherency argument, Illumina does not provide any evidence that the
Stapleton References in fact do disclose entrapping.  This is more fully addressed at *supra*
Section V.A.i.1.

A.  As the axis is labeled, yes.

Q.  So all of those data points would be gels that fall outside the scope of the range recited in the Chetverin patent claims; correct?

A.  Outside of the range cited in the Chetverin claims?  On the assumption this data is valid, yes.

[Lin Decl. Exh. 7 (9/21/2012 Backman Deposition Tr.) at 58:3-11.]  As Dr. Backman admitted, the pore size range claimed in the Chetverin Patents is not a "necessary" feature of a gel matrix and thus Illumina's inherency argument must fail.  *Trintec*, 295 F.3d at 1295.

It is (or at least was) undisputed that the Stapleton References do not expressly disclose the claimed pore sizes.  It is also clear that the claimed pore size is not a necessary feature of the prior art.  Illumina may disagree, but at the very least this is a disputed factual issue that precludes summary judgment.

ii.     Heat stable matrix:

Illumina itself recognizes that there is a material dispute regarding the "heat-stable matrix" limitation.  D.I. 323-1 (Illumina Br.) at 7 ("Life Tech's experts asserted that the PCT did not disclose a 'heat-stable' matrix").  Illumina goes on to assert that Plaintiffs' expert's position is "untenable," highlighting the fact that there is a dispute over what the Stapleton References disclose.  Plaintiffs provided extensive evidence that the Stapleton References do not disclose any heat-stable matrix.   For example, the Stapleton References only disclose the use of polyacrylamide for electrophoresis, and not as a heat-stable matrix for amplification. [Lin Decl. Exh.  4 (Stapleton PCT) at 25:13-15; 45:18-22; 46:5-12.]  Reviewing the Stapleton References disclosures, Dr. Edwards stated that "a person of ordinary skill in the art would not understand the PCT Application to disclose the use of a 'solid' or 'stable' matrix as required by the claims of the Chetverin Patents."  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 69.]  Moreover, Exhibits B and C to Illumina's motion do not even provide a single reference to polyacrylamide as a "corresponding disclosure" to the heat-stable matrix limitation of the Chetverin Patents.  [Doc. No. 323-3, 323-4.]

Plaintiffs also presented additional evidence that the Stapleton References do not disclose the stable matrix limitation.  [*See, e.g.*, Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 30-33

15

("I conclude that one of skill in the art would not understand that the patent specifications described the amplification of nucleic acids in a solid matrix in a manner claimed by the [Chetverin Patents]."); Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 23 ("the solid matrix disclosed in the Stapleton [References] would not remain stable during amplification"); Lin Decl. Exh. 3 (8/31/2012 Barron Report) at ¶¶ 39-40; 12/21/2012 Edwards Decl. at ¶ 36.]   And contrary to Illumina's assertion, Plaintiffs' expert, Dr. Edwards, specifically stated that "[n]o appropriate 'heat stable' matrix or isothermal amplification protocol is identified" in the Stapleton References, including the polyacrylamide references from Illumina's motion.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 70.]

Additionally, Dr. Stapleton's own statement in the PCT application that a "logical outgrowth of these observations would be to find a matrix material that did not have a sol phase at the denaturation temperature of nucleic acids or use an isothermal amplification protocol" is further evidence that the Stapleton References do not disclose the stable matrix limitation.  [Lin Decl. Exh. 4 (Stapleton PCT) at 39:31-34.]  Put simply, the PCT application demonstrates that Dr. Stapleton had not yet identified a heat-stable matrix at relatively high temperatures and that it would be logical to do so.  This point was made by Plaintiffs' experts during discovery.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 68.  Again, there is clearly a dispute between the parties as to whether the Stapleton References disclose this limitation.   Under these circumstances, summary judgment is inappropriate.

iii.        Distributing nucleic acid templates:

Plaintiffs dispute that the Stapleton References disclose the claimed step of "distributing separate individual nucleic acid template molecules, and have presented extensive evidence, in the form of expert opinion and testimony, that the Stapleton References do not teach this limitation.  [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 58-67.].  Illumina acknowledges at much.  [*See* Opening Br. (Doc. No. 323-1) at 9 ("Life Tech and its experts have argued that the PCT only disclosed amplifying 'cellular' material, which would result in colonies containing contaminating nucleic acids (DNAs and RNAs) rather than the 'clonal' populations claimed by the Chetverins.").]

