1  MATTHEW D. MURPHEY (SBN 194111)
   TROUTMAN SANDERS LLP
2  11682 El Camino Real, Suite 400
   San Diego, CA  92130
3  Telephone: (858) 509-6000

4  BRADFORD PAUL SCHMIDT (SBN 174440)
   LIFE TECHNOLOGIES CORPORATION
5  5791 Van Allen Way
   Carlsbad, CA 92008
6  Telephone:  (760) 603-7200

7  NICHOLAS GROOMBRIDGE (*pro hac vice*)
   CATHERINE NYARADY (*pro hac vice*)
   PETER SANDEL (*pro hac vice*)
8  JENNY C. WU (*pro hac vice*)
   REBECCA FETT (*pro hac vice*)
9  ROBERT LIN (*pro hac vice*)
   PAUL, WEISS, RIFKIND, WHARTON &
10 GARRISON LLP
   1285 Avenue of Americas
11 New York, NY 10019
   Telephone: (212) 373-3000

12 Attorneys for Plaintiffs/Counterclaim Defendants
   LIFE TECHNOLOGIES CORPORATION,
13 APPLIED BIOSYSTEMS, LLC, INSTITUTE
   FOR PROTEIN RESEARCH, ALEXANDER
14 CHETVERIN, HELENA CHETVERINA, and
   WILLIAM HONE
15

16              UNITED STATES DISTRICT COURT

17            SOUTHERN DISTRICT OF CALIFORNIA

18 LIFE TECHNOLOGIES CORPORATION,        Case No. 3:11-cv-00703-CAB (DHB)
   APPLIED BIOSYSTEMS, LLC, INSTITUTE
19 FOR PROTEIN RESEARCH, ALEXANDER       **[REDACTED] PLAINTIFFS' REPLY IN**
   CHETVERIN, HELENA CHETVERINA, and     **SUPPORT OF THEIR MOTION FOR NO**
20 WILLIAM HONE,                         **INEQUITABLE CONDUCT DURING**
                                         **THE PROSECUTION OF THE**
21         Plaintiffs/Counterclaim Defendants,   **CHETVERIN PATENTS**

22 v.                                    **[FILED UNDER SEAL]**

23 ILLUMINA, INC. and SOLEXA, INC.,      Date:      January 17, 2013
                                         Time:      2:30 p.m.
24         Defendants/Counterclaim Plaintiffs.   Place:     Courtroom 2
                                         Judge:     Hon. Cathy Ann Bencivengo
25

26

27

28

                                                            11-cv-00703-CAB (DHB)

1    Life Technologies Corporation, Applied Biosystems, LLC, Institute for Protein Research,

2   Alexander Chetverin, Helena Chetverina, and William Hone (collectively, "Plaintiffs")

3   respectfully submit this reply brief in support of their motion for summary judgment of no

4   inequitable conduct during the prosecution of U.S. Patent Nos. 5,616,478, 5,958,698, and

5   6,001,568 (collectively, the "Chetverin Patents").  Defendants and counterclaim-plaintiffs

6   Illumina, Inc. and Solexa, Inc. (collectively, "Illumina") submitted their opposition to Plaintiffs'

7   motion on December 21, 2012.  [Opp. Br. (Doc. No. 369).]  Nothing contained in Illumina's

8   opposition brief creates a genuine dispute of material fact and, accordingly, Plaintiffs' motion

9   should be granted.

10  **I.      INTRODUCTION**

11    Illumina has a problem:  it has no evidence of the intent necessary to prove inequitable

12  conduct.  The Federal Circuit has made clear that an inequitable conduct allegation cannot be

13  supported merely by evidence that a patentee was aware of a non-disclosed reference.  Indeed,

14  even evidence that a patentee was aware of such a reference and believed it to be material is not

15  sufficient.  *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374 (Fed. Cir. 2012).  To show the

16  requisite specific intent to deceive the U.S. Patent and Trademark Office ("PTO"), the accuser

17  must show that the patentee (i) knew of the reference, (ii) knew that it was material, ***and*** (iii)

18  made a deliberate decision to withhold that reference from the PTO.  Viewing the evidence in the

19  light most favorable to Illumina, the most that it can show is the first of these three elements, *i.e.*,

20  that Dr. Chetverin was aware of references that were not disclosed to the PTO.  But Illumina has

21  no evidence that Dr. Chetverin believed these references to be material, and certainly cannot

22  prove that he deliberately decided to withhold the references from the PTO.  This failure of proof

23  is fatal to Illumina's inequitable conduct allegations, and summary judgment should be granted

24  eliminating those allegations from this action.

