1   E. JOSEPH CONNAUGHTON (SBN 166765)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
2   101 West Broadway, Ninth Floor
    San Diego, CA 92101-8285
3   Telephone: 619-237-5200
    Facsimile: 619-615-0700
4   jconnaughton@paulplevin.com

5   Kevin M. Flowers (pro hac vice)
    Matthew C. Nielsen (pro hac vice)
6   Mark H. Izraelewicz (pro hac vice)
    Cullen N. Pendleton (pro hac vice)
7   Amanda K. Antons (pro hac vice)
    MARSHALL, GERSTEIN & BORUN LLP
8   233 South Wacker Drive
    6300 Willis Tower
9   Chicago, Illinois 60606-6357
    (312) 474-6300
10

11  Ronald M. Wawrzyn (pro hac vice)
    Matthew M. Wawrzyn (pro hac vice)
12  WAWRZYN LLC
    233 South Wacker Drive
13  84th Floor, Willis Tower
    Chicago, IL 60606
    (312) 283-8330
14

15  Attorneys for Defendants
    ILLUMINA, INC. and SOLEXA, INC.
16

17              **UNITED STATES DISTRICT COURT**

18            **SOUTHERN DISTRICT OF CALIFORNIA**

19  LIFE TECHNOLOGIES CORPORATION;       )   Case No. 3:11-cv-00703-CAB (DHB)
    APPLIED BIOSYSTEMS, LLC; INSTITUTE   )
20  FOR PROTEIN RESEARCH; ALEXANDER      )
    CHETVERIN; HELENA CHETVERINA and     )   **ILLUMINA'S REPLY MEMORANDUM**
21  WILLIAM HONE,                        )   **OF POINTS AND AUTHORITIES IN**
                                         )   **SUPPORT OF ITS MOTION TO**
22                                       )   **EXCLUDE THE TESTIMONY OF DR.**
            Plaintiffs,                  )   **BARRON REGARDING**
23      v.                               )   **"EXPONENTIAL AMPLIFICATION"**
                                         )   **LIMITATIONS**
24  ILLUMINA, INC. and SOLEXA, INC.,     )
                                         )   Date: January 17, 2013
25          Defendants.                  )   Time: 2:30 p.m.
                                         )   Ctrm: Courtroom 2
26                                       )   Judge: Hon. Cathy Ann Bencivengo
                                         )
27  _____

28
    _____
    ILLUMINA'S REPLY MEMO OF POINTS AND AUTHORITIES       Case No. 3:11-cv-00703-CAB (DHB)
    IN SUPPORT OF ITS MOTION TO EXCLUDE THE
    TESTIMONY OF DR. BARRON REGARDING "EXPONENTIAL
    AMPLIFICATION" LIMITATIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INDEX OF EXHIBITS..................................................................................... iii

I.      INTRODUCTION ..................................................................................1

II.     LEGAL STANDARDS .........................................................................1

III.    ARGUMENT ........................................................................................2

        A.      Dr. Barron Lacks Expertise In Determining The Kinetics Of Amplification ...........2

        B.      The Court Should Resolve The Dispute Over The Meaning Of "Exponential" ........4

        C.      Dr. Barron's Proposed Testimony Is Based On A Construction Of "Exponential" That Is Not Supported By The Intrinsic Or Extrinsic Evidence ................................5

                1.      Dr. Slater's construction is based on the intrinsic evidence ......................5

                2.      The intrinsic evidence contradicts Dr. Barron's construction ...................6

                3.      Dr. Slater's construction is supported by the extrinsic evidence ................8

        D.      Dr. Barron's Testimony Should Be Rejected As Scientifically Unreliable ............10

III.    CONCLUSION.....................................................................................10

ILLUMINA'S MEMO OF POINTS AND                  i                  Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON, REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

Calhoun v. Yamaha Motor Corp.,
    350 F.3d 316 (3rd Cir. 2003) ............................................................................... 2

4

Daubert v. Merrell Dow Pharm.,
    43 F.3d 1311 (9th Cir. 1995) ................................................................... 8, 9, 10

5

6

MicroStrategy Inc. v. Business Objects, S.A.,
    429 F.3d 1344 (Fed. Cir. 2005) ............................................................................ 4

7

Mukhtar v. California State Univ.,
    299 F.3d 1053 (9th Cir. 2002) .............................................................................. 1

8

9

O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,
    521 F.3d 1351 (Fed. Cir. 2008) ............................................................................ 4

