E. Joseph Connaughton (SBN 166765)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
101 West Broadway, Ninth Floor
San Diego, CA 92101
(619) 619-237-5200
jconnaughton@paulplevin.com

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
Mark H. Izraelewicz (*pro hac vice*)
Cullen N. Pendleton (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300

Ronald M. Wawrzyn (*pro hac vice*)
Matthew M. Wawrzyn (*pro hac vice*)
WAWRZYN LLC
233 South Wacker Drive
Chicago, IL 60606
(312) 283-8330

Jeffrey N. Costakos (*pro hac vice*)
Kimberly K. Dodd (SBN 235109)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Illumina, Inc. and Solexa, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION; APPLIED BIOSYSTEMS, LLC; INSTITUTE FOR PROTEIN RESEARCH; ALEXANDER CHETVERIN; HELENA CHETVERINA and WILLIAM HONE,<br><br>Plaintiffs,<br><br>v.<br><br>ILLUMINA, INC. and SOLEXA, INC.,<br><br>Defendants. | CASE NO. 3:11-cv-00703-CAB (DHB)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF LIFE TECHNOLOGIES CORPORATION FOR LACK OF STANDING AND MOTION FOR SUMMARY JUDGMENT OF NO LOST PROFITS [REDACTED]**<br><br>Date/Time:   January 17, 2013, 2:30 p.m.<br>Courtroom:   2 - Fourth Floor<br>Judge:       Hon. Cathy Ann Bencivengo<br>Mag. Judge:  Hon. David H. Bartick<br>Trial Date:  Not set |

**TABLE OF CONTENTS**

I.   PLAINTIFF LIFE TECHNOLOGIES CORPORATION LACKS STANDING............... 1

II.  PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN FOR LOST PROFITS. .......... 2

  A.  Roche Undisputedly Made Significant Sales During the Damages Period. ........... 2

  B.  There Are No Fact Issues Regarding Illumina's Noninfringing Alternatives. ....... 4

    1.  Plaintiffs' ▌ evidence is irrelevant to Illumina's commercial system. ...... 5

    2.  Plaintiffs fail to dispute the viability of *Illumina's* ▌............... 5

  C.  Plaintiffs Have No Admissible Evidence of Manufacturing Capacity. .................. 6

III. AT A MINIMUM, THE COURT SHOULD PRECLUDE CERTAIN DAMAGES. ........ 7

  A.  Plaintiffs' Stacking Theory Is an Overcompensation of Damages. ....................... 7

  B.  There is No Authority for AB to Recover Lost Profits of Foreign Subsidiaries. ... 8

  C.  Plaintiffs Cannot Recover Lost Profits for Sample Prep Reagents ▌. ..... 10

IV.  CONCLUSION........................................................................................................ 10

i

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LIFE TECHNOLOGIES
CORPORATION AND MOTION FOR SUMMARY JUDGMENT OF NO LOST PROFITS

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Arachnid, Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991)......................................................................................2

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964).......................................................................................................8

*Beam Laser Sys., Inc., Cox Comms., Inc.*,
    117 F. Supp. 2d 515 (E.D. Va. 2000) ............................................................................2

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001).....................................................................................7

*Heishman v. Ayers*,
    621 F.3d 1030 (9th Cir. 2010) ......................................................................................7

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)...........................................................................7

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008).....................................................................................9

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211. (Fed. Cir. 1995)......................................................................................8

*Pipe Liners, Inc. v. Am. Pipe. & Plastics, Inc.*,
    893 F. Supp. 704 (S.D. Tex. 1995) ...............................................................................2

*Poly-America, LP v. GSE Lining Tech., Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004)..................................................................................2, 9

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995).......................................................................................7

*Siemens Med. Sol'ns USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed Cir. 2011)......................................................................................3

*Spine Slns., Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010).....................................................................................2

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989).....................................................................................7

*Steelcase, Inc. v. Smart Techs. Inc.*,
    336 F. Supp. 2d 714 (W.D. Mich. 2004) ......................................................................2

ii
CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LIFE TECHNOLOGIES CORPORATION AND MOTION FOR SUMMARY JUDGMENT OF NO LOST PROFITS

