E. Joseph Connaughton (SBN 166765)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
101 West Broadway, Ninth Floor
San Diego, CA 92101
(619) 619-237-5200
jconnaughton@paulplevin.com

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
Mark H. Izraelewicz (*pro hac vice*)
Cullen N. Pendleton (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300

Ronald M. Wawrzyn (*pro hac vice*)
Matthew M. Wawrzyn (*pro hac vice*)
WAWRZYN LLC
233 South Wacker Drive
Chicago, IL 60606
(312) 283-8330

Jeffrey N. Costakos (*pro hac vice*)
Kimberly K. Dodd (SBN 235109)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

*Attorneys for Defendants/Counterclaim Plaintiffs
Illumina, Inc. and Solexa, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION; APPLIED BIOSYSTEMS, LLC; INSTITUTE FOR PROTEIN RESEARCH; ALEXANDER CHETVERIN; HELENA CHETVERINA and WILLIAM HONE,<br><br>Plaintiffs,<br><br>v.<br><br>ILLUMINA, INC. and SOLEXA, INC.,<br><br>Defendants. | CASE NO. 3:11-cv-00703-CAB (DHB)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'** ***DAUBERT*** **MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS RELATING TO LOST PROFITS AND REASONABLE ROYALTY [REDACTED]**<br><br>Date/Time:   January 17, 2013, 2:30 p.m.<br>Courtroom:  2 - Fourth Floor<br>Judge:           Hon. Cathy Ann Bencivengo<br>Mag. Judge: Hon. David H. Bartick<br>Trial Date:    Not set |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

 A. The Court Should Preclude Ms. Davis From Testifying Regarding Lost Profits. .............. 2

 1. Plaintiffs have not identified any evidence in their opposition memoranda to support Ms. Davis' opinion that AB would have made 100% of Illumina's sales. ................................................................................................................... 2

 2. Ms. Davis's reliance on the opinions of employee lay witnesses is unreliable and presumptively inadmissible under Rule 703. .......................................... 3

 B. Ms. Davis' Reasonable Royalty Opinions Are Unreliable. ............................................... 5

 1. Plaintiffs' opposition memorandum clarifies that there are even bigger problems with Ms. Davis' reasonable royalty opinions than her report initially indicated. ..................................................................................................... 5

 2. The PCR licenses are not economically comparable to the hypothetical negotiation. ................................................................................................................ 8

 3. There is no evidence that PCR is technically comparable to the technology of the asserted patents. ............................................................................................... 9

III. CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Eberli v. Cirrus Design Corp.*,
     615 F. Supp. 2d 1357 (S.D. Fla. 2009) .......................................................................................4

*Heishman v. Ayers*,
     621 F.3d 1030 (9th Cir. 2010) ....................................................................................................4

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
     525 F. Supp. 2d 558 (S.D.N.Y. 2007)........................................................................................4

*Lucent Techs., Inc. v. Gateway, Inc.*,
     580 F.3d 1301 (Fed. Cir. 2009).................................................................................................9

*Villagomes v. Lab. Corp. of Am.*,
     08-00387, 2010 WL 4628085 (D. Nev. Nov. 8, 2010) .............................................................4

**RULES**

Federal Rule of Evidence 703 ................................................................................................... 3-4

ii

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

I.     **INTRODUCTION**

Illumina's *Daubert* motion is not motivated by anger, as Plaintiffs hyperbolically claim. Rather, Illumina's motion follows directly from the admonition of the Supreme Court and the Federal Circuit that damages expert opinions must be based on sound economic evidence. Gone are the days when damages experts can pull lost profits and reasonable royalty numbers out of thin air. Plaintiffs seek damages for *100%* of Illumina's sales even though Plaintiffs' internal marketing department observed that Roche made significant sales during the damages period – sales that vied with those of AB. Even Ms. Davis was quick to back down at her deposition and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ – an admission she made just weeks after signing a report calculating almost ▬▬▬ in lost profits based on the assumption that Roche would have made *zero* sales. There is simply no support for Ms. Davis' opinions.

