1  MATTHEW D. MURPHEY (SBN 194111)
   TROUTMAN SANDERS LLP
2  11682 El Camino Real, Suite 400
   San Diego, CA  92130
3  Telephone:  (858) 509-6000

4  BRADFORD PAUL SCHMIDT (SBN 174440)
   LIFE TECHNOLOGIES CORPORATION
5  5791 Van Allen Way
   Carlsbad, CA  92008
6  Telephone:  (760) 603-7200

7  NICHOLAS GROOMBRIDGE (*pro hac vice*)
   CATHERINE NYARADY (*pro hac vice*)
   PETER SANDEL (*pro hac vice*)
8  JENNY C. WU (*pro hac vice*)
   REBECCA FETT (*pro hac vice*)
9  ROBERT LIN (*pro hac vice*)
   PAUL, WEISS, RIFKIND, WHARTON &
10 GARRISON LLP
   1285 Avenue of Americas
11 New York, NY  10019
   Telephone:  (212) 373-3000

12 Attorneys for Plaintiffs/Counterclaim Defendants
   LIFE TECHNOLOGIES CORPORATION,
13 APPLIED BIOSYSTEMS, LLC, INSTITUTE
   FOR PROTEIN RESEARCH, ALEXANDER
14 CHETVERIN, HELENA CHETVERINA, and
   WILLIAM HONE
15

16               **UNITED STATES DISTRICT COURT**

17              **SOUTHERN DISTRICT OF CALIFORNIA**

18 LIFE TECHNOLOGIES CORPORATION,          Case No. 3:11-cv-00703-CAB (DHB)
   APPLIED BIOSYSTEMS, LLC, INSTITUTE
19 FOR PROTEIN RESEARCH, ALEXANDER         **[REDACTED] REPLY MEMORANDUM
   CHETVERIN, HELENA CHETVERINA, and       OF POINTS AND AUTHORITIES IN
20 WILLIAM HONE,                           SUPPORT OF PLAINTIFFS' MOTION
                                           FOR SUMMARY JUDGMENT OF
21      Plaintiffs/Counterclaim Defendants,   NONINFRINGEMENT OF THE '656
                                           PATENT**
22 v.
                                           **[FILED UNDER SEAL]**
23 ILLUMINA, INC. and SOLEXA, INC.,

24      Defendants/Counterclaim Plaintiffs.

25                                          Date:       January 17, 2012
                                            Time:       2:30 p.m.
26                                          Courtroom:  2
                                            Judge:      Hon. Cathy Ann Bencivengo
27

28

I.    **INTRODUCTION**

All asserted claims of the '656 Patent require "randomly fragmenting a genome" of an individual and "generating sequence reads of multiple bases on ***all fragments*** of said genome."

████████████████████████████████████████████████████

████    Life explained this in its opening brief and Illumina does not dispute it.  Life is entitled to summary judgment on this basis alone.

Illumina's opposition is instead premised on a new and untimely argument that "all fragments of a genome of an individual" does not mean what it says, but rather means "fragments that together contain all of an individual's genetic information."  [Opp. Br. (Doc. No. 356) at 15.] This cannot be correct.  The language "all fragments" is clear and unambiguous.  Moreover, the '656 specification and claim 1 both confirm unambiguously that "all fragments" includes each of the DNA fragments generated during the step of "randomly fragmenting a genome."

Even if Illumina's new construction were correct (and it is not), Illumina still has not come forward with sufficient evidence of infringement to avoid summary judgment.  Illumina has not identified any evidence or expert opinion suggesting that the accused products sequence "fragments that together contain ***all*** of an individual's genetic information."  The "genome resequencing" and "coverage" aspects of the accused systems upon which Illumina relies include numerous gaps and hence do not contain ***all*** of an individual's genetic information.

Illumina has also failed to come forward with sufficient evidence of inducement or contributory infringement to create a genuine and material dispute of fact.  Illumina cites only Federal Circuit cases from 2008 and earlier, and ignores the more recent Supreme Court authority requiring "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  As to inducement, Illumina's entire evidence is that Life knew of the '656 Patent and provided guidance to customers on how to use the accused products.  That is not sufficient as a matter of law.  As to contributory infringement, Illumina has failed to provide evidence either that Life had the requisite intent or that Life's products have no substantial noninfringing uses.

