1  E. JOSEPH CONNAUGHTON (SBN 166765)
2  **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  101 West Broadway, Ninth Floor
   San Diego, CA  92101-8285
   Telephone: 619-237-5200
4  Facsimile: 619-615-0700
   jconnaughton@paulplevin.com
5
6  Kevin M. Flowers (pro hac vice)
   Matthew C. Nielsen (pro hac vice)
   Mark H. Izraelewicz (pro hac vice)
7  Cullen N. Pendleton (pro hac vice)
   MARSHALL, GERSTEIN & BORUN LLP
8  233 South Wacker Drive
   6300 Willis Tower
9  Chicago, Illinois 60606-6357
   (312) 474-6300
10
11  Ronald M. Wawrzyn (pro hac vice)
    Matthew M. Wawrzyn (pro hac vice)
    WAWRZYN LLC
12  233 South Wacker Drive
    84th Floor, Willis Tower
13  Chicago, IL 60606
    (312) 283-8330
14
    Attorneys for Defendants
15  ILLUMINA, INC. and SOLEXA, INC.
16
17                 UNITED STATES DISTRICT COURT
18                 SOUTHERN DISTRICT OF CALIFORNIA
19  LIFE TECHNOLOGIES                CASE NO. 11-CV-0703-BTM (DHB)
    CORPORATION; APPLIED
20  BIOSYSTEMS, LLC; INSTITUTE       **ILLUMINA'S OPPOSITION TO LIFE**
    FOR PROTEIN RESEARCH;            **TECH'S MOTION FOR**
21  ALEXANDER CHETVERIN;             **RECONSIDERATION**
    HELENA CHETVERINA and
22  WILLIAM HONE,

23            Plaintiffs,            Date:       June 14, 2013
                                     Time:       11:00 a.m.
    v.                               Courtroom:  15B (15th Flr. Annex)
24                                   Judge:      Hon. Barry Ted Moskowitz
    ILLUMINA, INC. and SOLEXA,
25  INC.,                            Mag. Judge: Hon. David H. Bartick
                                     Courtroom:   Suite 1018 (Annex)
26            Defendants.            Trial Date:  Not set
27
28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

11-cv-00703-BTM (DHB)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. LEGAL STANDARDS .................................................................................... 3

III. ARGUMENT .................................................................................................. 5

    A.    Judge Bencivengo's Decision Granting Summary Judgment ................................ 5

    B.    Judge Bencivengo Did Not Err in Finding that Formamide is a Component of Illumina's "Amplification System" ............................... 6

        1.    Judge Bencivengo Correctly Applied Judge Kelly's Claim Constructions to the Undisputed Facts .......................... 7

        2.    Life Tech Improperly Attempts to Re-Litigate Issues Already Decided in this Case ................................ 8

        3.    Life Tech Merely Argues that Judge Bencivengo Did Not Accept Life Tech's Arguments ........................... 9

        4.    Life Tech Improperly Raises New Arguments ........................ 10

            a.    Life Tech Improperly Raises the New Argument that Components Used in the "Incubating" Step Are Not Part of the Amplification System ............... 11

            b.    Life Tech Improperly Raises the New Argument that a Component that Can Be Replaced Is Not a Component of the Amplification System ................ 12

    C.    Judge Bencivengo Did Not Err in Finding No Genuine Issues of Disputed Material Fact ................................... 14

        1.    Life Tech Never Disputed that Formamide "Denatures" Double-Stranded DNA in Illumina's Accused System ................ 15

        2.    The Undisputed Fact is that Formamide Is Non-Aqueous ................ 16

    D.    Judge Bencivengo Did Not Change Judge Kelly's Construction of "Amplification System" ............................... 20

    E.    Life Tech's New Infringement Arguments Should Be Rejected ................ 23

        1.    Life Tech Cannot Now Raise a "Hypothetical Literal Infringement" Argument ............................... 23

        2.    Life Tech Cannot Now Raise a Doctrine-Of-Equivalents Argument ................................... 24

IV. CONCLUSION .............................................................................................. 25

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

i

11-cv-00703-BTM (DHB)

1

**TABLE OF AUTHORITIES**

2
**Page(s)**

3
**FEDERAL CASES**

4

*Abbott Labs. v. Syntron Bioresearch, Inc.*

5
No. 98 CV 2359, 2000 WL 33967724 (S.D. Cal. Sept. 28, 2000)......................................... 19

6
*Backlund v. Barnhart*

7
778 F.2d 1386 (9th Cir. 1985)........................................................................................ 3

8
*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*
731 F.2d ................................................................................................... 14, 19, 20, 25

9
*Brown v. Cirque du Soleil Nevada, Inc.*

10
255 Fed. Appx. 117 (9th Cir. 2007)........................................................................ 4, 5, 7, 8

11
*Carroll v. Nakatani*
342 F.3d 934 (9th Cir. 2003)........................................................................................ 3

12

13
*Christianson v. Colt Indus. Operating Corp.*
486 U.S. 800 (1988)..................................................................................................... 8

14
*Cooper v. Levine*

15
No. 05-2119, 2007 WL 3026426 (S.D. Cal. Oct. 16, 2007) ................................................ 10

16
*Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*
597 F.3d 1374 (Fed. Cir. 2010)..................................................................................... 20

17

18
*Hopwood v. Texas*
236 F.3d 256 (5th Cir. 2000)......................................................................................... 4

19

20
*In re Papio Keno Club, Inc.*
262 F.3d 725 (8th Cir. 2001)......................................................................................... 4

21
*Kennedy v. Allied Mut. Ins. Co.*
952 F.2d 262 (9th Cir. 1991)........................................................................................ 20

22

23
*Kona Enter. Inc. v. Estate of Bishop*
229 F.3d 877 (9th Cir. 2000)................................................................................... passim

24
*Navajo Nation v. Norris*

25
331 F.3d 1041 (9th Cir. 2003)........................................................................................ 4

26
*Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*
841 F.2d 918 (9th Cir. 1988)......................................................................................... 3

27

28
*Nunes v. Ashcroft*
375 F.3d 805 (9th Cir. 2004)......................................................................................... 4

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

ii

11-cv-00703-BTM (DHB)

*Pyramid Lake Paiute Tribe of Indians v. Hodel*
    882 F.2d 364 (9th Cir. 1980) ................................................................. 4

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*
    326 F.3d 1255 (Fed. Cir. 2003) ........................................................ 9, 12

*Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. AC & S, Inc.*
    5 F.3d 1255 (9th Cir. 1993) ................................................................. 4

*Sequa Corp. v. GBJ Corp.*
    156 F.3d 136 (2d Cir. 1998) ................................................................. 4

*Thomas v. Bible*
    983 F.2d 152 (9th Cir. 1993) ............................................................... 9

*U.S. v. Wetlands Water Dist.*
    134 F. Supp. 2d 1111 (E.D. Cal. 2001) ........................................... 3, 4

*White v. Dunbar*
    199 U.S. 47 (1886) ............................................................................... 9

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Fed. R. Civ. P. 56(d) ............................................................................. 19

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

iii

11-cv-00703-BTM (DHB)

# I. INTRODUCTION

In its motion for reconsideration, Life Tech apparently expects this Court to ignore everything that's happened in this case, and give Life Tech a complete "do-over" on Illumina's motion for summary judgment of non-infringement. Life Tech filed this lawsuit three-and-a-half years ago. Judge Kelly conducted a *Markman* proceeding with detailed briefing and oral argument.[1]  Judge Kelly then issued a 24-page decision construing 12 claim terms. The parties conducted fact discovery for over two years. Months of expert discovery followed, with each side submitting reports by multiple experts on each disputed issue. The parties then submitted very detailed summary-judgment briefs regarding the non-infringement issue, based on the voluminous record, and engaged in hours of oral argument before Judge Bencivengo.