16

1    Illumina first argues that "Dr. Edwards offered no opinion about the PCT's disclosure of

2    distributing and amplifying plasmid DNA." [Opening Br. (Doc. No. 323-1) at 10:11-12.] This is

3    simply untrue.  Dr. Edwards opined at great length that the Stapleton References, including the

4    language regarding plasmids, did not disclose the claimed "distributing" step.  [*See, e.g.*, Lin

5    Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 58-67.]

6    Illumina's motion contends that the Stapleton PCT Application distributes plasmids

7    because "they are separated from each other and are amplified where they are originally placed."

8    [Opening Br. (Doc. No. 323-1) at 10.]  In fact, the PCT says that is exactly what did **not** happen.

9    The PCT clearly states that "the ability to distinguish individual, positional amplification of

10   original targets diminished as the number of amplification cycles increased when using thermal

11   cycling." [Lin Decl. Exh. 4 (Stapleton PCT) at 39:23-26.]  The PCT states that this was "likely

12   due to the increased diffusion of molecules during the brief phase transition of agarose from gel

13   to sol at the denaturation temperature." *Id*.  In other words, the plasmids were not "amplified

14   where they [were] originally placed" as Illumina argues, but instead diffused throughout the

15   matrix.

16   Dr. Backman argues in his expert report that the Stapleton PCT Application discloses the

17   creation of colonies of plasmids.  [Lin Decl. Exh. 12 (8/3/2012 Backman Report) at ¶ 137.]  But

18   at his deposition, Dr. Backman testified that his usage of the term "colony" does not necessarily

19   require that all of the molecules be the descendant of one single starting molecule.  [Lin Decl.

20   Exh. 7 (9/21/2012 Backman Deposition) at 113:14-115:17.]  This is inconsistent with the

21   Chetverin Patents which require a "colony of said nucleic acid product" where "product" is

22   formed from amplification of "said at least one template." [Lin Decl. Exh. 1 ('478 patent) at

23   23:46-24:3.]  Thus, Dr. Backman's opinions on plasmids do not use or conform to meaning of

24   "colony" provided by the Chetverin Patents.

25   Lastly, Illumina asserts that Dr. Edwards did not address plasmids.  [Opening Br. (Doc.

26   No. 323-1) at 10.]  This is not true.  At his deposition, Dr. Edwards specifically testified that it

27   was his understanding that plasmid DNA would be "inserted into a cell to make copies of a

28   particular gene" and that to make copies you "would insert the plasmid into the cell." *Id.* at

17

208:6-209:16.  Accordingly, Dr. Edwards did not view the amplification of the plasmids as occurring free in the matrix, but rather as occurring within living cells, which is, like much of the disclosure of the Stapleton References, antithetical to the Chetverin invention.

Illumina next argues that the Stapleton References disclose "distributing" something referred to as "plasma"[4] in a manner that would yield distributing nucleic acid molecules as recited in the claims of the Chetverin Patents.  To begin, Illumina concedes that this is the exact same issue already addressed by the Court.  [Opening Br. (Doc. No. 323-1) at 11.]  As before, Illumina takes one sentence from the Stapleton PCT Application out of context and argues that this meets the "distributing" limitation from the Chetverin Patents.  However, the Stapleton References teach the amplification and detection of nucleic acids *in situ*, which is contrary to the invention of the Chetverin Patents.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 66.]  Further, contrary to Illumina's assertion, Dr. Edwards directly addressed the issue of "plasma" as that term is used in the Stapleton References (*see id.* at ¶¶ 61-63) and stated that, even giving Illumina the benefit of the doubt regarding its interpretation of the meaning of that term, he would still disagree that the Stapleton References disclose the claimed distributing step.