25    Illumina's opposition lists four items that Dr. Chetverin allegedly withheld from the PTO

26  and that accordingly form the basis for Illumina's inequitable conduct theories in this case.  The

27  four items are:  (i) a manuscript written by Dr. Chetverin and allegedly circulated more than one

28  year before the patent application was filed; (ii) Dr. Chetverin's laboratory notebook, which

1

1  allegedly details failed experiments showing that the claimed invention would not work under

2  some conditions; (iii) the so-called Stapleton '500 patent; and (iv) a pair of Russian

3  publications—one from 1989 entitled "Protein Biosynthesis and the Future of Cell-Free

4  Technology," and one from 1991 entitled "Protein Biosynthesis and the Prospects of Cell-Free

5  Technology" (collectively, the "Russian Publications")—on which Dr. Chetverin is an author.[1]

6  [*See* Opp. Br. at 3, n.3.]

7        Illumina asks this Court to assume that Dr. Chetverin knew of these references during the

8  relevant time period, and to make a pair of inferential leaps: first, that Dr. Chetverin knew that

9  these references were material, and then, that Dr. Chetverin made a deliberate decision to

10  withhold the references from the PTO.  But the Federal Circuit, moving to correct a rampant trend

11  of spurious inequitable conduct allegations, "recently tightened and heightened the standard for

12  proving inequitable conduct" and specifically admonished the types of inferences that Illumina

13  asks this Court to make.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed.

14  Cir. 2011) (en banc).  This Court was very recently presented with a similar invitation under

15  directly analogous facts.  Properly, this Court followed and applied *Therasense* in its decision to

16  grant summary judgment of no inequitable conduct.  *See Carl Zeiss Vision Int'l GMBH v. Signet*

17  *Aromorlite, Inc.*, No. 07-CV-0894, 2011 WL 6372785, at *7 (S.D. Cal. Dec. 19, 2011).  The same

18  result is warranted here.

19  **I.    ARGUMENT**

20      **A.    Illumina Does Not Even Try To Support Two Of Its Four Alleged Grounds**
21              **For Inequitable Conduct**

22        For two of the four grounds identified by Illumina, Illumina does not even attempt to

23  argue that Dr. Chetverin possessed the requisite intent to have committed inequitable conduct.

24  Summary judgment is therefore appropriate as to these two grounds.

25

26

27  _____

28  [1] Illumina lumps the Russian Publications together, treating them as a single ground of
inequitable conduct, and this reply will do the same.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Dr. Chetverin's Manuscript

Illumina's discussion of Dr. Chetverin's manuscript is limited to the reference in footnote three where Illumina identifies the bases for its allegations (item (iv)).  Illumina does not attempt to prove that Dr. Chetverin believed any of the information in his manuscript to be something that should be disclosed to the PTO, much less that he intentionally withheld it.  In other words, on this alleged basis for inequitable conduct Illumina has simply given up the fight, thereby conceding that it has no evidence of intent.  Accordingly, the outcome is simple:  there is no longer any debate about Illumina's allegations and summary judgment should be granted.

### 2.   Dr. Chetverin's Laboratory Notebooks

Of course there can be no doubt that Dr. Chetverin was aware of his own laboratory notebooks.  But Illumina's opposition brief completely fails to offer any evidence of Dr. Chetverin's state of mind with respect to the information contained in the notebooks.  [Opp. Br. at 19-23.]  Instead, Illumina's intent argument is predicated solely on its own belief that the notebooks are material, and that because the notebooks are material, the Court should infer that Dr. Chetverin both knew of their materiality and intentionally withheld them.  [*Id.*]

Unfortunately for Illumina, the Federal Circuit rejected exactly this argument when it held that "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290.  And, in *Carl Zeiss*, this Court applied the *Therasense* ruling to grant a motion for summary judgment of no inequitable conduct under the same circumstances:  "the mere failure to disclose a reference does not amount to clear and convincing evidence of specific intent to deceive the PTO.  Accordingly, this evidence is insufficient to withstand summary judgment in favor of [Plaintiffs]." *Carl Zeiss*, 2011 WL 6372785, at *6.  The same logic is applicable here and compels the same outcome.  Illumina has shown only that Dr. Chetverin was aware of his laboratory notebooks and nothing more.  Accordingly, summary judgment should be granted in favor of Plaintiffs on this inequitable conduct allegation.