10

Omega Eng'g, Inc. v. Raytek Corp.,
    334 F.3d 1314 (Fed. Cir. 2003) ............................................................................ 8

11

12

Pfizer, Inc. v. Teva Pharms., USA, Inc.,
    429 F.3d 1364 (Fed. Cir. 2005) ............................................................................ 4

13

Pharmastem Therapeutics, Inc. v. Viacell, Inc.,
    491 F.3d 1342 (Fed. Cir. 2007) ......................................................................... 10

14

15

United States v. Chang,
    207 F.3d 1169 (9th Cir. 2000) .............................................................................. 3

16

17

Vitronics v. Conceptronics,
    90 F.3d 1576 (Fed. Cir. 1996) ......................................................................... 2, 9

18

**Rules**

19

Fed. R. Evid. 408 ..................................................................................................... 5

20

Fed. R. Evid. 702 .................................................................................................. 1, 2

21

22

23

24

25

26

27

28

ILLUMINA'S MEMO OF POINTS AND            ii            Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF DR. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

1

**<u>INDEX OF EXHIBITS</u>**

2    Exhibit 1    File History for U.S. Pat. No. 6,001,568, Dec. 24, 1997 Amendment

3    Exhibit 2    I. Haruna & S. Spiegelman, 150 Science 884-886

4    Exhibit 3    R. Saiki, et al., 230 Science 1350-1354

5    Exhibit 4    J. Guatelli, et al., 87 Proc. Natl. Acad. Sci. USA 1874-1878

6    Exhibit 5    J. Olson, et al., 5 Molecular and Cellular Probes 351-58

7    Exhibit 6    M. McKinney & M. Robbins, 12 Molecular Brain Research 39-45

8    Exhibit 7    G. Walker, et al., 89 Proc. Natl. Acad. Sci. USA 392-396

9    Exhibit 8    Apr. 30, 2010 Wu E-mail

10    Exhibit 9    Apr. 23, 2010 Illumina draft list of proposed terms and constructions

11    Exhibit 10    Excerpts of 30(b)(6) Deposition Transcript of Jonathan Mark Boutell (Oct. 27,

12    2010)

13    Exhibit 11    Excerpts of 30(b)(6) Deposition Transcript of Andrea Sabot (Oct. 28, 2010).

14    Exhibit 12    Apr. 22, 2010 LifeTech's draft list of proposed terms and constructions

15    Exhibit 13    Expert Statement of Gary W. Slater, Ph.D. (Aug. 29, 2012). Exhibit 14    U.S.

16    Patent No. 5,616,478

17    Exhibit 15    The Oxford Dictionary of Biochemistry and Molecular Biology, 223 (1997)

18    Exhibit 16    U. Gyllensten and H. Erlich, 85 Proc. Nat'l Acad. Sci. USA 7652-7656 (1988)

19    Exhibit 17    R. Saiki, et al., 239 Science, 487 (1988)

20    Exhibit 18    L. Xu and D. Larzul, 14(3) Comp. Immun. Microbiol. Infect. Dis., 209-221

21    (1991)

22    Exhibit 19    Tr. Of Oct. 7, 2011 Tutorial

23    Exhibit 20    Table of articles citing 2003 Slater papers (available online at

24    http://tinyurl.com/bahspbd)

25

26    Exhibit 21    Table of articles citing 2005 Slater papers (available online at

27    http://tinyurl.com/a7x5mgn)

28

ILLUMINA'S MEMO OF POINTS AND    iii    Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

1   Exhibit 22      Mercier & Slater 85 Biophysical J. 2075 (2003)

2   Exhibit 23      Mercier & Slater, 89 Biophysical J. 32 (2005)

3   Exhibit 24      H. Chetverina and A. Chetverin, 73(13) Biochemistry (Moscow) 1361-1387

4   Exhibit 25      A. Drobyshev, et al., 3 Biomicrofluidics 44112 (2009)

5   Exhibit 26      D. Walker and P. McGeer, 14 Molecular Brain Research, (1992) 109-116

6   Exhibit 27      Expert Statement of Keith C. Backman, Ph.D. (Aug. 3, 2012)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ILLUMINA'S MEMO OF POINTS AND                    iv                    Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

1  **I.   INTRODUCTION**

2        Life Tech must prove that Illumina's accused systems satisfy the "exponential"

3  limitations in all of the asserted claims.[1] Dr. Barron lacks relevant experience in the kinetics of

4  nucleic acid amplification reactions, and the two infringement arguments in her original report

5  lack reliable scientific basis. Life Tech's opposition offers new arguments and opinions to

6  attempt to rehabilitate Dr. Barron's report, but all are either untimely,[2] irrelevant or simply false.