*Top Victory Elecs. v. Hitachi Ltd.*,
    10-01579, 2010 WL 4722482 (N.D. Cal. Nov. 15, 2010) ........................................................2

*Villagomes v. Lab. Corp. of Am.*,
    08-00387, 2010 WL 4628085 (D. Nev. Nov. 8, 2010) ............................................................7

*Yeager v. Bowlin*,
    693 F. 3d 1076 (9th Cir. 2012) ................................................................................................10

**FEDERAL STATUTES**

35 U.S.C. § 284.................................................................................................................................8

**RULES**

Federal Rule of Evidence 703................................................................................................. 1, 6-7

1   The Court should dismiss Life Technologies Corporation ("Life") because Plaintiffs have
2 failed to come forward with any evidence that Life has standing to sue. The license from the
3 patentees to Applied Biosystems, LLC ("AB") does not confer standing in its parent, Life, and
4 the Federal Circuit has held that mere status as a parent is insufficient to give rise to standing.

5   The Court should also grant Illumina's motion for summary judgment of no lost profits.
6 Plaintiffs' theory is an all-or-nothing proposition – it requires proof that AB would have made
7 *each and every sale* made by Illumina. For this reason, it is beside the point to argue, as
8 Plaintiffs do, that competitors like Roche were not very strong. Regardless of the strength of the
9 competition, it is undisputable – and, indeed, undisputed – that Roche would have made
10 additional sales in Illumina's absence. This, by itself, defeats Plaintiffs' lost profits claim.

11   In addition, Plaintiffs have failed to raise genuine disputes of material fact regarding
12 other elements of their claim. Regarding noninfringing alternatives, Plaintiffs do not counter
13 Illumina's evidence that it could have implemented either alternative for far less than the ▓▓▓▓
14 they seek in damages. Their only argument is that Illumina preferred its current technology over
15 one alternative and that there would have been costs associated with implementing the other.
16 But those additional costs (still far less than ▓▓▓▓) were fully accounted for in Illumina's
17 expert reports and not rebutted by Plaintiffs. Regarding manufacturing capacity, Plaintiffs do not
18 dispute that their expert, Julie Davis, relied on the expert <u>opinions</u> (not facts) of non-testifying
19 Life employees. But Fed. R. Evid. 703 is clear that an expert cannot simply parrot a non-
20 testifying expert's opinion. Because this evidence – and thus the resulting opinion – is
21 inadmissible, Plaintiffs cannot carry their burden of proof on the issue of lost profits.

22   Finally, the Court should at least preclude Plaintiffs from recovering certain categories of
23 damages for which they have no authority, including sales made by non-party subsidiaries and a
24 stacking of lost profits and a reasonable royalty in excess of AB's actual damages.

25 **I.      PLAINTIFF LIFE TECHNOLOGIES CORPORATION LACKS STANDING.**
26   Contrary to Plaintiffs' opposition, Life lacks standing to sue by virtue of the license to
27 Agencourt (AB's predecessor) or as the parent of AB. The license agreement between the
28 patentees and AB does not confer standing on Life. As Plaintiffs point out, the license

1   agreement ███████████████████████████████████████████. (*See* Lin Decl.,

2   Ex. 2, License at §§ 1.1 & 2.1.)  However, the license agreement does not grant █████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   (*Id.*, § 7.1.)  Without the right to sue, Life is a bare licensee and lacks standing.  *Poly-America,*

9   *LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("[A] licensee generally may

10  not sue for damages unless it has exclusive rights under a patent, including the right to sue.").