Her reasonable royalty calculation is equally unsupported. She assumes a hypothetical negotiation construct with AB as the hypothetical licensor even though she and Plaintiffs contend that AB's patent rights ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Despite being the incorrect hypothetical licensor, she uses AB's status as a competitor of Solexa to attempt to justify a royalty rate more than twice that of the license between patentees and AB. She then calculates the reasonable royalty damages using a royalty base that includes Illumina's full line of sequencing products – ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This over inclusion results in a royalty base of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

In addition to the problems of these internal inconsistencies, Plaintiffs continue to insist that Ms. Davis' reliance on the hundreds of licenses for the Nobel Prize winning PCR technology was justified even though the asserted patents have never been commercialized by anyone other than Illumina (allegedly). Plaintiffs seem to have no argument to defend this reliance other than the fact that both PCR and the asserted patents involve DNA amplification. The fact that two technologies are in the same general field do not make them comparable from a technical or economic perspective. In fact, Life ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███

Ms. Davis' opinions regarding lost profits and a reasonable royalty are unreliable and should be excluded.

## II. ARGUMENT

### A. The Court Should Preclude Ms. Davis From Testifying Regarding Lost Profits.

#### 1. Plaintiffs have not identified any evidence in their opposition memoranda to support Ms. Davis' opinion that AB would have made 100% of Illumina's sales.

As established in Illumina's opening and reply memoranda in support of its motion for summary judgment of no lost profits,[1] there is no support for Plaintiffs' insistence that **100%** of Illumina's sales would have gone to AB and **0%** would have gone to Roche or any other competitor. In fact, both Ms. Davis and Plaintiffs ignored ███

███ Instead, Plaintiffs simply rely on evidence suggesting that Illumina and AB were the two primary players in the market. But showing that Illumina and AB were the two primary players is not enough to recover 100% of Illumina's sales – Plaintiffs must show that Illumina and AB were the *only* two players in the market. And although Plaintiffs do not need to negate every single sale, Plaintiffs still must show a "reasonable probability" that AB would have made *all* of Illumina's sales. Ms. Davis has no basis for asserting that AB would have done so because she admitted at her deposition that some of the sales would have gone to Roche.

Ms. Davis' lost profits opinions are also unreliable because she did not consider Illumina's two noninfringing alternatives. Plaintiffs' are incorrect that Ms. Davis considered Illumina's ███ noninfringing alternative in her report. (Opp'n at 6-7.) The page from

---

[1] The lost profits sections of Plaintiffs' opposition to Illumina's *Daubert* motion to exclude certain testimony of Julie Davis basically reiterates the same arguments they make in opposition to Illumina's motion for summary judgment of no lost profits. Illumina does not reiterate all of the arguments from its reply here.

1   Ms. Davis' report that Plaintiffs cite merely acknowledges that ▇▇▇▇▇▇

2   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Lin Decl., Ex. 1, Davis Rep. at 7.)  There is no evidence to

4   suggest that Ms. Davis ever inquired with any technical experts to determine whether ▇

5   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*)

6       Plaintiffs are also incorrect that Ms. Davis considered Illumina's use of ▇▇ as a

7   noninfringing alternative.  (Opp'n at 7-8.)  As Plaintiffs acknowledge in their opposition

8   memorandum, Ms. Davis merely considered the declaration of Dr. Jeremy Edwards pertaining to

9   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

10  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11  (Lin Decl., Ex. 16, Edwards Decl. at 11.)  At his deposition, Dr. Edwards admitted ▇▇▇▇

12  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Supp. Dodd Decl.,

13  Ex. 19, Edwards Dep. 89:3-15)  Thus, neither Dr. Edwards nor Ms. Davis investigated whether

14  Illumina's protocols using ▇▇▇ would be viable.

### 2. Ms. Davis's reliance on the opinions of employee lay witnesses is unreliable and presumptively inadmissible under Rule 703.

17      As also demonstrated in Illumina's reply memorandum in support of its motion for

18  summary judgment of no lost profits, the Court should preclude Ms. Davis from testifying

19  regarding Plaintiffs' manufacturing capacity.  The employee lay opinions she relied upon in

20  support are conclusory and unsubstantiated.