II.     **ARGUMENT**

A.     **Illumina's New Claim Construction Argument Does Not Create Any Genuine Issue For Trial That Precludes Summary Judgment**

Life respectfully objects to Illumina's attempt to raise a new claim construction argument at this late stage in violation of the scheduling order.  [*See* Opening Br. (Doc. No. 340-1) at 19.][1] Illumina argues that Life is the party seeking an untimely claim construction.  That is incorrect. Any term not construed at the claim construction phase is given its ordinary meaning.  *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008).  Here the ordinary meaning is clear and unambiguous:  "all fragments of said genome" means all fragments generated when the genome was fragmented in the previous claim step.  [*See* '656 Patent (Doc. No. 342-07) at claim 1.]  It is this plain and ordinary meaning that Life is applying.  Illumina's arguments otherwise are the very essence of an untimely claim construction argument and should be rejected.

1.     <u>"All Fragments" Means All Fragments, Not Sufficient Fragments To Cover An Individual's Genetic Information, As Illumina Belatedly Asserts</u>

The plain and ordinary meaning of "all fragments" is just what it says—all fragments.  We begin with claim 1 itself because "the context in which a term is used in the asserted claim can be highly instructive."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  The first step of claim 1 is "randomly fragmenting a genome of said individual," which plainly refers to making physical fragments of the DNA molecules constituting an individual's genome.  [*See, e.g.*, '656 Patent at 7:40-46 ("The genomic DNA may be … used directly to generate fragments of DNA using either restriction endonucleases, other suitable enzymes, a mechanical form of fragmentation or a non-enzymatic chemical fragmentation method.").]  The second step of claim 1 is "generating sequence reads of multiple bases on all fragments of said genome."  The "fragments" are the pieces of actual DNA generated by the process in the first step of claim 1— "randomly fragmenting a genome of said individual."  [*See id.* at claim 1.]  The term "all fragments" in the second step of claim 1 refers to each of the physical fragments of DNA

---

[1] Illumina is correct that the Patent Local Rules do not apply to this case because it was filed before they were enacted.  However, Illumina's attempt to raise a new claim construction argument remains in violation of the scheduling order.

11-cv-00703-CAB (DHB)

generated in the preceding "fragmenting" step.  [*See* Opening Br. (Doc. No. 340-1) at 18.]  The clarity and logic are inescapable.

Illumina nevertheless tries to escape by asking the Court to construe the phrase "all fragments of a genome of said individual" as including additional, unrecited concepts and requirements.  [Opp. Br. at 1-2.]  Illumina states its proposed construction in a number of different ways [*see* Opp. Br. at 2, 12, 15], but they all boil down to the same basic premise—namely, that "all fragments" does not mean all fragments, but rather means only a subset of physical DNA fragments sufficient to span the entirety of an individual's genetic information.  Specifically, Illumina argues that "the Court should construe 'all fragments of a genome of an individual' to mean fragments that together contain all of an individual's genetic information, not each and every physical piece of DNA in which any of that information may be found."  [Opp. Br. at 15.]  This is incorrect.

The purported "key" to Illumina's argument [Opp. Br. at 2] is the meaning of "a genome of an individual," which Illumina contends refers to "genetic information content" and not actual DNA.  [Opp. Br. at 13.]  While the term "genome" can be used in other contexts to refer to genetic information, that plainly is not how the term is used in the first two steps of claim 1.  The claim and the specification are clear that "fragmenting a genome" means breaking actual DNA into shorter pieces of DNA.  [*See* '656 Patent at 7:40-46 ("genomic DNA may be … used directly to generate fragments of DNA"); '656 Patent at 11:36-37 ("a sample of human genomic DNA may be restriction-digested to generate short fragments").]  Accordingly, the term "all fragments of said genome" refers to all of the pieces of actual DNA resulting from the fragmenting step.

Illumina attempts to buttress its argument by suggesting that a "genome" must refer to "genetic informational content" and not a "physical object."   [Opp. Br. at 12-13.]  This is a *non sequitur*.  Whatever the source of the genome to be processed in claim 1, the processing consists of fragmenting an individual's genome (step 1) and then generating sequence reads on all fragments (step 2).  This is a physical process performed on actual DNA, not a metaphysical process performed on "information content."