Despite having more-than-ample opportunities to offer evidence, expert reports, and arguments to oppose Illumina's motion, and having done so, Life Tech apparently thinks it is entitled to come before this Court and rely on wholly new evidence, wholly new expert reports, and wholly new arguments (in addition to re-making the same arguments, which Judge Bencivengo considered and rejected). Life Tech's approach violates the law regarding motions for reconsideration, is, frankly, outrageous, and should be summarily rejected.

Judge Bencivengo granted summary judgment for Illumina based on one simple fact that was not disputed at the time she rendered her decision, and that Life Tech still cannot legitimately dispute: the chemical "formamide" used in Illumina's system is not aqueous (not "water-based"). All of Life Tech's relevant patent claims require that the components of the amplification system be in an aqueous— water-based—medium. Judge Bencivengo correctly held that Illumina does not

---

[1] Life Tech originally filed this case in the United States District Court for the District of Delaware, where it was assigned to Judge Robert F. Kelly, Sr.

1    infringe as a matter of law because formamide is not water-based.

2        Indeed, Judge Bencivengo recognized that Illumina's accused system is

3    "very different" from that described in the patents-in-suit:

> This is [Life Tech's] problem . . . . It seems to me that it's
> just two very different ways of doing this. [The asserted
> claims are] talking about a system where everything has
> got to stay in one place . . . . [In Illumina's system]
> everything is washing in and out . . . .

8    (Ex. 1 (1/17/2013 Hrg. Tr.) at 39:22-40:2.)  Non-aqueous formamide is one of the

9    components that "is washing in and out" in Illumina's system.

10       In its motion for reconsideration, Life Tech improperly relies on new

11   arguments and new expert opinions, but fails to identify a proper basis for

12   reconsideration of Judge Bencivengo's well-reasoned decision.  Life Tech has not

13   presented newly discovered evidence, or shown that there has been an intervening

14   change in the controlling law, or that Judge Bencivengo overlooked any controlling

15   law or dispositive fact.  And Life Tech does not present any legitimate basis for its

16   assertion that Judge Bencivengo committed clear error.

17       As discussed below, Judge Bencivengo correctly applied Judge Kelly's claim

18   constructions.  Most remarkably, Life Tech now complains about a construction

19   that it sought and obtained.  The doctrine of judicial estoppel bars Life Tech from

20   this specious attack.

21       For the most part, the arguments Life Tech makes are nothing more than

22   rehashed attacks on Judge Kelly's claim-construction order.  Judge Kelly entered an

23   order holding that an "amplification system" is "a set of components that together

24   can amplify a nucleic acid."  Now, as it did before Judge Bencivengo, Life Tech

25   argues for a more limited construction of "amplification system."  Rather than

26   being broadly defined by the function of amplifying a nucleic acid, Life Tech

27   argues that the "amplification system" should be limited to a listing of the

28   components that copy nucleic acids.  This attack on Judge Kelly's broad

1   construction of "amplification system"—the very construction that Life Tech

2   argued for and obtained—was properly rejected by Judge Bencivengo, and should

3   be rejected again.

4          In the end, Life Tech's arguments prove nothing more than that it is

5   dissatisfied with Judge Bencivengo's decision.  This does not satisfy Life Tech's

6   heavy burden, as "[a] party seeking reconsideration must show more than

7   disagreement with the Court's decision."  *U.S. v. Wetlands Water Dist.*, 134 F.

8   Supp. 2d 1111, 1131 (E.D. Cal. 2001).  Life Tech improperly seeks to reargue

9   issues Judge Kelly and Judge Bencivengo already decided, and either rehashes the

10  same arguments it previously made or raises entirely new arguments it could have

11  made; both are reasons for summary denial of Life Tech's motion.  *Backlund v.*

12  *Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (reconsideration properly denied

13  because it presented no arguments that had not already been raised in opposition to

14  summary judgment); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)

15  (reconsideration "motion may not be used to raise arguments or present evidence

16  for first time when they could reasonably been raised earlier in the litigation").

17         For at least these reasons, Life Tech's motion should be denied.

18                        **II.  LEGAL STANDARDS**

19         The standard of review applicable to motions for reconsideration is strict, and

20  reconsideration should only be granted in highly unusual circumstances.  *Northwest*

21  *Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988)

22  (motions for reconsideration are generally disfavored); *Carroll*, 342 F.3d at 945

23  (reconsideration should only be granted in "highly unusual circumstances").

24         The standard for reconsideration is strict because reconsideration is an

25  "extraordinary remedy, to be used sparingly in the interests of finality and

26  conservation of judicial resources."  *Id*.  A reconsideration motion "is not a vehicle

27  for relitigating issues, presenting the case under new theories, securing a rehearing

28  on the merits, or otherwise taking a 'second bite at the apple.'"  *Sequa Corp. v. GBJ*

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

3

11-cv-00703-BTM (DHB)

1   *Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

2   Reconsideration is only appropriate where the Court:  (1) is presented with

3   newly discovered evidence; (2) committed clear error; or (3) rendered a decision

4   that was manifestly unjust; or (4) where there is an intervening change in

5   controlling law.  *Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. AC & S, Inc.*, 5 F.3d

6   1255, 1263 (9th Cir. 1993); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882

7   F.2d 364, 369 n.5 (9th Cir. 1980).

8   Clear error is a very exacting standard.  As the party moving for

9   reconsideration, Life Tech must demonstrate a palpable defect by which Judge

10  Bencivengo was misled.  "A party seeking reconsideration must show more than a

11  disagreement with the Court's decision, and recapitulation of the cases and

12  arguments considered by the court before rendering its original decision fails to

13  carry the moving party's burden."  *Wetlands Water Dist.*, 134 F. Supp. 2d at 1131

14  (internal citations omitted); *see also Hopwood v. Texas*, 236 F.3d 256, 273 (5th Cir.

15  2000) (a court's decision must be "more than just maybe or probably wrong; it must

16  be dead wrong"); *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001)

17  (the error must be so clear that it strikes the court as being "wrong with the force of

18  five-week-old, unrefrigerated dead fish.") (quotation omitted).

19  Ultimately, the decision on a motion for reconsideration lies in this Court's

20  sound discretion. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003)

21  (citing *Kona Enter. Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

22  This Court need not even consider a motion for reconsideration relying on

23  arguments previously made and ruled on.  *Nunes v. Ashcroft*, 375 F.3d 805, 808

24  (9th Cir. 2004).  It is likewise within this Court's discretion to deny reconsideration

25  when correcting the alleged error would not change the result.  *Brown v. Cirque du*

26  *Soleil Nevada, Inc.*, 255 Fed. Appx. 117, 120 (9th Cir. 2007).