- "The acknowledgement that target nucleic acids need not be isolated from non-target nucleic acids is fundamentally different to the requirement in the Chetverin patents that the individual templates be separated." *Id.* at ¶ 61.

- "Given that the preceding paragraph refers to lysing cells and the removal of non-nucleic acid (e.g., cellular) components from the matrix (see the Stapleton PCT Application at 41:7-10) it is not clear that a person of skill in the art would understand the term 'plasma' as used in the context of Example 3 to refer to a cell-free blood fraction." *Id.* at ¶ 62.

- "However, accepting for the sake of argument that the use of the term 'plasma' on page 42 of the Stapleton PCT Application would be understood to mean the cell-free fraction of blood, I nevertheless disagree that one of skill in the art would understand this to disclose the separation of individual templates such that a clonal colony would be formed following amplification." *Id.* at 63.

- "First, there is no indication or teaching that the distribution be sufficient to result in the separation of both target and non-target nucleic acids." *Id.*

_____

[4]   For clarity, Illumina's motion refers to both "plasmids" and "plasma," which, although similar sounding and appearing, are distinguishable and discussed separately.

1    Illumina also complains about "speculation" from Dr. Edwards.  But his report contains

2    no such thing.  Dr. Edwards provided extensive evidence that one of skill in the art would not

3    understand the Stapleton References, including the portion cited in Illumina's motion, to disclose

4    the "distributing" step of the Chetverin Patents.  *Id.* at ¶¶ 58-67.

5    Illumina third argument regarding the "distributing" issue is that the Stapleton References

6    disclose separating viral particles containing single nucleic acids and concludes (incorrectly) that

7    there is no dispute on this point.  Although Illumina relies on deposition testimony by Dr.

8    Edwards (Opening Br. (Doc. No. 323-1) at 12), the portion of his deposition immediately below

9    the portion cited by Illumina makes clear that Dr. Edwards opined that the Stapleton References

10   do not disclose "spreading" (used by Illumina's counsel to be analogous with "distributing")

11   nucleic acids the way the Chetverin Patents claim.  [Lin Decl. Exh. 5 (9/27/2012 Edwards

12   Deposition Tr.) at 134:8-17.]  This is because the Chetverin Patents have a specific requirement

13   of spreading the ***nucleic acid molecules***.  *Id.*  Dr. Edwards explained:  "[The Stapleton

14   References relate to] amplification and detection of nucleic acids in a specimen, such as a cell,

15   tissue sample, virus, or bacteria, (i.e. in situ).  The amplification of nucleic acids inside cells, *in*

16   *situ*, is a useful technique, but it is contrary to the Chetverin invention disclosure of generating

17   'colonies.'"  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 66.]  While the Chetverin

18   Patents are focused on the creation of pure clonal colonies—the reason for the "distributing"

19   step—amplification *in situ* "will result in an amplification product that is contaminated with the

20   other nucleic acids present in the specimen such as the chromosomal DNA or cellular RNA."  *Id.*

21   In sum, it is clear that the parties' experts disagree as to whether any disclosure of the

22   Stapleton references meets the "distributing" limitation from the Chetverin Patents.  Plaintiffs

23   submitted declarations from both Dr. Chetverin and Dr. Edwards in response to Illumina's first

24   attempt at this motion which directly stated that one of skill in the art would not understand the

25   Stapleton References to disclose this limitation.  [*See* Doc. No. 207-24 (4/27/2011 Chetverin

26   Decl.) at ¶¶ 25-29; Doc. No. 207-25 (4/27/2011 Edwards Decl.) at ¶ 13.]   And Plaintiffs

27   presented extensive evidence showing that the Stapleton References are directed to a method for

28   amplification and are not concerned with distributing single molecules or generating clonal

1  colonies of nucleic acid.   [*See, e.g.*, Lin Decl. Exh. 2 (8/31/2012 Edwards Rep.) at ¶ 66.]