**B.**     **Illumina Fails to Raise A Genuine Dispute of Material Fact Regarding the Two Remaining Alleged Bases For Inequitable Conduct**

Illumina devotes a great deal more space in its brief to the remaining two alleged bases for inequitable conduct—the Stapleton '500 patent and the Russian Publications—but, stripped of rhetoric, the outcome is the same.  Illumina fails to point to any factual evidence that Dr. Chetverin possessed the specific intent to deceive the PTO, and attempts to rely on its own assertions of materiality as a substitute.  Summary judgment is therefore appropriate as to these two grounds.

1.     There is no evidence Dr. Chetverin was aware of the Stapleton '500 patent during the relevant time period

The fundamental problem with respect to this reference is the lack of any evidence whatsoever that Dr. Chetverin was even aware of the Stapleton '500 patent during prosecution of the Chetverin Patents.  Without such evidence, Illumina's allegations cannot possibly succeed:  if Dr. Chetverin did not even know of the Stapleton '500 patent while the applications for the patents-in-suit were being prosecuted in the PTO, then he could not possibly have believed it to be material to the prosecution, nor could he have intentionally withheld it from the PTO.

Illumina's only argument regarding Dr. Chetverin's awareness of the reference is buried in a footnote of Illumina's opposition.  [*See* Opp. Br. at 12, n. 29.]  During Dr. Chetverin's deposition, Illumina's attorney asked questions directed to a set of three Stapleton patents:  the '500 patent and two other Stapleton patents.  In footnote 29, Illumina quotes testimony by Dr. Chetverin that he was aware of the "the Stapleton patent" during prosecution of his own patent application:   "Q. And did you review the Stapleton patent when you were in Russia in the course -- at some point during the course of the prosecution of your patent application?  A. Yes, I did." [*Id.* (citing Chetverin Dep. Tr. at 204:23-206:9).]

Missing from footnote 29 are key parts of the deposition transcript showing that the entire line of questioning actually related to a completely different patent application that Dr. Chetverin filed much later than the patents-in-suit.  The questions begin with Illumina's attorney handing Dr. Chetverin a copy of a totally unrelated patent application filed by Dr. Chetverin with a

4

priority date of March 24, 2006, *more than five years after the last of the Chetverin Patents issued*. [Lin Decl. Exh. 17 (9/24/2010 Chetverin Deposition Tr.) at 200:13-21.]  Illumina's attorney then asks Dr. Chetverin to look at page two of this application, where three Stapleton references, including the Stapleton '500 patent, are listed.  [*Id*. at 201:6-202:16.]  Illumina's attorney then proceeds to ask Dr. Chetverin if these are the Stapleton references he was aware of "during the prosecution of [his] patent applications" and whether the Stapleton references "were prominent obstacles to obtaining *the* patent."  [*Id*. at 202:17-24 (emphasis added).]  It is clear that this entire line of questioning was directed to Dr. Chetverin's awareness of these Stapleton references during prosecution of this much later application, years after the issuance of the patents-in-suit.  Dr. Chetverin answers truthfully that he was aware of the existence of these references during prosecution of this more recent application.  [*Id*. at 204:2-14; 208:4-15.][2]

Illumina uses footnote 29 as the sole basis for its argument that Dr. Chetverin not only knew about the Stapleton '500 patent, but also knew that this patent was material during prosecution of the much earlier Chetverin Patents.  This argument is completely unfounded and should be rejected.  There is simply no evidence whatsoever that Dr. Chetverin knew of the Stapleton '500 patent at any time during prosecution of the patents-in-suit.  Without evidence of awareness, Illumina cannot possibly show that Dr. Chetverin knew that it was material and intentionally withheld that patent.  Accordingly, summary judgment is appropriate.