7        While the Court should exclude Dr. Barron's testimony on these bases alone, the Court can

8  also resolve this motion by construing "exponential," as the patents do, to mean that "the number

9  of nucleic acid molecules increases as an exponential function of the elapsed time" because all

10  nucleic acids are "equally effective" as templates. Since Dr. Barron's proposed testimony does

11  not address this construction, it is irrelevant and thus inadmissible under Fed. R. Evid. 702.

12        Life Tech cannot prove Illumina's system infringes under a construction of "exponential"

13  that actually looks at the reaction kinetics, and Dr. Barron did not even try. Instead, she argues

14  this term covers any amplification where a synthesized nucleic acid "can" serve as a template in

15  subsequent rounds, regardless of whether overall amplification kinetics are exponential.

16        As discussed below, however, the intrinsic record tells a different story: the patentees

17  overcame prior art by arguing that their system "unexpectedly" followed exponential kinetics,

18  and disclaimed systems that "early on cease to be exponential." Life Tech ignores this evidence,

19  arguing that only "linear" and "exponential" systems were known in 1992, so Illumina's system

20  must be one or the other, even though multiple, unrebutted, peer-reviewed scientific publications

21  prove it is not. Dr. Barron's proposed testimony that Illumina's system satisfies the

22  "exponential" limitations is not based on scientifically reliable evidence and should be excluded.

23  **II.   LEGAL STANDARDS**

24        Because of "the aura of authority experts often exude, which can lead juries to give more

25  weight to their testimony," *Mukhtar v. California State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir.

26

---

27  [1] Dkt. No. 330-1 at 1.

28  [2] The Court should disregard all such arguments as untimely and improper.

1  2002), the Court's "gatekeeper" role requires it to carefully scrutinize claims of expertise issue-

2  by-issue, excluding those who "may be generally qualified but may lack qualifications to testify

3  outside [their] area of expertise" *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322

4  (3rd Cir., 2003). Even a qualified expert can only provide testimony that meets "exacting

5  standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000), meaning it is

6  "based on sufficient facts or data" generated from "reliable principles and methods . . . which the

7  expert has reliably applied the principles and methods to the facts of the case" Fed. R. Evid. 702.

8    "The words of a claim are generally given their ordinary and customary meaning as

9  understood by a person of ordinary skill in the art in question at the time of the invention when

10  read in the context of the specification and prosecution history." *Laryngeal Mask Co. Ltd. v.*

11  *Ambu A/S*, 618 F.3d 1367, 1370 (Fed. Cir. 2010). The "most significant source" of the meaning

12  of claim language is "the intrinsic evidence of record, i.e., the patent itself, including the claims,

13  the specification, and, if in evidence, the prosecution history." *Vitronics v. Conceptronics*, 90

14  F.3d 1576, 1582 (Fed. Cir. 1996).

15  **III. ARGUMENT**

16    **A. Dr. Barron lacks expertise in determining the kinetics of amplification**

17    Because infringement of the "exponential amplification" claim terms hinges on whether

18  the accused Illumina systems follow "exponential" kinetics, the Court should require any expert

19  testifying about this issue to have relevant experience identifying those kinetics. Life Tech

20  argues that requiring relevant experience is just Illumina's "attorney argument." That is not true.

21  Illumina cited numerous cases where courts evaluated expertise issue-by-issue and excluded

22  otherwise-qualified experts from testifying to matters outside their area of expertise. Opening Br.

23  at 4. For example, in *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 323 (3rd Cir. 2003), the

24  district court allowed an expert with "extensive experience with jet skis" to explain the different

25  types and their accelerating mechanisms to the jury, but he was not permitted to testify which of

26  the accelerating mechanisms were safer. The Third Circuit affirmed since he lacked relevant

27  experience and did not "provide scientific, statistical or other evidence" regarding the safety of

28

ILLUMINA'S MEMO OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS  2  Case No. 3:11-cv-00703-CAB (DHB)

1  jet skis or their accelerating mechanisms. *Id.*[3] Likewise here, even if Dr. Barron has experience

2  performing certain types of nucleic acid amplifications, she has not demonstrated training or

3  experience in the *relevant* field, which is *determining the kinetics* of nucleic acid amplifications,

4  not *performing* them. Nor has Dr. Barron presented any "scientific, statistical or other evidence"

5  regarding the amplification kinetics of the accused systems.