11         Life's mere status as the parent corporation of AB is also insufficient to confer standing.

12  The sole case Plaintiffs rely on for such a notion – *Pipe Liners, Inc. v. Am. Pipe. & Plastics, Inc.*,

13  893 F. Supp. 704, 706 (S.D. Tex. 1995) – has been rejected by numerous other courts, including

14  a sister district in this Circuit.[1]  *See Top Victory Elecs. v. Hitachi Ltd.*, 10-01579, 2010 WL

15  4722482, *3-4 (N.D. Cal. Nov. 15, 2010); *Steelcase, Inc. v. Smart Techs. Inc.*, 336 F. Supp. 2d

16  714, 719-720 (W.D. Mich. 2004); *Beam Laser Sys., Inc., Cox Comms., Inc.*, 117 F. Supp. 2d 515,

17  521 (E.D. Va. 2000).  More importantly, the Federal Circuit has since rejected the notion that

18  mere status as a parent corporation of a patentee confers standing by the parent.  *Spine Slns., Inc.*

19  *v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-1318 (Fed. Cir. 2010).

20         The Court should therefore dismiss Life as a plaintiff.

21  **II.    PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN FOR LOST PROFITS.**

22         **A.    Roche Undisputedly Made Significant Sales During the Damages Period.**

23  ████████████████████████████████████████████████████████████████████

24  ████████████████████████  (Opening Mem. at 10-11.)  Despite these material numbers,

25  Plaintiffs continue to insist that ***100%*** of Illumina's sales would have gone to AB and ***0%*** would

---

[1] The *Arachnid* case relied on by Plaintiffs did not even address the issue of a parent company's standing to sue based on the patent rights of a subsidiary.  *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574 (Fed. Cir. 1991).

2

1    have gone to Roche or any other competitor.  Having no rebuttal to their own internal data,

2    Plaintiffs simply ignore it in their opposition and attempt to focus the Court on evidence

3    suggesting that Illumina and AB were the two primary players in the market.  (Opp'n at 8-15.)

4           But this misses the point.  There is no dispute that Illumina and AB were #1 and #2 in the

5    market.  The real question is whether there can be a legitimate dispute that Roche and others

6    would have made a material amount of Illumina's sales if Illumina vanished from the market.

7    Plaintiffs have not carried their burden of proving that AB would have made 100% of Illumina's

8    sales.  Although Plaintiffs do not need to negate every single sale, Plaintiffs still must show a

9    "reasonable probability" that AB would have made *all* of Illumina's sales.  (Opp'n at 9.)

10   Plaintiffs' own data shows that the likelihood of additional sales by Roche is not merely a

11   "metaphysical possibility."  (Opening Mem. at 10-12.)  And Plaintiffs' own expert conceded

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – a point Plaintiffs ignore in their opposition.  (*Id.* at 15-16.)  The

13   only evidence Plaintiffs proffered suggests that Illumina and AB were the two primary players.

14   Plaintiffs did not even attempt to negate the possibility of sales by other players.

15          Nor is there any evidence of market segmentation as Plaintiffs suggest.  In the case on

16   which Plaintiffs rely, *Siemens Med. Sol'ns USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,

17   637 F.3d 1269, 1287-1288 (Fed Cir. 2011), the patentee presented evidence that a third company

18   in the overall PET scanner market did not compete in a "two-supplier high-end PET scanner

19   market" along with the plaintiff and defendant.  *Id.* at 1288.  Contrary to the facts of *Siemens*,

20   Plaintiffs in this case presented no evidence that the Roche 454 instruments are in a separate

21   market for low-end instruments.

22          Although Roche may have a niche for de novo sequencing, it is undisputed that the

23   Roche instruments may also be used for numerous types of sequencing applications (in addition

24   to de novo sequencing).[2]  In fact, Plaintiffs' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25

---

26   [2] But even if the Roche instruments were used exclusively for de novo sequencing, Plaintiffs'
     opposition actually suggests that Roche necessarily would have at least captured some of
27   Illumina's sales in this niche market.  Indeed, Plaintiffs admit in their opposition that
28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     .  (Opp'n at 13.)