21      But even if the opinions were of the type that experts in the field would reasonably rely

22  (as Ms. Davis and Plaintiffs contend), there is a presumption against admission of this

23  inadmissible evidence at trial.  *See* Fed. R. Evid. 703 ("Facts or data that are otherwise

24  inadmissible *shall not* be disclosed to the jury by the proponent of the opinion or inference unless

25  the court determines that their probative value in assisting the jury to evaluate the expert's

26  opinion substantially outweighs their prejudicial effect.") (emphasis added).  And even if

27  Plaintiffs manage to overcome this presumption, the Court must instruct the jury to disregard this

28  evidence for substantive purposes.  *Id.*, 2000 Advisory Committee Notes ("If the otherwise

3

1  inadmissible information is admitted under this balancing test, the trial judge *must* give a limiting
2  instruction upon request, informing the jury that the underlying information must not be used for
3  substantive purposes.") (emphasis added).
4        Once the Court excludes the underlying employee lay witness evidence, there is nothing
5  more for Ms. Davis to testify about regarding manufacturing capacity because she does not even
6  offer an opinion regarding manufacturing capacity. (11/2/12 Dodd Decl., Ex. 1, Davis Rep. at
7  29-31.) She merely accepts the employees' opinions at face value and uses those numbers in her
8  calculation of damages. (*Id.*)
9        Many other courts – including courts in the Ninth Circuit – have precluded experts from
10 simply parroting the opinions of non-testifying experts. *See Louis Vuitton Malletier v. Dooney &*
11 *Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (In rendering an opinion, "the expert
12 witness must in the end be giving his own opinion. He cannot simply be a conduit for the
13 opinion of an unproduced expert.") (citing *Dura Automotive Systems of Indiana, Inc. v. CTS*
14 *Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)); *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357
15 (S.D. Fla. 2009) ("expert must make some findings and not merely regurgitate another expert's
16 opinion"); *Villagomes v. Lab. Corp. of Am.*, 08-00387, 2010 WL 4628085, *4 (D. Nev. Nov. 8,
17 2010) (expert witness cannot simply parrot opinions of non-testifying experts).
18       The Court should similarly preclude this type of parroting to prevent the prejudice that
19 would result from Illumina's inability to cross examine Plaintiffs' employee lay witnesses at
20 trial. *See Louis Vuitton*, 525 F. Supp. 2d at 666 ("It is true that under Rule 703, experts can rely
21 on hearsay in reaching their own opinions. But a party cannot call an expert simply as a conduit
22 for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of
23 his testimony."); *Heishman v. Ayers*, 621 F.3d 1030, 1043 (9th Cir. 2010) ("If the law were
24 otherwise, a party could use an expert as a conduit for self-serving statements and totally avoid
25 cross-examination.").
26                                 ****
27       For all the reasons laid out above and in Illumina's memoranda in support of its motion
28 for summary judgment of no lost profits, Ms. Davis' lost profits opinions are unreliable. The

4

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

1 Court should exclude her lost profits opinions in their entirety. At a minimum, the Court should

2 preclude her from testifying about manufacturing capacity.

**B.  Ms. Davis' Reasonable Royalty Opinions Are Unreliable.**

**1.  Plaintiffs' opposition memorandum clarifies that there are even bigger problems with Ms. Davis' reasonable royalty opinions than her report initially indicated.**

Plaintiffs make an argument in their opposition memorandum that highlights additional flaws in Ms. Davis' reasonable royalty opinions. Plaintiffs argue in point (3) on page 13 of their opposition memorandum that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n at 3.) Specifically, Plaintiffs argue that: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* (citing Lin Decl., Ex. 1, Davis Rep. at 54).) This argument demonstrates that Ms. Davis' opinions are internally inconsistent.

According to this argument, Ms. Davis' assumption that AB would have been the hypothetical licensor in a hypothetical negotiation with Solexa would be impossible. AB derives its rights to the asserted patents through the IPR license. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, the patentees would be the correct hypothetical licensors, not AB.