1    Illumina also argues that it would somehow be unfair if Illumina is held to its word and

2    "all fragments" is treated as meaning precisely what it says.  This is unsupported attorney

3    argument and it is without merit.  First, Illumina is wrong to assert that the '656 Patent allegedly

4    discloses an embodiment that uses size selection (*i.e.*, picking fragments only of a certain size and

5    discarding the rest) to sequence some but not all genome fragments.  [Opp. Br. at 14.]  The '656

6    Patent does not include any such embodiment, and the passage Illumina cites does not say

7    different.[2]  [Opp. Br. at 14 (citing '656 Patent at 12:25-32.]  Second, even if the patent did

8    disclose such embodiments, these embodiments could be covered by other claims.  For example,

9    claim 8, an independent claim which Illumina has ***not*** accused Life of infringing, does not specify

10   "all fragments" and could, in theory, encompass additional embodiments not covered by claims

11   1-7.  "It is not necessary that each claim read on every embodiment."  *Baran v. Med. Device*

12   *Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010).  It is also worth repeating that it was

13   Illumina's choice to include language in claims 1-7 requiring that "all fragments" be sequenced

14   and so if the "all fragments" claims do not cover practical applications, Illumina can only blame

15   itself.  *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

16   Finally, Illumina is wrong to suggest that Life is taking inconsistent positions.  The very

17   documents cited by Illumina show that Life has consistently maintained that the claims require

18   generating sequence reads on every DNA fragment.  For example, Life's expert, Dr. Michael

19   Metzker, followed Life's plain meaning interpretation and also presented an opinion in the

20   alternative addressing Illumina's view of the claims.  Dr. Metzker's report on invalidity states:

21   
22   
23   
24   
25   
26   

> Claim 1 of the '656 Patent requires that sequence reads be generated for "all fragments" of the genome.  ***Persons of ordinary skill in the art would have understood this to require that each fragment that is generated by random cleavage is sequenced***.  Thus, if a subset of fragments is selected for sequencing then the claim limitation would not be met.  However, it is my understanding that Illumina has asserted that this claim limitation is met by Life's SOLiD product, which does select a subset of fragments for sequencing.  ***To the extent that Illumina asserts that***

27   
28   
_____

[2] The passage merely illustrates the number of nucleotide bases that may be sequenced using a given surface area on an array:  "If the fragments each comprise 1000 nucleotides, it is possible to have $10^{10}$ nucleotides per $cm^2$."  ['656 Patent at 12:25-30.]  This says nothing about, and does not teach, size selection.

4

*"all fragments" means a subset of fragments*, the Bentley II paper
discloses this limitation.

[Lin Decl. Exh. 1 (Metzker Opening Report) at ¶ 97 (emphasis added).]

Illumina's contention that "Life Tech interpreted the 'all fragments' limitation at the

Patent Office in the same way Illumina does in this case" is also inaccurate.  [Opp. Br. at 15.]

Life specifically stated in its request for reexamination of the '656 Patent that any claim

interpretations presented therein did not constitute Life's interpretation of the claims, but rather

the interpretations required by Illumina's infringement contentions in the litigation:

> The interpretation and/or construction of the claims in the '656
> patent presented either implicitly or explicitly herein should not be
> viewed as constituting, in whole or in part, Requester's own
> interpretation and/or construction of such claims, but instead … an
> interpretation and/or construction of such claims required by
> contentions made by the patent owner in the previously referenced
> underlying litigation.

[Lin Decl. Exh. 2 ('656 Reexamination Request) at 16; *see also id.* at 15, 17.]

Moreover,  in reexamination, the claims are given their broadest reasonable interpretation, in part

because the patent owner has the opportunity to amend and clarify the claims.  *In re NTP, Inc.*,

654 F.3d 1279, 1287 (Fed. Cir. 2011).  Illumina could have used that opportunity to make explicit

what Illumina now argues the claims mean, but did not.  Notably, Illumina also failed to inform

the Court that on November 26, 2012—three weeks after Life filed this summary judgment

motion, but three weeks ***before*** Illumina filed its opposition—the Patent Office Board issued its

decision affirming the rejection of all claims of the '656 Patent.  A copy of the Board's decision is

provided with this reply.  ['656 Patent Board Decision (Doc. No. 348-3).]