27  / / /

28  / / /

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

4

11-cv-00703-BTM (DHB)

# III.  ARGUMENT

1

2    Life Tech first argues that Judge Bencivengo's thorough and well-reasoned

3   analysis of the non-infringement issues, which was based on the parties'

4   comprehensive briefing (supported by voluminous expert reports and voluminous

5   evidence) and several hours of oral argument, was based on "clearly erroneous"

6   determinations about whether formamide (1) is a component of, and (2) is in the

7   aqueous liquid phase of, Illumina's accused amplification system.

8    Judge Bencivengo's analysis was not erroneous, it was correct, for the

9   reasons discussed below.

10   **A.    Judge Bencivengo's Decision Granting Summary Judgment**

11    In her decision (Dkt. No. 488), Judge Bencivengo granted Illumina's motion

12   for non-infringement of all of the asserted claims of the Chetverin patents.

13    Judge Bencivengo first laid out the proper legal standards under which

14   Illumina's motion would be decided.  (*Id*. at 2.)  Then, she discussed the structure

15   and relevant limitations of the asserted claims, and the constructions of those

16   limitations by Judge Kelly.  (*Id*. at 2-4.)  She then explained the workings of

17   Illumina's accused system in great detail, adopting in large part the description of

18   that system set out in Life Tech's briefing and in the expert report of Life Tech's

19   expert witness on infringement, Dr. Annelise Barron.  (*Id*. at 4-5.)

20    Regarding the '478 patent claims and claim 17 of the '698 patent, Judge

21   Bencivengo concluded that Illumina's system did not infringe the claim limitation

22   "aqueous liquid phase that includes a cell-free, enzymatic, exponential nucleic acid

23   amplification system" because although formamide is a necessary part of Illumina's

24   amplification system, the formamide Illumina uses is non-aqueous (does not

25   contain water) and thus is not part of a "[water-based] aqueous liquid phase." (Dkt.

26   No. 488 at 7-8, 11.)  Likewise, Judge Bencivengo concluded that the '568 patent

27   claims, which recite "an aqueous liquid phase that includes a cell-free nucleic acid

28   polymerase enzyme system," were not infringed by the accused system. (*Id*. at 8.)

5  11-cv-00703-BTM (DHB)

1    Judge Bencivengo rejected Life Tech's argument that formamide was not a

2   component of Illumina's amplification system because it was a denaturant, rather

3   than a reagent that performs the *copying* portion of the amplification process.

4   Judge Bencivengo concluded that this argument was contrary to Judge Kelly's

5   claim construction order, according to which an "amplification system" is "the set

6   of components that together can amplify a nucleic acid."  (*Id.* at 6.)  In support,

7   Judge Bencivengo noted that the specification does not limit "amplification system"

8   components to those that "copy" the nucleic acid: according to the specification, the

9   so-called "3SR" exponential amplification system includes a component called

10  RNAse H, which, like formamide, is not involved in the copying step.  (*Id.* at 6-7.)[2]

**B.    Judge Bencivengo Did Not Err in Finding that Formamide is a Component of Illumina's "Amplification System"**

13    In the summary judgment briefing, the supporting experts' declarations, and

14  at the hearing on Illumina's motion, it was undisputed that formamide is a non-

15  aqueous chemical essential to Illumina's amplification system.  Judge Bencivengo

16  correctly based summary judgment of non-infringement on this undisputed fact.

17    Life Tech's arguments in its motion cannot show that Judge Bencivengo

18  committed error in any respect.  First, Judge Bencivengo correctly applied Judge

19  Kelly's constructions of the relevant claim terms to undisputed facts. Second, Life

20  Tech improperly attempts to re-litigate issues that have already been decided in this

21  case.  Third, Life Tech merely argues that Judge Bencivengo did not accept Life

22  Tech's arguments—which cannot be a basis for finding error. Fourth, Life Tech

23  raises wholly new arguments, which is impermissible on a motion for

---

[2] Judge Bencivengo also found that Illumina's system does not infringe the limitation "wherein the average distance between the nearest solid surfaces is *smaller* than the distance which the synthesized nucleic acid product can migrate by diffusion during the reaction" in claim 1 of the '698 patent, based on "unequivocal" admissions in Dr. Barron's expert report (Dkt. No. 488 at 11-13), but Life Tech does not challenge that aspect of the decision in its motion for reconsideration.

1   reconsideration and cannot support a finding of error.

2     **1.**  **Judge Bencivengo Correctly Applied Judge Kelly's Claim**

3        **Constructions to the Undisputed Facts**

4     Life Tech's argument that Judge Bencivengo clearly erred by not applying

5   Judge Kelly's claim constructions to the evidence is fallacious.  As Judge

6   Bencivengo indicated, "The parties presented their infringement arguments based

7   on the claim constructions entered by Judge Kelly.  The Court applies those

8   constructions to the evidence presented."  (Dkt. No. 488 at 2.)

9     Early in this case, Judge Kelly conducted a *Markman* proceeding and

10  adopted Life Tech's proposed construction of "amplification system."  (Dkt. No.

11  132 at 4 ("After reviewing the arguments advanced by the parties the Court

12  concludes that Plaintiffs' construction, i.e., 'a set of components that together can

13  amplify a nucleic acid' should be adopted.").)  Judge Kelly recognized that this

14  construction encompasses any component that was necessary for amplifying a

15  nucleic acid. Judge Kelly also held that the "amplification system" of the claims is

16  not limited to a defined list of components:  "One skilled in the art would agree that

17  amplification systems . . . would generally contain certain components such as a

18  buffer, enzyme, and substrates, [but] the claims are not defined in that manner."

19  (*Id*. at 6.)

20    The parties never disputed that formamide is essential to Illumina's

21  amplification process. Judge Bencivengo properly applied this undisputed fact:

22      Formamide is again flowed into the channel, pushing out
23      the previous reagents, and separating the double strands
        into two single strands each covalently bound to the
24      surface. These strands form bridges with available
        primers, and the cycles are repeated, replicating [i.e.,
25      amplifying] the bridged strands, separating them, and
        replicating them again . . . .

26  (Dkt. No. 488 at 5.)

27    Judge Bencivengo held that formamide is therefore a component of

28  Illumina's amplification system because "[f]ormamide works in combination with

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

7

11-cv-00703-BTM (DHB)

the other components to achieve exponential, nucleic acid amplification.  It is a necessary component of Illumina's amplification system." (*Id*. at 5.)

2.   **Life Tech Improperly Attempts to Re-Litigate Issues Already Decided in this Case**

Judge Kelly's construction of "amplification system" as including all of the components necessary to amplify a nucleic acid is the law of the case.  "[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).  Judge Bencivengo did not err in applying Judge Kelly's constructions.

Life Tech improperly asks this Court to revisit the construction of "amplification system" that was decided two-and-a-half years ago.  Life Tech argues for a listing of the components of the "amplification system":  "Dr. Barron relies on these same four components—reaction buffer, enzymes, substrates, and primers—to meet the 'amplification system' limitation in the claimed methods." (Mem. at 10.)  This, however, is the construction that Judge Kelly rejected, at Life Tech's behest:  "One skilled in the art would agree that amplification systems . . . would generally contain certain components such as a buffer, enzyme, and substrates, [but] the claims are not defined in that manner."  (Dkt. No. 132 at 6.)