2  Testimony from Dr. Stapleton herself confirms this fact.   At her deposition, Dr. Stapleton was

3  asked whether she was able to grow a colony from a single molecule of template—the aim of the

4  "distributing" limitation of the Chetverin Patents.   [Lin Decl. Exh. 8 (10/8/2010 Stapleton

5  Deposition Tr.) at 155:3-21.]   Dr. Stapleton responded that, at the time, she "wasn't doing

6  dilutions to get a single molecule" and would have "invariably started with a population of

7  molecules."   *Id*.  It is clear that the parties disagree as to what the Stapleton References disclose.

8  Because of this dispute, summary judgment is inappropriate.

9  **B.   Obviousness**

10  The only new argument raised by Illumina in this motion is that the asserted claims of the

11  Chetverin Patents are obvious over the Stapleton References either alone or in combination with

12  the Spirin Reference.[5]   Obviousness is a legal issue with underlying factual inquiries.   *See*

13  *Heidelberger*, 21 F.3d at 1071.   Some of these underlying factual inquiries are the differences

14  between the patent and the prior art and the scope and content of the patent and prior art.   *See*

15  *Graham*, 383 U.S. at 17-18.   As detailed at length above, there is a substantial dispute between

16  the parties as to both of these factual inquiries.   For example, Illumina's motion states that Dr.

17  Backman's opinions are based on the level of skill in the art "proposed by Life Tech."   [Opening

18  Br. (Doc. No. 323-1) at 17.]   This is untrue.   In fact, Dr. Edwards and Dr. Backman applied

19  different levels of skill in the art.   [*Compare* Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶

20  52 *with* Lin Decl. Exh. 12 (9/21/2012 Backman Report) at ¶ 38.]   Thus, the parties dispute the

21  factual inquiry into the level of ordinary skill in the art.

22  In addition, the parties dispute the objective evidence of non-obviousness.   Dr. Backman

23  opined that no secondary considerations of non-obviousness applied to the Chetverin Patents.

24  [*See* Lin Decl. Exh. 12 (8/3/2012 Backman Report) at ¶¶ 338-344.]   In response, Plaintiffs'

25  expert, Dr. Edwards, opined that at least commercial success and long-felt need applied to the

26

27  _____
[5] While the obviousness argument is new, Illumina's original motion for summary judgment did

28  assert that the Chetverin Patents were anticipated by the Spirin Reference.   [*See* Doc. No. 172 at 17-19.]   This argument appears to now have been dropped by Illumina.

1   Chetverin Patents.  [*See* Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 192-196.]   Dr.

2   Edwards provided evidence that the commercial success of Illumina's products was tied to the

3   claimed invention.  [*See* Lin Decl. Exh. 10 (8/3/2012 Edwards Decl. ISO Davis Report) at ¶¶

4   Section II 5-11.]   This is prima facie evidence of nexus between the secondary considerations

5   and the Chetverin Patents.  *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573,

6   1579 (Fed. Cir. 1997).  Because of these factual disputes, summary judgment of obviousness is

7   not appropriate.  *See Osram Sylvania v. Am. Induction Techs., Inc.*, --- F.3d ----, 2012 WL

8   6200181, at *8-*10 (Fed. Cir. 2012) (reversing district court's grant of summary judgment of

9   obviousness in part because there was a "disputed issue of fact with respect to the teachings of

10  [the prior art].").

11          1.      More Than Two Limitations Are Missing From the Stapleton References

12          To begin, Illumina incorrectly and inexplicably states that Plaintiffs only assert that two

13  limitations are missing from the Stapleton References.  [Opening Br. (Doc. No. 323-1) at 17.]