> 2. There is no evidence Dr. Chetverin knew the Russian Publications were material or that he made a deliberate decision to withhold them from the PTO

The last of the four items of allegedly withheld prior art are the Russian Publications.  Once again, Illumina's evidence shows only that Dr. Chetverin was aware of the Russian

---

[2] Moreover, it is far from clear that Dr. Chetverin ever knew about the substance of what was contained in the Stapleton '500 patent at any time.  Dr. Chetverin made clear that he was aware of the "existence" of the Stapleton references during prosecution of his later patent application, not that he was aware of the substance of those references.  [Lin Decl. Exh. 17 (9/24/2010 Chetverin Deposition Tr.) *Id*. at 208:4-15.]  In fact, he specifically stated that he did not investigate Dr. Stapleton's work.  [*Id*.]  This failure of proof is also fatal to Illumina's allegations but there is no need to reach it given the total absence of evidence that Dr. Chetverin knew even of the existence of the Stapleton '500 patent at any relevant time.

1  Publications when he cited them in 1995 (and one again in 1998).  This evidence is not sufficient

2  to support an allegation of inequitable conduct.  *See Therasense*, 649 F.3d at 1290 ("Proving that

3  the applicant knew of a reference, should have known of its materiality, and decided not to submit

4  it to the PTO does not prove specific intent to deceive.").  Illumina concedes that there is no

5  direct evidence that (i) Dr. Chetverin believed or suspected—much less "knew"—that the Russian

6  Publications were material, or that (ii) Dr. Chetverin made a deliberate decision to withhold the

7  Russian Publications from the PTO.[3]  [Opp. Br. at 3, 22.]  Lacking the required evidence,

8  Illumina nevertheless asks this Court to find that the "only reasonable conclusion that can be

9  drawn from the evidence" is that Dr. Chetverin committed inequitable conduct.  [*Id.*]  Illumina's

10  allegation is insufficient as a matter of law for a number of reasons, any one of which is sufficient

11  to warrant its dismissal.

12  Illumina elected not to ask Dr. Chetverin anything about the 1989 publication.  This

13  publication was not shown to him or even mentioned by Illumina's counsel at the deposition.

14  Thus, it is not surprising that Illumina can point to nothing to support its argument regarding Dr.

15  Chetverin's state of mind relating to the 1989 publication.

16  Second, lacking any true evidence of intent, Illumina again rests on its conviction that Dr.

17  Chetverin must have believed both of the Russian Publications to be material because he cited

18  them in his 1995 thesis and cited one in a later publication.  But all this evidence shows is that Dr.

19  Chetverin was aware of the Russian Publications when he cited them and nothing more.  This

20  evidence is insufficient to support Illumina's allegations.  *See Therasense*, 649 F.3d at 1290.

21  Third, Illumina repeatedly argues that Dr. Chetverin "selectively disclosed" information to

22  the PTO, but without citing any actual evidence for that proposition.  Instead, Illumina relies

23  solely on mere attorney argument to suggest that Dr. Chetverin intentionally disclosed certain,

24  _____

25  [3] Illumina asserts that "Plaintiffs do not dispute that Dr. Chetverin's prior-art publications (or any
    other information the he withheld) were material to patentability."  [Opp. Br. at 4, ¶ 2; *see also id.*

26  at 6, ¶ 6.]  This is incorrect.  Plaintiffs' opening brief makes clear that "Plaintiffs dispute that *any*
    of the alleged nondisclosures were material to the prosecution of the Chetverin Patents, much less

27  'but for' material under *Therasense*."  [Opening Br. (Doc. No. 337-1) at 2 (emphasis added).]
    Simply because Plaintiffs' motion is focused on the intent prong of inequitable conduct in no way

28  means that Plaintiffs concede the materiality prong.