6       Life Tech's complaint that Illumina is defining the required area of expertise "so

7  narrowly that no one can satisfy it" (Dkt. No. 350 at 8) is breathtaking in its audacity: the

8  *plaintiffs/inventors* told the Patent Office fifteen years ago that they determined the nucleic acid

9  amplification kinetics in their system,[4] and the scientific literature cited in the Chetverin patents

10  and Life Tech's Opposition are replete with examples of scientists performing these

11  "unattainable" kinetics determinations; nearly always involving testing if a semi-log plot of

12  nucleic acid amount vs. time yields a straight line,[5] the same method used by Dr. Slater.[6] Life

13  Tech's problem is not an unattainable level of expertise, but its failure to prove its case.

14       An impressive resume alone does not qualify an expert under *Daubert*. Scrutiny reveals Dr.

15  Barron has no experience determining the kinetics of nucleic acid amplification reactions and

16  little other experience that is even arguably relevant. She carried out no work in this field herself,

17

---

18  [3] *See also United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (excluding testimony
19  on a security's authenticity from a professor with "expert knowledge regarding the history of, and purpose for" foreign securities since he had no experience in identifying counterfeits).

20  [4] File History for U.S. Pat. No. 6,001,568, Dec. 24, 1997 Amendment, 8 (claiming their
21  "reactions display the same kinetics immobilized within the matrices of the invention as in solution.") (Ex. 1)(Attached hereto is the Declaration of Amanda K. Antons, which contains the
22  Exhibits in Support of this Reply Brief. A table of exhibits is provided at p. iii).

23  [5] *See, e.g.*, papers cited in the specification [I. Haruna & S. Spiegelman, 150 Science 884-886, 885 & Fig. 2 (1965) (Qβ replicase; '478 patent, 1:35-36); R. Saiki, et al., 230 Science 1350-1354
24  (1350) (PCR; '478 patent, 2:15-17); and J. Guatelli, et al., 87 Proc. Natl. Acad. Sci. USA 1874-1878, 1875-76 & Fig. 2 (1990) (3SR; '478 patent, 2:60-62)]; *see also* J. Olson, et al., 5
25  Molecular and Cellular Probes 351-58, 356, col. 2 & Fig. 6 (1991) (PCR); M. McKinney & M.
26  Robbins, 12 Molecular Brain Research 39-45, 40, col. 2 & Fig. 2 (1991) (RT-PCR); G. Walker, et al., 89 Proc. Natl. Acad. Sci. USA 392-396, 395 & Fig. 4 (1992) (isothermal DNA
27  amplification) (Ex. 2-7, respectively).

28  [6] Ex. 13 at ¶¶ 105-112.

1  nor does she review anyone else's work. She should not be permitted to testify regarding the

2  "exponential amplification" limitations.

3  **B.     The Court should resolve the dispute over the meaning of "exponential"**

4       Life Tech first argues that construing the "exponential" terms now is "belated and

5  improper." Life Tech points to nothing in the scheduling order to alter the Court's power to

6  engage in claim construction at any point in the case. *See*, *e.g.*, *Pfizer, Inc. v. Teva Pharms.,*

7  *USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005); *MicroStrategy Inc. v. Business Objects*, *S.A.*,

8  429 F.3d 1344, 1350 (Fed. Cir. 2005). Moreover, "[w]hen the parties present a fundamental

9  dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l*

10 *Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

11      Nor does Life Tech provide any evidence that Illumina "conceded the term did not

12 require construction" (Dkt. No. 350, Opp. at 9.)  Life Tech did not seek a stipulation for this

13 term, and no such concession was made. Indeed, the only reason more terms, including

14 exponential, were not construed earlier is because *Life Tech* demanded Illumina delay seeking

15 constructions [April 30, 2010 Wu E-mail (requesting limit of 6 terms per patent family) and

16 April 23, 2010 Illumina draft list of proposed terms and constructions. (Ex. 8 & 9).] Although

17 Illumina agreed to pick 12, the parties' Joint Claim Construction Chart and Statement was clear

18 that "Life Tech and Illumina *disagree regarding the proper constructions of other terms* in the

19 asserted patents . . . ."[7]