1
2 ████████████████████████████████████ (Dodd Decl., Ex. 7 at 6-7.) ███
3
4
5 ███████ (Opening Mem. at 13-14.)  AB's conduct thus shows beyond dispute that Roche's
6 instruments competed in the same market segment as AB and Illumina.
7     Plaintiffs have placed a heavy burden on themselves by seeking lost profits for no less
8 than 100% of Illumina's sales from October 2007 to the present.  The undisputed evidence shows
9 that Roche (and others) competed with AB and Illumina for sales.  Plaintiffs' rebuttal evidence
10 simply shows that Illumina and AB were #1 and #2 in the market.  But the fact that Roche was
11 #3 not negate its existence as a relevant player in the market.  Because Plaintiffs cannot carry
12 their heavy burden, the Court should enter summary judgment of no lost profits.

**B.    There Are No Fact Issues Regarding Illumina's Noninfringing Alternatives.**

14     Plaintiffs have failed to raise a genuine dispute of material fact regarding Illumina's
15 noninfringing alternatives despite having ample opportunity to discover information about those
16 alternatives.  As explained in Illumina's opposition to Plaintiffs' motion to exclude Drs. Hall and
17 Gunderson as experts, Plaintiffs refused to disclose any details regarding their damages theories
18 until serving their expert report on damages, which then delayed the timing of Illumina's rebuttal
19 evidence.  In addition, Plaintiffs failed to capitalize on opportunities to seek discovery regarding
20 Illumina's noninfringing alternatives during fact discovery.  Plaintiffs are also incorrect that
21 Illumina's designated corporate witness lacked information regarding the noninfringing
22 alternatives.  Plaintiffs' questions and his answers were limited to ████████████
23 ████████████████████████████ (Lin Decl., Ex. 18, Eidel Dep. 245:10-246:8.)
24     Plaintiffs' substantive arguments regarding the commercial readiness of the alternatives
25 are unsupported by any evidence.  As explained in the disclosures of Drs. Hall and Gunderson,
26

4

1  ███████████████████████.[3] (Dodd Decl., Ex. 15 at 1.) ████████████████

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████ (*Id.* at 1-4.) ████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████████████████ Plaintiffs have not even attempted to present evidence to dispute

6  these timing estimates.  Thus, there is no evidence to dispute that Illumina could have made the

7  alternatives commercial-ready by the time AB hit the market.

       **1.**     **Plaintiffs' ████ evidence is irrelevant to Illumina's commercial system.**

9        The only evidence Plaintiffs cite █████████████████████████████████

10 █████████████████████████████████ (Opp'n at 16.)  As explained in Illumina's

11 opposition to Plaintiffs' motion to exclude Drs. Hall and Gunderson, this evidence does not

12 create a fact issue because ████████████████████████████████████████████

13 █████████████████████████████████ (Dkt. #353/357 at 12-13.)  Plaintiffs

14 have failed to present any evidence questioning the viability of ████████████████

15 ████ (Opp'n at 16.)  Plaintiffs have thus not rebutted Illumina's proof on this issue.

       **2.**     **Plaintiffs fail to dispute the viability of *Illumina's* ████████.**

17       Plaintiffs also fail to cite any evidence regarding █████████████████

18 ████████████ (Opp'n at 17.)  Plaintiffs rely exclusively on the declaration of Dr. Edwards

19 regarding ███████████████████████████████████████████████████

20 ███████████████████████████████ (*Id.*) ████████████████████████

21 ████████████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████ (Lin Decl., Ex. 16, Edwards

23 Decl. at 9 & 11.) ██████████████████████████████████████████████

24 ████████████████████████ (Supp. Dodd Decl., Ex. 19, Edwards Dep. at 89:3-15.)

25       In fact, █████████████████████████████████████████████

26 ████████████████████ (Lin Decl., Ex. 16, Edwards Decl. at 9.)  He states that the ████

---

[3] ████████████████████████████████████████████████████████████████████
████████████████████████ (Dodd Decl., Ex. 1, Davis Rep. at 32.)

5

1
2  ███████████████ (*Id.*) ████████████████
3  ██████████████ (Supp. Dodd Decl., Ex. 19, Edwards Dep. at 330:8-331:16.)  Nothing in
4  his testimony conflicts with Dr. Gunderson's opinion.  Thus, Plaintiffs have not raised a genuine
5  dispute of material fact regarding the time and cost of implementing ██.