Imagining the patentees as the hypothetical licensors (instead of AB) undermines many of Ms. Davis' considerations in her analysis of the hypothetical negotiation (reiterated in Plaintiffs' opposition memorandum):

---

[2] Even assuming that Illumina's amplification products infringe the asserted patents, Illumina disagrees that any of the asserted patents are broad enough in scope to cover their sequencing products. Therefore, Illumina disagrees that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Regardless of Illumina's beliefs on this issue, Plaintiffs' argument in point (3) on page 13 of their opposition memorandum demonstrates that Ms. Davis' opinions are internally inconsistent.

5

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

- Unlike AB, the patentees were not direct competitors of Solexa. (*See* Opp'n at 12-13.) In fact, IPR likely would have been a collaborator with Solexa, just as Ms. Davis assumes with respect to Agencourt. (*Id.* at 12.)
- Because the patentees and Solexa were not competitors, there would have been no concern that patentees would be "forfeiting the benefits associated with being first-to-market and face greater obstacles related to the high switching costs in the next-generation sequencing market" as Ms. Davis assumes with respect to AB. (*Id.* at 13.)
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*)

In addition to these considerations, the timing of the hypothetical negotiation between the patentees and Solexa further undermines Ms. Davis' high royalty rate.

- If the hypothetical negotiation did not take place until 2006 as Ms. Davis assumes, two years would have passed since the IPR license to Agencourt. After two years of failure to exploit the licensed patents by Agencourt and AB, the patentees would have been motivated to accept a lower royalty rate in a negotiating with Solexa.
- The 454 sequencing system sold by Roche – which does not use the technology of the asserted patents – first hit the market in 2005. Both the patentees and Solexa would have placed minimal value on the patented technology knowing that sequencing could be successfully achieved using other technologies.

These are just some examples of how the identity of the hypothetical licensor could have affected the considerations of the hypothetical parties, which ultimately could have affected the outcome of the hypothetical negotiation. Ms. Davis' failure to treat the patentees as the hypothetical licensors given ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is fatal to her ultimate

6

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

1  opinion regarding the royalty rate.
2      What is even more problematic about her internal inconsistencies is the effect on her final
3  damages calculations. If AB is the proper hypothetical licensor, as Ms. Davis assumes, then her
4  calculation of the reasonable royalty damages is grossly excessive in light of her assumption
5  regarding ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
6  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
7  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
8  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
9      The flaw in Ms. Davis' calculations is that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■
10 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
11 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
12 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
13 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
14 ■■■■■■■■■■■■■■■
15
16
17
18
19
20
21  (Lin Decl., Ex. 1, Davis Rep. at 40.) As this chart from Ms. Davis' report shows, excluding sales
22  for everything but ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
23  ■■■■■■■■■■ (*Id.*) Had she limited the royalty base to be commensurate with ■■■■■■
24  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
25  ■■■■■■■■■■■■■ (*See id.* at 67.)
26      In sum, Plaintiffs' opposition memorandum itself demonstrates that Ms. Davis' opinions
27  are internally inconsistent. She attempts to justify her ■■■ royalty rate by distinguishing the IPR
28  license in part based on ■■■■■■■■. She then proceeds to analyze the hypothetical

7

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

1  construct using a hypothetical licensor that ████████████████████████████
2  ████████████████  She also opines that the status of the hypothetical licensor (AB) as a direct
3  competitor with Solexa further justifies a higher royalty rate.  But when it comes time to crunch
4  the numbers, she disregards the fact that ████████████████████████████
5  ████████████████████████████████████████████████████████
6  ████████  Ms. Davis' reasonable royalty opinions are unreliable and should be excluded.