       2.    <u>Even If "All Fragments" Meant Sufficient Fragments To Cover An
Individual's Genetic Information, Life Would Still Be Entitled To
Summary Judgment</u>

Illumina's construction, if accepted, would still require Illumina to prove that Life's

SOLiD and Ion Torrent systems sequence "fragments containing all of the genetic information of

an individual."  [Opp. Br. at 13.] ███████████████████████

███████████████████████████████████████████████████

[Kolodner Res. Rep. (Doc. No. 342-21) at ¶ 73.]  This means complete coverage, with no gaps.

Illumina has failed to identify the evidence that would be sufficient to allow a reasonable jury to

find infringement under its proposed claim interpretation, and accordingly cannot defeat summary

5

1  judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Illumina relies solely

2  on evidence containing general references to the concepts of "whole genome resequencing" and

3  "coverage," without demonstrating that either involves sequencing "all fragments" under

4  Illumina's construction of that term.  Indeed, not only is there no evidence to support Illumina's

5  argument, the evidence is to the contrary.  [Opp. Br. at 19-21.]

6      The evidence is clear that "whole genome resequencing" does not refer to complete

7  coverage of a genome.  As articulated in Life's opening brief, the publication announcing the

8  draft of the human genome sequence defined "coverage" to mean the ***average*** number of times a

9  nucleotide is represented by a sequence determination in a collection of sequence data (*i.e.,* on

10  average, how many times a given nucleotide position would have been expected to have appeared

11  in the actual sequencing data).  [International Human Genome Sequencing Consortium Paper

12  (Doc. No. 342-28) at 865.]  This plainly ***does not*** mean that every nucleotide is necessarily

13  represented at least once, as Illumina asks the Court to believe.  Even with an average of 20-fold

14  coverage, some nucleotide positions in the genome may be represented dozens of times, and some

15  may not be represented at all, producing gaps in the sequence data.  But under Illumina's

16  proposed construction, every nucleotide position of the genome must be covered at least once,

17  and Illumina has not shown (and cannot show) that occurs using the accused systems.

18      Illumina responds that definitions of related terms in this same publication "suggest" that

19  12 to 18-fold coverage amounts to coverage of an entire genome without gaps.  [Opp. Br. at 20.]

20  But this is refuted by the publication itself.  The complete statement regarding "full shotgun

21  coverage" is:  "Clones with full shotgun coverage can usually be assembled with only ***a handful***

22  ***of gaps*** per 100 kb."  [Doc. No. 342-28 at 865 (emphasis added).]  If there are gaps, even only a

23  "handful" of gaps, then there is no infringement under Illumina's newly-proposed construction.

24      Illumina's opposition brief also wrongly equates the definitions of "full shotgun

25  coverage" (described as "ready for finishing" in the human genome publication) with "finished

26  sequence" (described, in the same publication, as having no gaps).  [Opp. Br. at 20.]  "Ready for

27  finishing" and "finished" are not the same, and the publication describes "finishing" as closing all

28  gaps and resolving ambiguities.  [Doc. No. 342-28 at 860.]  Accordingly, far from supporting

6

1    Illumina's argument, the definitions of these additional terms further confirm that "full shotgun

2    coverage" in fact leaves gaps in the sequence data, and does not represent "all of the genetic

3    information of an individual," as Illumina now claims.

4

5    [Opp. Br. at 20.]

6

7

8

9

10

11              3.    Illumina's Accusations Of "Blame" Are Without Merit

12         Illumina's opposition makes accusations of "blame" and alleged "false" statements that

13   are without foundation.  Life chose not to ask Judge Kelly to construe the term "all fragments"

14   because its plain meaning was clear and it did not require construction.  Life proposed during the

15   meet and confer that the term be construed but, as Life informed Judge Kelly, Life used the

16   granted extension to reduce the number of terms to be construed—exactly what a litigant is

17   expected to do.  Moreover, if Illumina believed the construction of the "all fragments" limitation

18   was something other than plain and ordinary meaning, it was required to propose that

19   construction.  *See Central Admixture Pharmacy Servs., Inc. v. Adv. Cardiac Solutions, PC*, 482

20   F.3d 1347, 1356 (Fed. Cir. 2007) (agreeing with district court that ACS waived any argument

21   with respect to a proposed construction by failing to raise it during the claim construction phase).