Instead, the construction of "amplification system" that governs this case is the broad construction defined by the amplification system's function, i.e., "a set of components that together can amplify a nucleic acid." (*Id.*)  Judge Bencivengo correctly held that formamide is a component of Illumina's amplification system because formamide is necessary to perform the function of amplifying a nucleic acid.  (Dkt. No. 488 at 6-7.)

Life Tech's motion for reconsideration should be denied because it is an attempt to re-litigate Judge Kelly's claim-construction order.  *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) ("Under [the law of the case] doctrine a court is

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

8

11-cv-00703-BTM (DHB)

1  generally precluded from reconsidering an issue that has already been decided by

2  the same court, or a higher court in the identical case.").

3  　　　　The doctrine of judicial estoppel also bars Life Tech from arguing the

4  opposite of what it argued for and obtained from Judge Kelly. *RF Delaware, Inc. v.*

5  *Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1262 (Fed. Cir. 2003) ("The doctrine

6  of judicial estoppel is that where a party *successfully* urges a particular position in a

7  legal proceeding, it is estopped from taking a contrary position in a subsequent

8  proceeding where its interests have changed.") (emphasis in quoted material)

9  (quotations omitted).  Here, Life Tech argued for and obtained a broad construction

10 of "amplification system" as being defined by its function.[3]  Life Tech is therefore

11 estopped from taking the contrary position that "amplification system" is limited to

12 a defined list of components. (Mem. at 10.)[4]

13 　　　**3.**　　　**Life Tech Merely Argues that Judge Bencivengo Did Not Accept**

14 　　　　　　　　**Life Tech's Arguments**

15 　　　　　Life Tech's motion should also be denied because Life Tech simply makes

16 the same argument again that the "amplification system" should be limited to

17 components that actually copy nucleic acids. (Mem. at 10.)  Arguments that Judge

18

19 [3] Indeed, in its *Markman* briefs, Life Tech made clear that its interpretation of
   "amplification system" —which was adopted by Judge Kelly—defined the

20 components of the amplification system by their function. (Dkt. No. 67 (Life Tech's
   Opening Claim Constr. Brief) at 9 ("The intrinsic record shows that the claimed

21 amplification and polymerase enzyme systems are defined by their function and not
   by any specific components."); *id.* at 7 ("The parties agree that these claim terms

22 are defined by their ability to perform nucleic acid amplification."); (Dkt. No. 75
   (Life Tech's Resp. Claim Constr. Brief) at 2 ("But Plaintiffs' construction is

23 already sufficiently precise for the jury to understand and apply: if the amplification
   system employed by Illumina is capable of amplifying nucleic acids, the

24 requirement is met.").

25 [4] Life Tech cannot be permitted to continuously seek alternative constructions of
   "amplification system" in an attempt to find infringement. *White v. Dunbar*, 199

26 U.S. 47, 51 (1886) ("Some persons seem to suppose that a claim in a patent is like a
   nose of wax, which may be turned and twisted in any direction, by merely referring

27 to the specification, so as to make it include something more than, or something
   different from, what its words express.").

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

9

11-cv-00703-BTM (DHB)

Bencivengo already rejected are not a basis for reconsideration.  *Cooper v. Levine*, No. 05-2119, 2007 WL 3026426, at *3 (S.D. Cal. Oct. 16, 2007) ("[M]otions to reconsider are not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented.") (quotations omitted).

Life Tech's argument that Judge Bencivengo erred by relying on RNase H as a denaturant misses the point.  (Mem. at 13-14.)  Judge Bencivengo rejected Life Tech's argument that the "amplification system" is limited to components that copy nucleic acids.  (Dkt. No. 488 at 5 ("Life Tech contends the components of Illumina's amplification system are limited to reagents that perform the copying portion of the amplification process.").)  As support, Judge Bencivengo relied on the patent specification's teaching that RNase H—which does *not* copy nucleic acids—is a component of the "3SR" amplification system: "The RNase H is a component of the 3SR amplification system that 'destroys the RNA template . . .'" (Id. at 6-7.) In fact, in all their new pages of expert declarations and arguments, Life Tech never once suggests that Judge Bencivengo's point—that RNaseH is not involved in copying but is still listed as a component of the amplification system—was wrong.  Whether RNase H is a denaturant does not matter.  The point is that RNase H is *not* involved in the copying step but is still defined in the patent as "a component of the 3SR amplification system."  The patent specification contradicts Life Tech's narrow construction of "amplification system."

Moreover, Life Tech's repeated assertion that "amplifying" and "copying" are synonymous is disingenuous.  The Chetverins (Plaintiffs and putative inventors here) themselves recognized that the two are not synonymous—"Here the question emerges: if Qβ replicase can copy any RNA, why it is not able to amplify every one?"  A. B. Chetverin, Paradoxes of Replication of RNA of a Bacterial Virus, Molecular Biology, vol. 45, no. 1, pp. 139-149 (2011) at p. 143, col. 1.

**4.      Life Tech Improperly Raises New Arguments**

10     11-cv-00703-BTM (DHB)

a.      **Life Tech Improperly Raises the New Argument that Components Used in the "Incubating" Step Are Not Part of the Amplification System**

Life Tech argues that "the Court did not appreciate" that formamide is not a component of Illumina's amplification system because it is used in the "incubating" step of the asserted claims to create "conditions" in which nucleic acids may be synthesized. (Mem. at 9-13.)  The Court did not fail to appreciate this argument; Life Tech did not previously make it.  This wholly new argument cannot be a basis for reconsideration.  *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (emphasis in original).

Regardless, the argument is without merit.  First, Life Tech says formamide is not a component of the "amplification system" because formamide is only used during the "incubating" step.  (Mem. at 12 ("The use of a chemical agent such as formamide wash to change the melting temperature of the DNA should be considered one of the ***conditions*** that promotes the synthesis of an exponential product, which falls under the 'incubating' step of the Chetverin method.") (emphasis in original).)  This cannot be correct.  By this logic, there would be *no* components that could qualify as part of the "amplification system."  *All* components—enzymes, buffer, substrates, and primers—are used during the incubating step.

Second, Life Tech argues that formamide merely creates "conditions" under which amplification may occur and is thus excluded from the "amplification system."  (Mem. at 11 ("[F]ormamide merely creates an environment and sets up the conditions to melt the DNA strands at a lower temperature . . . .").)  Yet, for example, Life Tech includes the reaction buffer as a component of the "amplification system," despite the fact that the reaction buffer likewise merely

1  creates "conditions that promote exponential synthesis [i.e., amplification] of

2  nucleic acids." (Mem. at 10); *see also* Dkt. No. 319 (Weinstock Report) ¶ 82

3  ("high-salt buffer conditions maintain the DNA sample in single-stranded form so

4  that it will bind to the primers in the flow cell."); (Barron Report) ¶ 24 ("enzymatic

5  DNA chain replication can begin under appropriate solution conditions including

6  the correct temperature, pH, and buffer salt concentration"); *see also* Dkt. No. 132

7  at 6 ("One skilled in the art would agree that amplification systems . . . would

8  generally contain . . . a buffer . . . .").)