14  This is plainly wrong.  Plaintiffs' original opposition to Illumina's motion for summary judgment

15  addressed at least four limitations missing from the Stapleton References.  [*See* Doc. No. 207 at

16  8-13.]   And in support of this opposition, Plaintiffs submitted two declarations that further

17  discussed limitations missing from the Stapleton References.  [*See* Doc. No. 207-23 (4/27/2011

18  Chetverin Decl.); Doc. No. 207-24 (4/27/2011 Edwards Decl.).  Further, Plaintiffs' expert, Dr.

19  Edwards, submitted an expert report addressing at least five limitations missing from the

20  Stapleton References.  [*See* Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at p. i.]  Finally, as is

21  clear from this opposition, Plaintiffs assert that numerous limitations are missing from the

22  Stapleton References.  Because the scope of the prior art is a factual issue and is clearly in

23  dispute, summary judgment is inappropriate.

24          2.      There Are Disputed Issues of Material Fact Regarding Alleged
                    Obviousness Over the Stapleton References
25
            Illumina's arguments that the Stapleton References by themselves render the Chetverin
26
    Patents obvious are simply a restatement of Illumina's arguments on anticipation, which, as
27
    shown above, are all controverted.  Plaintiffs have provided extensive evidence, including the
28

opinions of Dr. Edwards, to rebut these arguments.  Specifically, Dr. Edwards stated that he disagreed with Dr. Backman's assertion that the Chetverin Patents are obvious.  *Id.* at ¶ 190.  Dr. Edwards further stated that the Stapleton References have a very different objective when compared to the Chetverin Patents: the Chetverin Patents are directed to the creation of pure clonal colonies while the Stapleton References are directed to amplification of an entire specimen *in situ*.  *Id.* at ¶¶ 66, 191.  In light of this, Illumina's statement that Dr. Edwards did not address obviousness is simply incorrect.  As detailed above, extensive evidence was provided that one of ordinary skill in the art would not understand the Stapleton References to disclose or render obvious the limitations of the Chetverin Patents.  Again, this dispute focuses on the scope of the asserted art, a factual inquiry.  Because the scope of the asserted art is in dispute, summary judgment is inappropriate.

> ### 3. There Are Disputed Issues of Material Fact Regarding Alleged Obviousness Over Spirin

Third, the combination of the Spirin Reference with the Stapleton References does not render the Chetverin Patents obvious.  As Dr. Edwards explained, Illumina has failed to show a motivation to combine the Stapleton References with the Spirin Reference.  [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 191; *see also Commonwealth Scientific*, 542 F.3d at 1376 (vacating district court grant of summary judgment of obviousness based on "factual issue as to the motivation to combine prior art references").]  Dr. Edwards went on to state that in his opinion the Stapleton References and the Spirin Reference disclose fundamentally different processes and it would not be a simple substitution to switch from one to the other.  Contrary to Illumina's statements, Dr. Edwards repeatedly stated at his deposition that the Stapleton References, when read in context, are entirely directed to amplification inside a cell.  [*See, e.g.*, Lin Decl. Exh. 5 (9/27/2012 Edwards Deposition Tr.) at 130:9-132:6; 135:13-136:17; 145:8-15; 149:13-150:12.]  Thus, the Stapleton References and the Spirin Reference are directed to distinct subject matter and the parties' experts dispute whether one of skill in the art would have been motivated to combine them.