11-cv-00703-CAB (DHB)

1    supposedly less material, prior art to the PTO, while withholding other references that Illumina

2    asserts were more material.  [*See, e.g.*, Opp. Br. at ¶ 39.]  But Illumina has no evidence at all of a

3    deliberate decision on the part of Dr. Chetverin to disclose certain references while withholding

4    others.  At best, Illumina is again arguing, without evidence, its belief that Dr. Chetverin should

5    have known certain references were material.  Even if Illumina were correct (and there is no

6    evidence before the Court to show that is the case), "[a]n applicant's knowledge of a reference's

7    materiality, however, cannot by itself prove, let alone clearly and convincingly prove, that any

8    subsequent non-disclosure was based on a deliberate decision.  Otherwise, the third element in

9    *Therasense*'s intent to deceive analysis would be satisfied in any case in which the second

10   element was satisfied."  *1st Media*, 694 F.3d at 1375.

11        Moreover, Illumina's argument that a supposed "selective disclosure" can provide the

12   requisite evidence of intent was roundly rejected by this Court in granting summary judgment of

13   no inequitable conduct in *Carl Zeiss*.  In that case, one of the allegedly withheld references was

14   the so-called '191 Patent.  *Carl Zeiss*, 2011 WL 6372785, at *6.  The defendant argued that the

15   applicants "withheld the '191 Patent with the specific intent to deceive the PTO based on their

16   failure to disclose the '191 Patent coupled with their disclosure of other, less relevant references."

17   *Id*.  The patent owner responded that the '191 Patent was not disclosed because the applicants

18   believed it was cumulative over other art that had been disclosed.  *Id*.  This Court held that,

19   "[g]iven the totality of the art that was cited in the '713 Patent, there is more than one reasonable

20   inference that may be drawn from the failure to disclose the '191 Patent to the examiner" and

21   accordingly granted summary judgment.  *Id*.

22        The same rationale is applicable here.  The record shows that Dr. Chetverin believed the

23   1991 publication, which was very similar to the 1989 publication,[4] to be cumulative of a prior art

24   article, the Levisohn and Spiegleman paper, which was not only submitted to the PTO but

25   discussed as prior art in the specification and prosecution history of the Chetverin Patents.  Dr.

26

---

27   [4] [*See* Lin Decl. Exh. 18 (Edwards Rebuttal Report) at ¶ 159 ("The Spirin, A.S. et al, *Protein Biosynthesis and the Future of Cell-Free Technology*, News of the USSR Academy of Sciences,
28   11:30-38 (1989) (hereinafter, the '1989 Spirin') publication contains a statement nearly identical to the 1991 Spirin article.").]

1  Chetverin submitted a declaration on this exact point in response to Illumina's motion for

2  summary judgment of invalidity which the Court considered and denied last year.  [4/27/2011

3  Chetverin Decl. (Doc. No. 207-24) at ¶ 10 ("The discussion and the scheme presented [in the

4  1991 publication], which was essentially the same as that suggested by Levisohn and Spiegleman,

5  was merely a hypothetical scheme….").]  It is Illumina's burden to show that the single most

6  reasonable inference is an intent to deceive.  *Therasense*, 649 F.3d at 1290-91.  Thus, "there is

7  more than one reasonable inference that may be drawn from the failure to disclose" the prior art

8  and "the evidence is insufficient to withstand summary judgment in favor of [the patent owner]."

9  *Carl Zeiss*, 2011 WL 6372785, at *6.  Illumina has completely failed to offer any evidence to

10  exclude the possibility that Dr. Chetverin considered the Russian Publications cumulative, and

11  therefore just as in *Carl Zeiss*, summary judgment should be granted.

12        Lastly, Illumina attempts to bolster its argument by asserting that Dr. Chetverin must have

13  intentionally withheld the Russian Publications because he communicated with his attorney on

14  numerous occasions during the patent prosecution.  [*See, e.g.*, Opp. Br. at  ¶¶ 11, 25.]  This

15  argument is a *non sequitur*.  As Plaintiffs explained in their opening brief, the attorney, Mr. Hone,

16  testified that he relied on Dr. Chetverin for technical information.  [*See, e.g.*, Lin Decl. Exh. 19

17  (Hone Deposition Tr.) at 109:4-114:9, 154:20-155:24, 157:11-25, 159:3-162:7.] ███████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████        The mere fact that Dr. Chetverin communicated with Mr. Hone during the

21  prosecution (whether once, twice or forty times) is, without more, simply irrelevant to the issue of

22  intent to deceive.