20      Life Tech's second attempt to foreclose claim construction also fails. *First*, the parties'

21 original proposals were unmistakably different, not identical (Dkt. No. 350 at 9.): Illumina's

22 required all the products of a round of amplification to serve as templates (along with the original

23

24 ───────────────

[7] Illumina's position on the construction of the "exponential" terms was also made clear during
25 discovery. See 30(b)(6) Dep. Tr. Jonathan Mark Boutell (Oct. 27, 2010) at, e.g., 50:15-19
(amplification in the Illumina systems is "neither linear nor an exponential growth"), 51:3-5
26 ("exponential amplification . . . would be doubling the number of molecules per cycle"); 53:8-18
(explaining why product strands are not available as templates in succeeding cycles); 30(b)(6)
27 Dep. Tr. Andrea Sabot (Oct. 28, 2010) at 178:4-15 (amplification is not exponential) (Ex. 10 &
11).

28

ILLUMINA'S MEMO OF POINTS AND          4          Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

1  templates) in the next round of amplification (and so on, round after round), while Life Tech's

2  required only "an amplification product" to serve as a template for at least one round, and makes

3  no mention of the original template. Illumina's proposed construction here refines its original

4  proposal to reflect that amplification must follow an exponential function, but perfect doubling is

5  not required. *Second*, Life Tech's attempt to use Illumina's draft constructions to bar

6  construction now is improper because they were exchanged pursuant to Fed. R. Evid. 408 (Ex.

7  9), and are thus inadmissible if "offered to prove . . . invalidity of . . . a claim . . . or to impeach

8  through a prior inconsistent statement or contradiction."

9  Moreover, Life Tech can hardly point fingers at Illumina since Life Tech's own original

10  proposed construction—which requires only that "an amplification product" serve as a template

11  for at least one round—has been refined as well; now requiring that all the reaction products can

12  possibly serve as templates. Additionally, Life Tech modified *11 of 12* proposed constructions

13  between the parties' initial exchange on April 22, 2010 (where Illumina's draft "exponential"

14  construction was found), and the filing of the Joint Claim Construction Chart on May 7, 2010.[8]

15  **C.**  **Dr. Barron's proposed testimony is based on a construction of "exponential"**
        **that is not supported by the intrinsic or extrinsic evidence**

16  **1.**  **Dr. Slater's construction is based on the intrinsic evidence**

17  The Court should construe "exponential" to mean "the number of nucleic acid molecules

18  increases as an exponential function of the elapsed time," or, when the amplification process

19  consists of discrete steps, "an exponential function of the number of cycles," as concluded by Dr.

20  Slater, but contrary to Dr. Barron. (Ex. 13 at 13-14 and n. 22). Dr. Slater's report provides an

21  exhaustive discussion of the intrinsic and extrinsic evidence supporting this construction. *Id.* at

22  10-15.

23  Life Tech argues Dr. Slater has given only "his own idiosyncratic definition of the term

24  in question" (Dkt. No. 350 at 14.), but it confuses Dr. Slater's use of the term "*geometric*

25  amplification*" (to describe *Illumina's system*) with the proper construction of "exponential

26

27  [8] *Compare* Life Tech's Joint Claim Chart (Dkt. No. 57, Exh. B, 1-3) and Apr. 22, 2010 Life
    Tech's draft list of proposed terms and constructions (Ex. 12).

28
ILLUMINA'S MEMO OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS  5

amplification," which is the real issue here. Dr. Slater's construction of "*exponential amplification*" is hardly "idiosyncratic," as it quotes the patent: "*the number of nucleic acid molecules increases* in an exponential amplification reaction *as an exponential function of the elapsed time*…" U.S. Pat. No. 5,616,478, 1:15-19 (emphasis added) (Ex. 14). Dr. Slater's explanation that "[f]or exponential amplification to occur *all* the molecules must have the same probability of replication at each cycle" Ex. 13 at 56 (emphasis in original) is also supported. *See* Ex. 14 at, e.g., 1:30-33 ("exponential synthesis occurs because . . . both [product and template RNAs] serve as equally effective templates in the next round of synthesis").

### 2.     The intrinsic evidence contradicts Dr. Barron's construction

Life Tech states Dr. Barron's definition of "exponential nucleic acid amplification" is "[An amplification] system[] in which the newly synthesized copies [of nucleic acids] can themselves serve as templates for subsequent [amplification] reactions." (Dkt. No. 350 at 9) (bracketed text in original). Dr. Barron's construction is inconsistent with the intrinsic evidence.