### C.   Plaintiffs Have No Admissible Evidence of Manufacturing Capacity.

Plaintiffs have failed to come forward with any admissible evidence indicating they possessed the manufacturing capacity to make all of Illumina's sales or the cost of that additional capacity.  (Opp'n at 18-21.)  Instead, Plaintiffs rely exclusively on the inadmissible opinions supplied by their employee lay witnesses.  (*Id.*)

Plaintiffs attempt to salvage the inadmissible evidence by bootstrapping it into trial through the expert testimony of Ms. Davis.  (*Id.*)  But there are two problems with Plaintiffs' approach.  First, there is a presumption that the inadmissible evidence underlying Ms. Davis' opinions will not be disclosed to the jury: "Facts or data that are otherwise inadmissible *shall not* be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703 (emphasis added).  But even if the evidence *is* presented to the jury, the jury will be instructed to disregard the evidence for "substantive purposes," such as proof manufacturing capacity and the cost: "If the otherwise inadmissible information is admitted under this balancing test, the trial judge *must* give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes." 2000 Advisory Committee Notes (emphasis added).

Second, *Ms. Davis does not even offer an opinion* regarding manufacturing capacity or the cost thereof.  She merely summarizes the inadmissible expert opinions of Plaintiffs' employee lay witnesses.  (Dodd Decl., Ex. 1, Davis Rep. at 29-31.)  She does not offer her *own opinion* about the cost of additional manufacturing capacity or even analyze the conclusory opinions of the employees.  (*Id.*)  Instead, she merely accepts the employees' opinions at face value and uses those numbers in her damages calculation.  (*Id.*)  Nor could she offer an opinion

6

regarding manufacturing capacity – she is an accountant without any manufacturing experience whatsoever. (*Id.*, Davis Rep., Ex. A (Davis CV); Dodd Decl., Ex. 4, Davis Dep. at 163:6-11.)

Other courts have excluded similar attempts by experts to parrot the findings of other witnesses. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("[T]he expert witness must in the end be giving his own opinion. He cannot simply be a conduit for the opinion of an unproduced expert.") (citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)); *Villagomes v. Lab. Corp. of Am.*, 08-00387, 2010 WL 4628085, *4 (D. Nev. Nov. 8, 2010) (expert witness cannot simply parrot opinions of non-testifying experts). To allow otherwise would deprive the opposing party the opportunity to cross examine the non-testifying expert. *Louis Vuitton*, 525 F. Supp. 2d at 666 ("It is true that under Rule 703, experts can rely on hearsay in reaching their own opinions. But a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."). Indeed, the Ninth Circuit has rejected such attempts to introduce inadmissible testimony through an expert witness: "If the law were otherwise, a party could use an expert as a conduit for self-serving statements and totally avoid cross-examination." *Heishman v. Ayers*, 621 F.3d 1030, 1043 (9th Cir. 2010).

In sum, Plaintiffs have no evidence of manufacturing capacity other than the inadmissible expert opinions of their employee lay witnesses. Because manufacturing capacity is an element of Plaintiffs' proof, the Court should enter summary judgment of no lost profits.

## III. AT A MINIMUM, THE COURT SHOULD PRECLUDE CERTAIN DAMAGES.

### A. Plaintiffs' Stacking Theory Is an Overcompensation of Damages.

Plaintiffs cite no authority approving a combination of lost profits and a reasonable royalty that exceeds the actual damages suffered. (Opp'n at 21-22.) Although Plaintiffs' cases indicate that a patentee may recover both lost profits and a reasonable royalty, none state that the combination may exceed the patentee's *actual* damages. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