### 2. The PCR licenses are not economically comparable to the hypothetical negotiation.

9   In addition to the internal inconsistencies discussed above, Ms. Davis' opinions are
10  flawed because she improperly relied on the PCR licenses to derive her ████ royalty rate.
11  Plaintiffs admit that PCR enabled DNA sequencing, but then attempt to equate that industry-
12  wide breakthrough to Illumina's alleged use of the asserted patents.  (Opp'n at 11-12.)  As
13  Illumina pointed out in its opening memorandum, there is no basis for comparison because the
14  PCR technology is the subject ████████████████████████████████
15  ████████████████████████████  The fact that no other sequencing companying
16  – including AB – has ever exploited the technology of the asserted patents demonstrates the
17  limited value of the technology.
18  Not surprisingly, ████████████████████████████
19  ████████████████████████████████
20-26  ████████████████████████████████████████████████████████
27  (Opening Mem. at 10.)  Plaintiffs ignore this document in their opposition memorandum just as
28  Ms. Davis did in her report.  (*See generally* Opp'n.)

8

And even if Illumina does infringe the asserted patents as Plaintiffs allege, there is no evidence of a nexus between the patents and the features of Illumina's sequencing system. All of the evidence that Plaintiffs cite on page 12 of their opposition memorandum pertains to the general features of Illumina's cluster generation technology. However, none of that evidence even mentions the asserted patents, let alone credit the patents for the touted features. Ms. Davis takes a giant leap when she does so without justification.

There is simply no economic comparison between the PCR licenses and the hypothetical negotiation. Ms. Davis' reasonable royalty opinions are unreliable because she uses the mid-range of the PCR royalty rates rather than more comparable licenses.[3]

### 3. There is no evidence that PCR is technically comparable to the technology of the asserted patents.

Just as the economics of the PCR licenses are distinct from the hypothetical negotiation, so is the underlying technology. Plaintiffs attempt to oversimplify the technologies by arguing that they are both "directed [sic] nucleic acid amplification (or copying nucleic acids)." (Opp'n at 11.) This broad characterization does not make them technologically comparable. The PCR patents cover the most widely-used method of amplifying DNA. In contrast, the asserted patents merely cover a specific medium for use with amplification. This is precisely the sort of broad comparison that the Federal Circuit rejected in *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-39 (Fed. Cir. 2009). There, the court vacated a damages award where the patentee relied on licenses in the same general field without proving a relationship to the patented technology or the accused infringing products. *Id.* at 1325.

\*\*\*\*

In sum, Ms. Davis' opinions are internally inconsistent, unsupported, and unreliable. She botched the hypothetical negotiation and only used facts that favored the Plaintiffs. She also

---

[3] In their opposition memorandum, Plaintiffs argue that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ However, Ms. Davis did not rely the referenced Solexa/Lynx license agreement in forming her opinions, thus that license cannot be used retroactively to salvage her opinions. (Lin Decl., Ex. 1, Davis Rep. at 56-60.)

9

CASE NO. 3:11-CV-00703-CAB (DHB)
REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE CERTAIN TESTIMONY OF JULIE DAVIS

relied exclusively on licenses for the Nobel Prize winning PCR technology, rather than other licenses that are closer in comparison to the hypothetical negotiation. Her opinions should be precluded to avoid undue prejudice and juror confusion.

### III. CONCLUSION

For the foregoing reasons, the Court should preclude Ms. Davis from testifying in support of lost profits and from relying on or testifying about the PCR licenses.

Dated: January 10, 2013

Respectfully submitted,

*/s/ Kimberly K. Dodd*
Jeffrey N. Costakos (*pro hac vice*)
jcostakos@foley.com
Kimberly K. Dodd (SBN 235109)
kdodd@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

E. Joseph Connaughton (SBN 166765)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
101 West Broadway, Ninth Floor
San Diego, CA 92101
(619) 619-237-5200
jconnaughton@paulplevin.com

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
Mark H. Izraelewicz (*pro hac vice*)
Cullen N. Pendleton (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300

Ronald M. Wawrzyn (*pro hac vice*)
Matthew M. Wawrzyn (*pro hac vice*)
WAWRZYN LLC
233 South Wacker Drive
Chicago, IL 60606
(312) 283-8330

*Attorneys for Defendants/Counterclaim Plaintiffs Illumina, Inc. and Solexa, Inc.*