22   Illumina now asserts, without offering any evidentiary support, that it told Life during the meet

23   and confer in 2010 that it disagreed with Life's understanding of the term; but if so (Life's

24   attorneys have no recollection of it), that was even more reason for Illumina to seek a

25   construction then, so that the dispute would be resolved in a timely manner.

26

27   3

28

     [Lin Decl. Exh 3 (12/14/2010 Costa Dep. Tr.) at 254:8- 17.]

                                        7

1

2

### B.    Illumina Has Not Come Forward With Sufficient Evidence Of Inducement Or Contributory Infringement To Create An Issue Of Fact

3    Illumina argues that it has "provided more than sufficient circumstantial evidence of

4    specific intent" for inducement.  But Illumina is wrong as a matter of law:  Knowledge of a patent

5    and guidance to customers are ***not*** sufficient to establish inducement.  Illumina cites only Federal

6    Circuit cases from 2008 and earlier, and neglects to mention the more recent Supreme Court

7    authority, discussed in Life's opening brief, holding that inducement requires "knowledge that the

8    induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct.

9    2060, 2068 (2011); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.,* 692 F.3d 1301, 1308

10   (Fed. Cir. 2012) (induced infringement "requires that the accused inducer act with knowledge that

11   the induced acts constitute patent infringement").

12   Illumina has not come forward with any evidence whatsoever that Life ever suspected or

13   believed—much less "knew"—its customers were infringing.  Instead, Illumina argues that Life

14   has ***not*** proved that it ***lacked*** a belief that its customers were infringing.  But that is backwards—it

15   is Illumina's burden to show evidence of specific intent, and Illumina cannot do so.

16   The only allegation Illumina makes to challenge Life's lack of specific intent is also

17   flawed.  Illumina argues that Life "told the Patent Office that [Illumina's] construction [of 'all

18   fragments'] was proper."  [Opp. Br. at 22.]  But Life did no such thing, and specifically told the

19   Patent Office that the constructions presented in Life's reexamination request reflected Illumina's

20   position in the litigation.  [Lin Decl. Exh. 2 ('656 Reexamination Request) at 18.]  Life alerted the

21   Patent Office to Illumina's positions; in reexamination, the claims are subject to the broadest

22   reasonable interpretation; and Illumina had the ability to amend its claims to make clear what was

23   being claimed.  Finally, in making this argument, Illumina also ignores all of the other reasons

24   why Life believes it does not infringe any claim of the '656 Patent, as articulated by Dr. Metzker

25   in his 86-page noninfringement report.

26   In the end, Illumina's only evidence of specific intent is that Life knew of the '656 Patent

27   and provided guidance to customers on the use of the accused systems.  That is not sufficient

28   under the controlling law of inducement, including *Global-Tech*.

1    Illumina's allegation of contributory infringement fares no better.  Illumina argues that

2    contributory infringement does not require proof of an intent to cause direct infringement, citing

3    *Ricoh Co., Ltd. v. Quanta Computer Inc.,* 550 F.3d 1325 (Fed. Cir. 2008).  But Illumina fails to

4    acknowledge that contributory infringement does require knowledge that the accused apparatus is

5    "especially made or especially adapted for use in an infringement of such patent, and not a staple

6    article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C.

7    § 271(c); *see also Aro Mfg. Co. v. Convertible Top Replacement Co,* 377 U.S. 476, 488 (1964);

8    *Global-Tech.,* 131 S. Ct. at 2068-69.  Illumina has simply not come forward with any evidence to

9    suggest that this requirement is met.  Illumina has also failed to come forward with sufficient

10   evidence to establish that the accused products have no substantial noninfringing uses.  It is

11   Illumina's burden to show that the accused products are "not a staple article or commodity of

12   commerce suitable for substantial noninfringing use." 35 U.S.C. §271(c).