9          **b.      Life Tech Improperly Raises the New Argument that a**

10                   **Component that Can Be Replaced Is Not a Component of**

11                   **the Amplification System**

12          Life Tech also argues, for the first time in this case, that formamide is not a

13  component of Illumina's amplification system because it merely lowers "the

14  amount of heat required to melt the DNA" and thus could be replaced by PCR

15  thermocycling.  (Mem. at 11 (relying on Dr. Barron's latest declaration).)  Again,

16  this wholly new argument cannot serve as a proper basis for reconsideration.  *Kona*

17  *Enterprises, Inc.*, 229 F.3d at 890.

18          Regardless, this argument fails because it contradicts the position Life Tech

19  took during claim construction, which Judge Kelly adopted in his claim

20  construction order.  *RF Delaware, Inc.*, 326 F.3d at 1262.  During claim

21  construction, Life Tech argued that the components of an amplification system were

22  limited to those in the actual amplification system used in an accused device—not a

23  hypothetical system with fewer or different components.  (Dkt. No. 67 (Life Tech's

24  Opening Claim Constr. Brief) at 9 ("Whatever exponential enzymatic nucleic acid

25  amplification *is selected for use* in applicants' method, the *necessary components*

26  *for that amplification system* must be provided.") quoting JA615 (paper 22 at 7)

27  (emphasis added); (Dkt. No. 75 (Life Tech's Resp. Claim Constr. Brief) at 2

28  ("Plaintiffs' construction is already sufficiently precise for the jury to understand

1   and apply: if the amplification system *employed by Illumina* is capable of

2   amplifying nucleic acids, the requirement is met.") (emphasis added).  Judge Kelly

3   adopted this position in his claim-construction order.  (Dkt. No. 132 at 5 (quoting

4   JA615 (paper 22 at 7)).)[5]

5          Moreover, Life Tech is wrong on the facts.  The evidence shows that the

6   formamide in Illumina's system cannot be replaced by PCR thermocycling.  Life

7   Tech relies on Dr. Barron's latest declaration (Mem. at 23-24), in which she asserts,

8   without citing any supporting evidence, that Illumina could amplify DNAs by

9   heating its system to the higher temperatures used for PCR (*i.e.*, 98°C) instead of

10  using formamide.  (Dkt. No. 495 (Barron Decl.) ¶ 50.)[6]  Dr. Barron bases this

---

[5] Life Tech's new, contradictory construction also fails because it would exclude components that the patent specification and prosecution history define as being part of various amplification systems.  For example, the specification describes RNase H as a component of the 3SR amplification system.  (Dkt. No. 488 (Order granting summary judgment) at 6-7; Dkt. No. 435 at 2-3; Dkt. No. 1 ('478 patent) at 2:35-38.  Life Tech's new argument that formamide is *not* part of Illumina's amplification system because formamide merely allows amplification to occur without thermocycling would also exclude Rnase H from the 3SR system: "The action of RNA polymerase and *RNase H* results in the formation of single-stranded templates, *allowing the amplification* to proceed exponentially *without temperature cycling*." (*Id.* at 2:51-57) (emphasis added).)  Similarly, Life Tech's new construction would also exclude RNA polymerases and NTPs from being components of the "VRP" amplification system and contradict the prosecution history.  During prosecution, Plaintiffs listed the components of the VRP amplification system (for DNA targets) as including all of the components necessary for carrying out PCR, plus additional components necessary for VRP. (Dkt. No. 320) ('478 file history, 9/6/95 Response at 6-8.).)  During the *Markman* phase, Life Tech agreed that the table in this document lists the components of amplification systems described in the specification. (Dkt. No. 75 (Life Tech's Resp. Claim Constr. Brief) at 3 ("Illumina's citation to *the table describing components for particular amplification systems* is nothing more than a summary of "*some* [not all] combinations of components" from the examples described in the specification.") (emphasis added).)  These additional components are needed in the VRP process because VRP (like Illumina's process) is isothermal, whereas PCR relies on temperature cycling. Despite the fact that many of the components of the VRP system for DNA targets *could be* left out if temperature cycling was used instead, Plaintiffs told the Patent Office that these were still part of the set of components that make up the VRP amplification system (for DNA targets).  Life Tech's new construction thus contradicts the specification and prosecution history, and should be rejected.

[6] Life Tech twice cites ¶ 52 of Dr. Barron's newest (4/17/13) declaration as support for the assertion that formamide can be replaced with thermal (temperature)

(footnote continued on next page)

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION                    13                    11-cv-00703-BTM (DHB)

1   conclusion entirely on her unsupported assumption that "BST polymerase is

2   thermostable and therefore can withstand the thermocycling needed in traditional

3   PCR." (*Id.*)

4        Dr. Barron is wrong.  As Dr. Weinstock explained in his rebuttal report,

5   citing the manufacturer specification, the *Bst* polymerase used in Illumina's system

6   is *not* thermostable or usable in PCR. (Dkt. No. 319 (Weinstock Report) ¶ 42).[7]

7   Given that Life Tech's new argument is based on an objectively false assumption,

8   Life Tech's new argument cannot raise a genuine issue of material fact.  *See*

9   *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d at 839

10  (where nonmovant offered only conclusory denial of movant's evidence, court "was

11  not faced with alternative inferences," and there was no genuine issue of material

12  fact).

13  **C.    Judge Bencivengo Did Not Err in Finding No Genuine Issues of Disputed**

14  **      Material Fact**

15       Life Tech's argument (Mem. at 14-21) that, even if formamide is a

16  component of Illumina's amplification system, there are still genuine issues of

17  disputed material fact that preclude summary judgment, should be rejected.

18       Illumina supported its summary-judgment motion with a Statement of

19  Undisputed Facts.  (Dkt. No. 319 (Statement of Undisp. Facts).)  Life Tech did not

20  challenge that Statement, or even refer to it, in opposing Illumina's motion.

21  Illumina included two facts in the Statement that Judge Bencivengo relied on to

22  grant summary judgment.  First, "[f]ormamide causes the two strands in the double-

23  _____

24  (footnote continued from previous page)

25  cycling.  This appears to be a typo; ¶ 52 of Dr. Barron's newest declaration does not
    deal with whether formamide can be replaced with heat.

26  [7] As the manufacturer stated "*Bst* DNA Polymerase, Large Fragment cannot be used
    for thermal cycle sequencing or PCR." *See*, https://www.neb.com/products/M0275-
27  Bst-DNA-Polymerase-Large-Fragment. *See also* Dkt. No. 319 (Weinstock report)
    at p. 16, n. 11 (quoting additional manufacturer statements).

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

14

11-cv-00703-BTM (DHB)

1  stranded molecules to 'denature,' *i.e.* to separate into single strands as shown in
2  Figure 6 below."  (*Id.* ¶ 11.)  Second, "formamide is *not* water-based . . . [and] 'is
3  never part of any aqueous phase' in the Illumina system."  (*Id.*)

4      Because Life Tech never disputed these two dispositive facts, Judge
5  Bencivengo did not err in finding that there were no genuine issues of disputed
6  material fact that could bar summary judgment.  Life Tech's argument now that
7  such disputes exist is without basis.