As Plaintiffs fully addressed in their opposition to Illumina's original motion, the Spirin Reference also fails to disclose many of the limitations of the asserted claims. [Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶ 151.]  For example, the Spirin Reference does not disclose the claimed pore sizes, which is not surprising because the Spirin Reference describes a purely hypothetical scheme. [*See* Lin Decl. Exh. 9 (4/1/2011 Spirin Deposition Tr.) at 46:3-49:4; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶ 13.]  Importantly, the Spirin Reference also does not disclose distributing nucleic acid molecules, at least one of which may comprise a template for the amplification system. [*See* Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 21-24.] The Spirin Reference also does not disclose a matrix material suitable for amplification of nucleic acids and does not disclose the thickness of the matrix as required by the Chetverin Patents. [*See id*. at ¶ 12, 20; Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 156-57.]  In addition to not disclosing many of the key elements of the Chetverin Patents, the Spirin Reference would not enable one of skill in the art to practice the claimed invention (as admitted by Dr. Spirin himself). [*See, e.g.*, Lin Decl. Exh. 9 (4/1/2011 Spirin Deposition Tr.) at 47:22-49:4 ("This is just hypothetical scheme.  Up until now it remains our dream."); *id*. at 46:16-18; *id*. at 55:13-56:16; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶¶ 11, 12, 16, 20; Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 152-55, 157-160.]  To the extent that Illumina challenges any of these points, such a challenge merely serves to create additional disputes of material fact.

In addition, as Plaintiffs showed in their prior opposition brief, the Spirin Reference is cumulative of the art that was before the PTO examiner and is expressly referenced in the Chetverin Patents. [*See* Doc. No. 207 at 22-24; Lin Decl. Exh. 9 (4/1/2011 Spirin Deposition Tr.) at 47:22-48:2, 52:6-54:10; Doc. No. 207-24 (4/27/2011 Chetverin Decl.) at ¶ 10; Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 152, 161.][6]  While Illumina is entitled to disagree with Plaintiffs on all of these points, this dispute is one that should be resolved at trial, not on summary judgment.

---

[6] To avoid duplication, Plaintiffs will not repeat these arguments in full but rather incorporate the arguments from Doc. No. 207.

4.    Secondary Considerations Preclude Summary Judgment of Obviousness

Secondary considerations of non-obviousness strongly support denial of Illumina's motion. [See, e.g., Lin Decl. Exh. 2 (8/31/2012 Edwards Report) at ¶¶ 192-196.] Importantly, Illumina does not, and cannot, argue that secondary considerations in this case are anything but a disputed issue of fact. Illumina implicitly acknowledges this dispute by attempting to rebut Dr. Edwards's opinion on commercial success with competing opinions from its own expert. As this Court previously recognized, "[s]uch evidence of these secondary considerations may give rise to genuine issues of material fact and preclude summary judgment of obviousness." *Int'l Gamco*, 732 F. Supp. 2d at 1106 (finding "a genuine issue of material fact as to the relevant commercial success as an indication of non-obviousness sufficient to defeat summary judgment"). While Plaintiffs disagree with Illumina's arguments[7], this dispute is properly resolved at trial and not on summary judgment. In an effort to avoid this clear indication that summary judgment is inappropriate, Illumina implies that this Court does not need to consider secondary considerations because this is a "strong case" of obviousness. But the Federal Circuit has "repeatedly held that evidence of secondary considerations must be considered if present." *TriMed*, 608 F.3d at 1343; *see also OSRAM Sylvania*, 2012 WL 6200181, at *8-*9 ("On remand, the district court must, in the first instance, consider secondary considerations before finding a claim obvious.").

Illumina relies entirely on two cases that are easily distinguishable from the present case. In *William Wrigley Jr. Co. v. Cadbury Adams USA LLC*, there was clear evidence that the synergistic effect which was the basis of novelty was disclosed in the prior art. 683 F.3d 1356, 1362 (Fed. Cir. 2012). In *Sandt Tech., Inc. v. Resco Metal and Plastics Corp.*, the Federal Circuit held that the use of studs, the sole inventive aspect, was well known in the art and thus was not a nonobvious invention. 264 F.3d 1344, 1355 (Fed. Cir. 2001). In contrast to these cited cases, Plaintiffs have shown that there are numerous differences between the Chetverin Patents

24

and the Stapleton References and Spirin Reference and that one of skill in the art would not be motivated to combine these references to arrive at the invention of the Chetverin Patents.  In situations like this, secondary considerations provide further support for the novelty and nonobviousness of the invention.  *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1371 (Fed. Cir. 2012) (stating that objective evidence "cuts against the view that the claimed inventions were an obvious combination of known elements from the prior art").