23        **C.    Illumina Cannot Distinguish *1st Media* And *Carl Zeiss***

24        Illumina tries unsuccessfully to distance itself from the Federal Circuit's opinion in *1st*

25  *Media* and from this Court's opinion in *Carl Zeiss*.  Illumina attempts to distinguish *1st Media* by

26  arguing its unsupported belief that  "Dr. Chetverin was involved in making multiple misleading

27  arguments to the PTO" and "Dr. Chetverin selectively disclosed his publications that he knew

28  were not prior art."  [Opp. Br. at 23-24.]  Similarly, in attempting to distinguish *Carl Zeiss*,

1   Illumina blindly asserts that Dr. Chetverin made "misleading arguments," selectively disclosed
2   references and withheld his "own prior-art publications." [Opp. Br. at 25.]

3        In fact, there is far less evidence of intent to deceive here than in *1st Media*.  In *1st*
4   *Media*, actual evidence was presented that the patentee knew the reference was material because
5   it was cited by the European Patent Office.  *1st Media*, 694 F.3d at 1374-75.  There is no similar
6   evidence here.  And, as discussed above, the notion that intent can be inferred from alleged
7   selective disclosures was considered and rejected in *Carl Zeiss*.  2011 WL 6372785, at *6.  Just as
8   in *Carl Zeiss*, summary judgment of no inequitable conduct is appropriate here.

9        This case is easily distinguishable from *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d
10   1324 (Fed. Cir. 2012), cited by Illumina.  [Opp. Br. at 21.]  In *Aventis*, the district court relied on
11   testimony from the inventor that he knew one of the withheld references contained the solution to
12   the problem his patent aimed to solve (*id*. at 1335) and another withheld reference explicitly
13   disclosed the claimed combination (*id*. at 1336).  The Federal Circuit specifically distinguished
14   *Aventis* in *1st Media* because in *Aventis* there was "affirmative conduct by the applicants showing
15   not only specific awareness of materiality, but careful and selective manipulation of where, when
16   and how much of the most material information to disclose."  *1st Media*, 694 F.3d at 1375.  Here,
17   just like in *1st Media*, there is no evidence of selective disclosure of material information to the
18   PTO.  And, unlike in *Aventis,* there is no evidence that Dr. Chetverin ever believed any of the
19   alleged nondisclosures were material to the prosecution of the Chetverin Patents.

20        **D.     This Is Precisely A Situation Where Summary Judgment Is Appropriate**

21        Illumina incorrectly argues that Plaintiffs must do more than show that Illumina has no
22   evidence of knowledge of materiality or intentional withholding of references.  [*See* Opp Br. at 2,
23   18.]  The Supreme Court made clear in *Celotex Corp. v. Catrett* that Plaintiffs may obtain
24   summary judgment by "'showing'—that is, pointing out to the district court—that there is an
25   absence of evidence to support the nonmoving party's case."  477 U.S. 317, 325 (1986).

26        The case cited by Illumina in its opposition does not hold to the contrary.  That case
27   simply stands for the proposition that the moving party may not "use a summary judgment

28

9

1    motion as a substitute for discovery." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210

2    F.3d 1099, 1106 (9th Cir. 2000).  Instead, the moving party must make reasonable discovery

3    efforts to determine if the nonmoving party will be able to carry its burden at trial.  *Id*.  That is

4    precisely what happened here.  After extensive discovery in this case, Illumina is unable to point

5    to any evidence that Dr. Chetverin possessed the specific intent to deceive the PTO.

6         Where, as here, a defendant cannot point to evidence to support it allegations, summary

7    judgment is properly granted.  *Celotex*, 477 U.S. at 325.  Because proving intent to deceive is an

8    essential element of Illumina's inequitable conduct allegations, and because Illumina will not be

9    able to prove intent at trial, summary judgment of no inequitable conduct during prosecution of

10   the Chetverin Patents is appropriate.  *See 1st Media*, 694 F.3d at 1372 ("A failure of proof on any

11   element precludes a finding of inequitable conduct.").