*First*, Dr. Barron's construction is contrary to the specification which says that "the number of nucleic acid molecules increases in an exponential amplification reaction *as an exponential function* of the elapsed time." Ex 14 at 1:15-19 (emphasis added) Dr. Barron says nothing about an "exponential function." Under Dr. Barron's definition, an amplification system is "exponential" as long as newly synthesized copies "can" serve as templates. But "exponential functions" are "any function of the type $e^x$ or $Ae^{ax}$, where A and a are constants, e is an irrational number that is the base of natural logarithms, and x is a variable."[9]  As explained by Dr. Slater, $e^{ax}$ is an alternate way to write out a similar definition to the one he used for when evaluating Illumina's products, where "x" is the "elapsed time" in the patents.[10]

*Second*, the intrinsic evidence contradicts Life Tech's argument that "exponential

---

[9] The Oxford Dictionary of Biochemistry and Molecular Biology, 223 (1997) (Ex. 15); G. Walker, et al. (Ex. 7) at 396, cited by Edwards (Dkt. No. 373-1 at 9), uses the same function with different letters.

[10] See Ex. 13 at ¶ 105. See also, Ex. 13 ¶ 43 and paragraphs cited therein. And see Dkt. No. 330-1 at 8, footnote 11 (writing equation $y^n$ in Slater's 2003 paper).

ILLUMINA'S MEMO OF POINTS AND              6              Case No. 3:11-cv-00703-CAB (DHB)
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS

amplification" is defined solely "according to whether copied molecules can act as templates for additional copying." (Dkt. No. 350 at 17).[11] Life Tech's opposition cites new arguments from Dr. Edwards: 1) that "exponential" is met "[a]s long as each product is capable of amplification" but that *physical constraints* on templates that reduce the *probability* of amplification do not make a system non-exponential. (Dkt. No. 373-1 at ¶ 31.) and 2) the specification's teaching that all templates must be "equally effective" is merely *structural, not functional*—they need only share the same "general features that allow them to act as templates, namely, having a sequence complementary to a primer." (*Id.*)

The file history shows the opposite is true. The Chetverins overcame a prior art rejection based on the "kinetics of the amplification," arguing that O'Driscoll did not disclose a system in which "nucleic acid strands would be <u>exponentially</u> amplified," but rather one where "amplification . . . would early on cease to be exponential" because of "annealing of complementary strands,"  while the Chetverins had "discovered that, unexpectedly, nucleic acid amplification reactions display the same kinetics immobilized within the matrices of the invention as in solution.." (Ex. 1 at 7-8 (emphasis in original).) Thus, the Chetverins argued their system was "exponential" because it actually followed exponential *kinetics*, and that a physical constraint—"annealing of complementary strands"—that hindered the structurally adequate template's *probability* to be a template rendered O'Driscoll non-exponential. (Ex. 1 at 8.)

In other words, the system in O'Drsicoll meets Drs. Barron and Edwards' proposed definition of exponential because each product in O'Drsicoll has the required features that make them capable of amplification. Yet the Chetverins said during prosecution that O'Driscoll did not meet the "exponential" requirement of the claim because the Chetverins focused on the kinetics

---

[11] Life Tech also argues this term is not defined by its "theoretical yield in an ideal world." This argument is a smokescreen. Illumina does not seek to construe "exponential" as perfect "doubling every round," although it is commonly understood this way. Tutorial Tr. (Ex. 19) at 19 (Dr. Edwards describing going from 1 to 2 to 4 copies in an exponential reaction). Papers cited by Dr. Edwards conclude the same thing. Gyllensten et al. (Ex.16) (PCR results in "doubling" of the DNA each cycle); G. Walker, et al. (Ex. 7) at Fig. 4 ("doubling time"); R. Saiki, et al. (Ex. 17) at 487 ("each successive cycle essentially double the amount of DNA").

1  of the actual reaction taking place (as did Dr. Slater), not just the structural capabilities of the

2  synthesized products to potentially serve as templates (as did Drs. Barron and Edwards).

3    Dr. Edwards also dismisses Dr. Slater's contention that "equally effective" means the

4  templates have an equal probability of replicating, saying: "I know of no other scientist that

5  requires exponential amplification to require this." Declaration of Jeremy S. Edwards (Dkt. No.