1    Plaintiffs do not dispute that the ▒▒▒▒ they seek exceeds the amount of money they
2 would have made "but for" Illumina's alleged infringement.  (Opp'n at 21-22.)  Their attempt to
3 recover an award far in excess of their actual damages runs counter to controlling law.  *Pall*
4 *Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 122. (Fed. Cir. 1995) ("[T]he principle of
5 patent damages is to return the patentee to the pecuniary position it would have been in but for
6 the infringement."); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)
7 ("The question to be asked in determining damages is 'how much had the Patent Holder and
8 Licensee suffered by the infringement.  And that question [is] primarily:  had the Infringer not
9 infringed, what would Patent Holder-Licensee have made?'").  The Patent Act itself provides
10 that patent damages are compensatory, not punitive, and should be "adequate" compensation, not
11 a windfall.  35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant
12 damages ***adequate*** *to compensate for the infringement*, . . . ") (emphasis added).  There is no
13 authority for the Court to award more than "adequate" compensation.

14    In addition to being an overcompensation, Plaintiffs' hybrid theory runs counter to logic.
15 According to Plaintiffs' "but for" theory, Illumina would have sold certain accused products
16 throughout the damages period in exchange for a ▒▒▒ royalty of revenue and its remaining
17 products would have been off the market.  Using a specific example from Ms. Davis' report,
18 Illumina would have sold its amplification instruments, but its sequencing instruments would
19 have been off the market.  (Dodd Decl., Ex. 1 at 40.)  This would make no sense because
20 Illumina's amplification instruments have no use other than with its sequencing instruments.
21 There would have been no market for Illumina's amplification instruments if its sequencing
22 instruments were absent from the market.  Despite the illogic of this "but for" theory, Ms. Davis
23 assumes that Illumina would have sold the same number of amplification instruments during the
24 damages period despite the absence of its sequencing instruments.  Because the accused products
25 all operate as part of a single sequencing workflow, this case is distinguishable from those where
26 the Federal Circuit approved combinations of lost profits and a reasonable royalty (cited above).

27    **B.    There is No Authority for AB to Recover Lost Profits of Foreign Subsidiaries.**
28    Plaintiffs admit in their opposition memorandum that AB only sells products to domestic

1  customers and that non-party subsidiaries sell products to foreign customers.  (Opp'n at 8.)  They
2  cite *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), for the notion that a
3  parent company may recover lost profits for sales lost by subsidiaries.  But that case does not say
4  that – in fact, it expressly left that question undecided.

5        In *Mars*, the plaintiffs made the same argument that Plaintiffs make in this case – that a
6  parent company can recover lost profits for sales that would have been made by subsidiaries.  *Id.*
7  at 1367.  The Federal Circuit found that the facts did not support the plaintiffs' argument.  *Id.*
8  But more than that, the Federal Circuit declined to decide whether a parent company may *ever*
9  recover for the lost profits of a subsidiary: "[W]e, like the *Poly-America* court, need not decide
10 whether a parent company can recover on a lost profits theory when profits of a subsidiary
11 actually do flow inexorably up to the parent.  . . . We hold simply that the facts of this case
12 cannot support recovery under a lost profits theory." *Id.*  In fact, the court had previously
13 expressed a hesitancy to allow such a theory:

> [Plaintiffs] have a common parent corporation and are not simply divisions of a single corporation, but are separate corporate entities.  Their parent has arranged their corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens.  While we do not speculate concerning the benefits that the two companies reap from dividing their operations and separating the owner of the patent from the seller of the patented product, ***Poly-America and Poly-Flex may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure — in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee***.

21 *Poly-America*, 383 F.3d at 1311 (emphasis added).[4]  The Federal Circuit has not addressed this
22 issue since the *Mars* case.  Thus, there is no controlling authority to support Plaintiffs' argument.
23       But even if Plaintiffs' argument is legally viable, their evidence (the declaration of
24 Jereme Sylvain) is insufficient to survive summary judgment on this issue.  Mr. Sylvain makes a
25 single conclusory statement regarding the flow of profits within the corporate conglomerate:
26 [REDACTED]

---

[4] Similarly, Life's corporate structure likely achieves some tax or other financial benefits by maintaining a conglomerate of subsidiaries.