13                                                                              [*See* Lin Decl. Exh. 4

14   (9/24/2012 Kolodner Deposition Tr.) at 40:17- 41:4.][4]

15    Illumina's opposition makes another unsupported attorney argument in a failed attempt to

16   meet its burden of showing no substantial noninfringing uses.  [Opp. Br. at 25.]  Illumina claims

17   that the accused products are not the SOLiD or Ion Torrent systems, but rather are so-called

18   "embedded software modules" used for whole genome resequencing.  [*Id.*]  But this is

19   insufficient as a matter of law.  Under § 271(c), it is the "material or apparatus" used in a patented

20   process that must lack substantial noninfringing use.  *i4i, Ltd. Partnership v. Microsoft Corp.,* 598

21   F.3d 831, 849 (Fed. Cir. 2010).  In some situations, a particular software tool within a larger

22   product may be the material or apparatus, but only when that tool is a separate and distinct

23   feature.  *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1320-21 (Fed. Cir. 2009).  Thus, in

24   *i4i,* a component of Microsoft Word was a separate and distinct feature because some versions of

25   the product included the feature and some did not.  *i4i,* 598 F.3d at 849.  Illumina has not even

26   [4]

27

28                                                                              [Lin Decl. Exh. 4

(9/24/2012 Kolodner Deposition Tr.) 40:17- 41:4.]

1  attempted to establish that any "software modules" in Life's products that perform whole genome

2  resequencing are "separate and distinct" features that can be treated as a "material or apparatus

3  for use in practicing [the] patented process" of the asserted claims of the '656 Patent.  Thus, the

4  accused products are SOLiD and Ion Torrent and these indisputably have substantial

5  noninfringing uses.

6          Finally, Illumina ignores yet another reason why SOLiD and Ion Torrent have substantial

7  noninfringing uses. ███████████████████████████████████████████████████

8  ████████████████████████████████████████████. [*See, e.g.*, Lin Decl. Exh. 5

9  (Metzker Rebuttal Report) at ¶¶ 108-113, 158; Doc. No. 342-21(Kolodner Rebuttal Report) at ¶

10  88 (████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████

12  █████████████████ ███████████████████████████████████

13  ███████████████████████████████████████████. [*See* Lin

14  Decl. Exh. 6 (Kolodner Report) at ¶ 40; Doc. No. 342-22 (Metzker Rebuttal Report) at ¶¶ 102-

15  103, 149.]  This is a substantial noninfringing use, providing yet another reason why Illumina

16  cannot possibly prevail on its claim for contributory infringement and Life is entitled to summary

17  judgment.

18  **III.    CONCLUSION**

19          Illumina concedes that Life's accused systems do not sequence each of the physical DNA

20  fragments they produce. Illumina's proposed construction of "all fragments" is incorrect, and

21  even under that faulty construction, Illumina has failed to present sufficient evidence that the '656

22  Patent is infringed.  Life is therefore entitled to summary judgment of noninfringement of all

23  asserted claims of the '656 Patent.  In addition, because Illumina has failed to prove that Life had

24  the intent required for inducement or contributory infringement, or that Life's products lacked a

25  substantial noninfringing use, Life is also entitled to summary judgment of no indirect

26  infringement.

27

28

11-cv-00703-CAB (DHB)

1

2

Dated: January 10, 2013                    Respectfully Submitted,

3

4                                          By:   /s/ Jenny C. Wu
                                           Jenny C. Wu

5                                          Bradford Paul Schmidt
                                           LIFE TECHNOLOGIES CORPORATION
6                                          5791 Van Allen Way
                                           Carlsbad, CA  92008
7                                          Telephone:  (760) 603-7200

8                                          Nicholas Groombridge (*pro hac vice*)
9                                          Catherine Nyarady (*pro hac vice*)
                                           Peter Sandel (*pro hac vice*)
10                                         Jenny C. Wu (*pro hac vice*)
                                           Rebecca Fett (*pro hac vice*)
11                                         Robert Lin (*pro hac vice*)
                                           PAUL, WEISS, RIFKIND, WHARTON &
12                                         GARRISON LLP
                                           1285 Avenue of Americas
13                                         New York, NY  10019
                                           Telephone:  (212) 373-3000
14

15                                         Matthew D. Murphey
                                           TROUTMAN SANDERS LLP
16                                         11682 El Camino Real, Suite 400
                                           San Diego, CA  92130
17                                         Telephone:  (858) 509-6000

18
                                           *Attorneys for Plaintiffs*
19                                         LIFE TECHNOLOGIES CORPORATION,
                                           APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR
20                                         PROTEIN RESEARCH, ALEXANDER
                                           CHETVERIN, HELENA CHETVERINA, and
21                                         WILLIAM HONE

22

23

24

25

26

27

28

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that, on January 10, 2013, a true and correct copy of the document entitled:

**[REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '656 PATENT**

was transmitted to the parties and counsel of record listed below via the Court's CM-ECF system

as a result of the electronic filing of these documents.