8      **1.**   **Life Tech Never Disputed that Formamide "Denatures" Double-**
9              **Stranded DNA in Illumina's Accused System**

10     Judge Bencivengo did not err by applying Judge Kelly's claim construction
11 to a fact that Life Tech never disputed (until now).  Life Tech never disputed that
12 Illumina's accused system uses the non-aqueous chemical formamide to denature
13 DNA to form single strands.  (Mem. at 11; Barron Report at 27 n.25 (referring to
14 "amplification cycles" stating "[a] cycle consists of a formamide wash (to denature
15 double-stranded DNA to single-stranded) . . . .").)  Judge Bencivengo therefore did
16 not err in holding that "[t]he court's construction identified the system as the
17 necessary components to produce exponential amplification and there is no factual
18 dispute that formamide is a necessary component for the exponential amplification
19 process to take place in Illumina's system."  (Dkt. No. 488 at 7.)

20     Life Tech argues that Dr. Barron's original expert report creates a genuine
21 issue of material fact.  (Mem. at 15-18.)  It does not, because Dr. Barron
22 acknowledged in her original report that Illumina uses formamide to denature
23 double-stranded DNA to form single-stranded DNA that is then amplified.  (Barron
24 Report at 27, n. 25.)

25     Finally, Judge Bencivengo did not err in concluding that Dr. Edwards's late-
26 filed declaration was "conclusory" and failed to create a genuine issue of disputed
27 material fact.  (Dkt. No. 488 at 6.)  Dr. Edwards simply parroted Life Tech's
28 attorney argument in favor of a narrower construction of "amplification system"

15     11-cv-00703-BTM (DHB)

1   that would exclude denaturants like formamide.  (Edwards Dec. ¶ 25 ("It is my

2   opinion that formamide is not part of the 'amplification system,' because it is

3   merely a denaturing method, analogous to heat, and is not part of 'a set of

4   components that together can amplify a nucleic acid.'").)  Again, this attack on

5   Judge Kelly's construction of "amplification system" was improper and correctly

6   rejected as discussed above.

7       **2.     The Undisputed Fact is that Formamide Is Non-Aqueous**

8       Until now, Life Tech never argued that formamide is "aqueous" ("water-

9   based" (Dkt. No. 132 at 7).)  Nor did Life Tech ever argue that formamide is

10   "included" in an aqueous phase, as all but one ('698, claim 1) of the asserted claims

11   require.  Life Tech never challenged Illumina's Undisputed Fact No. 11, which

12   states that formamide is not water-based and is never part of an aqueous phase.

13   (Dkt. No. 319 (Statement of Undisp. Facts) ¶ 11.)  Judge Bencivengo, therefore, did

14   not err by holding that formamide is not water-based and is never included in an

15   aqueous phase.

16       Life Tech cannot challenge these undisputed facts now.  First, contrary to

17   Life Tech's assertion (Mem. at 9-10), Illumina did not wait until serving its rebuttal

18   expert reports to disclose its contention that formamide is not water-based and is

19   not part of an aqueous phase:

20       •   In its February 18, 2010, response to Life Tech's contention

21           interrogatory regarding non-infringement, Illumina disclosed its

22           contention that its amplification system did not satisfy the "aqueous

23           phase" requirement of Life Tech's asserted claims.

24       •   During more than two years of fact discovery, Illumina continued to

25           disclose its contention and evidence that formamide is a component of

26           Illumina's amplification system, and that the formamide is not aqueous

27           (*i.e.*, it is 100% formamide and does not contain water).  (*See, e.g.*,

28           Boutell Dep. Tr. at 27:19-24 ("Then after that first extension for 90

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

16

11-cv-00703-BTM (DHB)

seconds at 74 degrees C, then we lower the temperature to 60 degrees centigrade and ***then we flush in the first of our amplification reagents, which is formamide***, so -- yeah, <u>needs 100 percent formamide</u>, which is flushed through the flow cell.") (emphasis added); *id*. at 38:2-8 ("Q. When you say 'isothermal amplification method,' what do you mean? A. It's the way we amplify DNA on the surface of the flow cell by holding the flow cell at a constant temperature and flushing over the cycles of ***amplification reagents of formamide*** followed by premix, followed by amplification mix.") (emphasis added).)

• Life Tech's awareness of Illumina's contentions, including Dr. Boutell's deposition, is confirmed by the fact that they were reflected in Dr. Barron's opening report on August 3, 2012. (Dkt. No. 319 (Barron Report) at 27 n.25 ("A cycle consists of a formamide wash (to denature double-stranded DNA to single-stranded) . . . *see* Boutell Dep. Tr. at pg. 25-29.").) (emphasis in original)

• On August 31, 2012, Illumina's expert Dr. Weinstock explained that formamide was part of Illumina's amplification system, was not water-based, and was never included in an aqueous phase. (Dkt. No. 319 (Weinstock Report) ¶¶ 65-69, 170-71.)

• By her September 12, 2012 deposition, Dr. Barron had read Dr. Weinstock's report.[8]  (Barron Dep. Tr. at 12:22-13:22.)

• On November 2, 2012, Illumina filed its summary-judgment motion, supported by the Statement of Undisputed Facts, indicating that the parties did not dispute that formamide is not water based and that formamide is not included in an aqueous phase.  (Dkt. No. 319

---

[8] Dr. Weinstock has only submitted a single expert report in this case.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

17

11-cv-00703-BTM (DHB)

(Weinstock Report) ¶¶ 170-71.)

- Life Tech then had almost two months to prepare an opposition brief, which was due December 21, 2012.

- To support Life Tech's opposition brief, Dr. Barron chose to provide a new Declaration on December 21, 2012, containing wholly new opinions on various topics related to infringement, but not including any opinion regarding Illumina's use of formamide, despite having read Dr. Weinstock's report at least three months earlier, and despite Illumina moving for summary judgment on that very issue.

Life Tech never challenged Illumina's contentions regarding formamide, and has waived any right to do so now. Life Tech could have moved to compel more specific answers to the contention interrogatory, but did not.[9] After receiving Dr. Weinstock's report setting forth his opinion that formamide is not water-based and is never included in an aqueous phase, Life Tech could have moved for leave to file a rebuttal report, but did not. Dr. Barron had almost four months—from August 31 until December 21—(and nearly two months after Illumina filed its summary judgment motion) to offer additional opinions on this issue, but did not (despite offering new opinions about other issues in her December 21, 2012 declaration).[10] Finally, at any time up until Life Tech filed its opposition on December 21, 2012, Life Tech could have moved for more time to develop the record under Fed. R. Civ.

---

[9] In contrast, Life Tech provided the same level of detail in response to Illumina's corresponding interrogatories—about why Life Tech believed that it did not infringe the patents asserted by Illumina. (Life's First Supplemental Response And Objections To Illumina And Solexa's Interrogatory Number 1 at 4-5.)

[10] Dr. Barron's personal life should have no bearing on this case or this motion for reconsideration. According to Dr. Barron's most recent declaration (Dkt. No. 495 (Barron Decl.) ¶ 9), Dr. Barron was indisposed starting December 24, 2012. This was three days *after* Life Tech filed its non-infringement opposition *that included a declaration from Dr. Barron*. (*Compare id. with* Dkt. No. 370.) In short, Life Tech fails to show good cause for not rebutting Dr. Weinstock's opinions between receiving those opinions on August 31, 2012, and filing its opposition brief on December 21, 2012.