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs submit that Illumina has again wholly failed to meet its burden for summary judgment and respectfully request that the Court again deny this motion.

1    Dated:  December 21, 2012              Respectfully Submitted,

2

3
                                           By:   /s/ Jenny C. Wu
4                                          Jenny C. Wu

5                                          Bradford Paul Schmidt
                                           LIFE TECHNOLOGIES CORPORATION
6                                          5791 Van Allen Way
                                           Carlsbad, CA 92008
7                                          Telephone:  (760) 603-7200

8
                                           Nicholas Groombridge (*pro hac vice*)
9                                          Catherine Nyarady (*pro hac vice*)
                                           Peter Sandel (*pro hac vice*)
10                                         Jenny C. Wu (*pro hac vice*)
                                           Rebecca Fett (*pro hac vice*)
11                                         Robert Lin (*pro hac vice*)
12                                         PAUL, WEISS, RIFKIND, WHARTON &
                                           GARRISON LLP
13                                         1285 Avenue of Americas
                                           New York, NY 10019
14                                         Telephone:  (212) 373-3000

15                                         Matthew D. Murphey
16                                         TROUTMAN SANDERS LLP
                                           11682 El Camino Real, Suite 400
17                                         San Diego, CA  92130
                                           Telephone:  (858) 509-6000
18
                                           *Attorneys for Plaintiffs*
19                                         LIFE TECHNOLOGIES CORPORATION,
                                           APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
20                                         PROTEIN RESEARCH, ALEXANDER
                                           CHETVERIN, HELENA CHETVERINA, and
21                                         WILLIAM HONE

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that, on December 21, 2012, a true and correct copy of the document entitled:

3

4

**[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

5

was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system

6

as a result of the electronic filing of these documents.

7

8

I also certify that true and correct copies of the following sealed lodged proposed documents

9

entitled:

10

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY [FILED UNDER SEAL]**

12

| | |
|---|---|
| Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>5791 Van Allen Way<br>Carlsbad, CA 92008<br>Telephone:  (760) 603-7200<br>Email:<br>bradford.schmidt@lifetech.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE FOR<br>PROTEIN RESEARCH, ALEXANDER<br>CHETVERIN, HELENA<br>CHETVERINA, and WILLIAM HONE |
| Nicholas Groombridge  (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>Peter Sandel  (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>Jenny C. Wu  (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue Of Americas<br>New York, NY 10019<br>Telephone:  (212) 373-3000<br>Email:<br>ngroombridge@paulweiss.com<br>cnyarady@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE FOR<br>PROTEIN RESEARCH, ALEXANDER<br>CHETVERIN, HELENA<br>CHETVERINA, and WILLIAM HONE |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone:  (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN &<br>CONNAUGHTON LLP<br>101 West Broadway, Ninth Floor<br>San Diego, CA 92010<br>Telephone:  (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>Amanda Antons *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com<br>aantons@marshallip.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com<br>ron@wawrzynlaw.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

2

| | |
|---|---|
| Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |
| Steven J. Balick<br>Andrew Dieter Cordo<br>Lauren E. Maguire<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>PO Box 1150<br>Wilmington, DE  19899<br>Telephone:  (302) 654-1888<br>Email:<br>sbalick@ashby-geddes.com<br>acordo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>tlydon@ashby-geddes.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the above is true and correct, and that I executed this Certificate of Service on December 21, 2012 at New York, New York.

/s/ Jenny C. Wu
Jenny C. Wu
E-mail:  JCWu@paulweiss.com

3

11-cv-00703-CAB (DHB)