12   **II.     CONCLUSION**

13        Illumina's opposition fails to raise any genuine dispute of material fact sufficient to defeat

14   summary judgment.  As to three of the four allegedly withheld references, Illumina can establish

15   only that Dr. Chetverin was aware of their existence.  As to the fourth reference, the Stapleton

16   '500 patent, Illumina cannot even reach that mark.  On none of the references can Illumina show

17   that Dr. Chetverin possessed the specific intent to deceive the PTO, an essential element of

18   Illumina's inequitable conduct allegations.  In situations like this, summary judgment of no

19   inequitable conduct is required.  *See Carl Zeiss*, 2011 WL 6372785; *Celotex*, 477 U.S. at 325.

20

21

22

23

24

25

26

27

28

11-cv-00703-CAB (DHB)

1   Dated: January 10, 2013                Respectfully Submitted,

2

3                                          By:   /s/ Jenny C. Wu

4                                          Jenny C. Wu

5                                          Bradford Paul Schmidt
                                           LIFE TECHNOLOGIES CORPORATION
6                                          5791 Van Allen Way
                                           Carlsbad, CA 92008
7                                          Telephone:  (760) 603-7200

8
                                           Nicholas Groombridge (*pro hac vice*)
9                                          Catherine Nyaraday (*pro hac vice*)
                                           Peter Sandel (*pro hac vice*)
10                                         Jenny C. Wu (*pro hac vice*)
                                           Rebecca Fett (*pro hac vice*)
11                                         Robert Lin (*pro hac vice*)
                                           PAUL, WEISS, RIFKIND, WHARTON &
12                                         GARRISON LLP
                                           1285 Avenue of Americas
13                                         New York, NY 10019
                                           Telephone: (212) 373-3000
14

15                                         Matthew D. Murphey
                                           TROUTMAN SANDERS LLP
16                                         11682 El Camino Real, Suite 400
                                           San Diego, CA  92130
17                                         Telephone:  (858) 509-6000

18
                                           *Attorneys for Plaintiffs*
19                                         LIFE TECHNOLOGIES CORPORATION,
                                           APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
20                                         PROTEIN RESEARCH, ALEXANDER
                                           CHETVERIN, HELENA CHETVERINA, and
21                                         WILLIAM HONE

22

23

24

25

26

27

28

1

2

**CERTIFICATE OF SERVICE**

3

I hereby certify that, on January 10, 2013, a true and correct copy of the document entitled:

4

5

**[REDACTED] PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR NO INEQUITABLE CONDUCT DURING THE PROSECUTION OF THE CHETVERIN PATENTS**

6

7

was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system

as a result of the electronic filing of these documents.

8

9

   I also certify that true and correct copies of the following sealed lodged proposed

10

documents entitled:

11

12

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR NO INEQUITABLE CONDUCT DURING THE PROSECUTION OF THE CHETVERIN PATENTS [FILED UNDER SEAL]**

13

| | |
|---|---|
| Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>5791 Van Allen Way<br>Carlsbad, CA 92008<br>Telephone: (760) 603-7200<br>Email:<br>bradford.schmidt@lifetech.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |
| Nicholas Groombridge (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>Peter Sandel (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>Jenny C. Wu (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue Of Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Email:<br>ngroombridge@paulweiss.com<br>cnyarady@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11-cv-00703-CAB (DHB)

| | |
|---|---|
| Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone: (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN & CONNAUGHTON<br>LLP<br>101 West Broadway, Ninth Floor<br>San Diego, CA 92010<br>Telephone: (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>Amanda Antons *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone: (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com<br>aantons@marshallip.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606<br>Telephone: (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com<br>ron@wawrzynlaw.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |

11-cv-00703-CAB (DHB)

1

| | |
|---|---|
| 777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | |
| Steven J. Balick<br>Andrew Dieter Cordo<br>Lauren E. Maguire<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>PO Box 1150<br>Wilmington, DE  19899<br>Telephone:  (302) 654-1888<br>Email:<br>sbalick@ashby-geddes.com<br>acordo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>tlydon@ashby-geddes.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the above is true and correct, and that I executed this Certificate of Service on January 10, 2013, at New York, New York.

*s/ Jenny C. Wu*
Jenny C. Wu
E-mail:  JCWu@paulweiss.com

3

11-cv-00703-CAB (DHB)