6  373-1 at 10.) The scientific literature[12] and Dr. Edwards' previous testimony at the Tutorial

7  prove otherwise: "And this would be an exponential amplification, and we'll call it exponential,

8  because each time you heat, if you heat these two strands, they will then denature, and they are

9  both ***equal*** templates for the next round of the amplification." Tr. of Oct. 7, 2011 Tutorial

10  ("Tutorial Tr.") (Ex. 21) at 19 (emphasis added). In any case, Dr. Edwards' untimely extrinsic

11  evidence cannot vary the meaning of the claim term in light of the specification. *Omega Eng'g,*

12  *Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir. 2003). In sum, Drs. Barron and Edwards'

13  construction is simply inconsistent with the patent and its prosecution history.

14    **3.    Dr. Slater's construction is supported by the extrinsic evidence**

15    Moreover, the scientific community[13] agrees with Dr. Slater's pre-litigation research[14]

16  proving the Illumina system's kinetics are neither exponential nor linear. "Establishing that an

17  expert's proffered testimony grows out of pre-litigation research or that the expert's research has

18  been subjected to peer review are the two principal ways the proponent of expert testimony can

19  show that the evidence satisfies the [reliability] prong of Rule 702." *Daubert v. Merrell Dow*

20  *Pharm.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert* II"). Indeed, even the *plaintiffs* have cited

21  his papers, saying they describe an amplification system that "differs in principle" from their

22  own. H. Chetverina and A. Chetverin, 73(13) Biochemistry (Moscow) 1361-1387, 1376 and

23

[12] L. Xu and D. Larzul, 14(3) Comp. Immun. Microbiol. Infect. Dis. 209-221, 211 (1991)
(exponential amplification equation showing "efficiency of the $n^{th}$ amplification cycle," $X_n$, is
the same for all molecules present at the start of the cycle, $Q_{n-1}$) (Ex. 18).

[13] Ex. 20 & 21 (Tables of articles citing 2003 and 2005 Slater papers, respectively) (available
online at http://tinyurl.com/bahspbd and http://tinyurl.com/a7x5mgn).

[14] Mercier & Slater 85 Biophysical J. 2075 (2003); Mercier & Slater, 89 Biophysical J. 332
(2005) (Ex. 22 & 23, respectively).

ILLUMINA'S MEMO OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS                8                Case No. 3:11-cv-00703-CAB (DHB)

1386 (ref. 113) (2009) (Ex. 24). Other scientists agree that Illumina's system "has extremely low yield" and "cannot even be characterized by an [sic] exponential growth." A. Drobyshev, et al., 3 Biomicrofluidics 44112 (2009) (Ex. 25). The meaning of "exponential" to scientists is also objectively reflected in the biotechnology (not general purpose) dictionaries Dr. Slater surveyed in his report, that (1) defined exponential in the context of nucleic acid amplification, and (2) were consistent with the specification and the other intrinsic evidence.[15]

On the other hand, the extrinsic record refutes Dr. Barron. The literature shows that "relevant scientific community" does not conclude a reaction is "exponential" merely if copied molecules "can act as templates," but rather when data shows it actually follows an exponential function.[16] Nor did the various Illumina witnesses Life Tech cites support its position. Dr. Backman opined that "if a decreasing fraction of the original templates and copies were capable of serving as templates in each of the subsequent rounds, then the growth would not be exponential."  (Ex. 27 at ¶ 26). Dr. Slater found a decreasing fraction of templates being used in subsequent rounds when he tested Illumina's system. (Ex. 13 at ¶ 79).

Thus, the intrinsic and extrinsic evidence confirms Dr. Slater's construction and refutes Life Tech's argument that "[t]he 'exponential amplification' limitation is not defined quantitatively *such that it can be subject to testing*." *Id.* at 18 (emphasis added). It *can* be tested, as the Chetverins told the Patent Office, and as Dr. Slater did. Dr. Barron just chose not to test.

Finally, responding to a *Daubert* motion is no time for a "do over" on expert reports. Dr. Barron should have developed her claim construction and evidence of infringement in her expert

---

[15] Ex. 13 at 14-15. This use of technical dictionaries to show a meaning consistent with the specification is proper. *Vitronics Corp.*, 90 F.3d at 1584 n.6.