9
CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LIFE TECHNOLOGIES CORPORATION AND MOTION FOR SUMMARY JUDGMENT OF NO LOST PROFITS

███ (Sylvain Decl. ¶ 6.)  The SEC filings of Life (the ultimate parent) demonstrate that this statement is either false or, at best, overly simplistic.  Life reports *as its own* the revenue of all of its subsidiaries in its SEC filings, including the revenues of AB and the foreign subsidiaries.  *See, e.g.*, Dodd Decl., Ex. 5 at 2.)  Therefore, ███

███

███

███

### C. Plaintiffs Cannot Recover Lost Profits for Sample Prep Reagents ███.

Just as AB cannot recover lost profits for sales lost by its foreign subsidiaries, it cannot recover lost profits for sales lost by its subsidiary Ambion for sample prep reagents.  Plaintiffs seek lost profits for sample prep reagents, but admit that non-party Ambion sells some of the relevant sample prep reagents.[6]  (Sylvain Decl. ¶ 4.)

Plaintiffs fail even to address Illumina's other arguments regarding sample/library prep reagents.  As Illumina pointed out in its opening memorandum, there are companies (such as New England Biosystems) that compete with AB in the market for library prep reagents.  (Opening Mem. at 24.)  Plaintiffs have made no attempt to prove that all of Illumina's sample prep sales would have gone to AB as opposed to third parties.  Plaintiffs also fail to address Illumina's argument that they cannot seek lost profits for sample prep kits purchased by MiSeq customers.  Because Plaintiffs are not seeking lost profits for sales of the MiSeq instrument itself, they cannot seek lost profits for the sample prep reagents used with the instrument.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Illumina's motion to dismiss Life and its motion for summary judgment of no lost profits.

---

[5] Courts disregard sham declarations on summary judgment that contradict prior sworn testimony.  *See, e.g., Yeager v. Bowlin*, 693 F. 3d 1076, 1080 (9th Cir. 2012).  The Court should similarly disregard Mr. Sylvain's declaration, which appears to contradict Life's SEC filings.

[6] Plaintiffs assert that AB sells *some* sample prep reagents.  (Opp'n at 8.)  However, Plaintiffs provide no breakdown of the sample prep sales made by AB versus Ambion.

| | |
|---|---|
| Dated: January 10, 2013 | Respectfully submitted, |
| | |
| | */s/ Kimberly K. Dodd* |
| | Jeffrey N. Costakos (*pro hac vice*) |
| | jcostakos@foley.com |
| | Kimberly K. Dodd (SBN 235109) |
| | kdodd@foley.com |
| | FOLEY & LARDNER LLP |
| | 777 East Wisconsin Avenue |
| | Milwaukee, WI 53202-5306 |
| | (414) 271-2400 |
| | |
| | E. Joseph Connaughton (SBN 166765) |
| | PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP |
| | 101 West Broadway, Ninth Floor |
| | San Diego, CA 92101 |
| | (619) 619-237-5200 |
| | jconnaughton@paulplevin.com |
| | |
| | Kevin M. Flowers (*pro hac vice*) |
| | Matthew C. Nielsen (*pro hac vice*) |
| | Mark H. Izraelewicz (*pro hac vice*) |
| | Cullen N. Pendleton (*pro hac vice*) |
| | MARSHALL, GERSTEIN & BORUN LLP |
| | 233 South Wacker Drive |
| | Chicago, IL 60606-6357 |
| | (312) 474-6300 |
| | |
| | Ronald M. Wawrzyn (*pro hac vice*) |
| | Matthew M. Wawrzyn (*pro hac vice*) |
| | WAWRZYN LLC |
| | 233 South Wacker Drive |
| | Chicago, IL 60606 |
| | (312) 283-8330 |
| | |
| | *Attorneys for Defendants/Counterclaim Plaintiffs Illumina, Inc. and Solexa, Inc.* |

11

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LIFE TECHNOLOGIES CORPORATION AND MOTION FOR SUMMARY JUDGMENT OF NO LOST PROFITS