I also certify that true and correct copies of the following sealed lodged proposed

documents entitled:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ILLUMINA'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT THE '656 PATENT [FILED UNDER SEAL]**

| | |
|---|---|
| Bradford P. Schmidt<br>LIFE TECHNOLOGIES CORPORATION<br>5791 Van Allen Way<br>Carlsbad, CA 92008<br>Telephone:  (760) 603-7200<br>Email:<br>bradford.schmidt@lifetech.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |
| Nicholas Groombridge (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>Peter Sandel (*pro hac vice*)<br>Rebecca Fett (*pro hac vice*)<br>Jenny C. Wu (*pro hac vice*)<br>Robert Lin (*pro hac vice*)<br>Catherine Nyarady (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue Of Americas<br>New York, NY 10019<br>Telephone:  (212) 373-3000<br>Email:<br>ngroombridge@paulweiss.com<br>psandel@paulweiss.com<br>rfett@paulweiss.com<br>jcwu@paulweiss.com<br>rlin@paulweiss.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES CORPORATION, APPLIED BIOSYSTEMS, LLC, INSTITUTE FOR PROTEIN RESEARCH, ALEXANDER CHETVERIN, HELENA CHETVERINA, and WILLIAM HONE |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | Matthew D. Murphey<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Telephone:  (858) 509-6000<br>Email:<br>matt.murphey@troutmansanders.com | *Attorneys for Plaintiffs*<br>LIFE TECHNOLOGIES<br>CORPORATION, APPLIED<br>BIOSYSTEMS, LLC, INSTITUTE<br>FOR PROTEIN RESEARCH,<br>ALEXANDER CHETVERIN,<br>HELENA CHETVERINA, and<br>WILLIAM HONE |
| 6<br>7<br>8<br>9 | E. Joseph Connaughton<br>PAUL, PLEVIN, SULLIVAN & CONNAUGHTON<br>LLP<br>101 Broadway, Ninth Floor<br>San Diego, CA 94304<br>Telephone:  (619) 744-3645<br>Email:<br>connaughton@paulplevin.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | Mark H. Izraelewicz *(pro hac vice)*<br>Kevin M. Flowers *(pro hac vice)*<br>Matthew C. Nielsen *(pro hac vice)*<br>Cullen N. Pendleton *(pro hac vice)*<br>John R. Labbe *(pro hac vice)*<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 474-6300<br>Email:<br>mizraelewicz@marshallip.com<br>kflowers@marshallip.com<br>mnielsen@marshallip.com<br>cpendleton@marshallip.com<br>jlabbe@marshallip.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| 19<br>20<br>21<br>22 | Ronald M. Wawrzyn *(pro hac vice)*<br>Matthew M. Wawrzyn *(pro hac vice)*<br>WAWRZYN LLC<br>233 South Wacker Drive, 84th Floor, Willis Tower<br>Chicago, IL 60606<br>Telephone:  (312) 283-8330<br>Email:<br>matt@wawrzynlaw.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |
| 23<br>24<br>25<br>26<br>27<br>28 | Jeffrey N. Costakos *(pro hac vice)*<br>Rebecca J. Pirozzolo-Mellowes *(pro hac vice)*<br>FOLEY & LARDNER, LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone:  (414) 297-5717<br>Email:<br>jcostakos@foley.com<br>jpirozzolo-mellowes@foley.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA INC. and SOLEXA, INC. |

11-cv-00703-CAB (DHB)

| | |
|---|---|
| Steven J. Balick<br>Andrew Dieter Cordo<br>Lauren E. Maguire<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>PO Box 1150<br>Wilmington, DE  19899<br>Telephone:  (302) 654-1888<br>Email:<br>sbalick@ashby-geddes.com<br>acordo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br>tlydon@ashby-geddes.com | *Attorneys for*<br>*Defendants/Counterclaimants*<br>ILLUMINA, INC. and SOLEXA, INC. |

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the above is true and correct, and that I executed this Certificate of Service on January 10, 2013 at New York, New York.

*s/ Jenny C. Wu*
Jenny C. Wu
E-mail:  JCWu@paulweiss.com

3

11-cv-00703-CAB (DHB)