1   P. 56(d), but did not.[11]

2       In any event, the opinions in Dr. Barron's most recent declaration (her ***third***

3   submission of opinions on infringement) cannot create a genuine issue of disputed

4   material fact, because her new opinions are not supported by evidence and

5   contradict her previous testimony.  First, Dr. Barron opines that an amplification

6   system using formamide "is in a water-based phase because the majority of the

7   liquid in that amplification system is water."  (Mem. at 20 (citing Barron Decl. ¶

8   55).)  Dr. Barron does not cite any evidence to support this opinion, so even if the

9   Court were to consider Dr. Barron's most recent declaration, the Court should reject

10   the opinion as conclusory.  *Barmag Barmer Maschinenfabrik AG v. Murata Mach.,*

11   *Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("The party opposing the motion must

12   point to an evidentiary conflict created on the record at least by a counter statement

13   of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant.  Mere

14   denials or conclusory statements are insufficient.").

15       Second, Dr. Barron's new opinion (that water might contaminate the

16   formamide as the formamide pushes the water out of the flow cell, thus making the

17   formamide "aqueous") is inconsistent with Dr. Barron's deposition testimony.

18   (Barron Dep. Tr. at 152:7-12 (Q: "So any percentages of water above zero would

19   qualify a solution as an aqueous solution?"  A: "I think if the presence of the water

20   is important, yeah. You know, ***if it's not just a contaminant but there on purpose,***

21   ***then I would still call it aqueous***.") (emphasis added).)  This contradictory

22   evidence, even if considered, should be rejected.  *Kennedy v. Allied Mut. Ins. Co.*,

23   952 F.2d 262, 266 (9th Cir. 1991) ("[A] party cannot create an issue of fact by an

---

24   [11] This case is distinguishable from *Abbott Labs. v. Syntron Bioresearch, Inc.*, No.
25   98 CV 2359, 2000 WL 33967724, *11 (S.D. Cal. Sept. 28, 2000), where Judge
    Huff reconsidered a ruling of infringement based on a more complete record that
26   presented a genuine dispute of material fact.  Here, in contrast, Life Tech never
    disputed Illumina's contention that formamide is a component of its amplification
27   system and is not aqueous, and Judge Bencivengo relied on these undisputed facts
    to grant summary judgment for Illumina.

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

19

11-cv-00703-BTM (DHB)

affidavit contradicting his prior deposition testimony"); *Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1381 (Fed. Cir. 2010) ("[W]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.") (quotations omitted).

Additionally, Dr. Barron again offers no support for her new opinion about "contamination." Dr. Barron ran no tests of Illumina's system, instead offering only the conclusory statement that "it is highly probable that there is virtually always some 'blend' of water and formamide present within the Illumina flow cell." (Mem. (Barron Dec.) ¶ 57.)  This opinion should be given no weight, *Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 836, especially when judged against Illumina's experts who supported their opinions with rigorous testing of Illumina's system. (Weinstock Report ¶ 66 ("My opinion is supported by the results of experiments Illumina performed to determine the concentration of formamide necessary to generate clusters."); *id*. ¶ 170 ("[T]he formamide reagent is not water- based"); *id*. ¶ 171 ("[F]ormamide is not aqueous"); *id*. ¶ 87 n.58 ("Formamide is not 'water- based.'")).)

**D.    Judge Bencivengo Did Not Change Judge Kelly's Construction of "Amplification System"**

As discussed above, Judge Kelly construed the term "amplification system" as "a set of components that together can amplify a nucleic acid."  (Dkt. No. 132 at 4.)  According to Life Tech, Judge Bencivengo changed the construction by holding that the amplification system is "all the components necessary to achieve exponential amplification."  (Dkt. No. 488 at 4.)

Judge Bencivengo did not change the construction. Judge Kelly supported his construction of "amplification system" with the following statement from the prosecution history of the '478 patent:  "'Whatever exponential enzymatic nucleic

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

20

11-cv-00703-BTM (DHB)

acid amplification is selected for use in applicant's method, *the necessary components for that amplification system* must be provided so that templates for *that system* will be amplified.'" (*Id*. at 5 (emphasis added).)  During the *Markman* briefing, Life Tech quoted that same statement in support of its construction of "amplification system."  (Dkt. No. 67 (Life Tech's Opening Claim Constr. Brief) at 8-9.) Formamide is necessary in Illumina's system to form single-stranded nucleic acids that can be amplified, and thus formamide is one of "the necessary components for that amplification system . . . ." (Dkt. No. 132 at 5.)

Life Tech now argues that Judge Kelly's construction should not be limited to components that are "necessary" for amplification, but also encompasses components that are "capable" of amplification.  (Mem. at 23.)  First, Life Tech has never raised this argument before and therefore has waived it.  *Kona Enterprises, Inc. v. Estate of Bish*op, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (emphasis in original). Life Tech has known that Illumina uses formamide as part of its amplification process, but Life Tech chose to argue that that process—the one Illumina actually uses—infringes.  Life Tech cannot now argue that a hypothetical process, which Illumina does not use, infringes the claims.

Second, as discussed *supra* at page 11, the claim construction order provides that the components of the amplification system must be part of the specific system *actually used* in Illumina's accused method.  (See, e.g., Dkt. No. 132 at 5 ("'Whatever [system] is selected for use in applicant's method, the necessary components for *that amplification system* must be provided so that templates *for that system* will be amplified.'") (emphasis added).)  Life Tech is therefore wrong in arguing that because *some other* component *could be* used in Illumina's system

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

21

11-cv-00703-BTM (DHB)

1    to denature DNA, that system does not require formamide for amplification. (Mem.

2    at 23.)[12]

3        Third, Life Tech can hardly claim surprise that the "aqueous" element needs

4    to include "all the components necessary to achieve *exponential* amplification."

5    During the *Markman* phase, Life Tech told Judge Kelly that this was the plain

6    meaning of "exponential amplification system" in the "aqueous liquid phase" claim

7    element.  (Dkt. No. 67 (Life Tech's Opening Claim Constr. Brief) at 10 ("Should

8    the Court require construction of these terms, however, the proper constructions

9    should be, respectively, "aqueous liquid portion that includes **a set of components**

10   **that together can perform** cell-free, enzymatic, *exponential* **amplification of a**

11   **nucleic acid**" and "aqueous liquid portion that includes a cell-free nucleic acid

12   polymerase enzyme system.") (emphasis added).)[13]  While Judge Kelly's claim-

13   construction order interpreted the phrase "aqueous liquid phase" in this claim

14   element, it gave the words that followed—"that includes a cell-free, enzymatic,

15   exponential nucleic acid amplification system"—their ordinary meaning.[14] (Dkt.

16   No. 132 at 7.)  Life Tech can hardly claim they were unprepared to deal with the

17

18   [12] Judge Kelly's construction of "amplification system" applies to all of the asserted
     claims. (Dkt. No. 132 at 4.) The question of whether an amplification system that
19   Illumina has *not* chosen would still amplify DNA is equally irrelevant to the
     asserted '568 composition-of-matter claims.