[16] *See*, *e.g.*, n.5 above; *see also* D. Walker and P. McGeer, 14 Molecular Brain Research 109-116, 112 and Fig. 2B (1992) (Showing Fig. 2B with plot over range of 18-26 cycles, and concluding "It shows that an exponential increase (represented by a *straight line on the semilog plot*) is occurring over the range of *18-24* cycles in each case."); J. Olson, et al., 5 Molecular and Cellular Probes 351-58, 356 (col. 2) & Fig. 6 (1991) (reporting "the amount of specific product increases exponentially" for cycles 24-30 as shown by "*a straight line on a semi-log graph*," but "[b]y 32 cycles, the amplification was no longer exponential as shown by the *deviation from linearity*") (emphases added) (Ex. 26 and 5, respectively).

report last August, not five months later in response to Illumina's *Daubert* motion. Fed. R. Civ. P. 26 required a complete statement of all her opinions and their bases, and Life Tech's arguments that her construction is "widely accepted" and "consistent with the specification" are nowhere mentioned. Nor is this omission surprising, since Dr. Barron devoted a single paragraph out of a 69 page report to the meaning of this term. Worse yet, Dr. Edward's 15-page declaration offers new opinions and evidence that were never mentioned in Dr. Barron's report.

**D.     Dr. Barron's testimony should be rejected as scientifically unreliable**

Dr. Barron's report provided only two bases for her conclusion that Illumina's accused systems infringe the "exponential" limitations: 1) they do not follow linear amplification kinetics, so they must necessarily be exponential, and 2) the use of the term "exponential" (in quotes) in an Illumina patent application.[17] The first should be excluded as irrelevant because it is based on an incorrect claim construction, and because it is not based on reliable principles: the choices are not "either linear or exponential," since there are systems that obey fundamentally different kinetics.[18] The second should be excluded because the underlying data has not been shown to be based on scientific knowledge or methods. As in *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354-55 (Fed. Cir. 2007), if this statement is an "admission," the jury can understand it without Dr. Barron's assistance; if it is not, it will not "become proof of infringement when [she] read[s] those materials back to the jury from the witness stand."

**IV.     CONCLUSION**

For at least the reasons above, the Court should exclude Dr. Barron's opinions and proposed testimony regarding the "exponential" amplification limitations.

---

[17] Life Tech claims that Dr. Barron "relies on testimony" from Dr. Boutell. (Dkt. No. 350 at 17). But Dr. Boutell said that Illumina's system was not exponential. (Ex. 10 at 50:16-51:11). Moreover, this testimony was never mentioned in Dr. Barron's report.

[18] Ex. 7 at 396, cited by Dr. Edwards, states that "[e]ach experimental SDA reaction exhibits exponential amplification over the first 60 min. By the 2-h mark, each reaction has switched from exponential amplification to a much less efficient amplification phase." In other words, while not exponential, Walker did not refer to it as linear either. As shown in Fig. 4, the reaction kinetics are in fact not linear after that 60 minute / 1 hour mark, despite not being exponential.

ILLUMINA'S MEMO OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY
OF Dr. BARRON REGARDING
"EXPONENTIAL AMPLIFICATION"
LIMITATIONS                                   10                    Case No. 3:11-cv-00703-CAB (DHB)

1  Dated: January 10, 2013                    Respectfully submitted,

2

3                                             By: */s/ E. Joseph Connaughton*
                                                  101 West Broadway, Ninth Floor
4                                                 San Diego, CA 92101
                                                  (619) 237-5200
5
                                                  Kevin M. Flowers
6                                                 Matthew C. Nielsen
                                                  Mark H. Izraelewicz
7                                                 Cullen N. Pendleton
                                                  Amanda K. Antons
8                                                 Marshall, Gerstein & Borun LLP
                                                  233 South Wacker Drive
9                                                 6300 Willis Tower
                                                  Chicago, IL 60606
10                                                (312) 474-6300
11
                                                  Ronald M. Wawrzyn
12                                                Matthew M. Wawrzyn
                                                  Wawrzyn LLC
13                                                233 South Wacker Drive
                                                  84th Floor, Willis Tower
14                                                Chicago, IL 60606
                                                  (312) 283-8330
15
16
                                                  *Attorneys for Defendants*
17                                                *Illumina, Inc. and Solexa, Inc.*

18

19

20

21

22

23

24

25

26

27

28
    ILLUMINA'S MEMO OF POINTS AND              11              Case No. 3:11-cv-00703-CAB (DHB)
    AUTHORITIES IN SUPPORT OF ITS
    MOTION TO EXCLUDE THE TESTIMONY
    OF Dr. BARRON REGARDING
    "EXPONENTIAL AMPLIFICATION"
    LIMITATIONS