20   [13] In view of Life Tech's prior statement to Judge Kelly during the Markman phase
21   that this construction "account[s] for all of the claim language and …[is] consistent
     with the specification and the prosecution history," the following statement from
22   Life Tech's motion for reconsideration seems to be more than simply disingenuous:
     "[T]he structure of the claims, the claim language itself, and the description and
23   nature of the Chetverins' invention make clear that the recited "amplification
     system" does not necessarily include all of the components and conditions that are
24   used in accomplishing a complete exponential synthesis of nucleic acids." (Mem. at
     23.)

25   [14] Life Tech acknowledged that the Court interpreted "aqueous liquid phase" to
     mean "water-based liquid phase." (Dkt. No. 132 at 7.) The words that follow in the
26   construction are the same as the words from the claim—"that includes a cell-free,
     enzymatic, exponential nucleic acid amplification system"—thus indicating that
27   Judge Kelly applied the ordinary meaning of that phrase in his construction. (*Id.*;
     *see also, e.g.*, '478 patent at 23:52-54.)

28

1   ordinary meaning that Judge Bencivengo used when Life Tech and Illumina both

2   advanced this same ordinary meaning during the *Markman* phase.

3       Fourth, Life Tech's claim to have been surprised by Judge Bencivengo's

4   order is negated by the fact that Illumina clearly set forth this same ordinary

5   meaning in the *Markman* phase (Dkt. No. 73 (Illumina's Resp. Claim Constr. Brief

6   at 16), in Dr. Weinstock's report (Dkt. No. 319 (Weinstock Report) at ¶¶ 62-68),

7   *and* in Illumina's opening summary judgment brief. (Dkt. No. 319 at 9-11.)

8       In its Opposition, Life Tech did not dispute that the exponential amplification

9   system must include "all the components necessary to achieve **exponential**

10  amplification." (See, e.g., Dkt. No. 370 at 4-10.) Life Tech thus waived the right to

11  contest that understanding of the claims now. *Kona Enterprises, Inc.*, 229 F.3d at

12  890.

13      Fifth, Life Tech has not raised a genuine issue of disputed material fact about

14  whether formamide is a required component of Illumina's amplification system.  As

15  explained in section III.C., above, Life Tech's argument is based on the faulty,

16  unsupported premise that Bst polymerase is thermostable.  Life Tech's new

17  argument, even if considered, does not support reconsideration of Judge

18  Bencivengo's ruling on summary judgment.

19  **E.   Life Tech's New Infringement Arguments Should Be Rejected**

20  **1.   Life Tech Cannot Now Raise a "Hypothetical Literal**

21  **Infringement" Argument**

22      Life Tech argues that, under its newly proposed construction of

23  "amplification system" (as only requiring that an accused system be *hypothetically*

24  "capable" of exponential amplification), Illumina's system would be "capable" of

25  infringing (if PCR thermocycling-based amplification were to be substituted for

26  Illumina's actual formamide-based amplification system), and Life Tech should be

27  permitted to develop evidence of such "infringement." (Mem. at 25, 26.)  First, Life

28  Tech has never raised any such argument and therefore waived it. *Kona*

SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

23

11-cv-00703-BTM (DHB)

*Enterprises, Inc.*, 229 F.3d at 890.  Second, the claims are limited to the specific amplification system that Illumina *actually* uses, not some hypothetical alternative system. (Dkt. No. 132 at 5.)  Third, discovery ended two years ago.  Fourth, Life Tech never disputed that Illumina uses formamide to amplify nucleic acids. Illumina uses formamide in its accused process and thus does not infringe the claims as construed by Judge Kelly.

### 2.     Life Tech Cannot Now Raise a Doctrine-Of-Equivalents Argument

Life Tech's assertion of infringement under the Doctrine of Equivalents (Mem. at 27-30) at this point in the case is, frankly, outrageous.  Life Tech's expert reports contained no mention of this argument or any opinions to support such an argument.  And despite Illumina's having moved on this issue (Dkt. No. 319 at 19), Life Tech never addressed this issue at any point in the summary judgment proceedings. Life Tech has therefore waived this argument. *Kona Enterprises, Inc.*, 229 F.3d at 890.  To the extent that Life Tech has offered Dr. Barron's new expert declaration (Dkt. No. 495) containing new opinions regarding this new argument, the submission of those new expert opinions violates the Scheduling Order in this case (such expert disclosures regarding infringement were due on August 8, 2012) and should be excluded. (Dkt. No. 284.)

In any event, Life Tech's argument lacks merit.  Life Tech asserts that Illumina's use of formamide is insubstantial because Illumina's reaction components can be exponentially amplified using other "incubating" conditions. (Mem. at 28.)  This is simply not true. It is undisputed that Illumina's system uses *Bst* polymerase, which is not stable at the temperatures used in traditional PCR. (Weinstock Report ¶ 42 (quoting the manufacturer's specification that "Bst polymerase cannot be used for PCR.").)  Additionally, aqueous denaturants—such as sodium hydroxide—were found by Illumina to not be suitable for use in its system. (ILMN_0096976, ILMN_0096979 (noting problems with linearization and blocking in isothermal amplification possibly due to sodium hydroxide, but pure

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

24

11-cv-00703-BTM (DHB)

1  formamide worked).)  Thus, Dr. Barron's statement that "Illumina's partially-

2  aqueous liquid phase and the claimed purely aqueous phase have the same chemical

3  and physical properties" is not only contrary to the undisputed facts, but is without

4  its own factual support.  The Court must disregard such conclusory statements.

5  *Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 836 ("Mere denials or

6  conclusory statements are insufficient.").

7       Besides the substantial difference between the components used in Illumina's

8  system and the claimed system, Illumina's system—due to its use of formamide—

9  performs amplification using fundamentally different techniques than what is

10  claimed.  Because Illumina uses formamide, Illumina's system must cycle its

11  components through the flow cell, while in PCR the components remain together;

12  Illumina's system must add a reaction component that is not added in PCR; and

13  Illumina's system requires a steady and lower heat than that needed for PCR. (*See*

14  *generally* Dkt. No. 319 (Statement of Undisp. Facts).)  These fundamental

15  differences in technique prevent any finding of equivalence; as Judge Kelly

16  recognized, "the claimed invention is not about an amplification per se, but about a

17  way to apply amplification techniques generally." (Dkt. No. 132 at 5.)

18                        **IV.  CONCLUSION**

19       For the reasons stated above, the Court should summarily deny Life Tech's

20  motion for reconsideration.

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

25

11-cv-00703-BTM (DHB)

1

2

Dated: May 31, 2013

Respectfully submitted,

3

4

By: */s/ E. Joseph Connaughton*
101 West Broadway, Ninth Floor
San Diego, CA 92101
(619) 744-3645

5

6

7

8

9

Kevin M. Flowers
Matthew C. Nielsen
Mark H. Izraelewicz
Cullen N. Pendleton
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

10

11

12

Ronald M. Wawrzyn
Matthew M. Wawrzyn
Wawrzyn LLC
233 South Wacker Drive
84th Floor, Willis Tower
Chicago, IL 60606
(312) 283-8330

13

14

*Attorneys for Defendants*
*Illumina, Inc. and Solexa, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ILLUMINA'S OPPOSITION TO LIFE TECH'S
MOTION FOR RECONSIDERATION

26

11-cv-00703-BTM (DHB)